Nicholas A. Duston, Esq.
**NORRIS McLAUGHLIN, P.A.**
400 Crossing Boulevard, 8th Floor
Bridgewater, New Jersey 08807
General: 908-722-0700
Direct: 908-252-4208
Email: naduston@norris-law.com
*Attorneys for Defendants Campers Inn RV of Sewell, Inc.*
*d/b/a Dylans RV Center, Benjamin Hirsch, Matt Jeppsen,*
*Jeffery Hirsch, Andy Pandolfi, and Jacob Helms*
*(collectively, the Defendants)*

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| EUGENE MCCLURE AND ANNA MAE MCCLURE INDIVIDUALLY AND AS CLASS REPRESENTATIVE ON BEHALF OF OTHERS SIMILARLY SITUATED,<br><br>Plaintiffs,<br><br>vs.<br><br>CAMPERS INN RV OF SEWELL, INC d/b/a DYLAN'S RV CENTER; JEFFERY M. HIRSCH; BENJAMIN HIRSCH; MATT JEPPSEN; JACOB HELMS; and ANDY PANDOLFI<br><br>Defendants | Civil Action:<br><br>**NOTICE OF REMOVAL** |

Pursuant to 28 U.S.C. §§ 1332(d), 1446, and 1453, Defendants Benjamin Hirsch ("BH"), Matt Jeppsen ("Jeppsen"), and Jeffery M. Hirsch ("JMH"), (collectively, the "Removing Defendants"), hereby remove to this Court the state court action commenced by Plaintiffs Eugene McClure and Anna Mae McClure (the "McClures") in the Superior Court of New Jersey, Cumberland County, under Docket No. CUM-L-708-25, against the Removing Defendants and Campers Inn RV of Sewell, Inc. d/b/a Dylans RV Center ("Campers Inn"), Jacob Helms ("Helms"), and Andy Pandolfi

("Pandolfi") (along with the Removing Defendants, "Defendants"), and in support thereof, state the following:

I.     <strong><u>PROCEDURAL HISTORY</u></strong>

1. The McClures initially filed the Complaint in the Superior Court of New Jersey on October 9, 2025, under Docket No. CUM-L-708-25.

2. On November 7, 2025, Campers Inn removed this matter to the United States District Court for the District of New Jersey under Case No. 1:25-cv-17313, based on federal question jurisdiction pursuant to 28 U.S.C. § 1331, as the original Complaint asserted a claim under the federal Truth in Lending Act, 15 U.S.C. § 1601, et seq.

3. Plaintiffs filed a First Amended Class Action Complaint ("First Amended Complaint" or "FAC") on or about February 2, 2026, which withdrew the former claim under the Truth in Lending Act and purported to assert no other claim under federal law, and sought remand to the Superior Court of New Jersey, Cumberland County. The Amended Complaint added the Removing Defendants as parties for the first time, and asserted claims against them.

4. On or about February 13, 2026, the federal court, *sua sponte*, remanded the matter to State Court based on the Plaintiffs' withdrawal of the Federal Question before the Removing Defendants had been served with the Amended Complaint.

5. Plaintiffs later effectuated service on the Removing Defendants as of February 26, 2026.

6. Pursuant to 28 U.S.C. § 1446(b)(3), a notice of removal may be filed within 30 days of receipt of an amended pleading, motion, order, or other paper from which it may first be ascertained that the case is removable. The filing of the First Amended Complaint asserting a nationwide and multi-state class action, with express class certification allegations demonstrating CAFA jurisdiction, constitutes such a paper. This Notice of Removal is therefore timely filed within 30 days of service of

a summons and the First Amended Complaint on the Removing Defendants, which first occurred on February 26, 2026.

7. Consistent with the procedures governing the removal of a "class action," as that term is defined under 28 U.S.C. § 1332(d)(1), this Notice of Removal is being filed by the Removing Defendants. Under CAFA, a "class action ... may be removed by any defendant without the consent of all defendants." See 28 U.S.C. § 1453(b).

8. Copies of all process, pleadings, and orders served upon the Removing Defendants in this action are attached hereto as **Exhibit A** (First Amended Complaint), and **Exhibit B** (all process and orders in the state court action), pursuant to 28 U.S.C. § 1446(a).

9. A copy of this Notice of Removal will be filed with a Notice to the Clerk of the Superior Court of New Jersey, Cumberland County, and will be served upon Plaintiffs' counsel, as required by 28 U.S.C. § 1446(d). See **Exhibit C** attached hereto.

10. No previous petition for removal based on CAFA jurisdiction has been made. The prior removal was based solely on federal question jurisdiction under 28 U.S.C. § 1331 and preceded the Class Action amendment.

11. The underlying jurisdictional basis for the Removing Defendants' removal of the Class Action Complaint is set forth within 28 U.S.C. § 1332(d)(2), the requirements of which are satisfied in connection with the First Amended Class Action Complaint.

## II.    THE PARTIES

12. Named Plaintiffs in the First Amended Complaint are Eugene McClure and Anna Mae McClure. Plaintiffs are a married couple who reside in Vineland, New Jersey, and are citizens of the State of New Jersey. FAC ¶ 7.

13. The named Plaintiffs also purport to act on behalf of a class and subclass of plaintiffs pursuant to Rule 4:32 of the New Jersey Court Rules:

All persons who, at any time on or after October 9, 2019 who purchased or leased a Recreational Vehicle from Defendants who: (1) received a sales document with terms the same or similar to the terms of the BO provided to Plaintiffs; (2) were charged a "Documentation Fee Paid to Seller" or a similar fee for documentary services where the sales document used in the transaction did not set forth in writing each specific documentary service performed and the price for each service; (3) were charged a "Certificate of Title Fee" or similar fee to title and register the vehicle purchased or leased that exceeded the actual official fees charged by the New Jersey MVC and/or the appropriate Motor Vehicle agency of the state where the vehicle was registered to timely register and title the vehicle purchased or leased and who did not receive complete refunds for the overcharge; /or (3) were charged a "Vehicle Sales Price" that was more than the advertised price for the RV or included a pre-delivery service fee, prep fee or a similar fee for pre-delivery services where the sales document used in the transaction did not set forth in writing each specific pre-delivery service performed and the price for each service .

Specifically excluded from the Class are any judges or magistrates involved in this matter.

Id. ¶ 120.

14.    The First Amended Complaint contains various allegations ostensibly in support of the requisite elements necessary to justify certification of the lawsuit by the court as a class action, e.g., numerosity, typicality, predominating and common questions of law and fact.

15.    Defendant Campers Inn is a New Jersey Corporation that has its primary place of business as an RV dealership located at 2190 Delsea Dr., Sewell, NJ 08080, and is a licensed motor vehicle dealer with the New Jersey Motor Vehicle Commission. Campers Inn is therefore a citizen of the State of New Jersey for purposes of diversity jurisdiction. Id. ¶ 8.

16.    Defendant Jeffrey M. Hirsch ("JMH") is alleged to be a controlling owner and Chief Executive Officer of Campers Inn. Id. ¶ 13. JMH is a resident of the State of Florida.  See March 28, 2026 Declaration of Benjamin Hirsch (the "BH Decl."), as **Exhibit D** attached hereto.

17.    Defendant Benjamin Hirsch ("BH") is alleged to be a controlling owner and Chief Operating Officer of Campers Inn. BH is a resident of the State of Florida.  See BH Decl., ¶¶ 1-2.

18.    Defendant Matt Jeppsen ("MJ") is alleged to be a controlling owner and Chief Financial Officer of Campers Inn. Jeppsen is a resident of the State of Florida.  See BH Decl., ¶¶ 4.

19.    Defendant Jacob Helms ("Helms") has been a manager at Campers Inn at all times relevant to this action. Helms is a citizen of the Commonwealth of Pennsylvania. See March 27, 2026 Declaration of Jacob Helms (the "Helms Decl."), as **Exhibit E** attached hereto.

20.    Defendant Andy Pandolfi ("Pandolfi") is a sales representative and agent for Campers Inn. Pandolfi is a resident of the State of New Jersey.  See March 27, 2026 Declaration of Andy Pandolfi (the "Pandolfi Decl."), as **Exhibit F** attached hereto.

### III.    THE FIRST AMENDED COMPLAINT IS A "CLASS ACTION" WITHIN THE MEANING OF CAFA.

21.    Plaintiffs bring this action pursuant to R. 4:32 of the New Jersey Court Rules on behalf of a class of those similarly situated. The First Amended Complaint therefore meets the definition of a "class action" under CAFA, 28 U.S.C. § 1332(d)(1)(B), because it was filed pursuant to New Jersey Court Rule 4:32, which is a state rule of judicial procedure similar to Federal Rule of Civil Procedure 23 that authorizes an action to be brought by one or more representative persons as a class action. See 28 U.S.C. § 1332(d)(1)(B).

22.    The First Amended Complaint contains class certification allegations and defines a class consisting of all persons who, at any time on or after October 9, 2019, purchased or leased a Recreational Vehicle from Defendants who: (1) received a sales document with terms the same or similar to the terms in the Buyer's Order provided to Plaintiffs; (2) were charged an unitemized "Documentation Fee Paid to Seller" or similar fee; (3) were charged a "Certificate of Title Fee" or similar fee that exceeded actual official fees and did not receive a complete refund; /or [sic] (4) were charged a "Vehicle Sales Price" that was more than the advertised price for the RV or that included an unitemized pre-delivery service fee. FAC ¶ 120.

23.    The First Amended Complaint purports to allege numerous common questions of law and fact, including whether the unitemized documentary fee, title fee overcharge, excess sales price,

and pre-delivery fee charges constituted violations of the ASP Regulations, MVAP Regulations, CFA, and TCCWNA. Id. ¶ 123.

24.    The First Amended Complaint contains various allegations purporting to  establish the prerequisites for class certification, including numerosity, common questions of law and fact, typicality, adequacy, superiority, and identifiability. Id. ¶ 125-133.

## IV.    REMOVAL IS PROPER ON THE BASIS OF DIVERSITY JURISDICTION UNDER CAFA.

25.    The United States District Court for the District of New Jersey has original subject matter jurisdiction over this action pursuant to 28 U.S.C. §§ 1332(d), 1453 (the "Class Action Fairness Act" or "CAFA"). CAFA amended the federal diversity jurisdiction statute to create original jurisdiction in any civil class action where: "(a) the amount in controversy exceeds the sum or value of $5,000,000, exclusive of interest and costs; (b) the proposed class contains more than 100 members; and (c) minimal diversity exists, meaning that any class member is a citizen of a state different from any defendant." Standard Fire Ins. Co. v. Knowles, 568 U.S. 588, 591, 133 S. Ct. 1345, 1348, 185 L. Ed. 2d 439 (2013) (citing 28 U.S.C. § 1332(d)).

26.    **The Parties Are Minimally Diverse**. Under CAFA, federal diversity jurisdiction exists where minimal diversity exists. Minimal diversity is satisfied where any class member is a citizen of a different state from any Defendant. Gallagher v. Johnson & Johnson Consumer Companies, Inc., 169 F. Supp. 3d 598, 602 (D.N.J. 2016).

27.    The named Plaintiffs, Eugene and Anna Mae McClure, are citizens of New Jersey. FAC ¶ 7. Among the Defendants, several are citizens of other states: Jeffrey M. Hirsch is a citizen of Florida; Benjamin Hirsch is a citizen of Florida; Matt Jeppsen is a citizen of Florida; and Jacob Helms is a citizen of Pennsylvania.

28.    Because the McClures are citizens of a different state than Defendants Benjamin Hirsch (Florida), Jeppsen (Florida), and Helms (Pennsylvania), minimal diversity is established. See 28 U.S.C. § 1332(d)(2)(A).

29.    Campers Inn's business records reflecting the residences of customers who engaged in consumer transactions during the relevant period show that only slightly more than 40% are New Jersey residents, with the remainder residing in other states and two residing in foreign countries. See BH Decl., ¶ 9.

30.    **Class Action Consisting of More Than 100 Members.** The First Amended Complaint itself alleges that "the Defendants sold or leased more than 50 Recreational Vehicles during the class period using the same or similar sales document as used in the McClures' transaction," making joinder of all members impracticable. FAC ¶ 122.

31.    Campers Inn's own business records demonstrate that there were 622 consumer transactions during the relevant class period.[1] Campers Inn conducted approximately 622 consumer transactions for the purchase or lease of recreational vehicles during the period from June 29, 2022, through February 22, 2026.  See BH Decl., ¶ 6. These consumer transactions used the same or similar sales documents as were used in the McClures' transaction.[2]  Courts have permitted defendants to rely on business records and customer data to establish that the actual class size exceeds 100. See Portillo

---

[1] Removing Defendants calculate the putative class period beginning on June 29, 2022 through February 2026, rather than six years prior as alleged in the First Amended Complaint, because the dealership at issue did not exist under the current ownership before that date. Campers Inn RV of Sewell, Inc. acquired the successor dealership on June 29, 2022, and "Dylan's RV Center" did not operate as a legal entity or commercial business prior to that transaction. Accordingly, any claims predicated on conduct occurring before the acquisition necessarily fall outside the temporal scope attributable to Removing Defendants and cannot be included for purposes of determining the relevant class period or the amount in controversy.

[2] Defendants in no way admit that the allegations in the First Amendment Complaint are true, and reserve all arguments and defenses.  Defendants state here only that the same or similar documents would have been used for all 622 transactions as those used for the McClures.

v. Nat'l Freight, Inc., 169 F. Supp. 3d 585, 595 (D.N.J. 2016); Hirschbach v. NVE Bank, 496 F. Supp. 2d 451, 460 (D.N.J. 2007).

32.  Accordingly, the proposed class far exceeds the 100 member threshold required by 28 U.S.C. § 1332(d)(5)(B).

33.  **The Amount in Controversy Exceeds $5,000,000**. Under CAFA, the claims of the individual class members are aggregated to determine if the amount in controversy exceeds the required "sum or value of $5,000,000, exclusive of interests and costs." 28 U.S.C. § 1332(d)(2), (d)(6); see also Standard Fire Ins. Co. v. Knowles, 568 U.S. 588, 592 (2013) ("Under § 1332(d)(2), a federal court may exercise diversity jurisdiction over a class that has more than 100 members who are minimally diverse and whose aggregate claims exceed $5 million."). While the Defendants refute the claims alleged in Plaintiffs' Amended Complaint and further deny that Plaintiffs or any putative class member is entitled to any monetary or other relief, the amount in controversy here satisfies the jurisdictional threshold.

34.  Plaintiffs' First Amended Class Action Complaint seeks damages under the New Jersey Consumer Fraud Act (the "CFA") and Truth-in-Consumer Contract, Warranty and Notice Act ("TCCWNA"). Aggregate damages under CAFA include compensatory damages, statutory damages, punitive damages, treble damages, and attorneys' fees where allowed by statute. See Frederico v. Home Depot, 507 F.3d 188, 199 (3d Cir. 2007); Callery v. HOP Energy, LLC, 620 F. Supp. 3d 223, 230 (E.D. Pa. 2022); Lewis v. Ford Motor Co., 610 F. Supp. 2d 476, 486 (W.D. Pa. 2009).

35.  The First Amended Complaint alleges the following categories of damages per class member, each of which must be aggregated across 622 class members:

a.  Unitemized Documentary Service Fee: $399.00 per class member. The First Amended Complaint alleges that each class member suffered an ascertainable loss in the amount of the unitemized "Documentation Fee Paid to Seller" which for the named Plaintiffs was $399.00. FAC ¶¶ 60–61, 140.

b.      Title and Registration Overcharge: approximately $16.50 per class member. The First Amended Complaint alleges that the McClures and those similarly situated suffered an ascertainable loss in the amount each was charged in excess of the official fees to title and register their motor vehicle and not refunded, with the McClures' ascertainable loss being $16.50. FAC ¶¶ 4, 65, 72.

c.      Excess Sales Price / Unitemized Pre-Delivery Service Fee: $2,920.00 per class member. The First Amended Complaint alleges that the McClures suffered an ascertainable loss of $2,920.00 from the bait-and-switch or unitemized pre-delivery service fee, and that those similarly situated suffered ascertainable losses in the amount of the increased price each was charged. FAC ¶¶ 75, 92–93, 154.

d.      TCCWNA Statutory Damages:  minimum $100 per class member per violation. The First Amended Complaint alleges that class members are entitled to statutory damages of not less than $100 per violation of TCCWNA pursuant to N.J.S.A. 56:12-17, with multiple violations alleged. FAC ¶¶ 162, 165, 169, 174. Each class member has been allegedly subjected to at least three TCCWNA violations based on the three categories of regulatory violations alleged: the unitemized documentary fee, the title fee overcharge, and the unitemized pre-delivery fee. FAC ¶¶ 162, 164-165, 169.

e.      The First Amended Complaint demands treble damages on behalf of all class members pursuant to the CFA, N.J.S.A. 56:8-19. FAC ¶¶ 148, 156. Courts in the Third Circuit have held that treble damages are properly included in calculating the amount in controversy under CAFA when authorized by statute. Frederico v. Home Depot, 507 F.3d 188, 197 (3d Cir. 2007); Lewis v. Ford Motor Co., 610 F. Supp. 2d 476, 484 (W.D. Pa. 2009).

f.      The First Amended Complaint demands reasonable attorneys' fees and costs pursuant to the CFA at N.J.S.A. 56:8-19 and TCCWNA at N.J.S.A. 56:12-17. Courts in the Third Circuit have held that attorneys' fees are properly included in the amount in controversy under CAFA when authorized by statute. Frederico v. Home Depot, 507 F.3d 188, 197 (3d Cir. 2007).

36.     Plaintiffs expressly plead that each category of violation was applied uniformly to the entire class through common policies and practices (FAC ¶¶ 2–4, 17, 121–122, 124, 127) using standardized form documents:

a.      All Violations Are Applied to the Entire Class. The FAC alleges that "Defendants engage in a common pattern and practice of charging customers a vehicle sales price for recreational vehicles that is in excess of the advertised price in violation of the MVAP Regulations and/or that includes an unitemized pre-delivery service fee in violation of the ASP Regulations and the CFA." FAC ¶ 2.   The FAC further alleges that "Defendants engage in a common pattern and practice of charging customers an unitemized documentary fee and

thus fail to comply with the ASP Regulations and the CFA." FAC ¶ 3. The FAC alleges that "Defendants engage in a common pattern and practice of overcharging customers for official title and registration fees and failing to timely refund the entire amount of the overcharge." FAC ¶ 4.

b.  Standard Form Document Used Across All Class Transactions. The FAC defines "terms the same or similar" to mean "a sales document similar to the one received by the McClures that contains similar language as the form BO used in their transaction." FAC ¶ 121. The FAC also alleges that the McClures' claims "are typical of the claims of the members of the Class which they represent because all such claims arise out of the same policies, practices, and conduct, and the same or similar form documents used by the Defendants in their dealings with the McClures and each member of the putative class."  FAC ¶ 124.

c.  Each Violation is Expressly Plead Against All Class Members. The FAC alleges that "Defendants failed to itemize the services being provided for the Documentary Service Fees so that the McClures and those similarly situated could understand what they were actually being charged for" and that "[a]s a direct result of Defendants' unlawful conduct, the McClures and those similarly situated suffered an ascertainable loss in the amount of the unitemized 'Documentation Fee Paid to Seller', or similar fee each was charged." FAC ¶ 60. As to the title overcharge, the FAC alleges that "[t]he McClures and those similarly situated suffered an ascertainable loss in the amount each was charged in excess of the official fees to title and register their motor vehicle and not refunded." FAC ¶ 72. As to the pre-delivery/excess price claim, the FAC alleges that "Defendants engaged in similar unlawful conduct with numerous other consumers" and that "the McClures and those similarly situated suffered an ascertainable loss in the amount of the increased price each was charged for [the] Bait and Switch advertising practices or unitemized pre-delivery service fee, or similar fee each was charged." FAC ¶ 93.

d.  TCCWNA Violations Pleaded Against All Class Members. The FAC alleges that "[t]he BO or sales document with similar terms that the Defendants used in the transactions with the McClures and those similarly situated were contracts and/or notices within the meaning of TCCWNA." FAC ¶ 161. Defendants are alleged to have "violated TCCWNA by providing the McClures and those similarly situated a BO or similar sales document that failed to set forth each documentary service and the specific price for each documentary service performed." FAC ¶ 162. As to the pre-delivery fee, the FAC alleges that "Defendants violated TCCWNA by providing the McClures and those similarly situated a BO or similar sales document that included a charge for pre-delivery services in the Vehicle Sales Price and failed to set forth each pre-delivery service and the specific price for each service performed." FAC ¶ 169.

e.  Treble Damages and Attorneys' Fees Demanded for Entire Class. The FAC demands that "[t]he McClures and those similarly situated are entitled to treble damages and reasonable attorneys' fees and costs pursuant to the CFA, N.J.S.A.

56:8-19." FAC ¶ 148. The FAC further demands that "[f]or violations pertaining to the BO or similar sales document, the McClures and those similarly situated are entitled to statutory damages of not less than $100 plus alleged actual damages, attorneys' fees, and costs pursuant to N.J.S.A. 56:12-17." FAC ¶ 174.

37.    Based upon Campers Inn business records Campers Inn conducted approximately 622 consumer transactions for the purchase or lease of recreational vehicles during the period from June 29, 2022 through February 22, 2026.  See BH Decl., ¶ 6. Each of those transactions was documented using a Buyer's Order and other, similar sales documents in the same or substantially similar form as the BO used in the McClures' transaction,[3] thus satisfying the first section of the class definition as to all 622 class members. See BH Decl., ¶¶ 7, 8.

38.    Given that the FAC expressly pleads that each of the three violation categories was applied to the entire class as a matter of common policy and through the use of the same or similar form agreements, the amount in controversy for each violation category is calculated by multiplying the per-member damages alleged in the FAC by all 622 class members. This is consistent with Plaintiffs' own pleading, which asserts each violation against "the McClures and those similarly situated" collectively.

39.    The aggregate amount in controversy is calculated as follows:

a.    Unitemized Documentary Service Fee ($399.00 per class member). The FAC alleges that "the McClures and those similarly situated suffered an ascertainable loss, in the amount of the unlawful documentary service fees each was charged and paid. The McClures' ascertainable loss is the $399.00 they were charged and paid." FAC ¶ 140. Based on Campers Inn's business records, all 622 class transactions included contracts containing a similar "Documentation Fee Paid to Seller" line item. See BH Decl., ¶ 8. If, as the McClures allege, each of the 622 suffered the same ascertainable loss, the aggregate alleged actual damages for this condition are 622 Class Members x $399.00 = **$248,178.00** in aggregate. Trebled damages for this alleged violation is calculated as follows:  622 x $1,197.000 = **$744,534.00** in trebled damages.

---

[3] Again, Defendants do not admit the allegations in the First Amendment Complaint, and reserve all rights; Defendants state here only that similar documents would have been used for all transactions.

The FAC also demands "statutory damages of not less than $100 plus actual damages, attorneys' fees, and costs pursuant to N.J.S.A. 56:12-17" for violations pertaining to the BO or similar sales document. FAC ¶ 148. The FAC expressly pleads that Defendants violated TCCWNA by providing "the McClures and those similarly situated a BO or similar sales document that failed to set forth each documentary service and the specific price for each documentary service performed." FAC ¶ 162. The unitemized documentary fee therefore allegedly constitutes at least one TCCWNA violation per class member: 622 x $100 = $62,200.00 in TCCWNA statutory damages. This number combined with the trebled alleged actual damages and before any attorneys' fees equals **$806,734.00**.

b.    Certificate of Title Fee Overcharge ($16.50 per class member). The FAC alleges that "Defendants engage in a common pattern and practice of overcharging customers for official title and registration fees and failing to timely refund the entire amount of the overcharge." FAC ¶ 4. The FAC alleges that "[t]he McClures and those similarly situated suffered an ascertainable loss in the amount each was charged in excess of the official fees to title and register their motor vehicle and not refunded. Plaintiffs' ascertainable loss is $16.50." FAC ¶ 72. The aggregate alleged actual damages for this condition, using the $16.50 per-member figure from the FAC as a conservative floor value, are: 622 Class Members x $16.50 = **$10,263.00** in aggregate alleged actual damages. Trebled damages for this alleged common practice equals **$30,789.00** (622 x $49.50 = $30,789.00).

The FAC further alleges that "Defendants also violated TCCWNA by charging the McClures and those similarly situated an unitemized documentary fee that was included in the Registration/Title Fee (Estimated) fees charged for registration and title in the BO and failing to timely provide accurate refunds to the McClures and those similarly situated." FAC ¶ 165. Based on those allegations, the title fee overcharge therefore purports to include at least one additional alleged TCCWNA violation per class member: 622 x $100.00 = **$62,200.00** in TCCWNA statutory damages. This number combined with the trebled alleged actual damages and before any attorneys' fees equals **$92,989.00**.

c.    Excess Vehicle Sales Price / Unitemized Pre-Delivery Fee ($2,920.00 per class member). The FAC alleges that "the McClures and those similarly situated have suffered an ascertainable loss in the amount that Defendants charged in excess of the advertised price, and or unitemized pre-delivery service fees included in the Vehicle Sales Price. The McClures' alleged ascertainable loss was the $2,920.00 they were charged. FAC ¶ 154. The aggregate alleged actual damages for this condition, using the $2,920.00 per-member figure from the FAC, are: 622 Class Members x $2,920.00 = **$1,816,240.00** in aggregate alleged actual damages. Trebling the alleged actual damages, as demanded in the FAC, equals **$5,448,720.00** in trebled damages for this alleged violation (622 x $8,760.00 = $5,448,720.00).

This unitemized pre-delivery fee purportedly constitutes at least one additional alleged TCCWNA violation per class member: 622 x $100.00 = $62,200.00 in TCCWNA statutory damages for the alleged unitemized pre-delivery fees. Adding the TCCWNA statutory damages of **$62,200.00** to the trebled damages total yields **$5,510,920.00** before any attorneys' fees.

40.     Even without including attorneys' fees, which are expressly recoverable under both the CFA and TCCWNA and must be aggregated under CAFA, the amount in controversy exceeds $5,000,000.

41.     As demonstrated above, the trebled damages from the excess Vehicle Sales Price / unitemized pre-delivery fee alone ($5,448,720.00) exceeds the $5,000,000 CAFA threshold before any other category of damages is added. When the trebled documentary fee damages ($744,534.00), TCCWNA statutory damages across all three violations ($186,600.00), and a conservative 25% attorneys' fee award ($1,594,963.50) are included, the total amount in controversy exceeds $7,900,000.

42.     Accordingly, the $5,000,000 amount in controversy threshold of 28 U.S.C. § 1332(d)(2) is satisfied. See Dart Cherokee Basin Operating Co. v. Owens, 571 U.S. 81, 89 (2014) ("[A] defendant's notice of removal need include only a plausible allegation that the amount in controversy exceeds the jurisdictional threshold").

**WHEREFORE**, the Removing Defendants respectfully request that this Notice of Removal be filed; that the Subject Action in the Superior Court of New Jersey, Cumberland County, be removed to the United States District Court for the District of New Jersey; and that no further proceedings be had in the Superior Court of New Jersey, Cumberland County.[4]

**NORRIS MCLAUGHLIN, P.A.**
*Attorneys for Defendants Campers Inn RV of Sewell, Inc. d/b/a Dylans RV Center, Benjamin*

---

[4] Defendants expressly reserve all rights to enforce of any mediation, arbitration, or other alternative dispute resolution agreements or requirements, and any applicable choice of venue provisions or agreements. The filing of this Notice of Removal does not constitute a waiver of any such rights.

*Hirsch, Matt Jeppsen, Jeffery Hirsch, Andy Pandolfi, and Jacob Helms (collectively, the Defendants)*

By: _/s/ Nicholas Duston_
   Nicholas A. Duston, Esq.

Dated: March 30, 2026

## **LOCAL RULE 11.2 CERTIFICATION**

Pursuant to Local Civil Rule 11.2, the undersigned hereby certifies that, at the time of filing the within, the undersigned is not aware that the matter in controversy is the subject of actions pending in any other court, or of any pending arbitration or administrative proceeding.

By: */s/ Nicholas Duston*
Nicholas A. Duston, Esq.

# EXHIBIT A

Andrew R. Wolf, Esq. (NJ Attorney ID No. 018621995)
Javier L. Merino, Esq., (NJ Attorney ID No. 078112014)
Henry P. Wolfe, Esq. (NJ Attorney ID No. 031942005)
**THE DANN LAW FIRM PC**
825 Georges Road, 2nd Floor
North Brunswick, NJ 08902
Phone: (732) 545-7900
Fax: (216) 373-0536
Email: notices@dannlaw.com

**THE LAW OFFICE OF AARON HARMATY, LLC.**
Aaron M. Harmaty, Esq., # 301832019
21 Van Doren Ave.
Chatham, NJ 07928
973-309-5492
aharmatylaw@gmail.com
Counsel for Plaintiffs and those similarly situated

|  |  |
|---|---|
| EUGENE MCCLURE AND ANNA MAE MCCLURE<br><br>           Plaintiffs,<br><br>  v.<br><br>CAMPERS INN RV OF SEWELL, INC. d/b/a/ DYLANS RV CENTER, JEFFREY M. HIRSCH, BENJAMIN HIRSCH, MATT JEPPSEN, JACOB HELMS, and ANDY PANDOLFI,<br><br>           Defendants. | UNITED STATES DISTRICT COURT FOR THE DISTICT OF NEW JERSEY<br><br>Case No.: 1-cv-25-17313-KMW-EAP<br><br><br>Civil Action<br><br><br>**FIRST AMEMDED CLASS ACTION COMPLAINT AND JURY DEMAND** |

Plaintiffs, Eugene McClure and Anna Mae McClure ("Plaintiffs" or "McClures"), on behalf of themselves and those similarly situated, by way of their First Amended Complaint, state:

## NATURE OF THE ACTION

1.      This putative consumer class action arises from standard business practices by Campers Inn RV of Sewell, Inc., d/b/a Dylans RV Center ("Dylans"),  Jeffrey M. Hirsch, ("JMH"), Benjamin Hirsch, ("BH"), Matt Jeppsen, ("Jeppsen"), and Jacob Helms ("Helms") collectively

Dylans, JMH, BH, Jeppsen and Helms are referred to as (the "Defendants") which violate New Jersey consumer protection laws and regulations, including the New Jersey Motor Vehicle Advertising Practices Regulations ("MVAP Regulations") at N.J.A.C. 13:45A-26A.4(a), the New Jersey Automotive Sales Practices Regulations (the "ASP Regulations"), N.J.A.C. 13:45A-26B.1 et seq., the New Jersey Consumer Fraud Act (the "CFA"), N.J.S.A. 56:8-1 et seq., and the New Jersey Truth-in-Consumer Contract, Warranty, and Notice Act ("TCCWNA"), N.J.S.A. 56:12-14, to -18.

2.      Defendants engage in a common pattern and practice of charging customers a vehicle sales price for recreational vehicles ("RVs") that is in excess of the advertised price in violation of the MVAP Regulations at N.J.A.C. 13:45A-26A.4(a) and/or that includes an unitemized pre-delivery service fee in violation of the ASP Regulations at N.J.A.C. 13:45A-26B.2(a)(2), and the CFA.

3.      Defendants engage in a common pattern and practice of charging customers an unitemized documentary fee and thus fail to comply with the ASP Regulations at N.J.A.C. 13:45A-26B.3(a)(2), and the CFA.

4.      Defendants engage in a common pattern and practice of overcharging customers for official title and registration fees and failing to timely refund the entire amount of the overcharge. This overcharge constitutes an unitemized documentary service fee in violation of the ASP Regulations at N.J.A.C. 13:45A-26B.3(a)(2).

5.      Defendants' violations of the ASP Regulations, MVAP regulations and CFA on the face of the sales documents also constitute violations of the TCCWNA.

6.      The McClures also bring individual claims against Defendants for selling the McClures a defective 2025 260DS Ford MC Leprechaun RV with an active recall and refusing to take back the defective RV as set forth *infra*.

## **PARTIES**

7.      The McClures are a married couple in their 60s who reside in Vineland, New Jersey.

8.      Dylans is a New Jersey Domestic Profit Corporation that does business at an RV dealership located at 2190 Delsea Dr., Sewell, NJ 08080.

9.      Dylans is a licensed motor vehicle dealer with the New Jersey Motor Vehicle Commission.

10.     Defendant JMH is a controlling owner and Chief Executive Officer of Dylans.

11.     Defendant BH is a controlling owner and Chief Operating Officer of Dylans.

12.     Defendant Jeppsen is a controlling owner and Chief Financial Officer of Dylans.

13.     Defendant Helms has been a manager at Dylans at all times relevant to this action.

14.     Defendant Andy is a sales representative and agent for Dylans and as the sales representative who engaged with the McClures at all relevant times and is directly liable to the McClures for his unlawful acts pursuant to the CFA, at N.J.S.A. 56:8-2. "Defendants" when referring to The McClures' individual claims also includes Andy.

15.     N.J.A.C. 13:21-15.7(c) states: "The dealer, all partners, officers, directors and/or holders of controlling interests shall be individually responsible for the conduct of all business at the dealership and for compliance with all the requirements of the statutes and rules governing the business of buying, selling or dealing in motor vehicles."

16.     As controlling owners, officers, or directors of Dylans, JMH, BH and Jeppsen are individually liable for the violations of the MVAP Regulations, ASP Regulations, CFA, and TCCWNA set forth herein pursuant to N.J.A.C. 13:21-15.7.

17.     JMH, BH, Jeppsen and Helms set the policies and practices of Dylans, including, without limitation, the policy and practice of regularly charging more for RVs than their advertised prices in violation of the MVAP Regulations, the policy and practice of charging a vehicle sales price for RVs that includes unitemized pre-delivery service fees in violation of the ASP, the policy and practice of charging unitemized documentary service fees in connection with RV sales in violation of the ASP Regulations, and the policy and practice of overstating and overcharging customers for MVC title and registration fees without providing a full refund of the amount overcharged, in violation of the ASP Regulations and CFA.

18.     As managers, directors, officers, or controlling owners of Dylans who set the policies and practices complained of herein, JMH, BH, Jeppsen and Helms are personally liable for all claims set forth herein. See *Allen v. V & A Bros., Inc.*, 208 N.J. 114, 132-134 (2011).

## JURISDICTION and VENUE

19.     The McClures initially filed the Complaint in this action in the Superior Court of New Jersey on October 9, 2025 under Docket No.: CUM-L-708-25.

20.     On November 7, 2025 the Defendants removed this matter to the United States District Court – District of New Jersey under Case No.: 1:25-cv-17313.

21.     The removal was based on federal question jurisdiction pursuant to 28 U.S.C. § 1331, as the original Complaint asserted a claim under the federal Truth in Lending Act, 15 U.S.C. § 1601, *et seq*.

22.     This Amended Complaint withdraws the former claim under the Truth in Lending Act and asserts no other claims under federal law.

23.     Since there is no longer federal question jurisdiction this matter should be remanded

pursuant to 15 U.S.C. 1601 to the Superior Court of New Jersey, Cumberland County. See *Royal Canin U.S.A., Inc. v. Wullschleger*, 604 U.S. 22 (2025)("When a plaintiff amends her complaint following her suit's removal [and] eliminates the federal-law claims that enabled removal, leaving only state-law claims behind, the court's power to decide the dispute dissolves" requiring remand.)

24.     Venue is proper in Superior Court of New Jersey, Cumberland County because the McClures reside in Cumberland County.

## STATEMENT OF FACTS

25.     On August 5, 2025, the McClures went to Dylans' location to look at a recreational vehicle, as the McClures enjoyed camping in a camper but wanted a more compact vehicle.

26.     Andy, a Dylans' salesman, approached the McClures, and after discussing their purpose and preferences, recommended and showed them a 2025 Coachmen Leprechaun 260DS" RV ("the RV").

27.     Andy represented to the McClures that the RV was a "top of the line" recreational vehicle; that it was new, better built, and better than earlier models.

28.     However, Andy failed to disclose to the McClures that by August 5, 2025, the dealership had received  recall notice from the manufacturer applicable to the 2025 Coachmen Leprechaun 260DS line of vehicles, including the RV shown to the McClures, advising that "[t]he fuel line extension may have been inconsistent crimps at the barb fittings of its connectors which can cause the fittings to become loose and detach" and "[i]f a fuel line detaches, this may allow fuel to openly spray. This condition may lead to fire and property damage."  A copy of the recall notice is attached as **Exhibit A.**

29.     The recall notice also advised that "[p]arts are not currently available for this recall." and "if you have already paid for a repair that is within the scope of this defect under recall,

you still need to have this recall inspected and/or performed to ensure the correct parts and procedures were utilized." *Id*.

30.     Mr. McClure initially stated he wanted to "sleep on it" with regards to making a purchase decision. However, based on Andy's representations as to the condition and quality of the RV, the McClures went to speak to Dylans' business manager, Helms.

31.     Helms convinced the McClures to purchase the RV on August 5, 2025 and also sold the McClures several additional items, such as a Vehicle Service Contract, GAP, Paint Protection, Roadside Assistance and Tire and Wheel Protection. The total prices of the additional items were in excess of $19,000.00.

32.     The final RV purchase price, not including the cost of financing, was $160,695.90.

33.     At no point did Andy, Helms, or anyone else at Dylans disclose to the McClures the fuel line issue in the recall notice or that there was a pending recall on the RV.

34.     The McClures made down payment towards the RV of $15,000 ($5,000 via credit card and a check for $10,000).

35.     The McClures financed the balance of the RV purchase ($145,695.90) through Dylans' by agreeing to a 240-month loan that would cost a total of $292,260.00, including a $145,564.10 Finance Charge.

36.     The final RV purchase price, including the down payment and the cost of financing, was $307,260.00.

37.     At the time of purchase, Mr. McClure expressed concern to Helms about the price and duration of the loan, and Mr. McClure likened it to purchasing a house.

38.     Helms stated that if the costs became too much, or the McClures got tired of the purchase, they could just stop making payments on it and M&T Bank (the entity who would be assigned the loan after purchase) would pick up the RV without any risk to the McClures. Helms assured Mr. McClure that nonpayment of the loan would not have any negative impact on the McClures.

39.     Mr. McClure asked Helms to clarify that the he meant that that M&T would not pursue payment against the McClures or their family if they did not continue paying the loan and turned in the RV, and Helms re-affirmed that M&T Bank would not pursue them for the loan if they defaulted.

40.     At no point in the August 5, 2025 meeting, did Helms or anyone else at Dylan's mention the recall notice to the McClures.

41.     The McClures relied on Andy's representations regarding the quality of the RV in deciding to purchase it on August 5, 2025.

42.     The McClures relied on the lack of disclosure of that the RV was subject to a pending recall, and the lack of disclosure of the other information contained in the recall notice in their decision to purchase the RV on August 5, 2025.

43.     The McClures relied on Helms' representations regarding how the loan would function when deciding t0 purchase the RV and agree to the financing on August 5, 2025.

44.     On August 5, 2025, the McClures were presented with and signed a sales document called a Buyer's Order ("BO"). A copy of the BO is attached as **Exhibit B**.

45.     The BO categorized certain items included in the total price of $160,695.90 including:

| | |
|---|---|
| Vehicle Sales Price | $130,895.00 |
| Certificate of Title Fee | $450.00 |

Documentation Fee Paid to Seller      $399.00

46.    On August 5, 2025, the McClures were presented with and signed a Retail Installment and Security Agreement ('RISC"). A copy of the RISC is attached as **Exhibit C**.

47. The RISC categorized certain items included in the amount financed that were the same as the charges on the BO including:

Vehicle Sales Price                      $130,895.00
Certificate of Title Fee                 $450.00
Documentation Fee Paid to Seller         $399.00

48.    The RISC also stated in a section entitled "11. Notices" which stated in relevant part:

> 11.2 Documentary Service and Pre-Delivery Service, A Documentary Service fee and Pre-Delivery Service fee are not official fees and are not required by law. "Documentary service" means, but is not limited to, the preparation and processing of documents in connection with the transfer of license plates, registration, or title, and the preparation and processing of other documents relating to the sale of a motor vehicle, Documentary Service Fees MUST BE ITEMIZED ABOVE such that the price of each prepared document is disclosed. "Pre-delivery service" means, but is not limited to, items that are often described or labeled as dealer preparation, vehicle preparation, pre-delivery handling and delivery, or any other service of similar import. Pre-Delivery Service Fees MUST BE ITEMIZED ABOVE and do not include any services for which the dealer receives compensation from any other party.

*See* Exh. C.

49.    The McClures paid or were obligated to pay for the full purchase price of the RV including the Vehicle Sales Price, Certificate of Title Fee and Documentation Fee Paid to Seller.

50.    The $399.00 Documentation Fee Paid to Seller is a documentary service fee as defined by the ASP Regulations at N.J.A.C. 13:45A-26B.1.

51. The BO fails to itemize the actual documentary services being provided for the "Documentation Fee Paid to Seller" and the price for each specific service being provided as required by the ASP regulations.

52. The BO is a "sales document" as defined by the ASP Regulations, N.J.A.C. 13:45A 26B.1, et seq.

53. The Documentation Fee Paid to Seller charged to the McClures and listed on the BO is a "documentary service fee" as defined by the ASP Regulations.

54. Defendants are "automotive dealers" as defined by the ASP Regulations at N.J.A.C. 13:45A-26B.1.

55. In the ordinary course of business, Defendants engage in the retail sales of motor vehicles, or offer more than three (3) motor vehicles for sale, lease, or rental in the course of any 12-month period relevant to this matter.

56. Pursuant to the ASP Regulations at N.J.A.C. 13:45A-26B.3(a)(2), Defendants shall not "accept, charge or obtain from a consumer monies, … in exchange for the performance of any documentary service without first itemizing the actual documentary service, which is being performed **and** setting forth in writing, … on the sale document the price for each specific documentary service." (emphasis added).

57. Pursuant to the ASP Regulations at N.J.A.C. 13:45A-26B.4 any violation of the ASP Regulations is a per se violation of the consumer Fraud Act ("CFA").

58. In addition to being a regulatory violation, the failure to itemize each service and price for each service is an abusive or unconscionable commercial practice, or other affirmative act in direct violation of the CFA at N.J.S.A. 56:8-2.

59.    The McClures suffered an ascertainable loss of $399.00, which is the amount they were charged for documentary service fees that were prohibited and unlawful under the ASP Regulations and CFA.

60.    Defendants failed to itemize the services being provided for the Documentary Service Fees so that the McClures and those similarly situated could understand what they were actually being charged for.

61.    As a direct result of Defendants' unlawful conduct, The McClures and those similarly situated suffered an ascertainable loss in the amount of the unitemized "Documentation Fee Paid to Seller", or similar fee each was charged.

62.    Through the BO, Defendants charged the McClures a "Certificate of Title Fee" of $450.00 to title and register the RV.

63.    The actual official fees charged by the NJ MVC to title and register the RV were as follows: (a) $283.00 for the registration; (b) $85.00 title fee ($60.00) with a lien ($25.00); and (c) $5.50 for temporary registration, totaling $373.50, or $76.50 less than the $450.00 Defendants charged ($450.00 - $373.50).

64.    Defendants issued a refund to the McClures of a portion of the overcharge for title and registration fees in the amount of $60.00.

65.    After accounting for the $60.00 refund, Defendants overcharged the McClures for title and registration by $16.50 ($450.00-$373.50-$60.00).

66.    Defendants did not refund the McClures the $16.50 overcharge.

67.    The Defendants have adopted a policy/practice in the sale/lease of vehicles of overstating and collecting registration/title fees in excess of the official fees charged and remitted

to the appropriate Division of Motor Vehicles for timely registration and transfer of title without refunding all of the overcharges to its customers.

68. The overcharge for title and registration fees is a documentary service fee pursuant to the ASP Regulations at N.J.A.C. 13:45A-26B.1.

69. The ASP Regulations at N.J.A.C. 13:45A-26B.3(a)(2) prohibit the Defendants from charging any non-itemized documentary service fee including one hidden in a title and registration overcharge without itemizing the services being provided and the price for each service on the sales document.

70. The Defendants violated the ASP Regulations at N.J.A.C. 13:45A-26B.3(a)(2) by failing to itemize on the BO the services being provided and the price for reach service included in the title and registration overcharge.

71. In addition to being a regulatory violation, the failure to provide a complete refund and failure to itemize each service and price for each service in the amount charged in excess of the official fees to title and register a motor vehicle is an abusive or unconscionable commercial practice, or other affirmative act in direct violation of the CFA at N.J.S.A. 56:8-2.

72. The McClures and those similarly situated suffered an ascertainable loss in the amount each was charged in excess of the official fees to title and register their motor vehicle and not refunded. Plaintiffs' ascertainable loss is $16.50.

73. Prior to presenting the BO to the McClures and selling the RV with a vehicle sales price of $130,895.00, Defendants represented to the McClures that the actual sales price of the RV was $127,975.00.

74. The $127,975.00 sales price was presented to Plaintiffs in a Quote document prior to the sale. Copy of the Quote is attached as **Exhibit** D.

75.     Defendants sold the RV to the McClures in an amount that was $2,920.00 more than the price represented prior to the sale.

76.     The representation that the sales price was $127,975.00 in the Quote is an advertisement pursuant to the MVAP Regulations at N.J.A.C. 13:45A-26A.3 and the CFA at N.J.S.A. 56:8-1(a).

77.     The MVAP Regulations at N.J.A.C. 13:45A-26A.4(a)(1) prohibits Defendants from the "advertis[ing] of a motor vehicle as part of a plan or scheme not to sell or lease it at the advertised price."

78.     A "[r]efusal to show, display, sell, or lease the advertised motor vehicle in accordance with the terms of the advertisement" constitutes prima facie evidence of a bait-and-switch violation under N.J.A.C. 13:45A-26A.4(a)(2)(i).

79.     The MVAP Regulations at N.J.A.C. 13:45A-26A.4(a) states that Bait and Switch advertising practices are an unlawful.

80.     As alleged *supra*, Defendants sold the RV to the McClures for $2,920.00 more than the advertised price.

81.      Alternatively, the $2,920.00 additional amount that Defendants included in the Vehicle Sales Price on the BO is an unitemized pre-delivery service fee that violated the ASP Regulations at N.J.A.C. 13:45A-26B.2.

82.     The Quote states that the $2,920.00 consists of $1,675 for a "Camp-Ready Prep Package" and a $1,225.00 "Destination" fee.

83.     The Quote does not include any itemization of the services or price for each service included in the Camp-Ready Prep Package or the Destination fee.

84.     The ASP Regulations at N.J.A.C. 13:45A-26B.2 prohibits charging "any pre-delivery service fee without first itemizing the actual pre-delivery service, which is being performed and setting forth in writing, in at least 10-point type, on the sales document the price for each specific pre-delivery service."

85.     The Quote is not a sales document.

86.     Pursuant to N.J.A.C. 13:45A-26B.1, a "pre-delivery service" includes "but is not limited to, items that are often described or labeled as dealer preparation, vehicle preparation, pre-delivery handling and delivery, or any other service of similar import."

87.     Pursuant to the ASP Regulations at N.J.A.C. 13:45A-26B.3(a)(2), Defendants shall not "accept, charge or obtain from a consumer monies, … in exchange for the performance of any documentary service without first itemizing the actual documentary service, which is being performed **and** setting forth in writing, … on the sale document the price for each specific documentary service." (emphasis added).

88.     Defendants failed to itemize on the BO the services or the price for each service included in the additional $2,920.00 that the McClures were charged in the Vehicle Sales Price.

89.     Pursuant to the ASP Regulations at N.J.A.C. 13:45A-26B.4 any violation of the ASP Regulations is a per se violation of the consumer Fraud Act ("CFA").

90.     In addition to being regulatory violations, engaging Bait and Switch advertising practices or the failure to itemize each pre-delivery service and price for each pre-delivery service is an abusive or unconscionable commercial practice, or other affirmative act in direct violation of the CFA at N.J.S.A. 56:8-2.

91.     As a result of Defendants unlawful practices of engaging in Bait and Switch advertising practices or charging unitemized pre-delivery service fees in violation of the consumer regulations and the CFA, the McClures suffered an ascertainable loss of $2,920.00.

92.     Defendants engaged in similar unlawful conduct with numerous other consumers.

93.     As a direct result of Defendants' unlawful conduct, the McClures and those similarly situated suffered an ascertainable loss in the amount of the increased price each was charged for to Bait and Switch advertising practices or unitemized pre-delivery service fee, or similar fee each was charged.

94.     Before they were allowed to take the RV with them, the McClures were told that they would have to leave the RV at the Dylans' property so that they could prepare it for use including that as part of the warranty, they had to put a coating on the interior and exterior of the RV.

95.     While waiting for the RV to be delivered, the McClures purchased several items to enhance the RV, such as approximately $2,000 in bedding, $300 for floor mats for the driving cab, $300 for a new door lock, and $5,000 for a carport for storing the RV out of the weather.

96.     On Monday August 11, 2025, some or all of the Defendants had actual notice of the recall notice on the RV.

97.     On Monday August 11, 2025, six days after purchase, the McClures returned to the dealership to take delivery and pick up the RV.

98.     On August 11, 2025, the McClures were given a walkthrough of the RV by representatives of Dylans being shown how to use various devices in the RV.

99.     At no point on August 11, 2025, during the walkthrough or otherwise were the McClures advised of the Recall Notice or the issues involving the recall notice prior to delivering the RV to them.

100.    After the McClures took delivery of the RV, they found that the slide-out was crooked.

101.    The McClures brought the RV back to Dylans the next day, August 12, 2025 to fix the slide-out.

102.    One of the mechanics at Dylans told the McClures to purchase two additional motors, to replace the motor in the slide outs as needed, as apparently the motor on the vehicle was known to break down.

103.    Prior to this conversation, the McClures were not told about the issue involving the motor breakdown.

104.    At no time on August 12, 2025 did anyone advise the McClures about the recall issue.

105.    The mechanics fixed the slide out, and the McClures took the RV home.

106.    The McClures spent approximately $300 to purchase a door lock to fix the lock for the RV.

107.    There was also an issue with the external television, which the McClures brought to the mechanic at the dealership who fixed it.

108.    At that time, they were also not alerted to the issue involving the recall notice.

109.    That same week, the generator stopped functioning, so the McClures brought the RV back to Dylans.

110.     When they brought the vehicle back to Dylans, the Dylans mechanic stated that the generator was not working because a part was missing, and the mechanic said he would take the part from another vehicle in order to make it work.

111.     The McClures were not told about the recall issue at this time.

112.     After that visit to the dealership, the vehicle's generator worked.

113.     Approximately a week later, the McClures received the recall notice directly from Forest River, the manufacturer of the RV. A copy of the recall notice is attached as **Exhibit A.**

114.     Upon receiving the recall notice, the McClures called Helms, seeking to return the RV.

115.     Helms refused to accept the return of the RV.

116.     Thereafter, the McClures contacted Forest River about the recall notice.

117.     The representative of Forest River advised that the recall notice should have arrived at the dealership on or before August 5, 2025, the same day that the McClures purchased the RV.

118.     The McClures have kept the RV on their property and have not used it, as it is unsafe to drive.

119.     The McClures have maintained the RV by winterizing it and have continued to pay for insurance and the monthly payments while being unable to use it due to its unsafe condition.

**CLASS CERTIFICATION ALLEGATIONS**

120.     **Class Definition:** Plaintiffs bring this action pursuant to R. 4:32 of the New Jersey Court Rules on behalf of a class of those similarly situated. Plaintiffs seek certification of a class (the "Class") pursuant to R. 4:32-1(b)(2) and (b)(3) initially defined as follows:

> All persons who, at any time on or after October 9, 2019 who purchased or leased a Recreational Vehicle from Defendants who: (1) received a sales document with terms the same or similar to the terms in the BO provided to Plaintiffs; (2) were charged a "Documentation Fee Paid to Seller" or a similar

fee for documentary services where the sales document used in the transaction did not set forth in writing each specific documentary service performed and the price for each service; (3) were charged a "Certificate of Title Fee" or similar fee to title and register the vehicle purchased or leased that exceeded the actual official fees charged by the New Jersey MVC and/or the appropriate Motor Vehicle agency of the state where the vehicle was registered to timely register and title the vehicle purchased or leased and who did not receive complete refunds for the overcharge; /or (3) were charged a "Vehicle Sales Price" that was more than the advertised price for the RV or included a pre-delivery service fee,  prep fee or a  similar fee for pre-delivery services where the sales document used in the transaction did not set forth in writing each specific pre-delivery service performed and the price for each service .

Specifically excluded from the Class are any judges or magistrates involved in this matter.

121.    With regards to the Class definition *supra*, "terms the same or similar" means a sales document similar to the one received by the McClures that contains similar language as the form BO used in their transaction.

122.    The members of the proposed Class are so numerous that joinder of all members of the class is impracticable as the Defendants sold or leased more than 50 Recreational Vehicles during the class period using the same or similar sales document as used in the McClures' transaction.

123.    There are questions of law and fact common to the members of the Class. These common questions include:

(a) Whether the "Documentation Fee Paid to Seller" is a documentary service fee pursuant to the ASP Regulations, N.J.A.C. 13:45A-26B.1;

(b) Whether the Defendants charging Plaintiffs and those similarly situated for a "Documentation Fee Paid to Seller" without itemizing each service provided and the price for each service constitutes an unitemized documentary fee charged in violation of the ASP Regulations, N.J.A.C. 13:45A-26B.3(a)(2) and CFA;

(c) Whether the Defendants have a policy or practice of charging Plaintiffs and those similarly situated for a "Certificate of Title Fee" or similar title and registration charge in excess of

the official fees to title and register the RVs without providing a full and accurate refund of the amount overcharged;

(d) Whether the "Certificate of Title Fee" overcharge is a "Documentary Fee" as per the ASP Regulations, N.J.A.C. 13:45A-26B.3(a)(2);

(e) Whether Defendants have a policy or practice of charging Plaintiffs and those similarly situated a "Certificate of Title Fee" or similar charge for documentary services without itemizing the documentary services being performed and the price for each pursuant to the ASP Regulations, at N.J.A.C. 13:45A-26B.1, *et seq.*;

(f) Whether Defendants charging Plaintiffs and those similarly situated "Certificate of Title Fee" and failing to itemize documentary services violates the ASP Regulations and the CFA;

(g) Whether Defendants have a policy or practice of charging Plaintiffs and those similarly situated a Vehicle Sales Price in excess of the advertised price.

(h) Whether charging Plaintiffs and those similarly situated a Vehicle Sales Price in excess of the advertised price constitutes Bait and Switch advertising practice in violation of the MVAP Regulations at N.J.A.C. 13:45A-26A.4(a) and CFA.

(i) Whether Defendants have a policy or practice of charging Plaintiffs and those similarly situated a Vehicle Sales Price that includes an unitemized pre-delivery service fee in violation of the ASP Regulations, N.J.A.C. 13:45A-26B.2(a)(2) and CFA;

(j) Whether the Defendants committed an abusive or unconscionable commercial practice, or other affirmative act that violates the CFA by charging Plaintiffs and those similarly situated an unitemized documentary fee, overcharging for registration and title fees, charging a Vehicle Sales Price in excess of the advertised price, and or charging an unitemized pre-delivery service fee; and

(k) Whether the Defendants' violations of the ASP Regulations, MVAP Regulations and the CFA in the BO set forth *supra* constitute violations of TCCWNA;

124.    The McClures' claims are typical of the claims of the members of the Class which they represent because all such claims arise out of the same policies, practices, and conduct, and

the same or similar form documents used by the Defendants in their dealings with the McClures and each member of the putative class.

125. The McClures will fairly and adequately protect the interests of the class and have retained competent counsel experienced in the prosecution of consumer litigation and class actions.

126. Proposed Class Counsel has investigated and identified potential claims in the action. Proposed Class Counsel has a great deal of experience in handling class actions, other complex litigation, and claims of the type asserted in this action.

127. The Defendants have acted, or refused to act, on grounds generally applicable to the McClures and all Class members, thereby making appropriate final injunctive relief or corresponding declaratory relief with respect to the class as a whole.

128. The questions of law or fact common to the members of the class predominate over any questions affecting only individual members.

129. A class action is superior to other available methods for the fair and efficient adjudication of these controversies since joinder of all members of both classes is impracticable.

130. The Class, of which the McClures are members, is readily identifiable from the Defendants' records.

131. The McClures do not anticipate any difficulty in the management of this litigation.

132. While the economic damages suffered by the individual members of the class are significant, the amount is modest compared to the expense and burden of individual litigation.

133. A class action will cause an orderly and expeditious administration of the claims of the class and will foster economies of time, effort, and expense.

## CLASS CLAIMS

### COUNT ONE
### VIOLATIONS OF THE ASP REGULATIONS AND THE CFA

134.    The McClures, on behalf themselves and others similarly situated, repeat and reallege all prior allegations as if set forth at length herein.

135.    As alleged supra, the ASP Regulations prohibit the Defendants from charging the McClures and those similarly situated a documentary service fee, unless they first itemize the actual documentary services which are being performed and set forth in writing on the sales document the price for each specific documentary service. N.J.A.C. 13-45A-26B.3(a)(2).

136.    The CFA at N.J.S.A. 56:8-2 prohibits:

> the act, use or employment by any person of any commercial practice that is unconscionable or abusive, deception, fraud, false pretense, false promise, misrepresentation, or the knowing concealment, suppression, or omission of any material fact with intent that others rely upon such concealment, suppression, or omission, in connection with the sale or advertisement of any merchandise or real estate…"

137.    The sales document, the BO, used in the transaction with the McClures and others similarly situated, did not set forth in writing each specific documentary service performed or the price for each specific documentary service that was performed in return for charging the Documentary Fee Paid to Seller.

138.    By charging the McClures a $399 Documentary Fee Paid to Seller and charging those similarly situated a similar documentary service fee without setting forth each specific service or the price for each specific documentary service performed the Defendants violated the ASP Regulations at N.J.A.C. 13:45A-26B.3(a)(2).

139. By failing to itemize each service and the price for each service provided as part of the Documentation Fee, the Defendants engaged in an abusive or unconscionable commercial practice, or other affirmative act in direct violation of the CFA at N.J.S.A. 56:8-2.

140. As a direct result of the Defendants' violations of the ASP Regulations and the CFA, the McClures and those similarly situated suffered an ascertainable loss, in the amount of the unlawful documentary service fees each was charged and paid. The McClures' ascertainable loss is the $399.00 they were charged and paid.

141. Defendants also charged the McClures and those similarly situated an amount in excess of the actual official Certificate of Title Fee or similar charges to register and title their RVs.

142. The amounts that the McClures and those similarly situated were overcharged for the "Certificate of Title Fee" or similar charges are documentary service fees within the meaning of the ASP Regulations at N.J.A.C. 13:45A-26B.1.

143. Defendants did not refund to the McClures and those similarly situated the entire amount they were charged in excess of the actual official fees to title and register their vehicles.

144. By misrepresenting the amounts charged by the New Jersey Motor Vehicle Commission (NJ MVC) or other appropriate state motor vehicle agency for registration and title fees and retaining the overcharges, Defendants engage in abusive and/or unconscionable commercial practices, or other affirmative acts in direct violation of the CFA, at N.J.S.A. 56:8-2.

145. The Defendants failed to itemize the services provided and the price for each service that was included in the amounts that the McClures and those similarly situated were overcharged for the "Certificate of Title Fee" in the BO or similar sales document provided to the

McClures and those similarly situated, thereby violating the ASP Regulations N.J.A.C. 13-45A-26B.3(a)(2) and the CFA.

146.    The Defendants' violations of the ASP Regulations constitute per se violations of the CFA.

147.    As a direct result of Defendants' violations of the CFA and the ASP Regulations, the McClures and those similarly situated have suffered an ascertainable loss in the amount that Defendants charged in excess of the actual official registration and title fees and failed to fully refund. The McClures' ascertainable loss was the $16.50 they were overcharged and not refunded.

148.    The McClures and those similarly situated are entitled to treble damages and reasonable attorneys' fees and costs pursuant to the CFA, N.J.S.A. 56:8-19.

## COUNT TWO
## VIOLATIONS OF THE ASP REGULATIONS, MVAP REGULATIONS AND THE CFA

149.    The McClures, on behalf of themselves and other similarly situated, repeat and r4eallege all prior allegations as if set forth at length herein.

150.    As alleged Supra, prior to presenting the BO to the McClures and selling the RV with a vehicle sales price of $130,895.00, Defendants represented to the McClures that the actual sales price was $127,975.00.

151.    As alleged supra, Defendants sold the RV to the McClures in an amount that was $2,920.00 more than the price represented prior to the sale.

152.    As alleged supra the sale of the RV to the McClures at $2,920.00 more than the advertised price constitutes both a direct affirmative act violation of the CFA and a regulatory CFA violation by engaging in Bait and Switch advert rising practices in violation of the MVAP regulations.

153.    As alleged supra, alternatively, the sale of the RV to the McClures at $2,920.00 more than the advertised price constitutes both a direct affirmative act violation of the CFA and a regulatory CFA violation by including in the sales price unitemized pre-delivery service fees without itemizing the services being provided or the price for each service in violation of the ASP regulations.

154.    As a direct result of Defendants' violations of the CFA, the MVAP Regulations and the ASP Regulations, the McClures and those similarly situated have suffered an ascertainable loss in the amount that Defendants charged in excess of the advertised price, and or unitemized pre-delivery service fees included in the Vehicle Sales Price. The McClures' ascertainable loss was the $2920,00 they were charged.

155.    The Defendants' violations of the ASP Regulations and MVAP Regulations constitute per se violations of the CFA.

156.    The McClures and those similarly situated are entitled to treble damages and reasonable attorneys' fees and costs pursuant to the CFA, N.J.S.A. 56:8-19.

COUNT THREE
VIOLATIONS OF TCCWNA
(Predicated on violations of the ASP Regulations and the CFA)

157.    The McClures, on behalf of themselves and others similarly situated, repeat and reallege all prior allegations as if set forth at length herein.

158.    TCCWNA provides, inter alia, that no seller shall enter any written contract or provide a notice that includes a provision that violates any clearly established legal right as established by state or federal law. N.J.S.A. 56:12-14 to -18.

159.    At all times relevant to this matter, Defendants were sellers, creditors, and/or lenders with regards to the sale and lease of RVs vehicles within the meaning of TCCWNA.

160.    At all times relevant to this matter, the McClures and those similarly situated were consumers within the meaning of TCCWNA.

161.    The BO or sales document with similar terms that the Defendants used in the transactions with the McClures and those similarly situated were contracts and/or notices within the meaning of TCCWNA.

162.    The Defendants violated TCCWNA by providing the McClures and those similarly situated a BO or similar sales document that failed to set forth each documentary service and the specific price for each documentary service performed that was included in the "Documentation l Fee" or similar charge, in violation of the ASP Regulations at N.J.A.C. 13:45A 26B.3(a)(2) and the CFA.

163.    The McClures and those similarly situated have a clearly established legal right to not be charged a fee for documentary services unless each service and price for each service is itemized on the BO or sales document.

164.    The McClures and those similarly situated were harmed because they were all charged and paid unlawful documentary service fees in connection with the vehicles purchased or leased from the Defendants.

165.     The Defendants also violated TCCWNA by charging the McClures and those similarly situated an unitemized documentary fee that was included in the Registration/Title Fee (Estimated) fees charged for registration and title in the BO and failing to timely provide accurate refunds to the McClures and those similarly situated.

166.    The McClures and those similarly situated have a clearly established right to not be charged a documentary service fee that is hidden in the fee for title and registration fees, and a right to either timely receive a complete refund when the amount charged by the Defendants

exceeds the actual amount remitted for registration and title fees or an itemization of the services and price for each service that was included in the overcharge.

167.    By failing to provide refunds to the McClures and those similarly situated when a complete refund was owed based on fees charged in excess of the actual official registration and title fees, the Defendants clearly violated the rights of consumers.

168.    The McClures and those similarly situated were harmed and are aggrieved consumers because they all were charged an amount in excess of the actual official registration and title fees related to the RVs they purchased or leased from the Defendants and were not refunded for the overcharge or provided an itemization of the services provided for the overcharge and the price for each such service.

169.    The Defendants violated TCCWNA by providing the McClures and those similarly situated a BO or similar sales document that included a charge for predelivery services in the Vehicle Sales Price and failed to set forth each pre-delivery service and the specific price for each service performed that was included in the "Vehicle Sales Price in violation of the ASP Regulations at N.J.A.C. 13:45A 26B.2(a)(2) and the CFA.

170.    The McClures and those similarly situated have a clearly established legal right to not be charged a fee for pre-delivery services unless each service and price for each service is itemized on the BO or sales document.

171.    The McClures and those similarly situated were harmed because they were all charged and paid unlawful pre-delivery service fees in connection with the vehicles purchased or leased from the Defendants.

172.    The ASP Regulations, and the CFA were clearly established laws at the time the Defendants sold or leased RVs to the McClures and those similarly situated.

173. By offering and/or entering into written consumer contracts (the BO or similar sales documents) which contain provisions in violation of consumers' legal rights clearly established by the ASP Regulations and the CFA, the Defendants violated the TCCWNA at N.J.S.A. 56:12-15.

174. For violations pertaining to the BO or similar sales document, the McClures and those similarly situated are entitled to statutory damages of not less than $100 plus actual damages, attorneys' fees, and costs pursuant to N.J.S.A. 56:12-17.

COUNT FOUR
DECLARATORY JUDGMENT PURSUANT TO THE UNIFORM DECLARATORY
JUDGMENTS ACT (UDJA)

175. The McClures, on behalf of themselves and others similarly situated, repeat and reallege all prior allegations as if set forth at length herein.

176. The UDJA provides that a person interested under a ... written contract or other writing constituting a contract, or whose rights, status or other legal relations are affected by a statute ... [or] contract ... may have determined any question of construction or validity arising under the instrument, statute ...[or] contract ... and obtain a declaration of rights, status, or other legal relations thereunder.  N.J.S.A. 2A:16-53.

177. The BO or similar sales document the Defendants provided the McClures and those similarly situated is a contract as contemplated by the UDJA. N.J.S.A. 2A:16-50, et seq.

178. The BO or similar sales document the Defendants provided the McClures and those similarly situated violated the ASP Regulations, CFA, and TCCWNA, as set forth in the First and Second Counts above.

179. The Court should enter a declaratory judgment that the Defendants' BO, as set forth in the First, Second and Third Counts above, violates the ASP Regulations, the CFA, and TCCWNA.

180.    The Court should enter a declaratory judgment enjoining the Defendants from future violations of the ASP Regulations, the CFA, and TCCWNA and requiring the Defendants to correct their BO and practices that violate the ASP Regulations, the CFA, and TCCWNA.

## INDIVIDUAL CLAIMS

### COUNT FIVE
### CONSUMER FRAUD ACT

181.    The McClures on behalf of themselves only repeat and reallege each and every allegation in the forgoing paragraphs as if fully set forth herein.

182.    When Defendants sold the RV to the McClures on August 5, 2025, they had actual knowledge of the recall notice that was issued as to the RV.

183.    When Defendants delivered the RV to the McClures on August 11, 2025, they had actual knowledge of the recall notice that was issued as to the RV.

184.    When Defendants sold and delivered the RV to the McClures they knew or had reason to know that the RV had defects, such as the fuel line extension and its associated recall, the motor issue with the slide outs, and the generator issue.

185.    When Defendants sold and delivered the RV to the McClures, they misrepresented the RV to be in good, merchantable quality, free of defects, when it was in fact not.

186.    When Defendants sold and delivered the RV to the McClures, they knowingly concealed, suppressed, or omitted facts that were material to the transaction, including but not limited to the RV's defect and recall notice, and other mechanical problems with intent that the McClures rely on the concealed, suppressed, or omitted material facts.

187.    When Defendants sold and delivered the RV to the McClures, they had an affirmative duty to not sell or deliver the RV to them in its dangerous defective condition.

188.     When Defendants sold and delivered the RV to the McClures, they had an affirmative duty to disclose the recall including the dangerous condition and that there was no fix for the condition of the RV identified in the recall notice.

189.     When Defendants sold and delivered the RV to the McClures, they had an affirmative duty to disclose the other mechanical issues associated with the RV and not sell the RV with those existing conditions.

190.     When Defendants sold the RV to the McClures, they misrepresented to the McClures that if they stopped paying the loan, the finance company would take the vehicle back and not go after them for the loan balance.

191.     When the McClures, found out about the recall on the RV, the dangerous condition of the RV and that there was no fix for the issue it created, they contacted Dylans and requested that Defendnats take back the RV and cancel the deal.

192.     At the that the McClures requested that the transaction for the purchase of the RV be cancelled, The Defendants had actual knowledge of the recall, the dangerous condition of the RV and that there was no fix available for the defect.

193.     When the McClures became aware of the dangerous defective condition of the RV with no fix available, the Defendants had a non-delegable duty to accept the recission, rejection or revocation of acceptance requested by the McClures.

194.     Defendants refused to cancel the deal and take back the RV.

195.     The McClures request that Dylans take back the RV was valid, recission, rejection and or revocation of acceptance.

196.     The McClures have been unable to use the RV due to its defects and dangerous condition.

197.    The commercial practices exemplified by the Defendants in this consumer transaction were unlawful and constituted affirmative act violations of the CFA including that the practices were unconscionable, abusive, deceptive, fraudulent and misrepresentations.

198.    The commercial practices exemplified by the Defendants in this consumer transaction were unlawful and constituted the knowing concealment, suppression, or omission of material facts with intent that the McClures rely upon such concealment, suppression, or omission.

199.    But for the misrepresentations and knowing omissions of the Dylans' defendants, the McClures would not have purchased the RV.

200.    As a direct result of the unlawful acts committed by Defendants, the McClures suffered and continue to suffer ascertainable losses.

201.    The ascertainable losses include but are not limited:

- All money paid towards the purchase of the RV:

- All money paid for improvements to the RV;

- All money paid for the purchased of items to enhance the RV:

- All money paid to repair and maintain the RV including winterization of the RV:

- All money paid for and continued to be paid for the loan payments on the RV

- All money paid and continues to be paid to maintain insurance on the RV; and

- The diminished value of the RV at the time of sale.

## COUNT SIX
## COMMON LAW FRAUD

202.    The McClures repeat and reallege each and every allegation contained in the forgoing paragraphs as if fully set forth herein

Page 29 of 34

203. The some or all of the Defendants misrepresented and intentionally concealed material facts regarding the transaction as fully described in the above paragraphs.

204. For example, they said the vehicle was "top of the line," better built, and good, even though there was a recall notice out regarding an issue involving the fuel line.

205. They also knew of the fuel line issues as the recall notice, upon information and belief, was in their possession on the date of sale.

206. They also knew about the motor issue for the slide outs, as the mechanic had advice regarding how to address it which the mechanic volunteered to the McClures.

207. They also knew about the part missing from the generator, as the mechanic suggested it was common practice to take generator parts from other vehicles in the dealership's possession to fix the generator issue.

208. They also knew, or had reason to know, that M&T would not merely abandon a claim for damages against the McClures or their family if the terms of the finance agreement were breached.

209. The some or all of the Defendants, including Dylans, Helms and Andy, made representations praising the "top of the line" quality of the RV, along with omitting these material and dangerous defects, and the representation regarding how M&T would pursue in order to induce the McClures into purchasing the RV.

210. The representations that Defendants made concerning the RV were express warranties.

211. The Defendants had a non-delegable duty to not sell or deliver RV to the McClures in its defective and dangerous condition.

212.    The Defendants had a non-delegable duty to disclose the actual condition of the RV at the time of sale, at the time of delivery and thereafter.

213.    Once the McClures became aware of the dangerous defective condition of the RV the Defendants had a non-delegable duty to accept the recission, rejection or revocation of acceptance requested by the McClures.

214.    The Defendants breached their non-delegable duty to disclose the actual condition of the RV at the time of sale, at the time of delivery and thereafter.

215.    The McClures reasonably relied on all of the representations, misrepresentations and knowing omissions made by some or all of the Defendants.

216.    The McClures suffered and continue to suffer actual damages as a result of their reliance on the representations, misrepresentations and omissions made of the Defendants.

217.    The Defendants actions toward the McClures regarding the sale of the RV to them, the delivery of the RV to them and thereafter were malicious, reckless and or demonstrated a wanton disregard for the safety of the McClures and the RV.

**WHEREFORE**, the McClures on behalf of themselves and those similarly situated demands judgement against the Defendants jointly and severally as follows:

**As to the class claims in Counts One through Four**

a.  For an order certifying this matter as a class action on behalf of the Class, pursuant to R. 4:32-1(b)(2) and (b)(3);

b.  For an order appointing the named Plaintiffs, Eugene McClure and Anna Mae McClure as the class representatives, and appointing their attorneys Andrew R. Wolf, Esq., Henry P. Wolfe, Esq. and Javier L. Merino, Esq. from The Dann Law Firm, PC; and Aaron Harmaty from The Law Office of Aaron M. Harmaty, LLC as Class Counsel;

c.  For injunctive relief forbidding the Defendants from future violations of the CFA, TCCWNA, MVAP Regulations and the ASP Regulations;

d.  For declaratory judgment that the Defendants violated the CFA, TCCWNA, the ASP Regulations and the MVAP Regulations;

e.  For injunctive/equitable relief requiring Defendants to provide notice to all class members of the Plaintiffs' claims and the relief provided by the Court;

f.  For treble damages under the CFA, N.J.S.A. 56:8-19 for the Plaintiffs and each member of the Class;

g.  For statutory damages of a minimum of $100 under TCCWNA at N.J.S.A. 56:12-17 for Plaintiffs and each member of the Class;

h.  For reasonable attorneys' fees and costs, pursuant to the CFA at N.J.S.A. 56:8-19 and TCCWNA at N.J.S.A. 56:12-17;

i.  For prejudgment and post-judgement interest; and

j.  For all other relief as the Court deems equitable and just

**As to Plaintiff's Individual Claims in Counts Five and Six**

k.  For declaratory relief that Defendants violated the CFA and committed Common Law Fraud;

l.  For injunctive relief requiring Defendants to comply with the CFA;

m.  For treble damages under the CFA pursuant to N.J.S.A. 56:8-19 for the individual claims as to the Defendants;

n.  For reasonable attorneys' fees and costs, pursuant to the CFA at N.J.S.A. 56:8-19 as to Plaintiffs' individual claims;

o.  For actual damages as a result of Defendants' Common Law Fraud perpetrated on Plaintiffs for their individual claims;

p.  For incidental and consequential damages as a result of Defendants' Common Law Fraud perpetrated on Plaintiffs for their individual claims;

q.  For equitable relief requiring Dylans to repurchase the loan from M & T Bank and relieving the McClures of any and all responsibility to paying off the loan created by the Defendants' fraudulent activities;

r.  For punitive damages as a result of Defendants' egregious conduct in committing the Common law fraud perpetrated on Plaintiff for his individual claims;

s.  For pre-judgment and post-judgment interest; and

t.  For all other relief as the Court deems equitable and just.

## DEMAND FOR JURY TRIAL

The Plaintiffs demand trial of this action by jury.

## NOTICE TO ATTORNEY GENERAL OF THIS ACTION

A copy of this Amended Complaint shall be electronically mailed to the Attorney General

of the State of N.J. within 24 hours after the filing of this Complaint with the Court pursuant to

N.J.S.A. 56:8-20.

## DEMAND FOR DISCOVERY OF COMMERCIAL GENERAL LIABILITY INSURANCE COVERAGE AS REQUIRED BY N.J.S.A. 56:8-142

Demand is made under Rule 4:10-2(b) that Defendants disclose to Plaintiffs whether or

not there are any insurance or indemnification agreements or policies as required by N.J.S.A.

56:8-142 and N.J.A.C. 13A:45-17.12 under which any person or firm carrying on an insurance

business may be liable to satisfy part or all of the judgment which may be entered in this action

or to indemnify or reimburse for payments made to satisfy the judgment.

## DESIGNATION OF TRIAL COUNSEL

Pursuant to R. 4:25-4, Javier L. Merino, Esq., Henry P. Wolfe, Andrew R. Wolf, Esq.,

and Aaron M. Harmaty, Esq. are hereby designated as trial counsel for the Plaintiffs in the above

matter.

## CERTIFICATION: RULE 4:5-1

I certify that to the best of my knowledge that the matter in controversy is not the subject

of any other action pending in any court or the subject of a pending arbitration proceeding, nor is

any other action or arbitration proceeding contemplated except that Plaintiffs may bring a New

Car Lemon Law claim against Forest River, the manufacturer of the RV.

The Law Office of Aaron M. Harmaty
Attorneys for Plaintiffs and those similarly situated

Dated: February  2, 2026

_Aaron M. Harmaty_
Aaron M. Harmaty, Esq.

The Dann Law Firm, P.C.
Attorneys for Plaintiffs and those similarly situated

Dated: February 2, 2026

Andrew R. Wolf, Esq.

# EXHIBIT A

52

**IMPORTANT SAFETY RECALL INFORMATION**



**Issued in Accordance With Federal Law**



U.S. Department of Transportation



Corporate Compliance PO Box 30 Middlebury, In 46540

NHTSA RECALL: 25V486
FOREST RIVER ID: 51-1955

**INTERIM OWNER NOTIFICATION**

**A SECONDARY NOTICE WILL FOLLOW WHEN THE REMEDY IS AVAILABLE**

EUGENE ROBERT MCCLURE JR
328 TAYLOR LANE AVE
VINELAND NJ 08360-4343

August 2025

This Notice applies to your vehicle VIN listed above.

Dear Forest River Customer:

This notice is sent in accordance with the requirements of the United States' *National Traffic and Motor Vehicle Safety Act.* Forest River has decided that a defect, which relates to the motor vehicle safety, exists in certain 2025-2026 East to West Entrada, Forester, Sunseeker, Solera, Freelander, and Leprechaun Class C Motorhome Recreational Vehicles.

**WHAT IS THE DEFECT?**
The fuel line extension may have been inconsistent crimps at the barb fittings of its connectors which can cause the fittings to become loose and detach.

**EVALUATION OF RISK:**
If a fuel line detaches, this may allow fuel to openly spray. This condition may lead to fire and property damage.

**WHAT IS FOREST RIVER AND OUR DEALERSHIPS GOING TO DO?**
Parts are not currently available for this recall. We are working as quickly as possible to correct this condition. When parts are available, we will send you another letter asking you to take your vehicle to an authorized Forest River dealer for repair.

**WHAT IF YOU HAVE PREVIOUSLY PAID FOR REPAIRS TO YOUR VEHICLE FOR THIS PARTICULAR CONDITION?**
If you have already paid for a repair that is within the scope of this defect under recall, you still need to have this recall inspected and/or performed to ensure the correct parts and procedures were utilized. Additionally, you may be eligible for a refund of previously paid repairs. Refunds will only be provided for within the scope of this defect under recall. Please send the service invoice to the following address:

Forest River, Inc.
PO Box 30
Middlebury, IN 46540

**WHAT IF YOU NO LONGER OWN THIS VEHICLE?**
If you no longer own this vehicle and have the address for the current owner, please forward this letter to the new owner within 10 working days after the day in which the notice is received. You have received this letter because government regulations require that a notification is sent to the last known owner of record. Our records indicate that you are the current owner.
**PLEASE NOTE: FEDERAL LAW REQUIRES THAT ANY VEHICLE LESSOR RECEIVING THIS RECALL NOTICE MUST FORWARD A COPY OF THIS NOTICE TO THE LESSEE WITHIN TEN DAYS.**

**HELPFUL CONTACT INFORMATION**

| | | EMAIL |
|---|---|---|
| EAST TO WEST ENTRADA | (574) 264-6664 | |
| FORESTER, SOLERA, AND SUNSEEKER | (574) 206-7600 | motorizedservice@forestriverinc.com |
| LEPRECHAUN AND FREELANDER | (574) 825-8602 | |

Sincerely,
Forest River Inc.
Office of Corporate Compliance

574-825-5821

Page 1 of 1

# EXHIBIT B

Case 1:25-cv-03379-KMW-EAP   Document 1   Filed 08/30/25   Page 54 of 307 PageID: 190

## Buyer's Order

New Jersey

11252449

| Dealer/Seller Name and Address | Buyer Name, Address, Phone, Email | Buyer Name, Address, Phone, Email | Buyer Name, Address, Phone, Email |
|---|---|---|---|
| Dylans RV Center 2190 Delsea Dr. Sewell, NJ 08080 | EUGENE ROBERT MCCLURE JR 328 TAYLOR AVE VINELAND, NJ 08360 609-774-1485 | ANNA MAE MCCLURE 328 TAYLOR AVE VINELAND, NJ 08360 609-774-1485 | N/A |

| Date | Stock No. | Salesperson |
|---|---|---|
| 08/05/2025 | | Andrew Pandolfi |

| App. No. | Contract No. |
|---|---|
| | |

Definitions. Contract refers to this Buyer's Order. Buyer, you and your refer to each Buyer signing this Contract. Seller, we, us and our refer to the Dealer/Seller. Vehicle means the motor vehicle described in the Vehicle Information section. Trade-in Vehicle(s) refers to each vehicle described in the Trade-in Information section that is being traded to the Dealer/Seller as part of this transaction. Manufacturer refers to the entity that is the maker of the Vehicle.

Agreement to Purchase. You agree to buy the Vehicle from us for the amount stated in this Contract. You agree to sign any documents necessary to complete this transaction. You may only cancel this contract according to the conditions described in the Manufacturer or Trade-in sections. If you refuse to take delivery of the Vehicle, we can keep any deposits you have made to us. In addition, refusal to take delivery will make you responsible for our damages, expenses, and attorney's fees in connection to this Contract unless prohibited by the law of New Jersey. If you do not breach this Contract, any deposits will be used toward the purchase of the Vehicle.

### Vehicle Information

☒ New  ☐ Used  ☐ Demo  ☐ Other

| Year 2025 | Make LEPRECHAUN | Model 260DS FORD MC | Style ClassC | VIN |
|---|---|---|---|---|
| Lic. No. | Color OCEAN FBP | | | Odometer Reading 783 |
| Other N/A | | | | |

### Insurance Information

Buyer has arranged the following insurance on the motor vehicle:

Insurance Company _____

Policy No. _____ Phone _____

### Trade-In Information

| Trade-in 1 | | Trade-in 2 | |
|---|---|---|---|
| Year | Make | Year | Make |
| Model | Style | Model | Style |
| Lic. No. | Color | Lic. No. | Color |
| VIN | Odometer | VIN | Odometer |
| Lienholder Name | | Lienholder Name | |
| Address | Phone | Address | Phone |
| Trade-in Allowance $ | Payoff $ | Payoff good through | Trade-in Allowance $ | Payoff $ | Payoff good through |

### Trade-in Terms

Trade-in Vehicle. You will transfer title to the Trade-in Vehicle to us free of all liens except those noted on this Contract. You give permission to us to contact the lienholder(s) for payoff information. If the payoff information that we obtain from the lienholder(s) differs from the amount disclosed in this Contract, you agree to pay the difference to us if the actual amount of the balance owed is greater than the amount listed in this Contract. If the actual amount of the balance owed is less than the amount listed in this Contract, we will pay you the difference.

If you do not deliver the Trade-in Vehicle to us at the time of the initial appraisal, we may reappraise the Trade-in Vehicle when it is delivered to us. If the reappraised value is lower than the original appraisal, you can cancel this transaction as long as you have not taken delivery of the Vehicle.

You represent that (a) you are the sole true and lawful owner of the Trade-in Vehicle, (b) the Trade-in Vehicle has never been titled under any state or federal brand such as "defective," "rebuilt," "salvage," "flood," etc., (c) unless you have disclosed otherwise in an odometer statement, the mileage of the Trade-in Vehicle shown in this Contract is the actual mileage of the Trade-in Vehicle, (d) all emission control equipment is on the Trade-in Vehicle and is in satisfactory working order, and (e) the frame on the Trade-in Vehicle has not been damaged by collision or other event and repaired. If any of these representations are not true, we may elect to cancel the transaction. We may also choose to reappraise the Trade-in Vehicle and adjust the Total Balance Due instead of canceling the transaction. You agree to immediately pay us the difference.

Buyer's Order
©2024 The Reynolds and Reynolds Company
THERE ARE NO WARRANTIES, EXPRESS OR IMPLIED, OR OTHERWISE ON ANY PRODUCTS OR SERVICES, UNLESS EXPRESSLY STATED IN THIS DOCUMENT. WHETHER A PURCHASER OF THE FORM OR INDUCEMENTS WILL LEGAL COUNSEL.

11252449

## Itemization of Sale

| | | |
|---|---|---|
| 1. Vehicle Sales Price | $ | 130,895.00 |
| **Taxes** | | |
| 2. Sales Tax | $ | 9,862.90 |
| 3. Other Tax N/A | $ | 0.00 |
| 4. Subtotal (Add lines 1 through 3) | $ | 140,757.90 |
| **Title, License & Other Fees** | | |
| 5. Certificate of Title Fee | $ | 450.00 |
| 6. License and/or Registration Fee | $ | 0.00 |
| 7. Tire Fee | $ | 9.00 |
| 8. Luxury and Fuel Inefficient Vehicle Surcharge | $ | 0.00 |
| 9. N/A | $ | 0.00 |
| 10. N/A | $ | 0.00 |
| 11. N/A | $ | 0.00 |
| 12. N/A | $ | 0.00 |
| 13. N/A | $ | 0.00 |
| 14. Total Documentary Service Fees Paid to Seller* | $ | 0.00 |
| 15. Total Pre-Delivery Service Fees Paid to Seller | $ | 0.00 |
| 16. Total Other Fees (Add lines 5 through 15) | $ | 459.00 |
| **Additional Items** | | |
| 17. Vehicle Service Contract paid to Dealer Admin Services | $ | 11,995.00 |
| 18. GAP paid to Tire Shield | $ | 1,500.00 |
| 19. Paint Protection paid to Dealer Admin Services | $ | 2,995.00 |
| 20. Roadside Assistance paid to Vehicle Administrative Services | $ | 1,295.00 |
| 21. Tire & Wheel Protection paid to Dealer Admin Services | $ | 1,295.00 |
| 22. Documentation Fee paid to Seller | $ | 399.00 |
| 23. N/A | $ | 0.00 |
| 24. N/A | $ | 0.00 |
| 25. N/A | $ | 0.00 |
| 26. N/A | $ | 0.00 |
| 27. Total Additional Items (Add lines 17 through 26) | $ | 19,479.00 |
| 28. Cash Sale Price (Add lines 4+16+27) | $ | 160,695.90 |
| 29. Trade-in Allowance | $ | 0.00 |
| 30. Trade-in Payoff Balance | $ | 0.00 |
| 31. Net Trade Allowance (Line 29-30, if negative, enter $0 here and enter amount on line 40.) | $ | 0.00 |
| 32. Deposit | $ | 0.00 |
| 33. Cash Down Payment | $ | 15,000.00 |
| 34. Manufacturer's Rebate | $ | 0.00 |
| 35. Other Credit N/A | $ | 0.00 |
| 36. Other Credit N/A | $ | 0.00 |
| 37. Deferred Down Payment | $ | 0.00 |
| 38. Other Down Payment N/A | $ | 0.00 |
| 39. Total Credits (Add lines 31 through 38) | $ | 15,000.00 |
| 40. Trade-in Balance Owing (see line 31) | $ | 0.00 |
| 41. Lease Balance Owing | $ | 0.00 |
| 42. Total Balance Due (Line 28-39+40+41) | $ | 145,695.90 |

We may retain or receive a portion of any amounts paid to others.

* No governmental entity requires the automotive dealer perform any documentary service.

## Documentary Service and Pre-Delivery Service

**Documentary Service Fee.** You agree to pay Seller a Documentary Service Fee of $ 0.00 for Preparation and Processing:

| | | |
|---|---|---|
| i. of License, Registration and Title | $ | 0.00 |
| ii. of N/A | $ | 0.00 |
| iii. of N/A | $ | 0.00 |
| iv. of N/A | $ | 0.00 |

**Pre-Delivery Service Fee.** You agree to pay Seller a Pre-Delivery Service Fee of $ 0.00 for the following services:

| | | |
|---|---|---|
| i. of N/A | $ | 0.00 |
| ii. of N/A | $ | 0.00 |
| iii. of N/A | $ | 0.00 |
| iv. of N/A | $ | 0.00 |

A Documentary Service fee and Pre-Delivery Service fee are not official fees and are not required by law. "Documentary service" means, but is not limited to, the preparation and processing of documents in connection with the transfer of license plates, registration, or title, and the preparation and processing of other documents relating to the sale of a motor vehicle. Documentary Service Fees MUST BE ITEMIZED ABOVE such that the price of each prepared document is disclosed. "Pre-delivery service" means, but is not limited to, items that are often described or labeled as dealer preparation, vehicle preparation, pre-delivery handling and delivery, or any other service of similar import. Pre-Delivery Service Fees MUST BE ITEMIZED ABOVE and do not include any services for which the dealer receives compensation from any other party.

## Additional Terms

**Governing Law and Interpretation.** This Contract is governed by the law of New Jersey and applicable federal law and regulations.

If any section or provision of this Contract is not enforceable, the other terms will remain part of this contract. You authorize us to correct any clerical error or omissions in this Contract or in any related document.

**Manufacturer.** We are not an agent of the Manufacturer. The Manufacturer can change the price, design or standard features of the Vehicle at any time without notice. If we cannot obtain the Vehicle from the Manufacturer at the price in effect as of the date of this Contract, or if we cannot obtain the agreed upon product from the Manufacturer, you or we can cancel this Contract.

If you cancel this Contract under the terms of this section, we will refund to you any amounts you have paid to us. If you have delivered a Trade-in Vehicle to us, we will return it to you. If we have already sold the Trade-in Vehicle, we will pay you the amount we received for the sale after adjusting for any payoff we made to a lienholder and costs for repair and reconditioning, if any.

**Name and Location.** Your name and address indicated on page 1 are your exact legal name and your principal residence.

**Insurance.** You represent that the insurance information you have given us is accurate.

**Retail Installment Sales Contract.** In the event that you and we enter into a retail installment sales contract for the financing of the purchase of the Vehicle, the terms of the retail installment sales contract will control any inconsistencies between this Contract and the retail installment sales contract.

**Returned Payment Charge.** If you make any payment required by this Contract that is returned or dishonored, you agree to pay a fee of $20.00.

Buyers Order-NJ
©2024 The Reynolds and Reynolds Company
THERE ARE NO WARRANTIES, EXPRESS OR IMPLIED, AS TO CONTENT OR FITNESS FOR PURPOSE OF THIS FORM. CONSULT YOUR OWN LEGAL COUNSEL.

BUY-ORDER-NJ 6/1/2024
Bankers Systems®
Page 2 of 4

11252449

**Telephone Monitoring and Calling.** You agree that we may from time to time monitor and record telephone calls made or received by us or our agents regarding your account to assure the quality of our service. In order for us to service the account or to collect any amounts you may owe, and subject to applicable law, you agree that we may from time to time make calls and send text messages to you using prerecorded/artificial voice messages or through the use of an automatic dialing device at any telephone number you provide to us in connection with your account, including a mobile telephone number that could result in charges to you.

**Vehicle Condition.** You understand the Vehicle may have undergone prior mechanical or body repair. The damage, necessitating repair may have occurred during manufacture, transit or while in the possession of prior owner or operators.

## Vehicle Inspection

By initialing below, you represent that you have thoroughly inspected the Vehicle and approve and accept it. You had an opportunity to have the Vehicle inspected by a third party of your choice and at your expense. You are purchasing the Vehicle based on your inspection. You are not relying on any opinion, statement, or promise of the Seller or its employees that is not contained in the written agreements you are signing today.

Buyer's Initials

_____      _____      _____ N/A _____

## Warranty Information

☐ **Vehicle Manufacturer Warranty.** The Vehicle is subject to an express warranty made by the Manufacturer. It is a standard written manufacturer's warranty and made by the Manufacturer and not by the Seller. By signing this Contract, each Buyer acknowledges receiving a copy of it.

☐ **Dealer Warranty.** The Vehicle is subject to an express written warranty made by the Seller. By signing this Contract, each Buyer acknowledges receiving a copy of it.

The Seller is responsible to fulfill any separate written warranty made by Seller on its own behalf. If the Manufacturer or another supplier provides a warranty, they are responsible for satisfying its terms, NOT the Seller.

If neither box above is checked under Warranty Information the Used Vehicle is sold AS-IS and the following paragraph applies:

**THIS VEHICLE IS SOLD "AS-IS" WITH ALL FAULTS, WITHOUT ANY WARRANTY, EITHER EXPRESS OR IMPLIED AND BUYER IS SOLELY RESPONSIBLE FOR COST OF ANY REPAIRS TO THE VEHICLE. THE SELLER EXPRESSLY DISCLAIMS ALL WARRANTIES, EITHER EXPRESS OR IMPLIED, INCLUDING ANY IMPLIED WARRANTIES OF MERCHANTABILITY AND FITNESS FOR A PARTICULAR PURPOSE. BUYER ASSUMES ALL RISKS AND RESPONSIBILITIES.**

## Used Car Buyer Notice

If you are buying a used vehicle: The information you see on the window form for this vehicle is part of this contract. Information on the window form overrides any contrary provisions in the contract of sale.

(Spanish Translation) Si compra un vehículo usado: La información que ve adherida en la ventanilla forma parte de éste contrato. La información contenida en el formulario de la ventanilla prevalece por sobre toda otra disposición en contrario incluida en el contrato de compraventa.

## Notices

☐ **Trade-in Balance Due.** You understand that the balance owed on the Trade-in exceeds the Trade-in Allowance and that as a result the Total Balance Due has been increased by $ 0.00 _____ of negative equity.

☐ **Lease Balance Due.** You understand the Total Balance Due includes the amount of $ 0.00 _____ for a lease balance due from a prior transaction.

Buyer's Initials

_____      _____      _____ N/A _____

## Used Vehicle Sale Dealer/Seller's Obligation

**Explanation of Dealer/Seller Obligations.** The Dealer/Seller has the following obligations under N.J.S.A. 39:10-26 through 39:10-30:

No Dealer/Seller may sell a used passenger motor vehicle to be registered in New Jersey unless the Vehicle meets the standards for the issuance of a certificate of approval. If the used passenger motor vehicle has any defect that does not allow for the issuance of a certificate of approval, the Dealer/Seller shall make, or cause to be made, all necessary repairs without charge, or shall return the full purchase price to the Buyer; provided that such defect or defects are not the result of the Buyer's own act.

Buyer acknowledges they have been informed of Dealer/Seller's obligation above. Buyer agrees to present the used passenger motor vehicle for inspection within 14 days from the date of delivery of such vehicle.

Buyer EUGENE ROBERT MCCLURE JR

Buyer ANNA MAE MCCLURE

N/A
Buyer N/A

## Acknowledgement of New Jersey Registration

☐ The Vehicle is a used passenger motor vehicle and will be registered in New Jersey in the condition sold.

Buyers Order-NJ
©2024 The Reynolds and Reynolds Company
THERE ARE NO WARRANTIES, EXPRESS OR IMPLIED, AS TO CONTENT OR FITNESS FOR PURPOSE OF THIS FORM. CONSULT YOUR OWN LEGAL COUNSEL.

BUY-ORDER-NJ 8/1/2024
Bankam Systems®
Page 3 of 4

11252449

## Waiver of Used Vehicle Sale Dealer/Seller's Obligation

Buyer does not waive the Dealer/Seller Obligations unless signed below.

☐ **Buyer Waives the Dealer/Seller Obligations.** Buyer has read and understood the Dealer/Seller obligations under the New Jersey Motor Vehicle Certificate of Ownership Law. The Dealer/Seller has disclosed the below list of known defects. Buyer has reviewed the below list of known defects and acknowledges that the known defects may need to be resolved before a certificate of approval may be issued.

KNOWN DEFECTS: _____

_____

_____

Buyer WAIVES AND RELEASES the DEALER/SELLER OBLIGATIONS and accepts the motor vehicle with KNOWN DEFECTS.

N/A
Buyer N/A

N/A
Buyer N/A

N/A
Buyer N/A

## Signatures

This agreement is not binding upon the Dealer/Seller until it is signed by an authorized representative of the Dealer/Seller.

You represent that you are of legal age and have legal capacity to enter into this Contract.

☐ **A separate Arbitration Agreement between you and us is part of this Contract.**

You received a copy of this Contract and by signing below, you agree to the terms on all pages of this Contract and acknowledge you had a chance to read and review it before you signed it.

**Entire Agreement.** Your and our entire agreement is contained in this Contract. There are no unwritten agreements regarding this Contract.

Buyer EUGENE ROBERT MCCLURE JR          08/05/2025   Date

Buyer ANNA MAE MCCLURE          08/05/2025   Date

Buyer N/A          N/A   Date

Dealer/Seller Dylans RV Center          08/05/2025   Date

Buyers Order-NJ
©2024 The Reynolds and Reynolds Company
THERE ARE NO WARRANTIES, EXPRESS OR IMPLIED, AS TO CONTENT OR
FITNESS FOR PURPOSE OF THIS FORM. CONSULT YOUR OWN LEGAL COUNSEL.

# **EXHIBIT C**

NJ-102 11/1/2018

# Retail Installment Contract and Security Agreement

| Seller Name and Address | Buyer(s) Name(s) and Address(es) | Summary |
|---|---|---|
| Dylans RV Center | EUGENE ROBERT MCCLURE JR | No. _____ |
| 2190 Delsea Dr. | ANNA MAE MCCLURE | Date _____ 08/05/2025 |
| Sewell, NJ 08080 | 328 TAYLOR AVE | |
| | VINELAND, NJ 08360 | |

☐ Business, commercial or agricultural purpose Contract.

## 1. Sales Agreement

**1.1 Definitions.** "Contract" refers to the Retail Installment Contract and Security Agreement. The pronouns "you" and "your" refer to each buyer signing this Contract, and any guarantors, jointly and individually. The pronouns "we", "us" and "our" refer to the Seller and any entity to which it may transfer this Contract. "Vehicle" means each motor vehicle described in the Description of Property section. "Property" means the Vehicle and all other property described in the Description of Property and Additional Protections sections.

**1.2 Purchase of Property.** You agree to purchase the Property from Seller, subject to the terms and conditions of this Contract.

You have been given the opportunity to purchase the Property and described services for the Cash Price or the Total Sale Price. The "Total Sale Price" is the total price of the Property if you buy it over time.

**1.3 Payment.** You promise to pay us the principal amount of $145,695.90 _____ plus the time price differential accruing on the unpaid balance at the rate of ___7.99___ % per year from the date of this Contract until maturity. After maturity, or after you default and we demand payment, we will earn the time price differential on the unpaid balance at ___7.99___ % per year. You agree to pay this Contract according to the payment schedule and late charge provisions shown in the Truth-In-Lending Disclosure. You also agree to pay any additional amounts according to the terms and conditions of this Contract.

## 2. Truth-In-Lending Disclosure

| Annual Percentage Rate The cost of your credit as a yearly rate. | Finance Charge The dollar amount the credit will cost you. | Amount Financed The amount of credit provided to you or on your behalf. | Total of Payments The amount you will have paid when you have made all scheduled payments. | Total Sale Price The total cost of your purchase on credit, including your down payment of |
|---|---|---|---|---|
| 7.99 % | $ 146,564.10 | $ 145,695.90 | $ 292,260.00 | $ 15,000.00 $ 307,260.00 |

**Payment Schedule.** Your payment schedule is:

| No. of Payments | Amount of Payments | When Payments are Due |
|---|---|---|
| 240 | $ 1,217.75 | Monthly, beginning on 9/4/2025 |
| N/A | $ N/A | NOT APPLICABLE |
| N/A | $ N/A | NOT APPLICABLE |

**Security.** You are giving us a security interest in the Property purchased.

**Late Charge.** If a payment is more than 10 days late, you will be charged 5% of the unpaid amount of the payment due, except that if the Property is primarily for personal, family, or household use and the cash price is $10,000 or less, the charge for late payment will be $10.

**Prepayment.** If you pay off this Contract early, you will not have to pay a penalty.

**Contract Provisions.** You can see the terms of this Contract for any additional information about nonpayment, default, any required repayment before the scheduled date, and prepayment refunds and penalties.

## 3. Description of Property

| Year | Make | Model | Style | | Odometer Mileage |
|---|---|---|---|---|---|
| 2025 | LEPRECHAUN | 260DS FORD MC | Class C | | 753 |

Other:

☒ New
☐ Used
☐ Demo

Retail Installment Contract ... NJ-102 11/1/2018 ...

Eu  M

Customers Initial Here

## 4. Description of Trade-In

N/A

## 5. Conditional Delivery

☐ **Conditional Delivery.** If checked, you agree that the following agreement regarding securing financing (*"Agreement"*) applies:

N/A

The Agreement is part of this Contract. The Agreement will no longer control after the assignment is accepted. If there are any conflicts between the terms of the Agreement and the Contract, the terms of this Contract will apply.

## 6. Itemization of Amount Financed

| | | | |
|---|---|---|---|
| a. | **Vehicle Sales Price** | $ | 130,895.00 |
| b. | Sales Tax (reduced as required due to value of like trade-in) | $ | 9,862.90 |
| c. | Other Tax N/A | $ | 0.00 |
| d. | Other Tax N/A | $ | 0.00 |
| e. | Other Tax N/A | $ | 0.00 |
| f. | Cash Price (a+b+c+d+e) | $ | 140,757.90 |
| g. | Trade-In allowance | $ | 0.00 |
| h. | Less: Amount owing, paid to (includes o). N/A | $ | 0.00 |
| i. | Net Trade-In (g-h; If negative, enter $0 here and enter the amount on line o) | $ | 0.00 |
| j. | Cash payment | $ | 15,000.00 |
| k. | Manufacturer's rebate | $ | 0.00 |
| l. | Other down payment (describe) N/A | $ | 0.00 |
| m. | **Down Payment (i+j+k+l)** | $ | 15,000.00 |
| n. | **Unpaid Cash Balance (f-m)** | $ | 125,757.90 |
| o. | Financed trade-in balance (see i) | $ | 0.00 |
| p. | Paid to Public Officials – Certificate of Title Fee | $ | 450.00 |
| q. | Paid to Public Officials – Tire Fee | $ | 9.00 |
| r. | Paid to Public Officials – Supplemental Title Fee | $ | 0.00 |
| s. | Paid to Public Officials – License and/or Registration Fee | $ | 0.00 |
| t. | Paid to Public Officials N/A | $ | 0.00 |
| u. | Paid to Public Officials N/A | $ | 0.00 |
| v. | Insurance premiums paid to Insurance company(ies) | $ | 0.00 |
| w. | Documentary Service Fee Paid to Seller for Preparation and Processing: | | |
| | 1. of License, Registration and Title | $ | 0.00 |
| | 2. of N/A | $ | 0.00 |
| | 3. of N/A | $ | 0.00 |
| | 4. of N/A | $ | 0.00 |
| x. | Pre-Delivery Service Fee Paid to Seller: | | |
| | 1. for Pre-Delivery Handling and Delivery Service Fee | $ | 0.00 |
| | 2. for N/A | $ | 0.00 |
| | 3. for N/A | $ | 0.00 |
| | 4. for N/A | $ | 0.00 |
| y. | Service Contract, paid to: Dealer Admin Services | $ | 11,995.00 |

| | | | |
|---|---|---|---|
| z. | To: GAP paid to Tire Shield | $ | 1,500.00 |
| aa. | To: Paint Protection paid to Dealer Admin Services | $ | 2,995.00 |
| bb. | To: Roadside Assistance paid to Vehicle Administrative Services | $ | 1,295.00 |
| cc. | To: Tire & Wheel Protection paid to Dealer Admin Services | $ | 1,295.00 |
| dd. | To: Documentation Fee paid to Seller | $ | 399.00 |
| ee. | To: N/A | $ | 0.00 |
| ff. | To: N/A | $ | 0.00 |
| gg. | To: N/A | $ | 0.00 |
| hh. | To: N/A | $ | 0.00 |
| ii. | To: N/A | $ | 0.00 |
| jj. | **Total Other Charges/Amts Paid (o thru ii)** | $ | 19,938.00 |
| kk. | **Principal Balance (n+jj)** | $ | 145,695.90 |
| ll. | **Time Price Differential** | $ | 146,564.10 |
| mm. | **Time Balance (kk+ll)** | $ | 292,260.00 |
| nn. | **Prepaid Finance Charge** | $ | 0.00 |
| oo. | **Amount Financed (n+jj-nn)** | $ | 145,695.90 |
| pp. | **Time Sales Price (m+mm)** | $ | 307,260.00 |

We may retain or receive a portion of any amounts paid to others.

## 7. Insurance Disclosures

**7.1 Credit Insurance.** Credit life insurance pays all or part of the amount you owe under this Contract if you die. This insurance pays only the amount you would owe if you paid all your payments on time. Credit disability pays all or part of the payments due under this Contract while you are disabled. This insurance does not cover any increase in your payment or in the number of payments. See the policies or certificates from the named Insurance companies for the details of the coverage these types of insurance provide, and for other terms and conditions. Credit life and credit disability (accident and health) are not required to obtain credit and are not a factor in the credit decision. We will not provide them unless you sign and agree to pay the additional premium. If you want such insurance, we will obtain it for you (if you qualify for coverage). We are quoting below **only** the coverages you have chosen to purchase.

**Credit Life**

☐ Single ☐ Joint ☒ None
Premium $ 0.00    Term N/A
Insured N/A

**Credit Disability**

☐ Single ☐ Joint ☒ None
Premium $ 0.00    Term N/A
Insured N/A

Your signature below means you want (only) the insurance coverage(s) quoted above. If "None" is checked, you have declined the coverage we offered.

*[signature]*                                11/25/1959
By: EUGENE ROBERT MCCLURE JR           DOB

*[signature]*                                11/12/1959
By: ANNA MAE MCCLURE                   DOB

                                         N/A
By: N/A                                  DOB

Retail Installment Contract-NJ  Not for use in transactions secured by a dwelling.
©2018 The Reynolds and Reynolds Company
THERE ARE NO WARRANTIES, EXPRESS OR IMPLIED, AS TO CONTENT OR FITNESS FOR PURPOSE OF THIS FORM. CONSULT YOUR OWN LEGAL COUNSEL.

RSSIMVLFLZNJ 11/1/2018
Bankers Systems®
Page 2 of 7

Customers Initial Here

**7.2 Property Insurance.** You must insure the Property. You may purchase or provide the insurance through any insurance company reasonably acceptable to us. The collision coverage deductible may not exceed $ $500_____ . If you get insurance from or through us you will pay $ 0.00_____ for N/A_____ of coverage.

This premium is calculated as follows:

☐ $ 0.00_____ Deductible, Collision Cov.  $ 0.00_____
☐ $ 0.00_____ Deductible, Comp. Cov.  $ 0.00_____
☐ Fire-Theft and Combined Additional Cov.  $ 0.00_____
☐ N/A_____  $ 0.00_____

**THIS DOES NOT INCLUDE INSURANCE ON YOUR LIABILITY FOR BODILY INJURY OR PROPERTY DAMAGE. WITHOUT SUCH INSURANCE, YOU MAY NOT OPERATE THIS VEHICLE ON PUBLIC HIGHWAYS.**

**7.3 ☐ Single-Interest Insurance.** You must purchase single-interest insurance as part of this sale transaction. You may purchase the coverage from a company of your choice, reasonably acceptable to us. If you buy the coverage from or through us, you will pay $ ____N/A____ for ____N/A____ of coverage.

## 8. Additional Protections

**You may buy any of the following voluntary protection plans. They are not required to obtain credit, are not a factor in the credit decision, and are not a factor in the terms of the credit or the related sale of the Vehicle. The voluntary protections will not be provided unless you sign and agree to pay the additional cost.**

Your signature below means that you want the described item and that you have received and reviewed a copy of the contract(s) for the product(s). If no coverage or charge is given for an item, you have declined any such coverage we offered.

☒ **Service Contract**
| | |
|---|---|
| Term | 60 months |
| Price | $ 11,995.00 |
| Coverage | Parts & Labor Protection |

☒ **Gap Waiver or Gap Coverage**
| | |
|---|---|
| Term | 72 months |
| Price | $ 1,500.00 |
| Coverage | G.A.P. Protection |

☒ **Paint Protection**
| | |
|---|---|
| Term | 60 months |
| Price | $ 2,995.00 |
| Coverage | Appearance Protection |

By: EUGENE ROBERT MCCLURE JR        08/05/2025  Date

By: ANNA MAE MCCLURE        08/05/2025  Date

By: N/A        N/A  Date

## 9. Additional Terms of the Sales Agreement

**9.1 General Terms.** The Total Sale Price shown in the *Truth-In-Lending Disclosure* assumes that all payments will be made as scheduled. The actual amount you will pay will be more if you pay late and less if you pay early.

We do not intend to charge or collect, and you do not agree to pay, any time price differential or fee that is more than the maximum amount permitted for this sale by state or federal law. If you pay a time price differential or fee that exceeds that maximum amount, we will first apply the excess amount to reduce the principal balance and, when the principal has been paid in full, refund any remaining amount to you.

You understand and agree that some payments to third parties as a part of this Contract may involve money retained by us or paid back to us as commissions or other remuneration.

You agree that the Property will not be used as a dwelling.

**9.2 Prepayment.** You may prepay this Contract in full or in part at any time without penalty. Any partial prepayment will not excuse any later scheduled payments. If we get a refund of any unearned insurance premiums that you paid, you agree that we may subtract the refund from the amount you owe, unless otherwise provided by law.

**9.3 Returned Payment Charge.** If you make any payment required by this Contract that is returned uncollected due to insufficient funds in your account, you agree to pay a fee of $20. If the Property is primarily for personal, family, or household use and the cash price is $10,000 or less, then the $20 fee applies only to payments made by check.

**9.4 Governing Law and Interpretation.** This Contract is governed by the law of New Jersey and applicable federal law and regulations.

If any section or provision of this Contract is not enforceable, the other terms will remain part of this Contract. You authorize us to correct any clerical error or omissions in this Contract or in any related document.

**9.5 Name and Location.** Your name and address set forth in this Contract are your exact legal name and your principal residence. You will provide us with at least 30 days notice before you change your name or principal residence.

**9.6 Telephone Monitoring and Calling.** You agree that we may from time to time monitor and record telephone calls made or received by us or our agents regarding your account to assure the quality of our service. In order for us to service the account or to collect any amounts you may owe, and subject to applicable law, you agree that we may from time to time make calls and send text messages to you using prerecorded/artificial voice messages or through the use of an automatic dialing device at any telephone number you provide to us in connection with your account, including a mobile telephone number that could result in charges to you.

**9.7 Default.** You will be in default on this Contract (except as prohibited by law) if you fail to perform any obligation that you have undertaken in this Contract.

If the Property is primarily for personal, family, or household use, and the cash price is $10,000 or less, if you default you agree to pay attorneys' fees of 20% of the first $500 and 10% on any excess of the amount due and payable under this Contract, if referred for collection to an attorney not a salaried employee of ours. For other transactions, if we hire an attorney who is not a salaried employee to collect what you owe, you will pay the attorney's reasonable fee and court costs the law permits.

If an event of default occurs as to any of you, we may exercise our remedies against any or all of you.

Retail Installment Contract-NJ  Not for use in transactions secured by a dwelling.
©2018 The Reynolds and Reynolds Company
THERE ARE NO WARRANTIES, EXPRESS OR IMPLIED, AS TO CONTENT OR FITNESS FOR PURPOSE OF THIS FORM, CONSULT YOUR OWN LEGAL COUNSEL.

RSSIMVLFLZNJ 11/1/2018
Bankers Systems®
Page 3 of 7
Customers Initial Here

**9.8 Remedies.** If you are in default on this Contract, we have all of the remedies provided by law and this Contract. Those remedies include:

♦ We may require you to immediately pay us, subject to any refund required by law, the remaining unpaid balance of the amount financed, time price differential and all other agreed charges.

♦ We may pay taxes, assessments, or other liens or make repairs to the Property if you have not done so. We are not required to do so. You will repay us that amount immediately. That amount will earn the time price differential from the date we pay it at the contract rate described in the *Payment* section until paid in full.

♦ We may require you to make the Property available to us at a place we designate that is reasonably convenient to you and us.

♦ We may immediately take possession of the Property by legal process or self-help, but in doing so we may not breach the peace or unlawfully enter onto your premises.

♦ We may then sell the Property and apply what we receive as provided by law to our reasonable expenses and then toward what you owe us.

♦ We may, as allowed by law, sue you for additional amounts if the proceeds of a sale do not pay all of the amounts you owe us.

By choosing any one or more of these remedies, we do not give up our right to later use another remedy. By deciding not to use any remedy, we do not give up our right to consider the event a default if it happens again.

You agree that if any notice is required to be given to you of an intended sale or transfer of the Property, notice is reasonable if mailed to your last known address, as reflected in our records, at least 10 days before the date of the intended sale or transfer (or such other period of time as is required by law).

You agree that we may take possession of personal property left in or on the Property securing this Contract and taken into possession as provided above. You may have a right to recover that property.

If the Property has an electronic tracking device, you agree that we may use the device to find the vehicle.

**9.9 Obligations Independent.** Each person who signs this Contract agrees to pay this Contract according to its terms. This means the following:

♦ You must pay this Contract even if someone else has also signed it.

♦ We may release any co-buyer or guarantor and you will still be obligated to pay this Contract.

♦ We may release any security and you will still be obligated to pay this Contract.

♦ If we give up any of our rights, it will not affect your duty to pay this Contract.

♦ If we extend new credit or renew this Contract, it will not affect your duty to pay this Contract.

**9.10 Warranty.** Warranty information is provided to you separately.

## 10. Security Agreement

**10.1 Security.** To secure your payment and performance under the terms of this Contract, you give us a security interest in the Vehicle, all accessions, attachments, accessories, and equipment placed in or on the Vehicle and in all other Property. You also assign to us and give us a security interest in proceeds and premium refunds of any insurance and service contracts purchased with this Contract.

**10.2 Duties Toward Property.** By giving us a security interest in the Property, you represent and agree to the following:

♦ You will defend our interests in the Property against claims made by anyone else. You will keep our claim to the Property ahead of the claim of anyone else. You will not do anything to change our interest in the Property.

♦ You will keep the Property in your possession and in good condition and repair. You will use the Property for its intended and lawful purposes.

♦ You agree not to remove the Property from the United States or Canada without our prior written consent.

♦ You will not attempt to sell the Property, transfer any rights in the Property, or grant another lien on the Property without our prior written consent.

♦ You will pay all taxes and assessments on the Property as they become due.

♦ You will notify us with reasonable promptness of any loss or damage to the Property.

♦ You will provide us reasonable access to the Property for the purpose of inspection. Our entry and inspection must be accomplished lawfully, and without breaching the peace.

**10.3 Agreement to Provide Insurance.** You agree to provide property insurance on the Property protecting against loss and physical damage and subject to a maximum deductible amount indicated in the *Insurance Disclosures* section, or as we will otherwise require. You will name us as loss payee on any such policy. Generally, the loss payee is the one to be paid the policy benefits in case of loss or damage to the Property. In the event of loss or damage to the Property, we may require additional security or assurances of payment before we allow insurance proceeds to be used to repair or replace the Property. You agree that if the insurance proceeds do not cover the amounts you still owe us, you will pay the difference. You will keep the insurance in full force and effect until this Contract is paid in full.

If you fail to obtain or maintain this insurance, or name us as loss payee, we may obtain insurance to protect our interest in the Property. This insurance may be written by a company other than one you would choose. It may be written at a rate higher than a rate you could obtain if you purchased the property insurance required by this Contract. We will add the premium for this insurance to the amount you owe us. This amount will earn the time price differential from the date paid at the contract rate described in the *Payment* section until paid in full.

**10.4 Gap Waiver or Gap Coverage.** In the event of theft or damage to the Vehicle that results in a total loss, there may be a gap between the amount due under the terms of the Contract and the proceeds of your insurance settlement and deductibles. You are liable for this difference. You have the option of purchasing Gap Waiver or Gap Coverage to cover the gap liability, subject to any conditions and exclusions in the Gap Waiver or Gap Coverage agreements.

Retail Installment Contract-NJ  Not for use in transactions secured by a dwelling.
©2016 The Reynolds and Reynolds Company
THERE ARE NO WARRANTIES, EXPRESS OR IMPLIED, AS TO CONTENT OR FITNESS FOR PURPOSE OF THIS FORM. CONSULT YOUR OWN LEGAL COUNSEL.

RESIMVI.FLZNJ 11/1/2016
Bankers Systems®
Page 4 of 7

Customers Initial Here

## 11. Notices

**11.1 Note.** If the primary use of the Vehicle is non-consumer, this is not a consumer contract, and the following notice does not apply. NOTICE. ANY HOLDER OF THIS CONSUMER CREDIT CONTRACT IS SUBJECT TO ALL CLAIMS AND DEFENSES WHICH THE DEBTOR COULD ASSERT AGAINST THE SELLER OF GOODS OR SERVICES OBTAINED PURSUANT HERETO OR WITH THE PROCEEDS HEREOF. RECOVERY HEREUNDER BY THE DEBTOR SHALL NOT EXCEED AMOUNTS PAID BY THE DEBTOR HEREUNDER.

**11.2 Documentary Service and Pre-Delivery Service.** A Documentary Service fee and Pre-Delivery Service fee are not official fees and are not required by law. "Documentary service" means, but is not limited to, the preparation and processing of documents in connection with the transfer of license plates, registration, or title, and the preparation and processing of other documents relating to the sale of a motor vehicle. Documentary Service Fees MUST BE ITEMIZED ABOVE such that the price of each prepared document is disclosed. "Pre-delivery service" means, but is not limited to, items that are often described or labeled as dealer preparation, vehicle preparation, pre-delivery handling and delivery, or any other service of similar import. Pre-Delivery Service Fees MUST BE ITEMIZED ABOVE and do not include any services for which the dealer receives compensation from any other party.

**11.3 Used Car Buyer Notice. If you are buying a used vehicle: The information you see on the window form for this vehicle is part of this contract. Information on the window form overrides any contrary provisions in the contract of sale.**

**Spanish Translation. Si compra un vehículo usado: La información que ve adherida en la ventanilla forma parte de éste contrato. La información contenida en el formulario de la ventanilla prevalece por sobre toda otra disposición en contrario incluida en el contrato de compraventa.**

*[This area intentionally left blank.]*

## 12. Third Party Agreement

(This section applies ONLY to a person who will have an ownership interest in the Property but is NOT a Buyer obligated to pay this Contract ("Third Party Owner").)

In this section only, *"you"* means only the person signing this section.

By signing below you agree to give us a security interest in the Property described in the *Description of Property* section. You also agree to the terms of this Contract except that you will not be liable for the payments it requires. Your interest in the Property may be used to satisfy the Buyer's obligation. You agree that we may renew, extend or change this Contract, or release any party or Property without releasing you from this Contract. We may take these steps without notice or demand upon you.

**You acknowledge receipt of a completed copy of this Contract.**

NOT APPLICABLE

|  | N/A |
|---|---|

By: NOT APPLICABLE                                          **Date**
   Signature of Third Party Owner (NOT the Buyer)

*[This area intentionally left blank.]*

Retail Installment Contract-NJ  Not for use in transactions secured by a dwelling.
©2016 The Reynolds and Reynolds Company
THERE ARE NO WARRANTIES, EXPRESS OR IMPLIED, AS TO CONTENT OR FITNESS FOR PURPOSE OF THIS FORM. CONSULT YOUR OWN LEGAL COUNSEL.

RSSIMVLFLZNJ 11/1/2018
Bankers Systems®
Page 6 of 7

Customers Initial Here

**13. ☐ Electronic Signature Acknowledgment.** You agree that (i) you viewed and read this entire Contract before signing it, (ii) you signed this Contract with one or more electronic signatures, (iii) you intend to enter into this Contract and your electronic signature has the same effect as your written ink signature, (iv) you received a paper copy of this Contract after it was signed, and (v) the authoritative copy of this Contract shall reside in a document management system held by Seller in the ordinary course of business. You understand that Seller may transfer this Contract to another company in the electronic form or as a paper version of that electronic form which would then become the authoritative copy. Seller or that other company may enforce this Contract in the electronic form or as a paper version of that electronic form. You may enforce the paper version of the Contract copy that you received.

## 14. Used Vehicle Sale Dealer/Seller's Obligation

**Explanation of Dealer/Seller Obligations.** The Dealer/Seller has the following obligations under N.J.S.A. 39:10-26 through 39:10-30:

No Dealer/Seller may sell a used passenger motor vehicle to be registered in New Jersey unless the Vehicle meets the standards for the issuance of a certificate of approval. If the used passenger motor vehicle has any defect that does not allow for the issuance of a certificate of approval, the Dealer/Seller shall make, or cause to be made, all necessary repairs without charge, or shall return the full purchase price to the Buyer; provided that such defect or defects are not the result of the Buyer's own act.

Buyer acknowledges they have been informed of Dealer/Seller's obligation above. Buyer agrees to present the used passenger motor vehicle for inspection within 14 days from the date of delivery of such vehicle.

_____ N/A
Buyer                           Date

_____ N/A
Buyer                           Date

_____ N/A
Buyer                           Date

## 15. Acknowledgment of New Jersey Registration

☐ The Vehicle is a used passenger motor vehicle and will be registered in New Jersey in the condition sold.

_[This area intentionally left blank.]_

## 16. Waiver of Used Vehicle Sale Dealer/Seller's Obligation

Buyer does not waive the Dealer/Seller Obligations unless signed below.

☐ **Buyer Waives the Dealer/Seller Obligations.** Buyer has read and understood the Dealer/Seller obligations under the New Jersey Motor Vehicle Certificate of Ownership Law. The Dealer/Seller has disclosed the below list of known defects. Buyer has reviewed the below list of known defects and acknowledges that the known defects may need to be resolved before a certificate of approval may be issued.

KNOWN DEFECTS: N/A

_____

Buyer WAIVES AND RELEASES the DEALER/SELLER OBLIGATIONS and accepts the motor vehicle with KNOWN DEFECTS.

_____ N/A
Buyer                           Date

_____ N/A
Buyer                           Date

_____ N/A
Buyer                           Date

## 17. Contract Index

| Issue | Section |
|---|---|
| Acknowledgment of New Jersey Registration | 15 |
| Additional Protections | 8 |
| Additional Terms of the Sales | 9 |
| Agreement to Provide Insurance | 10.3 |
| Assignment | 20 |
| Conditional Delivery | 5 |
| Credit Insurance | 7.1 |
| Default | 9.7 |
| Definitions | 1.1 |
| Description of Property | 3 |
| Description of Trade-In | 4 |
| Documentary Service and Pre-Delivery Service | 11.2 |
| Duties Toward Property | 10.2 |
| Electronic Signature Acknowledgment | 13 |
| Gap Waiver or Gap Coverage | 10.4 |
| General Terms | 9.1 |
| Governing Law and Interpretation | 9.4 |
| Insurance Disclosures | 7 |
| Index | 17 |
| Itemization of Amount Financed | 6 |
| Name and Location | 9.5 |
| Notices | 11 |
| Obligations Independent | 9.9 |
| Payment | 1.3 |
| Prepayment | 9.2 |
| Preservation of Consumers' Claims & Defenses | 11.1 |
| Property Insurance | 7.2 |

Retail Installment Contract-NJ  Not for use in transactions secured by a dwelling.
©2016 The Reynolds and Reynolds Company
THERE ARE NO WARRANTIES, EXPRESS OR IMPLIED, AS TO CONTENT OR FITNESS FOR PURPOSE OF THIS FORM. CONSULT YOUR OWN LEGAL COUNSEL.

RSSIMVLFLZNJ 11/1/2018
Bankers Systems®
Page 6 of 7
Customers Initial Here

## 17. Contract Index Continued

| | |
|---|---|
| Purchase of Property | 1.2 |
| Remedies | 9.8 |
| Returned Payment Charge | 9.3 |
| Sales Agreement | 1 |
| Security | 10.1 |
| Security Agreement | 10 |
| Signature Notices | 18 |
| Signatures | 19 |
| Single-Interest Insurance | 7.3 |
| Telephone Monitoring and Calling | 9.6 |
| Third Party Agreement | 12 |
| Truth-In-Lending Disclosure | 2 |
| Used Car Buyer Notice | 11.3 |
| Used Vehicle Sale Dealer/Seller's Obligation | 14 |
| Waiver of Used Vehicle Sale Dealer/Seller's Obligation | 16 |
| Warranty | 9.10 |

## 18. Signature Notices

**The Annual Percentage Rate may be negotiable with the Seller. The Seller may assign this Contract and retain its right to receive a part of the Finance Charge.**

## 19. Signatures

**Entire Agreement.** Your and our entire agreement is contained in this Contract. There are no unwritten agreements regarding this Contract. Any change to this Contract must be in writing and signed by you and by us.

By: EUGENE ROBERT MCCLURE JR        Date  08/05/2025

By: ANNA MAE MCCLURE        Date  08/05/2025

By: N/A        Date  N/A

## NOTICE TO RETAIL BUYER

Do not sign this Contract in blank.

You are entitled to a copy of the Contract at the time you sign.

Keep it to protect your legal rights.

By signing below, you agree to the terms of this Contract. You received a copy of this Contract and had a chance to read and review it before you signed it.

**Buyer**

By: EUGENE ROBERT MCCLURE JR        Date  08/05/2025

By: ANNA MAE MCCLURE        Date  08/05/2025

By: N/A        Date  N/A

**Seller**

By: Dylans RV Center        Date  08/05/2025

**20. Assignment.** This Contract and Security Agreement is assigned to M & T Bank
PO Box 37258, Baltimore, MD 21297
the Assignee, phone 877-686-8424 . This assignment is made under the terms of a separate agreement made between the Seller and Assignee.

☐ This Assignment is made with recourse.

**Seller**

By: Dylans RV Center        Date  08/05/2025

Retail Installment Contract-NJ  Not for use in transactions secured by a dwelling.
©2016 The Reynolds and Reynolds Company
THERE ARE NO WARRANTIES, EXPRESS OR IMPLIED, AS TO CONTENT OR FITNESS FOR PURPOSE OF THIS FORM. CONSULT YOUR OWN LEGAL COUNSEL.

RSSIMVLFLZNJ 11/1/2016
Bankers Systems®
Page 7 of 7
Customers Initial Here

# EXHIBIT D



**campers inn RV**

2190 DELSEA DRIVE
SEWELL, NJ 08080
Phone: (844) 656-9461
Fax: () -
ANDREW PANDOLFI

This quote is prepared exclusively for:

GENE MCCLURE
328 TAYLOR AVE

QUOTE# -486833          8/5/2025
STOCK# 105686
CUSTOMER# 4671011
UNIT VIN#

## 2025 LEPRECHAUN 260DS FORD MC          List $171,291.00

### Trade Information:

### Itemization

| | |
|---|---|
| Finance Incentive $5,000 | Included |
| Camp Ready Prep Package | 1695.00 |
| Destination | 1225.00 |

*$1,217.75*

*$10,000*          $2,920.00

| | |
|---|---|
| Vehicle Price | $171,291.00 |
| Retail Discount | $43,316.00 |
| Sale Price | $127,975.00 |
| Trade Allowance | N/A |
| Trade Difference | $127,975.00 |
| Estimated Fees | $858.00 |
| Estimated Sales Tax | $8,698.23 |
| Itemization Total | $2,920.00 |
| Estimated Total Before Cash Down | $140,451.23 |

### Estimated Payment Options

| Cash Down | Months | Payment Range | Intials |
|---|---|---|---|
| $15,000.00 | 240 | $1,048.54 – $1,127.91 | _____ |
| $20,000.00 | 240 | $1,006.75 – $1,082.96 | _____ |
| $25,000.00 | 240 | $964.96 – $1,038.00 | _____ |

*Estimated A.P.R. Only.

Disclaimer: Payments are based on an APR of 7.99% – 8.99%. The information provided is general information and should not be considered final or legally binding. Estimated taxes and fees are just that, estimates, and can or will vary depending on the final determination of price and trade in vehicle value as well as extras. This quote is valid for the named recipient only and is only valid through today.

Signature: _____

Signature: _____

# EXHIBIT B

THE LAW OFFICE OF AARON HARMATY, LLC.
Aaron M. Harmaty, Esq., # 301832019
21 Van Doren Ave.
Chatham, NJ 07928
973-309-5492
aharmatylaw@gmail.com
Counsel for Plaintiffs,
Gene and Anna Mae McClure

| | |
|---|---|
| EUGENE MCCLURE AND ANNA MAE MCCLURE<br><br>Plaintiffs,<br><br>v.<br><br>DYLANS RV CENTER, JACOB HELMS, ANDY, ABC DEALER BOND COMPANY, M&T BANK, ABC CORP, and JANE AND JOHN DOES 1-10.<br><br>Defendants. | SUPERIOR COURT OF NEW JERSEY LAW DIVISION: CUMBERLAND COUNTY<br><br>Docket No. CMB-L-<br><br>Civil Action<br><br>**COMPLAINT AND JURY DEMAND** |

WHEREFORE, Plaintiffs, Eugene and Anna Mae McClure, by their attorney, Aaron M. Harmaty, Esq., for actions against defendants, Dylan's RV Center, Andy, M&T Bank, ABC Dealer Bond Company, ABC Corps, and Jane and John Does 1-10, inclusive, and each of them; and Plaintiffs complaints and alleges as follows:

## **JURISDICTION AND VENUE**

1.      This court has jurisdiction pursuant to the New Jersey Code of Civil Procedure.

2.      Venue is proper in this Court because the McClures reside in Cumberland county.

## PRELIMINARY STATEMENT

1.     At all times hereinafter mentioned, the Plaintiffs, Eugene McClure and Anna Mae McClure (hereinafter referred to as "McClures"), are, and at all times mentioned, two elderly individuals tortiously injured by the Defendants and each of them.

2.     Defendant, Dylans RV Center, (hereinafter referred to as "Dylans"), is the entity from which the McClures bought the 2025 260DS Ford MC Leprechaun at issue in this litigation, is based on information and belief licensed to do business in the State of New Jersey, and at all times mentioned herein, was doing business at 2190 Delsea Dr., Sewell, NJ 08080.

3.     Defendant, Jacob Helms, (hereinafter referred to as "Mr. Helms"), is a sales manager and business manager for Dylans, and operated at all relevant times at 2190 Delsea Dr., Sewell, NJ 08080.

4.     Defendant, Andy Pandolfi (hereinafter referred to as "Andy"), is a sales representative and agent for Dylans, and operated at all relevant times at 2190 Delsea Dr., Sewell, NJ 08080.

5.     The above defendants, when referred to collectively, shall be the "Dylans defendants."

6.     Defendant, M&T Bank (hereinafter referred to as "M&T"), is the finance company which provided the loan which contributes to the damages for this matter, with an address of PO Box 37258, Baltimore, Maryland 37258.

7.     Plaintiffs are informed and believe and thereon allege that, at various times herein mentioned, each of the Defendants was the agent, servant, representative or employee of each of the remaining Defendants and, in engaging in certain acts hereinafter alleged, was acting within

the course and scope of said agency, service, representation, or employment and materially assisted the other Defendants.

8.      The McClures are ignorant of the true names and capacities, whether individual, corporate, associate or otherwise, of defendants sued herein as ABC Corp 1 through 10 and Jane and John Does 1 through 10, and therefore sues said defendants by such fictitious names.

9.      The McClures are informed and believe, and upon such information and belief, allege that each of the Defendants designated herein as an ABC and a Doe is legally responsible in some manner for the events and happenings referred to herein and caused the damages proximately thereby the McClures have hereinafter alleged.

10.      The McClures will seek leave of court to amend this Complaint to show the true names and capacities of the defendants designated herein as ABC and Does when the same have been ascertained.

## STATEMENT OF FACTS

11.      On information and belief, on or before August 5, 2025, Dylans and the Dylans defendants, and their agents received a recall notice from Forest River, the manufacturer of the 2025 260DS Ford MC Leprechaun line of vehicles.

12.       According to the notice, "[t]he fuel line extension may have been inconsistent crimps at the barb fittings of its connectors which can cause the fittings to become loose and detach."

13.      According to that same notice, "[i]f a fuel line detaches, this may allow fuel to openly spray. This condition may lead to fire and property damage."

14.      According to that notice, "[p]arts are not currently available for this recall."

15.     That same notice also provides that "if you have already paid for a repair that is within the scope of this defect under recall, you still need to have this recall inspected and/or performed to ensure the correct parts and procedures were utilized."

16.     On August 5, 2025, the McClures went to Dylans' location to look at an RV, as the McClures enjoyed camping in a camper, but wanted a more compact vehicle.

17.     They had no intention of purchasing a vehicle when they entered the property.

18.     The McClures were approached by a salesman called Andy.

19.     The salesman directed the McClures to look at a certain line of vehicles, of which the 2025 260DS Ford MC Leprechaun was a part.

20.     That vehicle, which was the one eventually bought which gives rise to this cause of action, was the last one shown.

21.     Andy said the vehicle was top of the line; that it was new, better built, and better than earlier models.

22.     At no point did Andy reference the fuel line issue in the recall notice.

23.     Mr. McClure stated that he wanted to "sleep on it" with regards to making a decision, but based on Andy's representations, the McClures went to speak to Dylans' business manager, Mr. Helms.

24.     Mr. Helms, convinced Mr. McClure to purchase gap insurance, and warranty insurance.

25.     Included in that was a visa payment of $5,000 and a check for $10,000.

26.     All told, including financing for M&T, the final purchase price was $307,260.00.

27.     The loan term was for 240 months.

28.     Mr. McClure expressed concern at the price and duration of the loan, and likened it to purchasing a house.

29.     Mr. Helms stated that if the costs became too much, or the McClures got tired of the purchase, they could just return the vehicle, or "leave it on the side of the road," and M&T would pick up the vehicle, and M&T would not come after the McClures, that the loan "won't affect family, kids; they won't have to pay."

30.     Mr. McClure asked if it was true that M&T would not pursue money against the McClures or their family for the loan regarding the vehicle, and Mr. Helms re-affirmed that M&T Bank would not pursue them for the loan.

31.     At no point in their meeting did Mr. Helms reference the recall notice.

32.     After the representations by Andy regarding the quality of the vehicle, and Mr. Helms representations regarding how the loan would function, the McClures decided to purchase the vehicle.

33.     Before they were allowed to take the vehicle with them, they were told by agents of Dylans that they would have to leave the vehicle at the Dylans' property so that they could prepare it for use.

34.     Jane and John Doe agents of the Dylans defendants mentioned they needed to do some preparation work as part of the warranty to put a coating on the interior and exterior of the vehicle.

35.     While waiting for the vehicle, the McClures purchased several items to enhance the vehicle, such as approximately $2,000 in bedding, $300 for floor mats for the driving cab, $300 for a new door lock, and $5,00 for a carport for storing the motor home out of the weather.

36.     On the Monday after purchase, the McClures returned to the dealership to pick up the vehicle.

37.     The McClures were given a walkthrough of the vehicle by Jane and/or John Does, being shown how to use various devices in the vehicle.

38.     Those Jane and John Does were agents of Dylans.

39.     At no point during the walkthrough did the Jane and John Does alert the McClures to the issues involving the recall notice.

40.     When the McClures took the vehicle home, they found that the slide-out was crooked.

41.     The McClures brought the vehicle back to the dealership the next day, to fix the slide-out.

42.     One of the mechanics at the dealership told the McClures to purchase two additional motors, to replace the motor in the slide outs as needed, as apparently the motor on the vehicle was known to break down.

43.     Prior to this conversation, the McClures were not told about the issue involving the motor breakdown.

44.     None of the mechanics told the McClures about the recall issue.

45.     The mechanics did fix the slide out, the and the McClures took the vehicle home.

46.     The McClures spent approximately $300 to purchase a door lock to fix the lock for the vehicle.

47.     There was also an issue with the external television, which the McClures brought to the mechanic at the dealership who fixed it.

48.     At that time, they were not alerted to the issue involving the recall issue.

49.     That same week, the generator stopped functioning, so they brought it back to the dealership.

50.     When they brought the vehicle back to the dealership, the mechanic stated that the reason why the generator was not working was because a part was missing, and the mechanic said he would take the part from another vehicle in order to make it work.

51.     The McClures were not told about the recall issue at this time.

52.     After that visit to the dealership, the vehicle's generator worked.

53.     A week after that, the McClures received the recall notice from Forest River, the manufacturer of the vehicle.

54.     That recall notice is attached to this complaint as exhibit A.

55.     The McClures called Mr. Helms, asking to return the vehicle.

56.     Mr. Helms refused to accept the vehicle.

57.     The McClures contacted Forest River about the recall notice.

58.     The representative of Forest River said that the recall notice should have arrived the same day that the McClures purchased the vehicle.

59.     The McClures have kept the vehicle on their property as it is unsafe to drive.

## FIRST COUNT

## NEW JERSEY CONSUMER FRAUD ACT

60.     The McClures repeat and reallege each and every allegation in the forgoing paragraphs as if fully set forth herein.

61.     The commercial practices exemplified by the Dylans' defendants in this consumer transaction were fraudulent, deceptive, and unconscionable.

62.     Some of the fraudulent, deceptive, and unconscionable acts in this consumer transaction include, but are not limited to, the following:

a.     At the time of sale and thereafter, the Dylans' defendants knew or had reason to know that the vehicle in question had defects, such as the fuel line extension and its associated recall, the motor issue with the slide outs, and the generator issue, which they misrepresented to the McClures.

b.     At the time of sale and thereafter, the Dylans' defendants failed and/ or omitted to reveal material facts such as the ones outlined above, which tended to mislead Plaintiffs and such facts could not have been reasonably known by the Plaintiffs.

c.     At the time of sale and thereafter, the Dylans' defendants represented to the McClures that if they stopped paying the loan, the finance company would take the vehicle back and not go after the McClures or their family for the loan, which the Dylans' defendants knew or should have known was false.

d.     At the time of sale and thereafter, the Dylans' defendants represented the subject vehicle to be in good, merchantable quality, free of defects, when it was in fact not.

e.     At the time of sale and thereafter, the Dylans' defendants failed to reveal facts that were material to the transaction considering representations of fact made in a positive manner, including but not limited to the vehicle's mechanical problems.

f.     Failing to promptly refund the McClures' money after they rightfully revoked acceptance of the vehicle and finance loan.

g. At the time of sale and thereafter, causing the probability of confusion or misunderstanding as to the McClures' legal rights, obligations, and remedies to the transaction.

h. Failure to disclose any and all material defects with the vehicle.

63. These misrepresentations and knowing omissions led to the McClures purchasing the vehicle in amount of $307,260, including the financing and other warranties and insurance.

64. Based on the misrepresentations and knowing omissions of the Dylans' defendants, they purchased approximately an additional $7,600 in improvements for the vehicle.

65. Thus, the total ascertainable loss of the McClures is approximately $314,860.

66. But for the misrepresentations and knowing omissions of the Dylans' defendants, the McClures would not have purchased the vehicle.

**WHEREFORE**, Eugene and Anna Mae McClure demand judgement against the Dylans defendants for the following:

A. Any and all consequential damages.

B. Statutory treble damages pursuant to N.J.S.A. 56:8-19.

C. Reasonable attorney's fees and costs pursuant to N.J.S.A. 56:8-19.

D. Such other legal and equitable relief as this court deems just.

## SECOND COUNT

## COMMON LAW FRAUD

67. The McClures repeat and reallege each and every allegation contained in the forgoing paragraphs as if fully set forth herein

68. The Dylans' defendants misrepresented and intentionally concealed material facts regarding the transaction as fully described in the above paragraphs.

69. For example, they said the vehicle was "top of the line," better built, and good, even though there was a recall notice out regarding an issue involving the fuel line.

70. They also knew of the fuel line issues as the recall notice, upon information and belief, was in their possession on the date of sale.

71. They also knew about the motor issue for the slide outs, as the mechanic had advice regarding how to address it which the mechanic volunteered to the McClures.

72. They also knew about the part missing from the generator, as the mechanic suggested it was common practice to take generator parts from other vehicles in the dealership's possession to fix the generator issue.

73. They also knew, or had reason to know, that M&T would not merely abandon a claim for damages against the McClures or their family if the terms of the finance agreement were breached.

74. The Dylans defendants, including Mr. Helms and Andy, made representations praising the "top of the line" quality of the vehicle, along with omitting these material and dangerous defects, and the representation regarding how M&T would pursue in order to induce the McClures into purchasing the vehicle.

75. The McClures reasonably relied on all of the representations of the Dylans' defendants, as they had not purchased an RV before, the staff spoke glowingly of the quality of the vehicle, and Mr. Helms gave assurances to how M&T would treat a nonpayment of loan issue.

76. The McClures suffered over $307,260 in losses as a result of their reliance on the representations of the Dylans' defendants.

**WHEREFORE**, the McClures demand judgement against the Dylans' defendants for the following:

A.      Actual and punitive damages.

B.      That the McClures be relieved of any and all responsibility to paying off the loan created by the Dylans' defendants' fraudulent activities.

C.      Such other legal and equitable relief as this court deems just.

### THIRD COUNT

### REVOCATION OF ACCEPTANCE

77.     The McClures repeat and reallege each and every allegation contained in the forgoing paragraphs as if fully set forth herein.

78.     The vehicle at issue falls within the definition of "consumer goods" as defined in N.J.S.A. 12A:9-102(23).

79.     The Plaintiffs' acceptance of the vehicle was induced by Defendants' representations and assurances as fully described in the above paragraphs.

80.     The discrepancies and non-conformities described in above paragraphs were latent, required an experienced eye, and were not readily discoverable by the McClures upon reasonable inspection.

81.     The discrepancies and non-conformities described in above paragraphs have deprived the McClures of the benefit of their bargain.

82.     By their communication with Mr. Helms, the McClures revoked acceptance.

83.     Through Mr. Helms, Dylans declined to honor the revocation.

84.     The vehicle is currently still in the possession and care of the Dylans' defendants.

85.     As fully described in the above paragraphs, the vehicle had mechanical problems that the Dylans' defendants failed to repair prior to sale to the McClures.

86.     The Dylans' defendants have refused to cancel the sale or acknowledge Plaintiffs' revocation of acceptance.

87.     The Plaintiffs have paid great sums of money and are substantially indebted for which Defendants have refused to return despite Plaintiffs' revocation of acceptance.

88.     As a result of the non-conformity of the vehicle and Defendants' refusal to abide by Plaintiffs' revocation of acceptance, Plaintiffs have suffered from incidental and consequential damages.

**WHEREFORE**, the McClures demand judgement against the Dylans defendants for the following.

A.     A declaratory judgement that all payments to the finance company M&T will be halted until this matter is resolved in order to prevent further damage.

B.     Awarding actual damages under N.J.S.A. 12A:2-711 for the amount Plaintiffs have paid towards the purchase price of the vehicle.

C.     Awarding incidental and consequential damages under N.J.S.A. 12A:2-713.

D.     That the McClures be relieved of any and all responsibility to paying off the loan created by the Dylans' defendants' fraudulent activities.

E.     Such other legal and equitable relief as this court deems just.

## FOURTH COUNT

## BREACH OF IMPLIED WARRANTY OF MERCHANTABILITY

89.     The McClures repeat and reallege each and every allegation contained in forgoing paragraphs as if fully set forth herein.

90.     Defendants are merchants concerning motor vehicles under N.J.S.A. 12A:2-104.

91.     The vehicle was subject to implied warranties of merchantability under N.J.S.A.

12A: 2-314.

92.     The vehicle had various known mechanical problems as outlined above, and as such, the vehicle was unmerchantable under <u>N.J.S.A.</u> 12A: 2-314.

93.     Despite demand and opportunity, the Dylans defendants have failed to remedy their breach of implied warranty of merchantability.

**WHEREFORE**, the McClures demand judgement against the Dylans' defendants for the following:

A.     A declaratory judgement that all payments to the finance company M&T will be halted until this matter is resolved in order to prevent further damage.

B.     Awarding actual damages under <u>N.J.S.A.</u> 12A:2-711 for the amount Plaintiffs have paid towards the purchase price of the vehicle.

C.     Awarding incidental and consequential damages under <u>N.J.S.A.</u> 12A:2-713.

D.     That the McClures be relieved of any and all responsibility to paying off the loan created by the Dylans' defendants' fraudulent activities.

E.     Such other legal and equitable relief as this court deems just.

## <u>FIFTH COUNT</u>

## <u>VIOLATION OF TRUTH IN LENDING ACT</u>

94.     The McClures repeat and reallege each and every allegation contained in the forgoing paragraphs as if fully set forth herein.

95.     Under the Truth in Lending Act, a creditor must make certain disclosures and avoid misrepresentations.

96.     The Truth in Lending Act is a strict liability statute.

97. The finance at issue was for an RV, which was for personal and family use, that was subject to a finance charge and payable by a written agreement in more than four installments.

98. Upon information and belief, Dylans and M&T are regular extenders of credit.

99. The payment schedule submitted does not state when specifically a payment is due, though it provides that payments are to be done monthly.

100. Additionally, there is no notice regarding a right to recission, and the McClures' timely attempt to rescind was denied in contravention of 15 U.S.C. 1635(f).

101. Mr. Helms' made representations, either on behalf of Dylans, that M&T would not pursue damages against the McClures for failure to make payments on the contract.

**WHEREFORE**, the McClures demand judgement against the Dylans' defendants for the following:

A. Any and all actual consequential damages pursuant to 15 U.S.C. 1640.

B. Statutory fees pursuant to 15 U.S.C. 1640.

C. Reasonable attorney's fees and costs pursuant to 15 U.S.C. 1640.

D. That the McClures be relieved of any and all responsibility to paying off the loan created by the Dylans' defendants' fraudulent activities.

E. Such other legal and equitable relief as this court deems just.

## SIXTH COUNT

## MOTOR VEHICLE COMMISSION BOND

102. The McClures repeat and reallege each and every allegation contained in the forgoing paragraphs as if fully set forth herein.

103.    N.J.S.A. 56:8-77 requires motor vehicle dealers in the State of New Jersey to provide a $10,000 bond executed by a surety company authorized to transact business in the State of New Jersey by the Department of Insurance.

104.    The purpose of this bond is to ensure that motor vehicle dealers comply with the Consumer Fraud Act.

**WHEREFORE**, the McClures demand judgement against the Dylans defendants and ABC Dealer Bond Company for the following:

    A.    Awarding the amount of the bond to the McClures in the event of a judgement being entered against the Dylans defendants.

    B.    Such other legal and equitable relief as this court deems just.

## SEVENTH COUNT

## LIABILITY OF ABC CORPORATIONS 1-10 AND JANE AND JOHN DOES 1-10

105.    The McClures and reallege each and every allegation contained in the forgoing paragraphs as if fully set forth herein.

106.    To the extent possible, it is upon information and belief that ABC Corporations 1-10 and Jane and John Does assisted, committed, directed, or in any other way aided or abetted the activities outlined above which caused damages to the McClures.

**WHEREFORE**, the McClures demand judgement against the ABC Corporations 1-10 and Jane and John Does 1-10 for the following:

    A.    Any and all relief listed earlier in this complaint.

    B.    That the McClures be relieved of any and all responsibility to paying off the loan created by the Dylans' defendants' fraudulent activities.

    C.    Such other legal and equitable relief as this court deems just.

The Law Office of Aaron M. Harmaty
Attorneys for Plaintiffs, Eugene and Anna Mae
McClure

*Aaron M. Harmaty*
Aaron M. Harmaty, Esq.

Dated: 10/9/2025

## DEMAND FOR JURY TRIAL

The McClures demand trial of this action by jury.

The Law Office of Aaron M. Harmaty
Attorneys for Plaintiffs, Eugene and Anna Mae
McClure

*Aaron M. Harmaty*
Aaron M. Harmaty, Esq.

Dated: 10/9/2025

**DEMAND FOR DISCOVERY OF COMMERCIAL GENERAL LIABILITY
INSURANCE COVERAGE AS REQUIRED BY N.J.S.A. 56:8-142**

Demand is made under Rule 4:10-2(b) that Defendants disclose to Plaintiffs whether or not there are any insurance or indemnification agreements or policies as required by N.J.S.A. 56:8-142 and N.J.A.C. 13A:45-17.12 under which any person or firm carrying on an insurance business may be liable to satisfy part or all of the judgment which may be entered in this action or to indemnify or reimburse for payments made to satisfy the judgment.

The Law Office of Aaron M. Harmaty
Attorneys for Plaintiffs, Eugene and Anna Mae
McClure

*Aaron M. Harmaty*
Aaron M. Harmaty, Esq.

Dated: 10/9/2025

**CERTIFICATION PURSUANT TO RULE 1:38-7(b)**

I certify that confidential personal identifiers have been redacted from documents now submitted to the court, and will be redacted from all documents submitted in the future in accordance with R. 1:38-7(b).

The Law Office of Aaron M. Harmaty
Attorneys for Plaintiffs, Eugene and Anna Mae
McClure

*Aaron M. Harmaty*
Aaron M. Harmaty, Esq.

Dated: 10/9/2025

## DESIGNATION OF TRIAL COUNSEL

Trial counsel will be Aaron M. Harmaty, Esq.

The Law Office of Aaron M. Harmaty
Attorneys for Plaintiffs, Eugene and Anna Mae
McClure


*Aaron M. Harmaty*
Aaron M. Harmaty, Esq.

Dated: 10/9/2025

## CERTIFICATION: RULE 4:5-1

I certify that to the best of my knowledge there are no other actions, proceedings, or arbitrations pending or contemplated between these parties, and there no other parties who should be joined.

The Law Office of Aaron M. Harmaty
Attorneys for Plaintiffs, Eugene and Anna Mae
McClure


*Aaron M. Harmaty*
Aaron M. Harmaty, Esq.

Dated: 10/9/2025

## <u>CERTIFICATION OF SERVICE</u>

I certify that a copy of the Complaint was forwarded to the Sheriff of Gloucester county

and to Baltimore county for service to the defendants.

The Law Office of Aaron M. Harmaty
Attorneys for Plaintiffs, Eugene and Anna Mae
McClure

*Aaron M. Harmaty*

Aaron M. Harmaty, Esq.

Dated: 10/9/2025

THE LAW OFFICE OF AARON HARMATY, LLC.
Aaron M. Harmaty, Esq., # 301832019
21 Van Doren Ave.
Chatham, NJ 07928
973-309-5492
aharmatylaw@gmail.com
Counsel for Plaintiffs,
Gene and Anna Mae McClure

| | |
|---|---|
| EUGENE MCCLURE AND ANNA MAE MCCLURE<br><br>          Plaintiffs,<br><br>  v.<br><br>DYLAN'S RV CENTER, JACOB HELMS, ANDY, ABC DEALER BOND COMPANY, M&T BANK, ABC CORP, and JANE AND JOHN DOES 1-10.<br><br>          Defendants. | SUPERIOR COURT OF NEW JERSEY LAW DIVISION: CUMBERLAND COUNTY<br><br>Docket No. CMB-L-<br><br>Civil Action<br><br>**SUMMONS** |

YOU ARE HEREBY SUMMONED in a Civil Action in the Superior Court of New Jersey. The Plaintiffs, named above, have filed a lawsuit against you in the Superior Court of New Jersey. The complaint attached to this summons states the basis for this lawsuit. If you dispute this complaint, you or your attorney must file a written answer or motion and proof of service with the deputy clerk of the Superior Court in the County listed above within 35 days from the date you received this summons, not counting the date you received it. A directory of the addresses of each deputy clerk of the Superior Court is available in the Civil Division Management Office in the county listed above and online. If the complaint is one in foreclosure, then you must file your written answer or motion and proof of service with the Clerk of the Superior Court, Hughes Justice Complex, P.O. Box 971, Trenton, NJ 08625-0971. A filing fee payable to the Treasurer, State of New Jersey and a Completed Case Information Statement, available from the deputy clerk of the

Superior Court, must accompany your answer or motion when it is filed. You must also send a copy of your answer or motion to the Plaintiffs' attorney, whose name and address appear above. A telephone call will not protect your rights; you must file and serve a written answer or motion if you want the court to hear your defense.

If you do not file and serve a written answer or motion within 35 days, the court may enter default and judgment against you for the relief plaintiff demands, plus interest and costs of suit. If judgment is entered against you, the Sheriff may seize your money, wages, or property to pay all or part of the judgment.

If you cannot afford an attorney, you may call the Legal Services office in the county where you live or the Legal Services of New Jersey Statewide Hotline at 1-888-LSNJ-Law (1-888-576-5529). If you do not have an attorney and are not eligible for free legal assistance, you may obtain a referral to an attorney by calling one of the Lawyer Referral Services. A directory with contact information for local Legal Services offices and Lawyer Referral Services is available in the Civil Division Management Office in the County listed above and online.

*/s/ Michelle M. Smith*

MICHELLE M. SMITH
Clerk of the Superior Court

Dated: 10/9/2025

**Name and Address of Each Defendant to be served:**

Dylans RV Center
2190 Delsea Dr.,
Sewell, New Jersey 08080

Mr. Jacob Helms
Dylans RV Center
2190 Delsea Dr.,
Sewell, New Jersey 08080

Mr. Andy Pandolfi
Dylans RV Center
2190 Delsea Dr.,
Sewell, New Jersey 08080

M&T Bank
P.O. Box 37258
Baltimore, Maryland 37258

The Law Office of Aaron M. Harmaty
Attorneys for Plaintiffs, Eugene and Anna Mae
McClure

*Aaron M. Harmaty*
Aaron M. Harmaty, Esq.

Dated: 10/9/2025

# Civil Case Information Statement

## Case Details: CUMBERLAND | Civil Part Docket# L-000708-25

**Case Caption:** MCCLURE EUGENE  VS DYLANS RV CENTER

**Case Initiation Date:** 10/09/2025

**Attorney Name:** AARON M HARMATY

**Firm Name:** AARON HARMATY, LLC

**Address:** 21 VAN DOREN AVE

CHATHAM NJ 07928

**Phone:** 9733095492

**Name of Party:** PLAINTIFF : McClure, Eugene

**Name of Defendant's Primary Insurance Company**

(if known): Unknown

**Case Type:** OTHER Fraud Action

**Document Type:** Complaint with Jury Demand

**Jury Demand:** YES - 12 JURORS

**Is this a professional malpractice case?**  NO

**Related cases pending:** NO

**If yes, list docket numbers:**

**Do you anticipate adding any parties (arising out of same transaction or occurrence)?** NO

**Does this case involve claims related to COVID-19?** NO

**Are sexual abuse claims alleged by: Eugene McClure? NO**

**Are sexual abuse claims alleged by: Anna Mae McClure? NO**

### THE INFORMATION PROVIDED ON THIS FORM CANNOT BE INTRODUCED INTO EVIDENCE
CASE CHARACTERISTICS FOR PURPOSES OF DETERMINING IF CASE IS APPROPRIATE FOR MEDIATION

**Do parties have a current, past, or recurrent relationship?** NO

**If yes, is that relationship:**

**Does the statute governing this case provide for payment of fees by the losing party?** YES

**Use this space to alert the court to any special case characteristics that may warrant individual management or accelerated disposition:**

**Do you or your client need any disability accommodations?** NO
   **If yes, please identify the requested accommodation:**

**Will an interpreter be needed?** NO
   **If yes, for what language:**

**Please check off each applicable category: Putative Class Action?** NO  **Title 59?** NO  **Consumer Fraud?** YES
**Medical Debt Claim?** NO

I certify that confidential personal identifiers have been redacted from documents now submitted to the court, and will be redacted from all documents submitted in the future in accordance with *Rule* 1:38-7(b)

10/09/2025

Dated

/s/ AARON M HARMATY

Signed

The Law Office of Aaron Harmaty, LLC
21 Van Doren Avenue
Chatham, NJ 07928

October 9, 2025

**Via: Electronic File:**

Clerk of the Superior Court
60 West Broad Street
Bridgeton, New Jersey 08302

RE: Exhibits to Complaint, CUM-L-708-25

Dear Sir or Madam,

Our office represents the plaintiffs, Eugene and Anna Mae McClure, in the above referenced matter. In that connection, please see enclosed exhibits, which have been transmitted to the defendants in this matter along with this letter.

Please do not hesitate to reach out to me with any questions or concerns.

Regards,

/s/ Aaron M. Harmaty

Aaron M. Harmaty, Esq.

ENCL.
CC:
Dylans RV Center
Jacob Helms
Andy Pandolfi
M&T Bank



**A**

**IMPORTANT SAFETY RECALL INFORMATION**



**Issued in Accordance With Federal Law**

U.S. Department of Transportation


NHTSA
www.nhtsa.gov


**FOREST RIVER**

Corporate Compliance PO Box 30 Middlebury, In 46540

NHTSA RECALL: 25V486
FOREST RIVER ID: 51-1955

EUGENE ROBERT MCCLURE JR
328 TAYLOR LANE AVE
VINELAND NJ 08360-4343

**INTERIM OWNER NOTIFICATION**

A SECONDARY NOTICE WILL FOLLOW
WHEN THE REMEDY IS AVAILABLE

August 2025

This Notice applies to your vehicle VIN listed above.

Dear Forest River Customer:

This notice is sent in accordance with the requirements of the United States' *National Traffic and Motor Vehicle Safety Act*. Forest River has decided that a defect, which relates to the motor vehicle safety, exists in certain 2025-2026 East to West Entrada, Forester, Sunseeker, Solera, Freelander, and Leprechaun Class C Motorhome Recreational Vehicles.

**WHAT IS THE DEFECT?**
The fuel line extension may have been inconsistent crimps at the barb fittings of its connectors which can cause the fittings to become loose and detach.

**EVALUATION OF RISK:**
If a fuel line detaches, this may allow fuel to openly spray. This condition may lead to fire and property damage.

**WHAT IS FOREST RIVER AND OUR DEALERSHIPS GOING TO DO?**
Parts are not currently available for this recall. We are working as quickly as possible to correct this condition. When parts are available, we will send you another letter asking you to take your vehicle to an authorized Forest River dealer for repair.

**WHAT IF YOU HAVE PREVIOUSLY PAID FOR REPAIRS TO YOUR VEHICLE FOR THIS PARTICULAR CONDITION?**
If you have already paid for a repair that is within the scope of this defect under recall, you still need to have this recall inspected and/or performed to ensure the correct parts and procedures were utilized. Additionally, you may be eligible for a refund of previously paid repairs. Refunds will only be provided for within the scope of this defect under recall. Please send the service invoice to the following address:

Forest River, Inc.
PO Box 30
Middlebury, IN 46540

**WHAT IF YOU NO LONGER OWN THIS VEHICLE?**
If you no longer own this vehicle and have the address for the current owner, please forward this letter to the new owner within 10 working days after the day in which the notice is received. You have received this letter because government regulations require that a notification is sent to the last known owner of record. Our records indicate that you are the current owner.
**PLEASE NOTE: FEDERAL LAW REQUIRES THAT ANY VEHICLE LESSOR RECEIVING THIS RECALL NOTICE MUST FORWARD A COPY OF THIS NOTICE TO THE LESSEE WITHIN TEN DAYS.**

**HELPFUL CONTACT INFORMATION**

| | | EMAIL |
|---|---|---|
| EAST TO WEST ENTRADA | (574) 264-6664 | |
| FORESTER, SOLERA, AND SUNSEEKER | (574) 206-7600 | motorizedservice@forestriverinc.com |
| LEPRECHAUN AND FREELANDER | (574) 825-8602 | |

Sincerely,
Forest River Inc.
Office of Corporate Compliance

574-825-5821

Page 1 of 1

# **<u>B</u>**

NJ-102 11/1/2018

# Retail Installment Contract and Security Agreement

| Seller Name and Address | Buyer(s) Name(s) and Address(es) | Summary |
|---|---|---|
| Dylans RV Center<br>2190 Delsea Dr.<br>Sewell, NJ 08080 | EUGENE ROBERT MCCLURE JR<br>ANNA MAE MCCLURE<br>328 TAYLOR AVE<br>VINELAND, NJ 08360 | No. 12204241/20252171639590<br>Date 08/05/2025 |

☐ Business, commercial or agricultural purpose Contract.

## 1. Sales Agreement

**1.1 Definitions.** *"Contract"* refers to this Retail Installment Contract and Security Agreement. The pronouns *"you"* and *"your"* refer to each Buyer signing this Contract, and any guarantors, jointly and individually. The pronouns *"we"*, *"us"* and *"our"* refer to the Seller and any entity to which it may transfer this Contract. *"Vehicle"* means each motor vehicle described in the *Description of Property* section. *"Property"* means the Vehicle and all other property described in the *Description of Property* and *Additional Protections* sections.

**1.2 Purchase of Property.** You agree to purchase the Property from Seller, subject to the terms and conditions of this Contract.

You have been given the opportunity to purchase the Property and described services for the Cash Price or the Total Sale Price. The *"Total Sale Price"* is the total price of the Property if you buy it over time.

**1.3 Payment.** You promise to pay us the principal amount of $ 145,695.90          plus the time price differential accruing on the unpaid balance at the rate of      7.99      % per year from the date of this Contract until maturity. After maturity, or after you default and we demand payment, we will earn the time price differential on the unpaid balance at      7.99      % per year. You agree to pay this Contract according to the payment schedule and late charge provisions shown in the *Truth-In-Lending Disclosure*. You also agree to pay any additional amounts according to the terms and conditions of this Contract.

## 2. Truth-In-Lending Disclosure

| Annual Percentage Rate<br>The cost of your credit as a yearly rate. | Finance Charge<br>The dollar amount the credit will cost you. | Amount Financed<br>The amount of credit provided to you or on your behalf. | Total of Payments<br>The amount you will have paid when you have made all scheduled payments. | Total Sale Price<br>The total cost of your purchase on credit, including your down payment of |
|---|---|---|---|---|
| 7.99 % | $ 146,564.10 | $ 145,695.90 | $ 292,260.00 | $ 15,000.00<br>$ 307,260.00 |

**Payment Schedule.** Your payment schedule is:

| No. of Payments | Amount of Payments | When Payments are Due |
|---|---|---|
| 240 | $ 1,217.75 | Monthly, beginning on 9/4/2025 . |
| N/A | $ N/A | NOT APPLICABLE |
| N/A | $ N/A | NOT APPLICABLE |

**Security.** You are giving us a security interest in the Property purchased.

**Late Charge.** If a payment is more than 10 days late, you will be charged 5% of the unpaid amount of the payment due, except that if the Property is primarily for personal, family, or household use and the cash price is $10,000 or less, the charge for late payment will be $10.

**Prepayment.** If you pay off this Contract early, you will not have to pay a penalty.

**Contract Provisions.** You can see the terms of this Contract for any additional information about nonpayment, default, any required repayment before the scheduled date, and prepayment refunds and penalties.

## 3. Description of Property

| Year | Make | Model | Style | Vehicle Identification Number | Odometer Mileage |
|---|---|---|---|---|---|
| 2025 | LEPRECHAUN | 260DS FORD MC | ClassC | 1FDXE4FNXSDD28866 | 763 |

Other:

☒ New
☐ Used
☐ Demo

Retail Installment Contract-NJ  Not for use in transactions secured by a dwelling.
©2016 The Reynolds and Reynolds Company
THERE ARE NO WARRANTIES, EXPRESS OR IMPLIED, AS TO CONTENT OR FITNESS FOR PURPOSE OF THIS FORM. CONSULT YOUR OWN LEGAL COUNSEL.

RSSIADYLFLZNJ 11/1/2016
Bankers Systems®
Page 1 of 7

Customers Initial Here

## 4. Description of Trade-In

N/A

## 5. Conditional Delivery

☐ **Conditional Delivery.** If checked, you agree that the following agreement regarding securing financing ("*Agreement*") applies:

N/A

The Agreement is part of this Contract. The Agreement will no longer control after the assignment is accepted. If there are any conflicts between the terms of the Agreement and the Contract, the terms of this Contract will apply.

## 6. Itemization of Amount Financed

| | | |
|---|---|---:|
| a. | **Vehicle Sales Price** | $ 130,895.00 |
| b. | Sales Tax (reduced as required due to value of like trade-in) | $ 9,862.90 |
| c. | Other Tax N/A | $ 0.00 |
| d. | Other Tax N/A | $ 0.00 |
| e. | Other Tax N/A | $ 0.00 |
| f. | Cash Price (a+b+c+d+e) | $ 140,757.90 |
| g. | Trade-In allowance | $ 0.00 |
| h. | Less: Amount owing, paid to (includes o). N/A | $ 0.00 |
| i. | Net Trade-In (g-h; If negative, enter $0 here and enter the amount on line o) | $ 0.00 |
| j. | Cash payment | $ 15,000.00 |
| k. | Manufacturer's rebate | $ 0.00 |
| l. | Other down payment (describe) N/A | $ 0.00 |
| m. | **Down Payment (i+j+k+l)** | $ 15,000.00 |
| n. | **Unpaid Cash Balance (f-m)** | $ 125,757.90 |
| o. | Financed trade-in balance (see i) | $ 0.00 |
| p. | Paid to Public Officials – Certificate of Title Fee | $ 450.00 |
| q. | Paid to Public Officials – Tire Fee | $ 9.00 |
| r. | Paid to Public Officials – Supplemental Title Fee | $ 0.00 |
| s. | Paid to Public Officials – License and/or Registration Fee | $ 0.00 |
| t. | Paid to Public Officials N/A | $ 0.00 |
| u. | Paid to Public Officials N/A | $ 0.00 |
| v. | Insurance premiums paid to Insurance company(ies) | $ 0.00 |
| w. | Documentary Service Fee Paid to Seller for Preparation and Processing: | |
| | 1. of License, Registration and Title | $ 0.00 |
| | 2. of N/A | $ 0.00 |
| | 3. of N/A | $ 0.00 |
| | 4. of N/A | $ 0.00 |
| x. | Pre-Delivery Service Fee Paid to Seller: | |
| | 1. for Pre-Delivery Handling and Delivery Service Fee | $ 0.00 |
| | 2. for N/A | $ 0.00 |
| | 3. for N/A | $ 0.00 |
| | 4. for N/A | $ 0.00 |
| y. | Service Contract, paid to: Dealer Admin Services | $ 11,995.00 |

| | | |
|---|---|---:|
| z. To: | GAP paid to Tire Shield | $ 1,500.00 |
| aa. To: | Paint Protection paid to Dealer Admin Services | $ 2,995.00 |
| bb. To: | Roadside Assistance paid to Vehicle Administrative Services | $ 1,295.00 |
| cc. To: | Tire & Wheel Protection paid to Dealer Admin Services | $ 1,295.00 |
| dd. To: | Documentation Fee paid to Seller | $ 399.00 |
| ee. To: | N/A | $ 0.00 |
| ff. To: | N/A | $ 0.00 |
| gg. To: | N/A | $ 0.00 |
| hh. To: | N/A | $ 0.00 |
| ii. To: | N/A | $ 0.00 |
| jj. | **Total Other Charges/Amts Paid (o thru ii)** | $ 19,938.00 |
| kk. | **Principal Balance (n+jj)** | $ 145,695.90 |
| ll. | **Time Price Differential** | $ 146,564.10 |
| mm. | **Time Balance (kk+ll)** | $ 292,260.00 |
| nn. | **Prepaid Finance Charge** | $ 0.00 |
| oo. | **Amount Financed (n+jj-nn)** | $ 145,695.90 |
| pp. | **Time Sales Price (m+mm)** | $ 307,260.00 |

We may retain or receive a portion of any amounts paid to others.

## 7. Insurance Disclosures

**7.1 Credit Insurance.** Credit life insurance pays all or part of the amount you owe under this Contract if you die. This insurance pays only the amount you would owe if you paid all your payments on time. Credit disability pays all or part of the payments due under this Contract while you are disabled. This insurance does not cover any increase in your payment or in the number of payments. See the policies or certificates from the named Insurance companies for the details of the coverage these types of insurance provide, and for other terms and conditions. Credit life and credit disability (accident and health) are not required to obtain credit and are not a factor in the credit decision. We will not provide them unless you sign and agree to pay the additional premium. If you want such insurance, we will obtain it for you (if you qualify for coverage). We are quoting below **only** the coverages you have chosen to purchase.

**Credit Life**
☐ Single  ☐ Joint  ☒ None
Premium $ 0.00          Term N/A
Insured N/A

**Credit Disability**
☐ Single  ☐ Joint  ☒ None
Premium $ 0.00          Term N/A
Insured N/A

Your signature below means you want (only) the insurance coverage(s) quoted above. If "None" is checked, you have declined the coverage we offered.

By: EUGENE ROBERT MCCLURE JR          11/25/1959 DOB

By: ANNA MAE MCCLURE          11/12/1959 DOB

By: N/A          N/A DOB

Retail Installment Contract-NJ  Not for use in transactions secured by a dwelling.
©2018 The Reynolds and Reynolds Company
THERE ARE NO WARRANTIES, EXPRESS OR IMPLIED, AS TO CONTENT OR FITNESS FOR PURPOSE OF THIS FORM. CONSULT YOUR OWN LEGAL COUNSEL.

RSSIMVLFLZNJ 11/1/2018
Bankers Systems®
Page 2 of 7
Customers Initial Here

**7.2 Property Insurance.** You must insure the Property. You may purchase or provide the insurance through any insurance company reasonably acceptable to us. The collision coverage deductible may not exceed $ $500 . If you get insurance from or through us you will pay $ 0.00 for N/A of coverage.

This premium is calculated as follows:

- ☐ $ 0.00 Deductible, Collision Cov. $ 0.00
- ☐ $ 0.00 Deductible, Comp. Cov. $ 0.00
- ☐ Fire-Theft and Combined Additional Cov. $ 0.00
- ☐ N/A $ 0.00

**THIS DOES NOT INCLUDE INSURANCE ON YOUR LIABILITY FOR BODILY INJURY OR PROPERTY DAMAGE. WITHOUT SUCH INSURANCE, YOU MAY NOT OPERATE THIS VEHICLE ON PUBLIC HIGHWAYS.**

**7.3 ☐ Single-Interest Insurance.** You must purchase single-interest insurance as part of this sale transaction. You may purchase the coverage from a company of your choice, reasonably acceptable to us. If you buy the coverage from or through us, you will pay $ N/A for N/A of coverage.

## 8. Additional Protections

You may buy any of the following voluntary protection plans. They are not required to obtain credit, are not a factor in the credit decision, and are not a factor in the terms of the credit or the related sale of the Vehicle. The voluntary protections will not be provided unless you sign and agree to pay the additional cost.

Your signature below means that you want the described item and that you have received and reviewed a copy of the contract(s) for the product(s). If no coverage or charge is given for an item, you have declined any such coverage we offered.

**☒ Service Contract**

| | |
|---|---|
| Term | 60 months |
| Price | $ 11,995.00 |
| Coverage | Parts & Labor Protection |

**☒ Gap Waiver or Gap Coverage**

| | |
|---|---|
| Term | 72 months |
| Price | $ 1,500.00 |
| Coverage | G.A.P. Protection |

**☒ Paint Protection**

| | |
|---|---|
| Term | 60 months |
| Price | $ 2,995.00 |
| Coverage | Appearance Protection |

By: EUGENE ROBERT MCCLURE JR    Date 08/05/2025

By: ANNA MAE MCCLURE    Date 08/05/2025

By: N/A    Date N/A

Retail Installment Contract-NJ   Not for use in transactions secured by a dwelling.
©2018 The Reynolds and Reynolds Company
THERE ARE NO WARRANTIES, EXPRESS OR IMPLIED, AS TO CONTENT OR FITNESS FOR PURPOSE OF THIS FORM. CONSULT YOUR OWN LEGAL COUNSEL.

## 9. Additional Terms of the Sales Agreement

**9.1 General Terms.** The Total Sale Price shown in the *Truth-In-Lending Disclosure* assumes that all payments will be made as scheduled. The actual amount you will pay will be more if you pay late and less if you pay early.

We do not intend to charge or collect, and you do not agree to pay, any time price differential or fee that is more than the maximum amount permitted for this sale by state or federal law. If you pay a time price differential or fee that exceeds that maximum amount, we will first apply the excess amount to reduce the principal balance and, when the principal has been paid in full, refund any remaining amount to you.

You understand and agree that some payments to third parties as a part of this Contract may involve money retained by us or paid back to us as commissions or other remuneration.

You agree that the Property will not be used as a dwelling.

**9.2 Prepayment.** You may prepay this Contract in full or in part at any time without penalty. Any partial prepayment will not excuse any later scheduled payments. If we get a refund of any unearned insurance premiums that you paid, you agree that we may subtract the refund from the amount you owe, unless otherwise provided by law.

**9.3 Returned Payment Charge.** If you make any payment required by this Contract that is returned uncollected due to insufficient funds in your account, you agree to pay a fee of $20. If the Property is primarily for personal, family, or household use and the cash price is $10,000 or less, then the $20 fee applies only to payments made by check.

**9.4 Governing Law and Interpretation.** This Contract is governed by the law of New Jersey and applicable federal law and regulations.

If any section or provision of this Contract is not enforceable, the other terms will remain part of this Contract. You authorize us to correct any clerical error or omissions in this Contract or in any related document.

**9.5 Name and Location.** Your name and address set forth in this Contract are your exact legal name and your principal residence. You will provide us with at least 30 days notice before you change your name or principal residence.

**9.6 Telephone Monitoring and Calling.** You agree that we may from time to time monitor and record telephone calls made or received by us or our agents regarding your account to assure the quality of our service. In order for us to service the account or to collect any amounts you may owe, and subject to applicable law, you agree that we may from time to time make calls and send text messages to you using prerecorded/artificial voice messages or through the use of an automatic dialing device at any telephone number you provide to us in connection with your account, including a mobile telephone number that could result in charges to you.

**9.7 Default.** You will be in default on this Contract (except as prohibited by law) if you fail to perform any obligation that you have undertaken in this Contract.

If the Property is primarily for personal, family, or household use, and the cash price is $10,000 or less, if you default you agree to pay attorneys' fees of 20% of the first $500 and 10% on any excess of the amount due and payable under this Contract, if referred for collection to an attorney not a salaried employee of ours. For other transactions, if we hire an attorney who is not a salaried employee to collect what you owe, you will pay the attorney's reasonable fee and court costs the law permits.

If an event of default occurs as to any of you, we may exercise our remedies against any or all of you.

RSSIMVLFLZNJ 11/1/2018
Bankers Systems®
Page 3 of 7
Customers Initial Here

**9.8 Remedies.** If you are in default on this Contract, we have all of the remedies provided by law and this Contract. Those remedies include:

- We may require you to immediately pay us, subject to any refund required by law, the remaining unpaid balance of the amount financed, time price differential and all other agreed charges.

- We may pay taxes, assessments, or other liens or make repairs to the Property if you have not done so. We are not required to do so. You will repay us that amount immediately. That amount will earn the time price differential from the date we pay it at the contract rate described in the *Payment* section until paid in full.

- We may require you to make the Property available to us at a place we designate that is reasonably convenient to you and us.

- We may immediately take possession of the Property by legal process or self-help, but in doing so we may not breach the peace or unlawfully enter onto your premises.

- We may then sell the Property and apply what we receive as provided by law to our reasonable expenses and then toward what you owe us.

- We may, as allowed by law, sue you for additional amounts if the proceeds of a sale do not pay all of the amounts you owe us.

By choosing any one or more of these remedies, we do not give up our right to later use another remedy. By deciding not to use any remedy, we do not give up our right to consider the event a default if it happens again.

You agree that if any notice is required to be given to you of an intended sale or transfer of the Property, notice is reasonable if mailed to your last known address, as reflected in our records, at least 10 days before the date of the intended sale or transfer (or such other period of time as is required by law).

You agree that we may take possession of personal property left in or on the Property securing this Contract and taken into possession as provided above. You may have a right to recover that property.

If the Property has an electronic tracking device, you agree that we may use the device to find the vehicle.

**9.9 Obligations Independent.** Each person who signs this Contract agrees to pay this Contract according to its terms. This means the following:

- You must pay this Contract even if someone else has also signed it.

- We may release any co-buyer or guarantor and you will still be obligated to pay this Contract.

- We may release any security and you will still be obligated to pay this Contract.

- If we give up any of our rights, it will not affect your duty to pay this Contract.

- If we extend new credit or renew this Contract, it will not affect your duty to pay this Contract.

**9.10 Warranty.** Warranty information is provided to you separately.

## 10. Security Agreement

**10.1 Security.** To secure your payment and performance under the terms of this Contract, you give us a security interest in the Vehicle, all accessions, attachments, accessories, and equipment placed in or on the Vehicle and in all other Property. You also assign to us and give us a security interest in proceeds and premium refunds of any insurance and service contracts purchased with this Contract.

**10.2 Duties Toward Property.** By giving us a security interest in the Property, you represent and agree to the following:

- You will defend our interests in the Property against claims made by anyone else. You will keep our claim to the Property ahead of the claim of anyone else. You will not do anything to change our interest in the Property.

- You will keep the Property in your possession and in good condition and repair. You will use the Property for its intended and lawful purposes.

- You agree not to remove the Property from the United States or Canada without our prior written consent.

- You will not attempt to sell the Property, transfer any rights in the Property, or grant another lien on the Property without our prior written consent.

- You will pay all taxes and assessments on the Property as they become due.

- You will notify us with reasonable promptness of any loss or damage to the Property.

- You will provide us reasonable access to the Property for the purpose of inspection. Our entry and inspection must be accomplished lawfully, and without breaching the peace.

**10.3 Agreement to Provide Insurance.** You agree to provide property insurance on the Property protecting against loss and physical damage and subject to a maximum deductible amount indicated in the *Insurance Disclosures* section, or as we will otherwise require. You will name us as loss payee on any such policy. Generally, the loss payee is the one to be paid the policy benefits in case of loss or damage to the Property. In the event of loss or damage to the Property, we may require additional security or assurances of payment before we allow insurance proceeds to be used to repair or replace the Property. You agree that if the insurance proceeds do not cover the amounts you still owe us, you will pay the difference. You will keep the insurance in full force and effect until this Contract is paid in full.

If you fail to obtain or maintain this insurance, or name us as loss payee, we may obtain insurance to protect our interest in the Property. This insurance may be written by a company other than one you would choose. It may be written at a rate higher than a rate you could obtain if you purchased the property insurance required by this Contract. We will add the premium for this insurance to the amount you owe us. This amount will earn the time price differential from the date paid at the contract rate described in the *Payment* section until paid in full.

**10.4 Gap Waiver or Gap Coverage.** In the event of theft or damage to the Vehicle that results in a total loss, there may be a gap between the amount due under the terms of the Contract and the proceeds of your insurance settlement and deductibles. You are liable for this difference. You have the option of purchasing Gap Waiver or Gap Coverage to cover the gap liability, subject to any conditions and exclusions in the Gap Waiver or Gap Coverage agreements.

Retail Installment Contract-NJ  Not for use in transactions secured by a dwelling.
©2016 The Reynolds and Reynolds Company
THERE ARE NO WARRANTIES, EXPRESS OR IMPLIED, AS TO CONTENT OR FITNESS FOR PURPOSE OF THIS FORM. CONSULT YOUR OWN LEGAL COUNSEL.

RISIMVI.FLZNJ 11/1/2016
Bankers Systems®
Page 4 of 7

Customers Initial Here

## 11. Notices

**11.1 Note.** If the primary use of the Vehicle is non-consumer, this is not a consumer contract, and the following notice does not apply. NOTICE. ANY HOLDER OF THIS CONSUMER CREDIT CONTRACT IS SUBJECT TO ALL CLAIMS AND DEFENSES WHICH THE DEBTOR COULD ASSERT AGAINST THE SELLER OF GOODS OR SERVICES OBTAINED PURSUANT HERETO OR WITH THE PROCEEDS HEREOF. RECOVERY HEREUNDER BY THE DEBTOR SHALL NOT EXCEED AMOUNTS PAID BY THE DEBTOR HEREUNDER.

**11.2 Documentary Service and Pre-Delivery Service.** A Documentary Service fee and Pre-Delivery Service fee are not official fees and are not required by law. "Documentary service" means, but is not limited to, the preparation and processing of documents in connection with the transfer of license plates, registration, or title, and the preparation and processing of other documents relating to the sale of a motor vehicle. Documentary Service Fees MUST BE ITEMIZED ABOVE such that the price of each prepared document is disclosed. "Pre-delivery service" means, but is not limited to, items that are often described or labeled as dealer preparation, vehicle preparation, pre-delivery handling and delivery, or any other service of similar import. Pre-Delivery Service Fees MUST BE ITEMIZED ABOVE and do not include any services for which the dealer receives compensation from any other party.

**11.3 Used Car Buyer Notice. If you are buying a used vehicle: The information you see on the window form for this vehicle is part of this contract. Information on the window form overrides any contrary provisions in the contract of sale.**

**Spanish Translation. Si compra un vehículo usado: La información que ve adherida en la ventanilla forma parte de éste contrato. La información contenida en el formulario de la ventanilla prevalece por sobre toda otra disposición en contrario incluida en el contrato de compraventa.**

*[This area intentionally left blank.]*

## 12. Third Party Agreement

(This section applies ONLY to a person who will have an ownership interest in the Property but is NOT a Buyer obligated to pay this Contract ("Third Party Owner").)

In this section only, *"you"* means only the person signing this section.

By signing below you agree to give us a security interest in the Property described in the *Description of Property* section. You also agree to the terms of this Contract except that you will not be liable for the payments it requires. Your interest in the Property may be used to satisfy the Buyer's obligation. You agree that we may renew, extend or change this Contract, or release any party or Property without releasing you from this Contract. We may take these steps without notice or demand upon you.

**You acknowledge receipt of a completed copy of this Contract.**

NOT APPLICABLE

_____ N/A

By: NOT APPLICABLE                         **Date**
   Signature of Third Party Owner (NOT the Buyer)

*[This area intentionally left blank.]*

Retail Installment Contract-NJ   Not for use in transactions secured by a dwelling.
©2016 The Reynolds and Reynolds Company
THERE ARE NO WARRANTIES, EXPRESS OR IMPLIED, AS TO CONTENT OR FITNESS FOR PURPOSE OF THIS FORM. CONSULT YOUR OWN LEGAL COUNSEL.

RSSIMVLFLZNJ 11/1/2018
Bankers Systems®
Page 6 of 7
Customers Initial Here

**13.** ☐ **Electronic Signature Acknowledgment.** You agree that (i) you viewed and read this entire Contract before signing it, (ii) you signed this Contract with one or more electronic signatures, (iii) you intend to enter into this Contract and your electronic signature has the same effect as your written ink signature, (iv) you received a paper copy of this Contract after it was signed, and (v) the authoritative copy of this Contract shall reside in a document management system held by Seller in the ordinary course of business. You understand that Seller may transfer this Contract to another company in the electronic form or as a paper version of that electronic form which would then become the authoritative copy. Seller or that other company may enforce this Contract in the electronic form or as a paper version of that electronic form. You may enforce the paper version of the Contract copy that you received.

## 14. Used Vehicle Sale Dealer/Seller's Obligation

**Explanation of Dealer/Seller Obligations.** The Dealer/Seller has the following obligations under N.J.S.A. 39:10-26 through 39:10-30:

No Dealer/Seller may sell a used passenger motor vehicle to be registered in New Jersey unless the Vehicle meets the standards for the issuance of a certificate of approval. If the used passenger motor vehicle has any defect that does not allow for the issuance of a certificate of approval, the Dealer/Seller shall make, or cause to be made, all necessary repairs without charge, or shall return the full purchase price to the Buyer; provided that such defect or defects are not the result of the Buyer's own act.

Buyer acknowledges they have been informed of Dealer/Seller's obligation above. Buyer agrees to present the used passenger motor vehicle for inspection within 14 days from the date of delivery of such vehicle.

_____ N/A
Buyer                              Date

_____ N/A
Buyer                              Date

_____ N/A
Buyer                              Date

## 15. Acknowledgment of New Jersey Registration

☐ The Vehicle is a used passenger motor vehicle and will be registered in New Jersey in the condition sold.

*[This area intentionally left blank.]*

## 16. Waiver of Used Vehicle Sale Dealer/Seller's Obligation

Buyer does not waive the Dealer/Seller Obligations unless signed below.

☐ **Buyer Waives the Dealer/Seller Obligations.** Buyer has read and understood the Dealer/Seller obligations under the New Jersey Motor Vehicle Certificate of Ownership Law. The Dealer/Seller has disclosed the below list of known defects. Buyer has reviewed the below list of known defects and acknowledges that the known defects may need to be resolved before a certificate of approval may be issued.

KNOWN DEFECTS: N/A _____

_____

Buyer WAIVES AND RELEASES the DEALER/SELLER OBLIGATIONS and accepts the motor vehicle with KNOWN DEFECTS.

_____ N/A
Buyer                              Date

_____ N/A
Buyer                              Date

_____ N/A
Buyer                              Date

## 17. Contract Index

| Issue | Section |
|---|---|
| Acknowledgment of New Jersey Registration | 15 |
| Additional Protections | 8 |
| Additional Terms of the Sales | 9 |
| Agreement to Provide Insurance | 10.3 |
| Assignment | 20 |
| Conditional Delivery | 5 |
| Credit Insurance | 7.1 |
| Default | 9.7 |
| Definitions | 1.1 |
| Description of Property | 3 |
| Description of Trade-In | 4 |
| Documentary Service and Pre-Delivery Service | 11.2 |
| Duties Toward Property | 10.2 |
| Electronic Signature Acknowledgment | 13 |
| Gap Waiver or Gap Coverage | 10.4 |
| General Terms | 9.1 |
| Governing Law and Interpretation | 9.4 |
| Insurance Disclosures | 7 |
| Index | 17 |
| Itemization of Amount Financed | 6 |
| Name and Location | 9.5 |
| Notices | 11 |
| Obligations Independent | 9.9 |
| Payment | 1.3 |
| Prepayment | 9.2 |
| Preservation of Consumers' Claims & Defenses | 11.1 |
| Property Insurance | 7.2 |

Retail Installment Contract-NJ  Not for use in transactions secured by a dwelling.
©2018 The Reynolds and Reynolds Company
THERE ARE NO WARRANTIES, EXPRESS OR IMPLIED, AS TO CONTENT OR FITNESS FOR PURPOSE OF THIS FORM. CONSULT YOUR OWN LEGAL COUNSEL.

RSSIMVLFLZNJ 11/1/2018
Bankers Systems®
Page 6 of 7
Customers Initial Here

## 17. Contract Index Continued

| | |
|---|---|
| Purchase of Property | 1.2 |
| Remedies | 9.8 |
| Returned Payment Charge | 9.3 |
| Sales Agreement | 1 |
| Security | 10.1 |
| Security Agreement | 10 |
| Signature Notices | 18 |
| Signatures | 19 |
| Single-Interest Insurance | 7.3 |
| Telephone Monitoring and Calling | 9.6 |
| Third Party Agreement | 12 |
| Truth-In-Lending Disclosure | 2 |
| Used Car Buyer Notice | 11.3 |
| Used Vehicle Sale Dealer/Seller's Obligation | 14 |
| Waiver of Used Vehicle Sale Dealer/Seller's Obligation | 16 |
| Warranty | 9.10 |

## 18. Signature Notices

*The Annual Percentage Rate may be negotiable with the Seller. The Seller may assign this Contract and retain its right to receive a part of the Finance Charge.*

## 19. Signatures

**Entire Agreement.** Your and our entire agreement is contained in this Contract. There are no unwritten agreements regarding this Contract. Any change to this Contract must be in writing and signed by you and by us.

By: EUGENE ROBERT MCCLURE JR        Date  08/05/2025

By: ANNA MAE MCCLURE        Date  08/05/2025

By: N/A        Date  N/A

## NOTICE TO RETAIL BUYER

Do not sign this Contract in blank.

You are entitled to a copy of the Contract at the time you sign.

Keep it to protect your legal rights.

By signing below, you agree to the terms of this Contract. You received a copy of this Contract and had a chance to read and review it before you signed it.

**Buyer**

By:  EUGENE ROBERT MCCLURE JR        Date  08/05/2025

By:  ANNA MAE MCCLURE        Date  08/05/2025

By:  N/A        Date  N/A

**Seller**

By:  Dylans RV Center        Date  08/05/2025

**20. Assignment.** This Contract and Security Agreement is assigned to M & T Bank
PO Box 37258, Baltimore, MD 21297
the Assignee, phone 877-686-8424 , This assignment is made under the terms of a separate agreement made between the Seller and Assignee.

☐ This Assignment is made with recourse.

**Seller**

By:  Dylans RV Center        Date  08/05/2025

Retail Installment Contract-NJ  Not for use in transactions secured by a dwelling.
©2016 The Reynolds and Reynolds Company
THERE ARE NO WARRANTIES, EXPRESS OR IMPLIED, AS TO CONTENT OR FITNESS FOR PURPOSE OF THIS FORM. CONSULT YOUR OWN LEGAL COUNSEL.

RSSIMVLFLZNJ 11/1/2016
Bankers Systems®
Page 7 of 7
Customers Initial Here

# <u>C</u>

| **New Jersey** | | **Buyer's Order** | | 11252449 |
|---|---|---|---|---|

| Dealer/Seller Name and Address | Buyer Name, Address, Phone, Email | Buyer Name, Address, Phone, Email | Buyer Name, Address, Phone, Email |
|---|---|---|---|
| Dylans RV Center<br>2190 Delsea Dr.<br>Sewell, NJ 08080 | EUGENE ROBERT MCCLURE JR<br>328 TAYLOR AVE<br>VINELAND, NJ 08360<br>609-774-1485 | ANNA MAE MCCLURE<br>328 TAYLOR AVE<br>VINELAND, NJ 08360<br>609-774-1485 | N/A |

| Date | Stock No. | | Salesperson |
|---|---|---|---|
| 08/05/2025 | 105688 | | Andrew Pandolfi |

| App. No. | Contract No. |
|---|---|
| 12204241/20252171639590 | 11252449 |

**Definitions.** *Contract* refers to this *Buyer's Order*. *Buyer, you* and *your* refer to each Buyer signing this Contract. *Seller, we, us* and *our* refer to the Dealer/Seller. *Vehicle* means the motor vehicle described in the *Vehicle Information* section. *Trade-in Vehicle(s)* refers to each vehicle described in the *Trade-in Information* section that is being traded to the Dealer/Seller as part of this transaction. *Manufacturer* refers to the entity that is the maker of the Vehicle.

**Agreement to Purchase.** You agree to buy the Vehicle from us for the amount stated in this Contract. You agree to sign any documents necessary to complete this transaction. You may only cancel this contract according to the conditions described in the Manufacturer or Trade-in sections. If you refuse to take delivery of the Vehicle, we can keep any deposits you have made to us. In addition, refusal to take delivery will make you responsible for our damages, expenses, and attorney's fees in connection to this Contract unless prohibited by the law of New Jersey. If you do not breach this Contract, any deposits will be used toward the purchase of the Vehicle.

### Vehicle Information     ☒ New   ☐ Used   ☐ Demo   ☐ Other

| Year<br>2025 | Make<br>LEPRECHAUN | Model<br>260DS FORD MC | Style<br>ClassC | VIN<br>1FDXE4FNXSDD28866 |
|---|---|---|---|---|
| Lic. No. | Color<br>OCEAN FBP | | Odometer Reading<br>763 | |
| Other<br>N/A | | | | |

### Insurance Information

Buyer has arranged the following insurance on the motor vehicle:

Insurance Company _____

Policy No. _____  Phone _____

### Trade-In Information

| **Trade-in 1** | | **Trade-in 2** | |
|---|---|---|---|
| Year | Make | Year | Make |
| Model | Style | Model | Style |
| Lic. No. | Color | Lic. No. | Color |
| VIN | Odometer | VIN | Odometer |
| Lienholder Name | | Lienholder Name | |
| Address | Phone | Address | Phone |

| Trade-in Allowance<br>$ | Payoff<br>$ | Payoff good through | Trade-in Allowance<br>$ | Payoff<br>$ | Payoff good through |
|---|---|---|---|---|---|

### Trade-In Terms

**Trade-in Vehicle.** You will transfer title to the Trade-in Vehicle to us free of all liens except those noted on this Contract. You give permission to us to contact the lienholder(s) for payoff information. If the payoff information that we obtain from the lienholder(s) differs from the amount disclosed in this Contract, you agree to pay the difference to us if the actual amount of the balance owed is greater than the amount listed in this Contract. If the actual amount of the balance owed is less than the amount listed in this Contract, we will pay you the difference.

If you do not deliver the Trade-in Vehicle to us at the time of the initial appraisal, we may reappraise the Trade-in Vehicle when it is delivered to us. If the reappraised value is lower than the original appraisal, you can cancel this transaction as long as you have not taken delivery of the Vehicle.

You represent that (a) you are the sole true and lawful owner of the Trade-in Vehicle, (b) the Trade-in Vehicle has never been titled under any state or federal brand such as "defective," "rebuilt," "salvage," "flood," etc, (c) unless you have disclosed otherwise in an odometer statement, the mileage of the Trade-in Vehicle shown in this Contract is the actual mileage of the Trade-in Vehicle, (d) all emission control equipment is on the Trade-in Vehicle and is in satisfactory working order, and (e) the frame on the Trade-in Vehicle has not been damaged by collision or other event and repaired. If any of these representations are not true, we may elect to cancel the transaction. We may also choose to reappraise the Trade-in Vehicle and adjust the Total Balance Due instead of canceling the transaction. You agree to immediately pay us the difference.

Buyers Order-NJ
©2024 The Reynolds and Reynolds Company
THERE ARE NO WARRANTIES, EXPRESS OR IMPLIED, AS TO CONTENT OR FITNESS FOR PURPOSE OF THIS FORM. CONSULT YOUR OWN LEGAL COUNSEL.

BUY-ORDER-NJ 8/1/2024
Bankers Systems®
Page 1 of 4

11252449

## Itemization of Sale

| | | |
|---|---|---|
| 1. Vehicle Sales Price | $ | 130,895.00 |
| **Taxes** | | |
| 2. Sales Tax | $ | 9,862.90 |
| 3. Other Tax N/A | $ | 0.00 |
| 4. Subtotal (Add lines 1 through 3) | $ | 140,757.90 |
| **Title, License & Other Fees** | | |
| 5. Certificate of Title Fee | $ | 450.00 |
| 6. License and/or Registration Fee | $ | 0.00 |
| 7. Tire Fee | $ | 9.00 |
| 8. Luxury and Fuel Inefficient Vehicle Surcharge | $ | 0.00 |
| 9. N/A | $ | 0.00 |
| 10. N/A | $ | 0.00 |
| 11. N/A | $ | 0.00 |
| 12. N/A | $ | 0.00 |
| 13. N/A | $ | 0.00 |
| 14. Total Documentary Service Fees Paid to Seller* | $ | 0.00 |
| 15. Total Pre-Delivery Service Fees Paid to Seller | $ | 0.00 |
| 16. Total Other Fees (Add lines 5 through 15) | $ | 459.00 |
| **Additional Items** | | |
| 17. Vehicle Service Contract paid to Dealer Admin Services | $ | 11,995.00 |
| 18. GAP paid to Tire Shield | $ | 1,500.00 |
| 19. Paint Protection paid to Dealer Admin Services | $ | 2,995.00 |
| 20. Roadside Assistance paid to Vehicle Administrative Services | $ | 1,295.00 |
| 21. Tire & Wheel Protection paid to Dealer Admin Services | $ | 1,295.00 |
| 22. Documentation Fee paid to Seller | $ | 399.00 |
| 23. N/A | $ | 0.00 |
| 24. N/A | $ | 0.00 |
| 25. N/A | $ | 0.00 |
| 26. N/A | $ | 0.00 |
| 27. Total Additional Items (Add lines 17 through 26) | $ | 19,479.00 |
| 28. Cash Sale Price (Add lines 4+16+27) | $ | 160,695.90 |
| 29. Trade-in Allowance | $ | 0.00 |
| 30. Trade-in Payoff Balance | $ | 0.00 |
| 31. Net Trade Allowance (Line 29-30, if negative, enter $0 here and enter amount on line 40.) | $ | 0.00 |
| 32. Deposit | $ | 0.00 |
| 33. Cash Down Payment | $ | 15,000.00 |
| 34. Manufacturer's Rebate | $ | 0.00 |
| 35. Other Credit N/A | $ | 0.00 |
| 36. Other Credit N/A | $ | 0.00 |
| 37. Deferred Down Payment | $ | 0.00 |
| 38. Other Down Payment N/A | $ | 0.00 |
| 39. Total Credits (Add lines 31 through 38) | $ | 15,000.00 |
| 40. Trade-in Balance Owing (see line 31) | $ | 0.00 |
| 41. Lease Balance Owing | $ | 0.00 |
| 42. Total Balance Due (Line 28-39+40+41) | $ | 145,695.90 |

We may retain or receive a portion of any amounts paid to others.

\* No governmental entity requires the automotive dealer perform any documentary service.

## Documentary Service and Pre-Delivery Service

**Documentary Service Fee.** You agree to pay Seller a Documentary Service Fee of $ 0.00 for Preparation and Processing:

| | | |
|---|---|---|
| i. of License, Registration and Title | $ | 0.00 |
| ii. of N/A | $ | 0.00 |
| iii. of N/A | $ | 0.00 |
| iv. of N/A | $ | 0.00 |

**Pre-Delivery Service Fee.** You agree to pay Seller a Pre-Delivery Service Fee of $ 0.00 for the following services:

| | | |
|---|---|---|
| i. of N/A | $ | 0.00 |
| ii. of N/A | $ | 0.00 |
| iii. of N/A | $ | 0.00 |
| iv. of N/A | $ | 0.00 |

A Documentary Service fee and Pre-Delivery Service fee are not official fees and are not required by law. "Documentary service" means, but is not limited to, the preparation and processing of documents in connection with the transfer of license plates, registration, or title, and the preparation and processing of other documents relating to the sale of a motor vehicle. Documentary Service Fees MUST BE ITEMIZED ABOVE such that the price of each prepared document is disclosed. "Pre-delivery service" means, but is not limited to, items that are often described or labeled as dealer preparation, vehicle preparation, pre-delivery handling and delivery, or any other service of similar import. Pre-Delivery Service Fees MUST BE ITEMIZED ABOVE and do not include any services for which the dealer receives compensation from any other party.

## Additional Terms

**Governing Law and Interpretation.** This Contract is governed by the law of New Jersey and applicable federal law and regulations.

If any section or provision of this Contract is not enforceable, the other terms will remain part of this contract. You authorize us to correct any clerical error or omissions in this Contract or in any related document.

**Manufacturer.** We are not an agent of the Manufacturer. The Manufacturer can change the price, design or standard features of the Vehicle at any time without notice. If we cannot obtain the Vehicle from the Manufacturer at the price in effect as of the date of this Contract, or if we cannot obtain the agreed upon product from the Manufacturer, you or we can cancel this Contract.

If you cancel this Contract under the terms of this section, we will refund to you any amounts you have paid to us. If you have delivered a Trade-in Vehicle to us, we will return it to you. If we have already sold the Trade-in Vehicle, we will pay you the amount we received for the sale after adjusting for any payoff we made to a lienholder and costs for repair and reconditioning, if any.

**Name and Location.** Your name and address indicated on page 1 are your exact legal name and your principal residence.

**Insurance.** You represent that the insurance information you have given us is accurate.

**Retail Installment Sales Contract.** In the event that you and we enter into a retail installment sales contract for the financing of the purchase of the Vehicle, the terms of the retail installment sales contract will control any inconsistencies between this Contract and the retail installment sales contract.

**Returned Payment Charge.** If you make any payment required by this Contract that is returned or dishonored, you agree to pay a fee of $20.00.

Buyers Order-NJ
©2024 The Reynolds and Reynolds Company
THERE ARE NO WARRANTIES, EXPRESS OR IMPLIED, AS TO CONTENT OR
FITNESS FOR PURPOSE OF THIS FORM. CONSULT YOUR OWN LEGAL COUNSEL.

BUY-ORDER-NJ 6/1/2024
Bankers Systems®
Page 2 of 4

11252449

**Telephone Monitoring and Calling.** You agree that we may from time to time monitor and record telephone calls made or received by us or our agents regarding your account to assure the quality of our service. In order for us to service the account or to collect any amounts you may owe, and subject to applicable law, you agree that we may from time to time make calls and send text messages to you using prerecorded/artificial voice messages or through the use of an automatic dialing device at any telephone number you provide to us in connection with your account, including a mobile telephone number that could result in charges to you.

**Vehicle Condition.** You understand the Vehicle may have undergone prior mechanical or body repair. The damage, necessitating repair may have occurred during manufacture, transit or while in the possession of prior owner or operators.

## Vehicle Inspection

By initialing below, you represent that you have thoroughly inspected the Vehicle and approve and accept it. You had an opportunity to have the Vehicle inspected by a third party of your choice and at your expense. You are purchasing the Vehicle based on your inspection. You are not relying on any opinion, statement, or promise of the Seller or its employees that is not contained in the written agreements you are signing today.

Buyer's Initials

_____    _____    ___N/A___

## Warranty Information

☐ **Vehicle Manufacturer Warranty.** The Vehicle is subject to an express warranty made by the Manufacturer. It is a standard written manufacturer's warranty and made by the Manufacturer and not by the Seller. By signing this Contract, each Buyer acknowledges receiving a copy of it.

☐ **Dealer Warranty.** The Vehicle is subject to an express written warranty made by the Seller. By signing this Contract, each Buyer acknowledges receiving a copy of it.

The Seller is responsible to fulfill any separate written warranty made by Seller on its own behalf. If the Manufacturer or another supplier provides a warranty, they are responsible for satisfying its terms, NOT the Seller.

If neither box above is checked under Warranty Information the Used Vehicle is sold AS-IS and the following paragraph applies:

**THIS VEHICLE IS SOLD "AS-IS" WITH ALL FAULTS, WITHOUT ANY WARRANTY, EITHER EXPRESS OR IMPLIED AND BUYER IS SOLELY RESPONSIBLE FOR COST OF ANY REPAIRS TO THE VEHICLE. THE SELLER EXPRESSLY DISCLAIMS ALL WARRANTIES, EITHER EXPRESS OR IMPLIED, INCLUDING ANY IMPLIED WARRANTIES OF MERCHANTABILITY AND FITNESS FOR A PARTICULAR PURPOSE. BUYER ASSUMES ALL RISKS AND RESPONSIBILITIES.**

## Used Car Buyer Notice

If you are buying a used vehicle: The information you see on the window form for this vehicle is part of this contract. Information on the window form overrides any contrary provisions in the contract of sale.

**(Spanish Translation) Si compra un vehículo usado:** La información que ve adherida en la ventanilla forma parte de éste contrato. La información contenida en el formulario de la ventanilla prevalece por sobre toda otra disposición en contrario incluida en el contrato de compraventa.

## Notices

☐ **Trade-in Balance Due.** You understand that the balance owed on the Trade-in exceeds the Trade-in Allowance and that as a result the Total Balance Due has been increased by $ _0.00_____ of negative equity.

☐ **Lease Balance Due.** You understand the Total Balance Due includes the amount of $ _0.00_____ for a lease balance due from a prior transaction.

Buyer's Initials

_____    _____    ___N/A___

## Used Vehicle Sale Dealer/Seller's Obligation

**Explanation of Dealer/Seller Obligations.** The Dealer/Seller has the following obligations under N.J.S.A. 39:10-26 through 39:10-30:

No Dealer/Seller may sell a used passenger motor vehicle to be registered in New Jersey unless the Vehicle meets the standards for the issuance of a certificate of approval. If the used passenger motor vehicle has any defect that does not allow for the issuance of a certificate of approval, the Dealer/Seller shall make, or cause to be made, all necessary repairs without charge, or shall return the full purchase price to the Buyer; provided that such defect or defects are not the result of the Buyer's own act.

Buyer acknowledges they have been informed of Dealer/Seller's obligation above. Buyer agrees to present the used passenger motor vehicle for inspection within 14 days from the date of delivery of such vehicle.

Buyer **EUGENE ROBERT MCCLURE JR**

Buyer **ANNA MAE MCCLURE**

**N/A**_____
Buyer **N/A**

## Acknowledgement of New Jersey Registration

☐ The Vehicle is a used passenger motor vehicle and will be registered in New Jersey in the condition sold.

Buyers Order-NJ
©2024 The Reynolds and Reynolds Company
THERE ARE NO WARRANTIES, EXPRESS OR IMPLIED, AS TO CONTENT OR
FITNESS FOR PURPOSE OF THIS FORM. CONSULT YOUR OWN LEGAL COUNSEL.

BUY-ORDER-NJ 8/1/2024
Bankem Systems®
Page 3 of 4

11252449

## Waiver of Used Vehicle Sale Dealer/Seller's Obligation

Buyer does not waive the Dealer/Seller Obligations unless signed below.

☐ **Buyer Waives the Dealer/Seller Obligations.** Buyer has read and understood the Dealer/Seller obligations under the New Jersey Motor Vehicle Certificate of Ownership Law. The Dealer/Seller has disclosed the below list of known defects. Buyer has reviewed the below list of known defects and acknowledges that the known defects may need to be resolved before a certificate of approval may be issued.

KNOWN DEFECTS: _____

_____

Buyer WAIVES AND RELEASES the DEALER/SELLER OBLIGATIONS and accepts the motor vehicle with KNOWN DEFECTS.

N/A
Buyer N/A

N/A
Buyer N/A

N/A
Buyer N/A

## Signatures

This agreement is not binding upon the Dealer/Seller until it is signed by an authorized representative of the Dealer/Seller.

You represent that you are of legal age and have legal capacity to enter into this Contract.

☐ **A separate Arbitration Agreement between you and us is part of this Contract.**

You received a copy of this Contract and by signing below, you agree to the terms on all pages of this Contract and acknowledge you had a chance to read and review it before you signed it.

**Entire Agreement.** Your and our entire agreement is contained in this Contract. There are no unwritten agreements regarding this Contract.

Buyer EUGENE ROBERT MCCLURE JR       08/05/2025   Date

Buyer ANNA MAE MCCLURE       08/05/2025   Date

Buyer N/A       N/A   Date

Dealer/Seller Dylans RV Center       08/05/2025   Date

Buyers Order-NJ
©2024 The Reynolds and Reynolds Company
THERE ARE NO WARRANTIES, EXPRESS OR IMPLIED, AS TO CONTENT OR FITNESS FOR PURPOSE OF THIS FORM. CONSULT YOUR OWN LEGAL COUNSEL.

BUY-ORDER-NJ 6/1/2024
Bankers Systems
Page 4 of 4

**NORRIS McLAUGHLIN, P.A.**
Nicholas A. Duston, Esq. (I.D. #103562014)
400 Crossing Boulevard, 8th Floor
Bridgewater, New Jersey 08807
908-722-0700
*Attorneys for Defendant Dylan's RV Center*

| | | |
|---|---|---|
| | : | |
| EUGENE MCCLURE AND ANNA MAE MCCLURE, | : | SUPERIOR COURT OF NEW JERSEY LAW DIVISION—CUMBERLAND COUNTY |
| | : | |
| Plaintiffs, | : | |
| | : | Docket No.: CUM-L-000708-25 |
| vs. | : | |
| | : | Civil Action |
| DYLAN'S RV CENTER, JACOB HELMS, ANDY, ABC DEALER BOND COMPANY, M&T BANK, ABC CORP and JANE AND JOHN DOES 1-10 | : | **NOTICE OF FILING OF NOTICE OF REMOVAL** |
| | : | |
| Defendants. | : | |

To:   Civil Division
      Superior Court of New Jersey, Cumberland County
      Cumberland County Courthouse
      60 West Broad Street
      Bridgeton, New Jersey 08302

      Aaron M. Harmaty, Esq. (ID #3018322019)
      THE LAW OFFICE OF AARON HARAMATY, LLC
      21 Van Doren Ave.
      Chatham, NJ 07928
      *Attorneys for Plaintiffs*

**PLEASE TAKE NOTICE** that Defendant Campers Inn RV of Sewell, Inc. d/b/a Dylan's

RV Center, by and through its undersigned counsel, filed a Notice of Removal in the United States

District Court for the District of New Jersey on November 7, 2025.

**PLEASE TAKE FURTHER NOTICE** a true and correct copy of the original Notice of

Removal, which was filed in the United States District Court for the District of New Jersey is

attached hereto (without exhibits) as Exhibit A and has been served along with this notice on

counsel for Plaintiffs.

**PLEASE TAKE FURTHER NOTICE** that pursuant to 28 U.S.C. § 1446(d), the Superior

Court of New Jersey shall proceed no further unless and until this case is remanded.

**NORRIS MCLAUGHLIN, P.A.**
*Attorneys for Defendant Dylan's RV Center*

/s/ *Nicholas Duston*
Nicholas A. Duston, Esq.

Dated: November 7, 2025

# EXHIBIT A

**NORRIS McLAUGHLIN, P.A.**
Nicholas A. Duston, Esq. (I.D. #103562014)
400 Crossing Boulevard, 8th Floor
Bridgewater, New Jersey 08807
908-722-0700
*Attorneys for Defendant Dylan's RV Center*

| | | |
|---|---|---|
| EUGENE MCCLURE AND ANNA MAE MCCLURE, | : | UNITED STATES DISTRICT COURT FOR THE DISTRICT OF NEW JERSEY |
| | : | |
| Plaintiffs, | : | CIVIL ACTION NO.: |
| | : | |
| vs. | : | ELECTRONICALLY FILED |
| | : | |
| DYLAN'S RV CENTER, JACOB HELMS, ANDY, ABC DEALER BOND COMPANY, M&T BANK, ABC CORP and JANE AND JOHN DOES 1-10. | : | **NOTICE OF REMOVAL** |
| | : | |
| Defendants. | : | |

Pursuant to 28 U.S.C. §§ 1331, 1367, 1441, and 1446, Defendant Campers Inn RV of Sewell, Inc. d/b/a Dylan's RV Center ("Dylan's") hereby removes this action, with full reservation of all defenses, which had been pending in the Superior Court of New Jersey, Law Division, Cumberland County, Docket No. CUM-L-000708-25 (the "Subject Action"), to the United States District Court for the District of New Jersey, and state as follows:

1.      Complaint.      On or about October 9, 2025, Plaintiffs Eugene McClure ("Mr. McClure") and Anna Mae McClure ("Mrs. McClure") (together "Plaintiffs") filed a Complaint against Dylan's, Helms, Pandolfi, and M&T Bank, and various fictitious individuals and entities. Plaintiffs' Complaint asserted claims that include alleged violations of the Truth in Lending Act. See Complaint ("Compl."), ¶¶ 94-101. Specifically, Plaintiffs asserted claims for alleged Violations of the Truth in Lending Act "in contravention of 15 U.S.C. 1635(f)." (Compl., ¶ 100). Accordingly, in addition to various state law claims, the claims asserted against the

Removing Defendant in Plaintiffs' Complaint are based in federal law and raise a federal question. A copy of the Summons and Complaint which constitute all process, pleadings, and orders served upon Removing Defendant Dylan's are attached as **Exhibit A**.

2. <u>Basis for Jurisdiction in this Court</u>. This Court has federal question jurisdiction over this matter under 28 <u>U.S.C.</u> § 1331 which provides that "[t]he district courts shall have original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States." This Court has supplemental jurisdiction over Plaintiffs' state law claims under 28 <u>U.S.C.</u> § 1367 which provides that "the district courts shall have supplemental jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution." <u>See also</u> <u>United Mine Workers of America v. Gibbs</u>, 383 U.S. 715 (1966).

3. <u>Consent</u>. The Removing Defendant consents to removal. Additionally, M&T Bank has informed counsel it consents. Jacob Helms and Andy Pandolfi do not require consent for removal because, upon information and belief, those individuals have not been served to date. The consent of Jacob Helms and Andy Pandolfi will be obtained if and when it becomes necessary. Upon information and belief, no other defendants have been served as of the filing of this Notice of Removal, and the New Jersey Superior Court docket does not reflect that any other defendants have been served. The consent of defendants who have not been properly served is not required for removal. 28 <u>U.S.C.</u> §1446(b)(2)(A).

4. <u>Notice Given</u>. The Removing Defendant will file a true and correct copy of this Notice of Removal with the Clerk of the Superior Court of New Jersey, Law Division, Union County, and serve same as set forth in the Declaration of Service submitted herewith. <u>See</u> 28 <u>U.S.C.</u> §1446(d).

5.      Removal is Timely.  This Notice of Removal is signed pursuant to Fed. R. Civ. P. 11 and is timely filed within 30 days after the filing of the Complaint on October 9, 2025, meaning it is necessarily within 30 days of the Removing Defendant's receipt of a copy of Plaintiff's Complaint.  See 28 U.S.C. §1446(b).

6.      Pleadings and Process.   As required by 28 U.S.C. §1446(a), the Removing Defendant has attached as **Exhibit A** to this Notice of Removal "a copy of all process, pleadings, and orders served upon" it in the Subject Action.

7.      Prerequisites.  The prerequisites for removal under 28 U.S.C. § 1441 have been met.

8.      Venue.  Removal to the United States District Court for the District of New Jersey is appropriate because the Subject Action is being removed from the Superior Court of New Jersey, Cumberland County, which is located within the District of New Jersey.

9.      Defenses. By removing the Subject Action to this Court, the Removing Defendant does not waive any defenses available to it.

10.     If any question arises as to the propriety of the removal of the Subject Action, the Removing Defendant respectfully requests the opportunity to present a brief and oral argument in support of its position that this case is removable.

WHEREFORE, the Removing Defendant respectfully requests that this Notice of Removal be filed; that the Subject Action in the Superior Court of New Jersey, Union County, be removed to this District Court; and that no further proceedings be had in the Superior Court of New Jersey, Union County.

Dated: November 7, 2025          **NORRIS MCLAUGHLIN, P.A.**
                                 *Attorneys for Defendant Dylan's RV Center,*
                                 By: */s/ Nicholas Duston*
                                     Nicholas A. Duston, Esq.

**LOCAL RULE 11.2 CERTIFICATION**

Pursuant to Local Civil Rule 11.2, the undersigned hereby certifies that, at the time of filing the within, the undersigned is not aware that the matter in controversy is the subject of actions pending in any other court, or of any pending arbitration or administrative proceeding.

By: */s/ Nicholas Duston*
Nicholas A. Duston, Esq.

Dated: November 7, 2025

# EXHIBIT A

THE LAW OFFICE OF AARON HARMATY, LLC.
Aaron M. Harmaty, Esq., # 301832019
21 Van Doren Ave.
Chatham, NJ 07928
973-309-5492
aharmatylaw@gmail.com
Counsel for Plaintiffs,
Gene and Anna Mae McClure

| | |
|---|---|
| EUGENE MCCLURE AND ANNA MAE MCCLURE<br><br>Plaintiffs,<br><br>v.<br><br>DYLAN'S RV CENTER, JACOB HELMS, ANDY, ABC DEALER BOND COMPANY, M&T BANK, ABC CORP, and JANE AND JOHN DOES 1-10,<br><br>Defendants. | SUPERIOR COURT OF NEW JERSEY LAW DIVISION: CUMBERLAND COUNTY<br><br>Docket No. CMB-L-<br><br>Civil Action<br><br>SUMMONS |

YOU ARE HEREBY SUMMONED in a Civil Action in the Superior Court of New Jersey. The Plaintiffs, named above, have filed a lawsuit against you in the Superior Court of New Jersey. The complaint attached to this summons states the basis for this lawsuit. If you dispute this complaint, you or your attorney must file a written answer or motion and proof of service with the deputy clerk of the Superior Court in the County listed above within 35 days from the date you received this summons, not counting the date you received it. A directory of the addresses of each deputy clerk of the Superior Court is available in the Civil Division Management Office in the county listed above and online. If the complaint is one in foreclosure, then you must file your written answer or motion and proof of service with the Clerk of the Superior Court, Hughes Justice Complex, P.O. Box 971, Trenton, NJ 08625-0971. A filing fee payable to the Treasurer, State of New Jersey and a Completed Case Information Statement, available from the deputy clerk of the

Superior Court, must accompany your answer or motion when it is filed. You must also send a copy of your answer or motion to the Plaintiffs' attorney, whose name and address appear above. A telephone call will not protect your rights; you must file and serve a written answer or motion if you want the court to hear your defense.

If you do not file and serve a written answer or motion within 35 days, the court may enter default and judgment against you for the relief plaintiff demands, plus interest and costs of suit. If judgment is entered against you, the Sheriff may seize your money, wages, or property to pay all or part of the judgment.

If you cannot afford an attorney, you may call the Legal Services office in the county where you live or the Legal Services of New Jersey Statewide Hotline at 1-888-LSNJ-Law (1-888-576-5529). If you do not have an attorney and are not eligible for free legal assistance, you may obtain a referral to an attorney by calling one of the Lawyer Referral Services. A directory with contact information for local Legal Services offices and Lawyer Referral Services is available in the Civil Division Management Office in the County listed above and online.

*Michelle M. Smith*

MICHELLE M. SMITH
Clerk of the Superior Court

Dated: 10/9/2025

**Name and Address of Each Defendant to be served:**

Dylans RV Center
2190 Delsea Dr.,
Sewell, New Jersey 08080

Mr. Jacob Helms
Dylans RV Center
2190 Delsea Dr.,
Sewell, New Jersey 08080

Mr. Andy Pandolfi
Dylans RV Center
2190 Delsea Dr.,
Sewell, New Jersey 08080

M&T Bank
P.O. Box 37258
Baltimore, Maryland 37258

The Law Office of Aaron M. Harmaty
Attorneys for Plaintiffs, Eugene and Anna Mae
McClure

*Aaron M. Harmaty*
Aaron M. Harmaty, Esq.

Dated: 10/9/2025

THE LAW OFFICE OF AARON HARMATY, LLC.
Aaron M. Harmaty, Esq., # 301832019
21 Van Doren Ave.
Chatham, NJ 07928
973-309-5492
aharmatylaw@gmail.com
Counsel for Plaintiffs,
Gene and Anna Mae McClure

| | |
|---|---|
| EUGENE MCCLURE AND ANNA MAE MCCLURE<br><br>Plaintiffs,<br><br>v.<br><br>DYLANS RV CENTER, JACOB HELMS, ANDY, ABC DEALER BOND COMPANY, M&T BANK, ABC CORP. and JANE AND JOHN DOES 1-10,<br><br>Defendants. | SUPERIOR COURT OF NEW JERSEY LAW DIVISION: CUMBERLAND COUNTY<br><br>Docket No. CMB-L-<br><br>Civil Action<br><br>COMPLAINT AND JURY DEMAND |

WHEREFORE, Plaintiffs, Eugene and Anna Mae McClure, by their attorney, Aaron M. Harmaty, Esq., for actions against defendants, Dylan's RV Center, Andy, M&T Bank, ABC Dealer Bond Company, ABC Corps, and Jane and John Does 1-10, inclusive, and each of them; and Plaintiffs complaints and alleges as follows:

## JURISDICTION AND VENUE

1. This court has jurisdiction pursuant to the New Jersey Code of Civil Procedure.

2. Venue is proper in this Court because the McClures reside in Cumberland county.

## PRELIMINARY STATEMENT

1.      At all times hereinafter mentioned, the Plaintiffs, Eugene McClure and Anna Mae McClure (hereinafter referred to as "McClures"), are, and at all times mentioned, two elderly individuals tortiously injured by the Defendants and each of them.

2.      Defendant, Dylans RV Center, (hereinafter referred to as "Dylans"), is the entity from which the McClures bought the 2025 260DS Ford MC Leprechaun at issue in this litigation, is based on information and belief licensed to do business in the State of New Jersey, and at all times mentioned herein, was doing business at 2190 Delsea Dr., Sewell, NJ 08080.

3.      Defendant, Jacob Helms, (hereinafter referred to as "Mr. Helms"), is a sales manager and business manager for Dylans, and operated at all relevant times at 2190 Delsea Dr., Sewell, NJ 08080.

4.      Defendant, Andy Pandolfi (hereinafter referred to as "Andy"), is a sales representative and agent for Dylans, and operated at all relevant times at 2190 Delsea Dr., Sewell, NJ 08080.

5.      The above defendants, when referred to collectively, shall be the "Dylans defendants."

6.      Defendant, M&T Bank (hereinafter referred to as "M&T"), is the finance company which provided the loan which contributes to the damages for this matter, with an address of PO Box 37258, Baltimore, Maryland 37258.

7.      Plaintiffs are informed and believe and thereon allege that, at various times herein mentioned, each of the Defendants was the agent, servant, representative or employee of each of the remaining Defendants and, in engaging in certain acts hereinafter alleged, was acting within

the course and scope of said agency, service, representation, or employment and materially assisted the other Defendants.

8.      The McClures are ignorant of the true names and capacities, whether individual, corporate, associate or otherwise, of defendants sued herein as ABC Corp 1 through 10 and Jane and John Does 1 through 10, and therefore sues said defendants by such fictitious names.

9.      The McClures are informed and believe, and upon such information and belief, allege that each of the Defendants designated herein as an ABC and a Doe is legally responsible in some manner for the events and happenings referred to herein and caused the damages proximately thereby the McClures have hereinafter alleged.

10.     The McClures will seek leave of court to amend this Complaint to show the true names and capacities of the defendants designated herein as ABC and Does when the same have been ascertained.

## STATEMENT OF FACTS

11.     On information and belief, on or before August 5, 2025, Dylans and the Dylans defendants, and their agents received a recall notice from Forest River, the manufacturer of the 2025 260DS Ford MC Leprechaun line of vehicles.

12.     According to the notice, "[t]he fuel line extension may have been inconsistent crimps at the barb fittings of its connectors which can cause the fittings to become loose and detach."

13.     According to that same notice, "[i]f a fuel line detaches, this may allow fuel to openly spray. This condition may lead to fire and property damage."

14.     According to that notice, "[p]arts are not currently available for this recall."

15. That same notice also provides that "if you have already paid for a repair that is within the scope of this defect under recall, you still need to have this recall inspected and/or performed to ensure the correct parts and procedures were utilized."

16. On August 5, 2025, the McClures went to Dylans' location to look at an RV, as the McClures enjoyed camping in a camper, but wanted a more compact vehicle.

17. They had no intention of purchasing a vehicle when they entered the property.

18. The McClures were approached by a salesman called Andy.

19. The salesman directed the McClures to look at a certain line of vehicles, of which the 2025 260DS Ford MC Leprechaun was a part.

20. That vehicle, which was the one eventually bought which gives rise to this cause of action, was the last one shown.

21. Andy said the vehicle was top of the line; that it was new, better built, and better than earlier models.

22. At no point did Andy reference the fuel line issue in the recall notice.

23. Mr. McClure stated that he wanted to "sleep on it" with regards to making a decision, but based on Andy's representations, the McClures went to speak to Dylans' business manager, Mr. Helms.

24. Mr. Helms, convinced Mr. McClure to purchase gap insurance, and warranty insurance.

25. Included in that was a visa payment of $5,000 and a check for $10,000.

26. All told, including financing for M&T, the final purchase price was $307,260.00.

27. The loan term was for 240 months.

28.    Mr. McClure expressed concern at the price and duration of the loan, and likened it to purchasing a house.

29.    Mr. Helms stated that if the costs became too much, or the McClures got tired of the purchase, they could just return the vehicle, or "leave it on the side of the road," and M&T would pick up the vehicle, and M&T would not come after the McClures, that the loan "won't affect family, kids; they won't have to pay."

30.    Mr. McClure asked if it was true that M&T would not pursue money against the McClures or their family for the loan regarding the vehicle, and Mr. Helms re-affirmed that M&T Bank would not pursue them for the loan.

31.    At no point in their meeting did Mr. Helms reference the recall notice.

32.    After the representations by Andy regarding the quality of the vehicle, and Mr. Helms representations regarding how the loan would function, the McClures decided to purchase the vehicle.

33.    Before they were allowed to take the vehicle with them, they were told by agents of Dylans that they would have to leave the vehicle at the Dylans' property so that they could prepare it for use.

34.    Jane and John Doe agents of the Dylans defendants mentioned they needed to do some preparation work as part of the warranty to put a coating on the interior and exterior of the vehicle.

35.    While waiting for the vehicle, the McClures purchased several items to enhance the vehicle, such as approximately $2,000 in bedding, $300 for floor mats for the driving cab, $300 for a new door lock, and $5,00 for a carport for storing the motor home out of the weather.

36. On the Monday after purchase, the McClures returned to the dealership to pick up the vehicle.

37. The McClures were given a walkthrough of the vehicle by Jane and/or John Does, being shown how to use various devices in the vehicle.

38. Those Jane and John Does were agents of Dylans.

39. At no point during the walkthrough did the Jane and John Does alert the McClures to the issues involving the recall notice.

40. When the McClures took the vehicle home, they found that the slide-out was crooked.

41. The McClures brought the vehicle back to the dealership the next day, to fix the slide-out.

42. One of the mechanics at the dealership told the McClures to purchase two additional motors, to replace the motor in the slide outs as needed, as apparently the motor on the vehicle was known to break down.

43. Prior to this conversation, the McClures were not told about the issue involving the motor breakdown.

44. None of the mechanics told the McClures about the recall issue.

45. The mechanics did fix the slide out, the and the McClures took the vehicle home.

46. The McClures spent approximately $300 to purchase a door lock to fix the lock for the vehicle.

47. There was also an issue with the external television, which the McClures brought to the mechanic at the dealership who fixed it.

48. At that time, they were not alerted to the issue involving the recall issue.

49. That same week, the generator stopped functioning, so they brought it back to the dealership.

50. When they brought the vehicle back to the dealership, the mechanic stated that the reason why the generator was not working was because a part was missing, and the mechanic said he would take the part from another vehicle in order to make it work.

51. The McClures were not told about the recall issue at this time.

52. After that visit to the dealership, the vehicle's generator worked.

53. A week after that, the McClures received the recall notice from Forest River, the manufacturer of the vehicle.

54. That recall notice is attached to this complaint as exhibit A.

55. The McClures called Mr. Helms, asking to return the vehicle.

56. Mr. Helms refused to accept the vehicle.

57. The McClures contacted Forest River about the recall notice.

58. The representative of Forest River said that the recall notice should have arrived the same day that the McClures purchased the vehicle.

59. The McClures have kept the vehicle on their property as it is unsafe to drive.

## FIRST COUNT

## NEW JERSEY CONSUMER FRAUD ACT

60. The McClures repeat and reallege each and every allegation in the forgoing paragraphs as if fully set forth herein.

61. The commercial practices exemplified by the Dylans' defendants in this consumer transaction were fraudulent, deceptive, and unconscionable.

62.   Some of the fraudulent, deceptive, and unconscionable acts in this consumer transaction include, but are not limited to, the following:

a.   At the time of sale and thereafter, the Dylans' defendants knew or had reason to know that the vehicle in question had defects, such as the fuel line extension and its associated recall, the motor issue with the slide outs, and the generator issue, which they misrepresented to the McClures.

b.   At the time of sale and thereafter, the Dylans' defendants failed and/ or omitted to reveal material facts such as the ones outlined above, which tended to mislead Plaintiffs and such facts could not have been reasonably known by the Plaintiffs.

c.   At the time of sale and thereafter, the Dylans' defendants represented to the McClures that if they stopped paying the loan, the finance company would take the vehicle back and not go after the McClures or their family for the loan, which the Dylans' defendants knew or should have known was false.

d.   At the time of sale and thereafter, the Dylans' defendants represented the subject vehicle to be in good, merchantable quality, free of defects, when it was in fact not.

e.   At the time of sale and thereafter, the Dylans' defendants failed to reveal facts that were material to the transaction considering representations of fact made in a positive manner, including but not limited to the vehicle's mechanical problems.

f.   Failing to promptly refund the McClures' money after they rightfully revoked acceptance of the vehicle and finance loan.

g. At the time of sale and thereafter, causing the probability of confusion or misunderstanding as to the McClures' legal rights, obligations, and remedies to the transaction.

h. Failure to disclose any and all material defects with the vehicle.

63. These misrepresentations and knowing omissions led to the McClures purchasing the vehicle in amount of $307,260, including the financing and other warranties and insurance.

64. Based on the misrepresentations and knowing omissions of the Dylans' defendants, they purchased approximately an additional $7,600 in improvements for the vehicle.

65. Thus, the total ascertainable loss of the McClures is approximately $314,860.

66. But for the misrepresentations and knowing omissions of the Dylans' defendants, the McClures would not have purchased the vehicle.

**WHEREFORE**, Eugene and Anna Mae McClure demand judgement against the Dylans defendants for the following:

A. Any and all consequential damages.

B. Statutory treble damages pursuant to N.J.S.A. 56:8-19.

C. Reasonable attorney's fees and costs pursuant to N.J.S.A. 56:8-19.

D. Such other legal and equitable relief as this court deems just.

## SECOND COUNT

## COMMON LAW FRAUD

67. The McClures repeat and reallege each and every allegation contained in the forgoing paragraphs as if fully set forth herein.

68. The Dylans' defendants misrepresented and intentionally concealed material facts regarding the transaction as fully described in the above paragraphs.

69.     For example, they said the vehicle was "top of the line," better built, and good, even though there was a recall notice out regarding an issue involving the fuel line.

70.     They also knew of the fuel line issues as the recall notice, upon information and belief, was in their possession on the date of sale.

71.     They also knew about the motor issue for the slide outs, as the mechanic had advice regarding how to address it which the mechanic volunteered to the McClures.

72.     They also knew about the part missing from the generator, as the mechanic suggested it was common practice to take generator parts from other vehicles in the dealership's possession to fix the generator issue.

73.     They also knew, or had reason to know, that M&T would not merely abandon a claim for damages against the McClures or their family if the terms of the finance agreement were breached.

74.     The Dylans defendants, including Mr. Helms and Andy, made representations praising the "top of the line" quality of the vehicle, along with omitting these material and dangerous defects, and the representation regarding how M&T would pursue in order to induce the McClures into purchasing the vehicle.

75.     The McClures reasonably relied on all of the representations of the Dylans' defendants, as they had not purchased an RV before, the staff spoke glowingly of the quality of the vehicle, and Mr. Helms gave assurances to how M&T would treat a nonpayment of loan issue.

76.     The McClures suffered over $307,260 in losses as a result of their reliance on the representations of the Dylans' defendants.

**WHEREFORE**, the McClures demand judgement against the Dylans' defendants for the following:

A.   Actual and punitive damages.

B.   That the McClures be relieved of any and all responsibility to paying off the loan created by the Dylans' defendants' fraudulent activities.

C.   Such other legal and equitable relief as this court deems just.

### THIRD COUNT

### REVOCATION OF ACCEPTANCE

77.   The McClures repeat and reallege each and every allegation contained in the forgoing paragraphs as if fully set forth herein.

78.   The vehicle at issue falls within the definition of "consumer goods" as defined in N.J.S.A. 12A:9-102(23).

79.   The Plaintiffs' acceptance of the vehicle was induced by Defendants' representations and assurances as fully described in the above paragraphs.

80.   The discrepancies and non-conformities described in above paragraphs were latent, required an experienced eye, and were not readily discoverable by the McClures upon reasonable inspection.

81.   The discrepancies and non-conformities described in above paragraphs have deprived the McClures of the benefit of their bargain.

82.   By their communication with Mr. Helms, the McClures revoked acceptance.

83.   Through Mr. Helms, Dylans declined to honor the revocation.

84.   The vehicle is currently still in the possession and care of the Dylans' defendants.

85.   As fully described in the above paragraphs, the vehicle had mechanical problems that the Dylans' defendants failed to repair prior to sale to the McClures.

86. The Dylans' defendants have refused to cancel the sale or acknowledge Plaintiffs' revocation of acceptance.

87. The Plaintiffs have paid great sums of money and are substantially indebted for which Defendants have refused to return despite Plaintiffs' revocation of acceptance.

88. As a result of the non-conformity of the vehicle and Defendants' refusal to abide by Plaintiffs' revocation of acceptance, Plaintiffs have suffered from incidental and consequential damages.

**WHEREFORE**, the McClures demand judgement against the Dylans defendants for the following.

A. A declaratory judgement that all payments to the finance company M&T will be halted until this matter is resolved in order to prevent further damage.

B. Awarding actual damages under N.J.S.A. 12A:2-711 for the amount Plaintiffs have paid towards the purchase price of the vehicle.

C. Awarding incidental and consequential damages under N.J.S.A. 12A:2-713.

D. That the McClures be relieved of any and all responsibility to paying off the loan created by the Dylans' defendants' fraudulent activities.

E. Such other legal and equitable relief as this court deems just.

## FOURTH COUNT

## BREACH OF IMPLIED WARRANTY OF MERCHANTABILITY

89. The McClures repeat and reallege each and every allegation contained in forgoing paragraphs as if fully set forth herein.

90. Defendants are merchants concerning motor vehicles under N.J.S.A. 12A:2-104.

91. The vehicle was subject to implied warranties of merchantability under N.J.S.A.

12A: 2-314.

92. The vehicle had various known mechanical problems as outlined above, and as such, the vehicle was unmerchantable under N.J.S.A. 12A: 2-314.

93. Despite demand and opportunity, the Dylans defendants have failed to remedy their breach of implied warranty of merchantability.

**WHEREFORE**, the McClures demand judgement against the Dylans' defendants for the following:

A. A declaratory judgement that all payments to the finance company M&T will be halted until this matter is resolved in order to prevent further damage.

B. Awarding actual damages under N.J.S.A. 12A:2-711 for the amount Plaintiffs have paid towards the purchase price of the vehicle.

C. Awarding incidental and consequential damages under N.J.S.A. 12A:2-713.

D. That the McClures be relieved of any and all responsibility to paying off the loan created by the Dylans' defendants' fraudulent activities.

E. Such other legal and equitable relief as this court deems just.

## FIFTH COUNT

## VIOLATION OF TRUTH IN LENDING ACT

94. The McClures repeat and reallege each and every allegation contained in the forgoing paragraphs as if fully set forth herein.

95. Under the Truth in Lending Act, a creditor must make certain disclosures and avoid misrepresentations.

96. The Truth in Lending Act is a strict liability statute.

97.     The finance at issue was for an RV, which was for personal and family use, that was subject to a finance charge and payable by a written agreement in more than four installments.

98.     Upon information and belief, Dylans and M&T are regular extenders of credit.

99.     The payment schedule submitted does not state when specifically a payment is due, though it provides that payments are to be done monthly.

100.    Additionally, there is no notice regarding a right to recission, and the McClures' timely attempt to rescind was denied in contravention of 15 U.S.C. 1635(f).

101.    Mr. Helms' made representations, either on behalf of Dylans, that M&T would not pursue damages against the McClures for failure to make payments on the contract.

**WHEREFORE**, the McClures demand judgement against the Dylans' defendants for the following:

A.     Any and all actual consequential damages pursuant to 15 U.S.C. 1640.

B.     Statutory fees pursuant to 15 U.S.C. 1640

C.     Reasonable attorney's fees and costs pursuant to 15 U.S.C. 1640.

D.     That the McClures be relieved of any and all responsibility to paying off the loan created by the Dylans' defendants' fraudulent activities.

E.     Such other legal and equitable relief as this court deems just.

## SIXTH COUNT

## MOTOR VEHICLE COMMISSION BOND

102.    The McClures repeat and reallege each and every allegation contained in the forgoing paragraphs as if fully set forth herein.

103.   N.J.S.A. 56:8-77 requires motor vehicle dealers in the State of New Jersey to provide a $10,000 bond executed by a surety company authorized to transact business in the State of New Jersey by the Department of Insurance.

104.   The purpose of this bond is to ensure that motor vehicle dealers comply with the Consumer Fraud Act.

**WHEREFORE**, the McClures demand judgement against the Dylans defendants and ABC Dealer Bond Company for the following:

A.   Awarding the amount of the bond to the McClures in the event of a judgement being entered against the Dylans defendants.

B.   Such other legal and equitable relief as this court deems just.

## SEVENTH COUNT

## LIABILITY OF ABC CORPORATIONS 1-10 AND JANE AND JOHN DOES 1-10

105.   The McClures and reallege each and every allegation contained in the foregoing paragraphs as if fully set forth herein.

106.   To the extent possible, it is upon information and belief that ABC Corporations 1-10 and Jane and John Does assisted, committed, directed, or in any other way aided or abetted the activities outlined above which caused damages to the McClures.

**WHEREFORE**, the McClures demand judgement against the ABC Corporations 1-10 and Jane and John Does 1-10 for the following:

A.   Any and all relief listed earlier in this complaint.

B.   That the McClures be relieved of any and all responsibility to paying off the loan created by the Dylans' defendants' fraudulent activities.

C.   Such other legal and equitable relief as this court deems just.

The Law Office of Aaron M. Harmaty
Attorneys for Plaintiffs, Eugene and Anna Mae
McClure

*Aaron M. Harmaty*

Aaron M. Harmaty, Esq.

Dated: 10/9/2025

## DEMAND FOR JURY TRIAL

The McClures demand trial of this action by jury.

The Law Office of Aaron M. Harmaty
Attorneys for Plaintiffs, Eugene and Anna Mae
McClure

*Aaron M. Harmaty*

Aaron M. Harmaty, Esq.

Dated: 10/9/2025

## DEMAND FOR DISCOVERY OF COMMERCIAL GENERAL LIABILITY INSURANCE COVERAGE AS REQUIRED BY N.J.S.A. 56:8-142

Demand is made under Rule 4:10-2(b) that Defendants disclose to Plaintiffs whether or not there are any insurance or indemnification agreements or policies as required by N.J.S.A. 56:8-142 and N.J.A.C. 13A:45-17.12 under which any person or firm carrying on an insurance business may be liable to satisfy part or all of the judgment which may be entered in this action or to indemnify or reimburse for payments made to satisfy the judgment.

The Law Office of Aaron M. Harmaty
Attorneys for Plaintiffs, Eugene and Anna Mae
McClure

*Aaron M. Harmaty*

Aaron M. Harmaty, Esq.

Dated: 10/9/2025

## CERTIFICATION PURSUANT TO RULE 1:38-7(b)

I certify that confidential personal identifiers have been redacted from documents now submitted to the court, and will be redacted from all documents submitted in the future in accordance with R. 1:38-7(b).

The Law Office of Aaron M. Harmaty
Attorneys for Plaintiffs, Eugene and Anna Mae
McClure

*Aaron M. Harmaty*

Aaron M. Harmaty, Esq.

Dated: 10/9/2025

## DESIGNATION OF TRIAL COUNSEL

Trial counsel will be Aaron M. Harmaty, Esq.

The Law Office of Aaron M. Harmaty
Attorneys for Plaintiffs, Eugene and Anna Mae
McClure


*Aaron M. Harmaty*
Aaron M. Harmaty, Esq.

Dated: 10/9/2025

## CERTIFICATION: RULE 4:5-1

I certify that to the best of my knowledge there are no other actions, proceedings, or arbitrations pending or contemplated between these parties, and there no other parties who should be joined.

The Law Office of Aaron M. Harmaty
Attorneys for Plaintiffs, Eugene and Anna Mae
McClure


*Aaron M. Harmaty*
Aaron M. Harmaty, Esq.

Dated: 10/9/2025

## CERTIFICATION OF SERVICE

I certify that a copy of the Complaint was forwarded to the Sheriff of Gloucester county

and to Baltimore county for service to the defendants.

The Law Office of Aaron M. Harmaty
Attorneys for Plaintiffs, Eugene and Anna Mae
McClure


*Aaron M. Harmaty*

Aaron M. Harmaty, Esq.

Dated: 10/9/2025

The Law Office of Aaron Harmaty, LLC
21 Van Doren Avenue
Chatham, NJ 07928

October 9, 2025

**Via: Electronic File:**
Clerk of the Superior Court
60 West Broad Street
Bridgeton, New Jersey 08302

RE: Exhibits to Complaint, CUM-L-708-25

Dear Sir or Madam,

Our office represents the plaintiffs, Eugene and Anna Mae McClure, in the above referenced matter. In that connection, please see enclosed exhibits, which have been transmitted to the defendants in this matter along with this letter.

Please do not hesitate to reach out to me with any questions or concerns.

Regards,

/s/ Aaron M. Harmaty

Aaron M. Harmaty, Esq.

ENCL.
CC:
Dylans RV Center
Jacob Helms
Andy Pandolfi
M&T Bank



**A**

Case 1:26-cv-23679-KMW-EAP   Document 1   Filed 03/30/26   Page 143 of 307   PageID: 143



**IMPORTANT SAFETY RECALL INFORMATION**

Issued in Accordance With Federal Law



U.S. Department of Transportation



**FOREST RIVER**

Corporate Compliance PO Box 30 Middlebury, In 46540

NHTSA RECALL: 25V486
FOREST RIVER ID: 51-1965

EUGENE ROBERT MCCLURE JR
328 TAYLOR LANE Ave
VINELAND NJ 08360-4343

**INTERIM OWNER NOTIFICATION**

A SECONDARY NOTICE WILL FOLLOW
WHEN THE REMEDY IS AVAILABLE

August 2025

---

This Notice applies to your vehicle VIN listed above.

Dear Forest River Customer:

This notice is sent in accordance with the requirements of the United States' *National Traffic and Motor Vehicle Safety Act*. Forest River has decided that a defect, which relates to the motor vehicle safety, exists in certain 2025-2026 East to West Entrada, Forester, Sunseeker, Solera, Freelander, and Leprechaun Class C Motorhome Recreational Vehicles.

**WHAT IS THE DEFECT?**
The fuel line extension may have been inconsistent crimps at the barb fittings of its connectors which can cause the fittings to become loose and detach.

**EVALUATION OF RISK:**
If a fuel line detaches, this may allow fuel to openly spray. This condition may lead to fire and property damage.

**WHAT IS FOREST RIVER AND OUR DEALERSHIPS GOING TO DO?**
Parts are not currently available for this recall. We are working as quickly as possible to correct this condition. When parts are available, we will send you another letter asking you to take your vehicle to an authorized Forest River dealer for repair.

**WHAT IF YOU HAVE PREVIOUSLY PAID FOR REPAIRS TO YOUR VEHICLE FOR THIS PARTICULAR CONDITION?**
If you have already paid for a repair that is within the scope of this defect under recall, you still need to have this recall inspected and/or performed to ensure the correct parts and procedures were utilized. Additionally, you may be eligible for a refund of previously paid repairs. Refunds will only be provided for within the scope of this defect under recall. Please send the service invoice to the following address:

Forest River, Inc.
PO Box 30
Middlebury, IN 46540

**WHAT IF YOU NO LONGER OWN THIS VEHICLE?**
If you no longer own this vehicle and have the address for the current owner, please forward this letter to the new owner within 10 working days after the day in which the notice is received. You have received this letter because government regulations require that a notification is sent to the last known owner of record. Our records indicate that you are the current owner.
**PLEASE NOTE: FEDERAL LAW REQUIRES THAT ANY VEHICLE LESSOR RECEIVING THIS RECALL NOTICE MUST FORWARD A COPY OF THIS NOTICE TO THE LESSEE WITHIN TEN DAYS.**

**HELPFUL CONTACT INFORMATION**

| | | EMAIL |
|---|---|---|
| EAST TO WEST ENTRADA | (574) 264-6664 | |
| FORESTER, SOLERA, AND SUNSEEKER | (574) 206-7600 | motorizedservice@forestriverinc.com |
| LEPRECHAUN AND FREELANDER | (574) 825-8602 | |

Sincerely,
Forest River Inc.
Office of Corporate Compliance

☎  574-825-5821

Page 1 of 1

# <u>B</u>

NJ-102 11/1/2018

# Retail Installment Contract and Security Agreement

| Seller Name and Address | Buyer(s) Name(s) and Address(es) | Summary |
|---|---|---|
| Dylans RV Center<br>2190 Delsea Dr.<br>Sewell, NJ 08080 | EUGENE ROBERT MCCLURE JR<br>ANNA MAE MCCLURE<br>328 TAYLOR AVE<br>VINELAND, NJ 08360 | No. 12204241/20252171639690<br>Date 08/05/2025 |

☐ Business, commercial or agricultural purpose Contract.

## 1. Sales Agreement

**1.1 Definitions.** "Contract" refers to this Retail Installment Contract and Security Agreement. The pronouns "you" and "your" refer to each Buyer signing this Contract, and any guarantors, jointly and individually. The pronouns "we", "us" and "our" refer to the Seller and any entity to which it may transfer this Contract. "Vehicle" means each motor vehicle described in the *Description of Property* section. "Property" means the Vehicle and all other property described in the *Description of Property* and *Additional Protections* sections.

**1.2 Purchase of Property.** You agree to purchase the Property from Seller, subject to the terms and conditions of this Contract.

You have been given the opportunity to purchase the Property and described services for the Cash Price or the Total Sale Price. The "*Total Sale Price*" is the total price of the Property if you buy it over time.

**1.3 Payment.** You promise to pay us the principal amount of $ 145,695.90 _____ plus the time price differential accruing on the unpaid balance at the rate of 7.99 ___ % per year from the date of this Contract until maturity. After maturity, or after you default and we demand payment, we will earn the time price differential on the unpaid balance at 7.99 ___ % per year. You agree to pay this Contract according to the payment schedule and late charge provisions shown in the *Truth-In-Lending Disclosure*. You also agree to pay any additional amounts according to the terms and conditions of this Contract.

## 2. Truth-In-Lending Disclosure

| Annual Percentage Rate<br>The cost of your credit as a yearly rate. | Finance Charge<br>The dollar amount the credit will cost you. | Amount Financed<br>The amount of credit provided to you or on your behalf. | Total of Payments<br>The amount you will have paid when you have made all scheduled payments. | Total Sale Price<br>The total cost of your purchase on credit, including your down payment of $ 15,000.00 |
|---|---|---|---|---|
| 7.99 % | $ 146,564.10 | $ 145,696.90 | $ 292,260.00 | $ 307,260.00 |

**Payment Schedule.** Your payment schedule is:

| No. of Payments | Amount of Payments | When Payments are Due |
|---|---|---|
| 240 | $ 1,217.75 | Monthly, beginning on 9/4/2025 . |
| N/A | $ N/A | NOT APPLICABLE |
| N/A | $ N/A | NOT APPLICABLE |

**Security.** You are giving us a security interest in the Property purchased.

**Late Charge.** If a payment is more than 10 days late, you will be charged 5% of the unpaid amount of the payment due, except that if the Property is primarily for personal, family, or household use and the cash price is $10,000 or less, the charge for late payment will be $10.

**Prepayment.** If you pay off this Contract early, you will not have to pay a penalty.

**Contract Provisions.** You can see the terms of this Contract for any additional information about nonpayment, default, any required repayment before the scheduled date, and prepayment refunds and penalties.

## 3. Description of Property

| Year | Make | Model | Style | Vehicle Identification Number | Odometer Mileage |
|---|---|---|---|---|---|
| 2025 | LEPRECHAUN | 260DS FORD MC | ClassC | 1FDXE4FNXSDD28666 | 763 |

Other:

☒ New
☐ Used
☐ Demo

Retail Installment Contract-NJ Not for use in transactions secured by a dwelling.
©2018 The Reynolds and Reynolds Company
THERE ARE NO WARRANTIES, EXPRESS OR IMPLIED, AS TO CONTENT OR FITNESS FOR PURPOSE OF THIS FORM. CONSULT YOUR OWN LEGAL COUNSEL.

R33WVLFLZNJ 11/1/2018
Bankers Systems
Page 1 of 7
Customers Initial Here

## 4. Description of Trade-In

N/A

## 5. Conditional Delivery

☐ Conditional Delivery. If checked, you agree that the following agreement regarding securing financing ("Agreement") applies:

N/A

The Agreement is part of this Contract. The Agreement will no longer control after the assignment is accepted. If there are any conflicts between the terms of the Agreement and the Contract, the terms of this Contract will apply.

## 6. Itemization of Amount Financed

| | | |
|---|---|---|
| a. Vehicle Sales Price | $ | 130,895.00 |
| b. Sales Tax (reduced as required due to value of like trade-in) | $ | 9,862.90 |
| c. Other Tax N/A | $ | 0.00 |
| d. Other Tax N/A | $ | 0.00 |
| e. Other Tax N/A | $ | 0.00 |
| f. Cash Price (a+b+c+d+e) | $ | 140,757.90 |
| g. Trade-in allowance | $ | 0.00 |
| h. Less: Amount owing, paid to (includes o). N/A | $ | 0.00 |
| i. Net Trade-In (g-h; if negative, enter $0 here and enter the amount on line o) | $ | 0.00 |
| j. Cash payment | $ | 15,000.00 |
| k. Manufacturer's rebate | $ | 0.00 |
| l. Other down payment (describe) N/A | $ | 0.00 |
| m. Down Payment (i+j+k+l) | $ | 15,000.00 |
| n. Unpaid Cash Balance (f-m) | $ | 125,757.90 |
| o. Financed trade-in balance (see i) | $ | 0.00 |
| p. Paid to Public Officials – Certificate of Title Fee | $ | 450.00 |
| q. Paid to Public Officials – Tire Fee | $ | 9.00 |
| r. Paid to Public Officials – Supplemental Title Fee | $ | 0.00 |
| s. Paid to Public Officials – License and/or Registration Fee | $ | 0.00 |
| t. Paid to Public Officials N/A | $ | 0.00 |
| u. Paid to Public Officials N/A | $ | 0.00 |
| v. Insurance premiums paid to insurance company(ies) | $ | 0.00 |
| w. Documentary Service Fee Paid to Seller for Preparation and Processing: | | |
| 1. of License, Registration and Title | $ | 0.00 |
| 2. of N/A | $ | 0.00 |
| 3. of N/A | $ | 0.00 |
| 4. of N/A | $ | 0.00 |
| x. Pre-Delivery Service Fee Paid to Seller: | | |
| 1. for Pre-Delivery Handling and Delivery Service Fee | $ | 0.00 |
| 2. for N/A | $ | 0.00 |
| 3. for N/A | $ | 0.00 |
| 4. for N/A | $ | 0.00 |
| y. Service Contract, paid to: Dealer Admin Services | $ | 11,995.00 |
| z. To: GAP paid to Tire Shield | $ | 1,500.00 |
| aa. To: Paint Protection paid to Dealer Admin Services | $ | 2,995.00 |
| bb. To: Roadside Assistance paid to Vehicle Administrative Services | $ | 1,295.00 |
| cc. To: Tire & Wheel Protection paid to Dealer Admin Services | $ | 1,295.00 |
| dd. To: Documentation Fee paid to Seller | $ | 399.00 |
| ee. To: N/A | $ | 0.00 |
| ff. To: N/A | $ | 0.00 |
| gg. To: N/A | $ | 0.00 |
| hh. To: N/A | $ | 0.00 |
| ii. To: N/A | $ | 0.00 |
| jj. Total Other Charges/Amts Paid (o thru ii) | $ | 19,938.00 |
| kk. Principal Balance (n+jj) | $ | 145,695.90 |
| ll. Time Price Differential | $ | 146,564.10 |
| mm. Time Balance (kk+ll) | $ | 292,260.00 |
| nn. Prepaid Finance Charge | $ | 0.00 |
| oo. Amount Financed (n+jj-nn) | $ | 145,695.90 |
| pp. Time Sales Price (m+mm) | $ | 307,260.00 |

We may retain or receive a portion of any amounts paid to others.

## 7. Insurance Disclosures

**7.1 Credit Insurance.** Credit life insurance pays all or part of the amount you owe under this Contract if you die. This insurance pays only the amount you would owe if you paid all your payments on time. Credit disability pays all or part of the payments due under this Contract while you are disabled. This insurance does not cover any increase in your payment or in the number of payments. See the policies or certificates from the named insurance companies for the details of the coverage, these types of insurance provide, and for other terms and conditions. Credit life and credit disability (accident and health) are not required to obtain credit and are not a factor in the credit decision. We will not provide them unless you sign and agree to pay the additional premium. If you want such insurance, we will obtain it for you (if you qualify for coverage). We are quoting below only the coverages you have chosen to purchase.

**Credit Life**

☐ Single   ☐ Joint   ☒ None
Premium $ 0.00                    Term N/A
Insured N/A

**Credit Disability**

☐ Single   ☐ Joint   ☒ None
Premium $ 0.00                    Term N/A
Insured N/A

Your signature below means you want (only) the insurance coverage(s) quoted above. If "None" is checked, you have declined the coverage we offered.

By: EUGENE ROBERT MCCLURE JR          11/26/1959   DOB

By: ANNA MAE MCCLURE          11/12/1959   DOB

By: N/A          N/A   DOB

Retail Installment Contract-NJ  Not for use in transactions secured by a dwelling.
©2018 The Reynolds and Reynolds Company
THERE ARE NO WARRANTIES, EXPRESS OR IMPLIED, AS TO CONTENT OR FITNESS FOR PURPOSE OF THIS FORM. CONSULT YOUR OWN LEGAL COUNSEL.

RSSIMVLFLZNJ 11/1/2018
Bankers Systems
Page 3 of 7
Customers Initial Here

**7.2 Property Insurance.** You must insure the Property. You may purchase or provide the insurance through any insurance company reasonably acceptable to us. The collision coverage deductible may not exceed $ $500_____ . If you get insurance from or through us you will pay $ 0.00_____ for N/A _____ of coverage.

This premium is calculated as follows:

☐ $ 0.00_____ Deductible, Collision Cov.   $ 0.00_____
☐ $ 0.00_____ Deductible, Comp. Cov.   $ 0.00_____
☐ Fire-Theft and Combined Additional Cov.   $ 0.00_____
☐ N/A_____   $ 0.00_____

**THIS DOES NOT INCLUDE INSURANCE ON YOUR LIABILITY FOR BODILY INJURY OR PROPERTY DAMAGE. WITHOUT SUCH INSURANCE, YOU MAY NOT OPERATE THIS VEHICLE ON PUBLIC HIGHWAYS.**

**7.3 ☐ Single-Interest Insurance.** You must purchase single-interest insurance as part of this sale transaction. You may purchase the coverage from a company of your choice, reasonably acceptable to us. If you buy the coverage from or through us, you will pay $ N/A_____ for N/A_____ of coverage.

## 8. Additional Protections

You may buy any of the following voluntary protection plans. They are not required to obtain credit, are not a factor in the credit decision, and are not a factor in the terms of the credit or the related sale of the Vehicle. The voluntary protections will not be provided unless you sign and agree to pay the additional cost.

Your signature below means that you want the described item and that you have received and reviewed a copy of the contract(s) for the product(s). If no coverage or charge is given for an item, you have declined any such coverage we offered.

☒ **Service Contract**
Term            60 months _____
Price           $ 11,995.00 _____
Coverage        Parts & Labor Protection _____

☒ **Gap Waiver or Gap Coverage**
Term            72 months _____
Price           $ 1,500.00 _____
Coverage        G.A.P. Protection _____

☒ **Paint Protection**
Term            60 months _____
Price           $ 2,895.00 _____
Coverage        Appearance Protection _____

_(signature)_                                    08/05/2025
By: EUGENE ROBERT MCCLURE JR          Date

_(signature)_                                    08/05/2025
By: ANNA MAE MCCLURE                       Date

_____                                          N/A
By: N/A                                              Date

## 9. Additional Terms of the Sales Agreement

**9.1 General Terms.** The Total Sale Price shown in the *Truth-In-Lending Disclosure* assumes that all payments will be made as scheduled. The actual amount you will pay will be more if you pay late and less if you pay early.

We do not intend to charge or collect, and you do not agree to pay, any time price differential or fee that is more than the maximum amount permitted for this sale by state or federal law. If you pay a time price differential or fee that exceeds that maximum amount, we will first apply the excess amount to reduce the principal balance and, when the principal has been paid in full, refund any remaining amount to you.

You understand and agree that some payments to third parties as a part of this Contract may involve money retained by us or paid back to us as commissions or other remuneration.

You agree that the Property will not be used as a dwelling.

**9.2 Prepayment.** You may prepay this Contract in full or in part at any time without penalty. Any partial prepayment will not excuse any later scheduled payments. If we get a refund of any unearned insurance premiums that you paid, you agree that we may subtract the refund from the amount you owe, unless otherwise provided by law.

**9.3 Returned Payment Charge.** If you make any payment required by this Contract that is returned uncollected due to insufficient funds in your account, you agree to pay a fee of $20. If the Property is primarily for personal, family, or household use and the cash price is $10,000 or less, then the $20 fee applies only to payments made by check.

**9.4 Governing Law and Interpretation.** This Contract is governed by the law of New Jersey and applicable federal law and regulations.

If any section or provision of this Contract is not enforceable, the other terms will remain part of this Contract. You authorize us to correct any clerical error or omissions in this Contract or in any related document.

**9.5 Name and Location.** Your name and address set forth in this Contract are your exact legal name and your principal residence. You will provide us with at least 30 days notice before you change your name or principal residence.

**9.6 Telephone Monitoring and Calling.** You agree that we may from time to time monitor and record telephone calls made or received by us or our agents regarding your account to assure the quality of our service. In order for us to service the account or to collect any amounts you may owe, and subject to applicable law, you agree that we may from time to time make calls and send text messages to you using prerecorded/artificial voice messages or through the use of an automatic dialing device at any telephone number you provide to us in connection with your account, including a mobile telephone number that could result in charges to you.

**9.7 Default.** You will be in default on this Contract (except as prohibited by law) if you fail to perform any obligation that you have undertaken in this Contract.

If the Property is primarily for personal, family, or household use, and the cash price is $10,000 or less, if you default you agree to pay attorneys' fees of 20% of the first $500 and 10% on any excess of the amount due and payable under this Contract, if referred for collection to an attorney not a salaried employee of ours. For other transactions, if we hire an attorney who is not a salaried employee to collect what you owe, you will pay the attorney's reasonable fee and court costs the law permits.

If an event of default occurs as to any of you, we may exercise our remedies against any or all of you.

Retail Installment Contract-NJ - Not for use in transactions secured by a dwelling.
©2018 The Reynolds and Reynolds Company
THERE ARE NO WARRANTIES, EXPRESS OR IMPLIED, AS TO CONTENT OR FITNESS FOR A PARTICULAR PURPOSE, CONCERNING THIS LEGAL DOCUMENT.

_(initials)_   1002NMUFLZNJ 11/1/2018
Reynolds System®
Page 5 of 7
Customers Initial Here

**9.8 Remedies.** If you are in default on this Contract, we have all of the remedies provided by law and this Contract. Those remedies include:

- We may require you to immediately pay us, subject to any refund required by law, the remaining unpaid balance of the amount financed, time price differential and all other agreed charges.

- We may pay taxes, assessments, or other liens or make repairs to the Property if you have not done so. We are not required to do so. You will repay us that amount immediately. That amount will earn the time price differential from the date we pay it at the contract rate described in the *Payment* section until paid in full.

- We may require you to make the Property available to us at a place we designate that is reasonably convenient to you and us.

- We may immediately take possession of the Property by legal process or self-help, but in doing so we may not breach the peace or unlawfully enter onto your premises.

- We may then sell the Property and apply what we receive as provided by law to our reasonable expenses and then toward what you owe us.

- We may, as allowed by law, sue you for additional amounts if the proceeds of a sale do not pay all of the amounts you owe us.

By choosing any one or more of these remedies, we do not give up our right to later use another remedy. By deciding not to use any remedy, we do not give up our right to consider the event a default if it happens again.

You agree that if any notice is required to be given to you of an intended sale or transfer of the Property, notice is reasonable if mailed to your last known address, as reflected in our records, at least 10 days before the date of the intended sale or transfer (or such other period of time as is required by law).

You agree that we may take possession of personal property left in or on the Property securing this Contract and taken into possession as provided above. You may have a right to recover that property.

If the Property has an electronic tracking device, you agree that we may use the device to find the vehicle.

**9.9 Obligations Independent.** Each person who signs this Contract agrees to pay this Contract according to its terms. This means the following:

- You must pay this Contract even if someone else has also signed it.

- We may release any co-buyer or guarantor and you will still be obligated to pay this Contract.

- We may release any security and you will still be obligated to pay this Contract.

- If we give up any of our rights, it will not affect your duty to pay this Contract.

- If we extend new credit or renew this Contract, it will not affect your duty to pay this Contract.

**9.10 Warranty.** Warranty information is provided to you separately.

## 10. Security Agreement

**10.1 Security.** To secure your payment and performance under the terms of this Contract, you give us a security interest in the Vehicle, all accessions, attachments, accessories, and equipment placed in or on the Vehicle and in all other Property. You also assign to us and give us a security interest in proceeds and premium refunds of any insurance and service contracts purchased with this Contract.

**10.2 Duties Toward Property.** By giving us a security interest in the Property, you represent and agree to the following:

- You will defend our interests in the Property against claims made by anyone else. You will keep our claim to the Property ahead of the claim of anyone else. You will not do anything to change our interest in the Property.

- You will keep the Property in your possession and in good condition and repair. You will use the Property for its intended and lawful purposes.

- You agree not to remove the Property from the United States or Canada without our prior written consent.

- You will not attempt to sell the Property, transfer any rights in the Property, or grant another lien on the Property without our prior written consent.

- You will pay all taxes and assessments on the Property as they become due.

- You will notify us with reasonable promptness of any loss or damage to the Property.

- You will provide us reasonable access to the Property for the purpose of inspection. Our entry and inspection must be accomplished lawfully, and without breaching the peace.

**10.3 Agreement to Provide Insurance.** You agree to provide property insurance on the Property protecting against loss and physical damage and subject to a maximum deductible amount indicated in the *Insurance Disclosures* section, or as we will otherwise require. You will name us as loss payee on any such policy. Generally, the loss payee is the one to be paid the policy benefits in case of loss or damage to the Property. In the event of loss or damage to the Property, we may require additional security or assurances of payment before we allow insurance proceeds to be used to repair or replace the Property. You agree that if the insurance proceeds do not cover the amounts you still owe us, you will pay the difference. You will keep the insurance in full force and effect until this Contract is paid in full.

If you fail to obtain or maintain this insurance, or name us as loss payee, we may obtain insurance to protect our interest in the Property. This insurance may be written by a company other than one you would choose. It may be written at a rate higher than a rate you could obtain if you purchased the property insurance required by this Contract. We will add the premium for this insurance to the amount you owe us. This amount will earn the time price differential from the date paid at the contract rate described in the *Payment* section until paid in full.

**10.4 Gap Waiver or Gap Coverage.** In the event of theft or damage to the Vehicle that results in a total loss, there may be a gap between the amount due under the terms of the Contract and the proceeds of your insurance settlement and deductibles. You are liable for this difference. You have the option of purchasing Gap Waiver or Gap Coverage to cover the gap liability, subject to any conditions and exclusions in the Gap Waiver or Gap Coverage agreements.

Retail Installment Contract-NJ   Not for use in transactions secured by a dwelling.
©2018 The Reynolds and Reynolds Company
THERE ARE NO WARRANTIES, EXPRESS OR IMPLIED, AS TO CONTENT OR FITNESS FOR A PURPOSE OF THIS FORM. CONSULT YOUR OWN LEGAL COUNSEL.

RSSIMVLFLZNJ 11/1/2018
Bankers Systems
Page 4 of 7

Customers Initial Here

## 11. Notices

**11.1 Note.** If the primary use of the Vehicle is non-consumer, this is not a consumer contract, and the following notice does not apply. NOTICE. ANY HOLDER OF THIS CONSUMER CREDIT CONTRACT IS SUBJECT TO ALL CLAIMS AND DEFENSES WHICH THE DEBTOR COULD ASSERT AGAINST THE SELLER OF GOODS OR SERVICES OBTAINED PURSUANT HERETO OR WITH THE PROCEEDS HEREOF. RECOVERY HEREUNDER BY THE DEBTOR SHALL NOT EXCEED AMOUNTS PAID BY THE DEBTOR HEREUNDER.

**11.2 Documentary Service and Pre-Delivery Service.** A Documentary Service fee and Pre-Delivery Service fee are not official fees and are not required by law. "Documentary service" means, but is not limited to, the preparation and processing of documents in connection with the transfer of license plates, registration, or title, and the preparation and processing of other documents relating to the sale of a motor vehicle. Documentary Service Fees MUST BE ITEMIZED ABOVE such that the price of each prepared document is disclosed. "Pre-delivery service" means, but is not limited to, items that are often described or labeled as dealer preparation, vehicle preparation, pre-delivery handling and delivery, or any other service of similar import. Pre-Delivery Service Fees MUST BE ITEMIZED ABOVE and do not include any services for which the dealer receives compensation from any other party.

**11.3 Used Car Buyer Notice.** If you are buying a used vehicle: The information you see on the window form for this vehicle is part of this contract. Information on the window form overrides any contrary provisions in the contract of sale.

**Spanish Translation.** Si compra un vehículo usado: La información que ve adherida en la ventanilla forma parte de éste contrato. La información contenida en el formulario de la ventanilla prevalece por sobre toda otra disposición en contrario incluida en el contrato de compraventa.

[This area intentionally left blank.]

## 12. Third Party Agreement

(This section applies ONLY to a person who will have an ownership interest in the Property but is NOT a Buyer obligated to pay this Contract ("Third Party Owner").)

In this section only, "you" means only the person signing this section.

By signing below you agree to give us a security interest in the Property described in the *Description of Property* section. You also agree to the terms of this Contract except that you will not be liable for the payments it requires. Your interest in the Property may be used to satisfy the Buyer's obligation. You agree that we may renew, extend or change this Contract, or release any party or Property without releasing you from this Contract. We may take these steps without notice or demand upon you.

You acknowledge receipt of a completed copy of this Contract.

NOT APPLICABLE

_____          N/A
By: NOT APPLICABLE                                      Date
    Signature of Third Party Owner (NOT the Buyer)

[This area intentionally left blank.]

Retail Installment Contract// Not for use in transactions secured by a dwelling.
©2014 The Reynolds and Reynolds Company
THERE ARE NO WARRANTIES, EXPRESS OR IMPLIED, AS TO CONTENT OR FITNESS FOR PURPOSE OF THIS FORM. CONSULT YOUR OWN LEGAL COUNSEL.

RISIMVLRLZNJ 11/1/2014
Bankers Systems©
Page 6 of 7
Customers Initial Here

**13. ☐ Electronic Signature Acknowledgment.** You agree that (i) you viewed and read this entire Contract before signing it, (ii) you signed this Contract with one or more electronic signatures, (iii) you intend to enter into this Contract and your electronic signature has the same effect as your written ink signature, (iv) you received a paper copy of this Contract after it was signed, and (v) the authoritative copy of this Contract shall reside in a document management system held by Seller in the ordinary course of business. You understand that Seller may transfer this Contract to another company in the electronic form or as a paper version of that electronic form which would then become the authoritative copy. Seller or that other company may enforce this Contract in the electronic form or as a paper version of that electronic form. You may enforce the paper version of the Contract copy that you received.

## 14. Used Vehicle Sale Dealer/Seller's Obligation

**Explanation of Dealer/Seller Obligations.** The Dealer/Seller has the following obligations under N.J.S.A. 39:10-26 through 39:10-30:

No Dealer/Seller may sell a used passenger motor vehicle to be registered in New Jersey unless the Vehicle meets the standards for the issuance of a certificate of approval. If the used passenger motor vehicle has any defect that does not allow for the issuance of a certificate of approval, the Dealer/Seller shall make, or cause to be made, all necessary repairs without charge, or shall return the full purchase price to the Buyer; provided that such defect or defects are not the result of the Buyer's own act.

Buyer acknowledges they have been informed of Dealer/Seller's obligation above. Buyer agrees to present the used passenger motor vehicle for inspection within 14 days from the date of delivery of such vehicle.

| | N/A |
|---|---|
| Buyer | Date |

| | N/A |
|---|---|
| Buyer | Date |

| | N/A |
|---|---|
| Buyer | Date |

## 15. Acknowledgment of New Jersey Registration

☐ The Vehicle is a used passenger motor vehicle and will be registered in New Jersey in the condition sold.

[This area intentionally left blank.]

## 16. Waiver of Used Vehicle Sale Dealer/Seller's Obligation

Buyer does not waive the Dealer/Seller Obligations unless signed below.

☐ **Buyer Waives the Dealer/Seller Obligations.** Buyer has read and understood the Dealer/Seller obligations under the New Jersey Motor Vehicle Certificate of Ownership Law. The Dealer/Seller has disclosed the below list of known defects. Buyer has reviewed the below list of known defects and acknowledges that the known defects may need to be resolved before a certificate of approval may be issued.

KNOWN DEFECTS: N/A

Buyer WAIVES AND RELEASES the DEALER/SELLER OBLIGATIONS and accepts the motor vehicle with KNOWN DEFECTS.

| | N/A |
|---|---|
| Buyer | Date |

| | N/A |
|---|---|
| Buyer | Date |

| | N/A |
|---|---|
| Buyer | Date |

## 17. Contract Index

| Item | Section |
|---|---|
| Acknowledgment of New Jersey Registration | 15 |
| Additional Protections | 9 |
| Additional Terms of the Sales | 9 |
| Agreement to Provide Insurance | 10.3 |
| Assignment | 20 |
| Conditional Delivery | 5 |
| Credit Insurance | 7.1 |
| Default | 9.7 |
| Definitions | 1.1 |
| Description of Property | 3 |
| Description of Trade-In | 4 |
| Documentary Service and Pre-Delivery Service | 11.2 |
| Duties Toward Property | 10.2 |
| Electronic Signature Acknowledgment | 13 |
| Gap Waiver or Gap Coverage | 10.4 |
| General Terms | 9.1 |
| Governing Law and Interpretation | 9.4 |
| Insurance Disclosures | 7 |
| Index | 17 |
| Itemization of Amount Financed | 6 |
| Name and Location | 9.5 |
| Notices | 11 |
| Obligations Independent | 9.9 |
| Payment | 1.3 |
| Prepayment | 9.2 |
| Preservation of Consumers' Claims & Defenses | 11.1 |
| Property Insurance | 7.2 |

Retail Installment Contract-NJ   Not for use in transactions secured by a dwelling.
©2016 The Reynolds and Reynolds Company
THERE ARE NO WARRANTIES, EXPRESS OR IMPLIED, AS TO CONTENT OR FITNESS FOR PURPOSE OF THIS FORM. CONSULT YOUR OWN LEGAL COUNSEL.

RSSIMVLFLZNJ 11/1/2016
Bankers Systems®
Page 6 of 7
Customers Initial Here

## 17. Contract Index Continued

| | |
|---|---|
| Purchase of Property | 1.2 |
| Remedies | 9.8 |
| Returned Payment Charge | 9.3 |
| Sales Agreement | 1 |
| Security | 10.1 |
| Security Agreement | 10 |
| Signature Notices | 18 |
| Signatures | 19 |
| Single-Interest Insurance | 7.3 |
| Telephone Monitoring and Calling | 9.5 |
| Third Party Agreement | 12 |
| Truth-In-Lending Disclosure | 2 |
| Used Car Buyer Notice | 11.3 |
| Used Vehicle Sale Dealer/Seller's Obligation | 14 |
| Waiver of Used Vehicle Sale Dealer/Seller's Obligation | 16 |
| Warranty | 9.10 |

## 18. Signature Notices

The Annual Percentage Rate may be negotiable with the Seller. The Seller may assign this Contract and retain its right to receive a part of the Finance Charge.

## 19. Signatures

Entire Agreement. Your and our entire agreement is contained in this Contract. There are no unwritten agreements regarding this Contract. Any change to this Contract must be in writing and signed by you and by us.

By: EUGENE ROBERT MCCLURE JR          Date 08/05/2025

By: ANNA MAE MCCLURE          Date 08/05/2025

By: N/A          Date N/A

### NOTICE TO RETAIL BUYER

Do not sign this Contract in blank.

You are entitled to a copy of the Contract at the time you sign.

Keep it to protect your legal rights.

By signing below, you agree to the terms of this Contract. You received a copy of this Contract and had a chance to read and review it before you signed it.

**Buyer**

By: EUGENE ROBERT MCCLURE JR          Date 08/05/2025

By: ANNA MAE MCCLURE          Date 08/05/2025

By: N/A          Date N/A

**Seller**

By: Dylans RV Center          Date 08/05/2025

**20. Assignment.** This Contract and Security Agreement is assigned to M & T Bank

PO Box 37258, Baltimore, MD 21297

the Assignee, phone 877-686-8424 . This assignment is made under the terms of a separate agreement made between the Seller and Assignee.

☐ This Assignment is made with recourse.

**Seller**

By: Dylans RV Center          Date 08/05/2025

Retail Installment Contract-NJ Not for use in transactions secured by a dwelling.
©2015 The Reynolds and Reynolds Company
THERE ARE NO WARRANTIES, EXPRESS OR IMPLIED, AS TO CONTENT OR FITNESS FOR PURPOSES OF THIS FORM CONSULT YOUR OWN LEGAL COUNSEL.

RSSIMVI.FLENJ 11/1/2015
Bankers Systems®
Page 7 of 7
Customers Initial Here

<u>**C**</u>

**New Jersey**  |  **Buyer's Order**  |  11252449

| Dealer/Seller Name and Address | Buyer Name, Address, Phone, Email | Buyer Name, Address, Phone, Email | Buyer Name, Address, Phone, Email |
|---|---|---|---|
| Dylans RV Center 2190 Delsea Dr. Sewell, NJ 08080 | EUGENE ROBERT MCCLURE JR 328 TAYLOR AVE VINELAND, NJ 08360 609-774-1485 | ANNA MAE MCCLURE 328 TAYLOR AVE VINELAND, NJ 08360 609-774-1485 | N/A |

| Date | Stock No. | Salesperson |
|---|---|---|
| 09/05/2025 | 106988 | Andrew Pandolfi |

| App. No. | Contract No. |
|---|---|
| 12204241/20252171638580 | 11252449 |

**Definitions.** Contract refers to this Buyer's Order. Buyer, you and your refer to each Buyer signing this Contract. Seller, we, us and our refer to the Dealer/Seller. Vehicle means the motor vehicle described in the Vehicle Information section. Trade-in Vehicle(s) refers to each vehicle described in the Trade-in Information section that is being traded to the Dealer/Seller as part of this transaction. Manufacturer refers to the entity that is the maker of the Vehicle.

**Agreement to Purchase.** You agree to buy the Vehicle from us for the amount stated in this Contract. You agree to sign any documents necessary to complete this transaction. You may only cancel this contract according to the conditions described in the Manufacturer or Trade-in sections. If you refuse to take delivery of the Vehicle, we can keep any deposits you have made to us. In addition, refusal to take delivery will make you responsible for our damages, expenses, and attorney's fees in connection to this Contract unless prohibited by the law of New Jersey. If you do not breach this Contract, any deposits will be used toward the purchase of the Vehicle.

**Vehicle Information**  ☒ New  ☐ Used  ☐ Demo  ☐ Other

| Year | Make | Model | Style | VIN |
|---|---|---|---|---|
| 2025 | LEPRECHAUN | 260DS FORD MC | Class C | 1FDXE4FNX8DD25886 |

| Lic. No. | Color | Odometer Reading |
|---|---|---|
|  | OCEAN FBP | 768 |

Other  N/A

**Insurance Information**

Buyer has arranged the following insurance on the motor vehicle:

Insurance Company _____

Policy No. _____  Phone _____

**Trade-In Information**

| Trade-In 1 | | Trade-In 2 | |
|---|---|---|---|
| Year | Make | Year | Make |
| Model | Style | Model | Style |
| Lic. No. | Color | Lic. No. | Color |
| VIN | Odometer | VIN | Odometer |
| Lienholder Name | | Lienholder Name | |
| Address | Phone | Address | Phone |
| Trade-In Allowance $ | Payoff $ | Payoff good through | Trade-In Allowance $ | Payoff $ | Payoff good through |

**Trade-In Terms**

**Trade-in Vehicle.** You will transfer title to the Trade-in Vehicle to us free of all liens except those noted on this Contract. You give permission to us to contact the lienholder(s) for payoff information. If the payoff information that we obtain from the lienholder(s) differs from the amount disclosed in this Contract, you agree to pay the difference to us if the actual amount of the balance owed is greater than the amount listed in this Contract. If the actual amount of the balance owed is less than the amount listed in this Contract, we will pay you the difference.

If you do not deliver the Trade-in Vehicle to us at the time of the initial appraisal, we may reappraise the Trade-in Vehicle when it is delivered to us. If the reappraised value is lower than the original appraisal, you can cancel this transaction as long as you have not taken delivery of the Vehicle.

You represent that (a) you are the sole true and lawful owner of the Trade-in Vehicle, (b) the Trade-in Vehicle has never been titled under any state or federal brand such as "defective," "rebuilt," "salvage," "flood," etc., (c) unless you have disclosed otherwise in an odometer statement, the mileage of the Trade-in Vehicle shown in this Contract is the actual mileage of the Trade-in Vehicle, (d) all emission control equipment is on the Trade-in Vehicle and is in satisfactory working order, and (e) the frame on the Trade-in Vehicle has not been damaged by collision or other event and repaired. If any of these representations are not true, we may elect to cancel the transaction. We may also choose to reappraise the Trade-in Vehicle and adjust the Total Balance Due instead of canceling the transaction. You agree to immediately pay us the difference.

Buyers Order-NJ
©2024 The Reynolds and Reynolds Company
THERE ARE NO WARRANTIES, EXPRESS OR IMPLIED, AS TO CONTENT OR FITNESS FOR PURPOSE OF THIS FORM. CONSULT YOUR OWN LEGAL COUNSEL.

BUY-ORDER-NJ 6/1/2024
Reynolds Systems®
Page 1 of 4

11252449

## Itemization of Sale

| | | |
|---|---|---|
| 1. Vehicle Sales Price | $ | 130,895.00 |
| **Taxes** | | |
| 2. Sales Tax | $ | 9,862.90 |
| 3. Other Tax N/A | $ | 0.00 |
| 4. Subtotal (Add lines 1 through 3) | $ | 140,757.90 |
| **Title, License & Other Fees** | | |
| 5. Certificate of Title Fee | $ | 460.00 |
| 6. License and/or Registration Fee | $ | 0.00 |
| 7. Tire Fee | $ | 9.00 |
| 8. Luxury and Fuel Inefficient Vehicle Surcharge | $ | 0.00 |
| 9. N/A | $ | 0.00 |
| 10. N/A | $ | 0.00 |
| 11. N/A | $ | 0.00 |
| 12. N/A | $ | 0.00 |
| 13. N/A | $ | 0.00 |
| 14. Total Documentary Service Fees Paid to Seller* | $ | 0.00 |
| 15. Total Pre-Delivery Service Fees Paid to Seller | $ | 0.00 |
| 16. Total Other Fees (Add lines 5 through 15) | $ | 459.00 |
| **Additional Items** | | |
| 17. Vehicle Service Contract paid to Dealer Admin Services | $ | 11,995.00 |
| 18. GAP paid to Tire Shield | $ | 1,500.00 |
| 19. Paint Protection paid to Dealer Admin Services | $ | 2,995.00 |
| 20. Roadside Assistance paid to Vehicle Administrative Services | $ | 1,295.00 |
| 21. Tire & Wheel Protection paid to Dealer Admin Services | $ | 1,295.00 |
| 22. Documentation Fee paid to Seller | $ | 399.00 |
| 23. N/A | $ | 0.00 |
| 24. N/A | $ | 0.00 |
| 25. N/A | $ | 0.00 |
| 26. N/A | $ | 0.00 |
| 27. Total Additional Items (Add lines 17 through 26) | $ | 19,479.00 |
| 28. Cash Sale Price (Add lines 4+16+27) | $ | 160,695.90 |
| 29. Trade-in Allowance | $ | 0.00 |
| 30. Trade-in Payoff Balance | $ | 0.00 |
| 31. Net Trade Allowance (Line 29-30, if negative, enter $0 here and enter amount on line 40.) | $ | 0.00 |
| 32. Deposit | $ | 0.00 |
| 33. Cash Down Payment | $ | 15,000.00 |
| 34. Manufacturer's Rebate | $ | 0.00 |
| 35. Other Credit N/A | $ | 0.00 |
| 36. Other Credit N/A | $ | 0.00 |
| 37. Deferred Down Payment | $ | 0.00 |
| 38. Other Down Payment N/A | $ | 0.00 |
| 39. Total Credits (Add lines 31 through 36) | $ | 15,000.00 |
| 40. Trade-in Balance Owing (see line 31) | $ | 0.00 |
| 41. Lease Balance Owing | $ | 0.00 |
| 42. Total Balance Due (Line 28-39+40+41) | $ | 145,695.90 |

We may retain or receive a portion of any amounts paid to others.

\* No governmental entity requires the automotive dealer perform any documentary service.

## Documentary Service and Pre-Delivery Service

**Documentary Service Fee.** You agree to pay Seller a Documentary Service Fee of $ _____0.00_____ for Preparation and Processing:

| | | |
|---|---|---|
| i. of License, Registration and Title | $ | 0.00 |
| ii. of N/A | $ | 0.00 |
| iii. of N/A | $ | 0.00 |
| iv. of N/A | $ | 0.00 |

**Pre-Delivery Service Fee.** You agree to pay Seller a Pre-Delivery Service Fee of $ _____0.00_____ for the following services:

| | | |
|---|---|---|
| i. of N/A | $ | 0.00 |
| ii. of N/A | $ | 0.00 |
| iii. of N/A | $ | 0.00 |
| iv. of N/A | $ | 0.00 |

A Documentary Service fee and Pre-Delivery Service fee are not official fees and are not required by law. "Documentary service" means, but is not limited to, the preparation and processing of documents in connection with the transfer of license plates, registration, or title, and the preparation and processing of other documents relating to the sale of a motor vehicle. Documentary Service Fees MUST BE ITEMIZED ABOVE such that the price of each prepared document is disclosed. "Pre-delivery service" means, but is not limited to, items that are often described or labeled as dealer preparation, vehicle preparation, pre-delivery handling and delivery, or any other service of similar import. Pre-Delivery Service Fees MUST BE ITEMIZED ABOVE and do not include any services for which the dealer receives compensation from any other party.

## Additional Terms

**Governing Law and Interpretation.** This Contract is governed by the law of New Jersey and applicable federal law and regulations.

If any section or provision of this Contract is not enforceable, the other terms will remain part of this contract. You authorize us to correct any clerical error or omissions in this Contract or in any related document.

**Manufacturer.** We are not an agent of the Manufacturer. The Manufacturer can change the price, design or standard features of the Vehicle at any time without notice. If we cannot obtain the Vehicle from the Manufacturer at the price in effect as of the date of this Contract, or if we cannot obtain the agreed upon product from the Manufacturer, you or we can cancel this Contract.

If you cancel this Contract under the terms of this section, we will refund to you any amounts you have paid to us. If you have delivered a Trade-in Vehicle to us, we will return it to you. If we have already sold the Trade-in Vehicle, we will pay you the amount we received for the sale after adjusting for any payoff we made to a lienholder and costs for repair and reconditioning, if any.

**Name and Location.** Your name and address indicated on page 1 are your exact legal name and your principal residence.

**Insurance.** You represent that the insurance information you have given us is accurate.

**Retail Installment Sales Contract.** In the event that you and we enter into a retail installment sales contract for the financing of the purchase of the Vehicle, the terms of the retail installment sales contract will control any inconsistencies between this Contract and the retail installment sales contract.

**Returned Payment Charge.** If you make any payment required by this Contract that is returned or dishonored, you agree to pay a fee of $20.00.

Buyers Order-NJ
©2024 The Reynolds and Reynolds Company
THERE ARE NO WARRANTIES, EXPRESS OR IMPLIED, AS TO CONTENT OR FITNESS FOR A PARTICULAR PURPOSE OF THIS FORM. CONSULT YOUR OWN LEGAL COUNSEL.

BUY-ORDER-NJ 6/1/2024
Bankers Systems®
Page 2 of 4

11252449

**Telephone Monitoring and Calling.** You agree that we may from time to time monitor and record telephone calls made or received by us or our agents regarding your account to assure the quality of our service. In order for us to service the account or to collect any amounts you may owe, and subject to applicable law, you agree that we may from time to time make calls and send text messages to you using prerecorded/artificial voice messages or through the use of an automatic dialing device at any telephone number you provide to us in connection with your account, including a mobile telephone number that could result in charges to you.

**Vehicle Condition.** You understand the Vehicle may have undergone prior mechanical or body repair. The damage, necessitating repair may have occurred during manufacture, transit or while in the possession of prior owner or operators.

### Vehicle Inspection

By initialing below, you represent that you have thoroughly inspected the Vehicle and approve and accept it. You had an opportunity to have the Vehicle inspected by a third party of your choice and at your expense. You are purchasing the Vehicle based on your inspection. You are not relying on any opinion, statement, or promise of the Seller or its employees that is not contained in the written agreements you are signing today.

Buyer's Initials

_____ _____ N/A

### Warranty Information

☐ **Vehicle Manufacturer Warranty.** The Vehicle is subject to an express warranty made by the Manufacturer. It is a standard written manufacturer's warranty and made by the Manufacturer and not by the Seller. By signing this Contract, each Buyer acknowledges receiving a copy of it.

☐ **Dealer Warranty.** The Vehicle is subject to an express written warranty made by the Seller. By signing this Contract, each Buyer acknowledges receiving a copy of it.

The Seller is responsible to fulfill any separate written warranty made by Seller on its own behalf. If the Manufacturer or another supplier provides a warranty, they are responsible for satisfying its terms, NOT the Seller.

If neither box above is checked under Warranty Information the Used Vehicle is sold AS-IS and the following paragraph applies:

THIS VEHICLE IS SOLD "AS-IS" WITH ALL FAULTS, WITHOUT ANY WARRANTY, EITHER EXPRESS OR IMPLIED AND BUYER IS SOLELY RESPONSIBLE FOR COST OF ANY REPAIRS TO THE VEHICLE. THE SELLER EXPRESSLY DISCLAIMS ALL WARRANTIES, EITHER EXPRESS OR IMPLIED, INCLUDING ANY IMPLIED WARRANTIES OF MERCHANTABILITY AND FITNESS FOR A PARTICULAR PURPOSE. BUYER ASSUMES ALL RISKS AND RESPONSIBILITIES.

### Used Car Buyer Notice

If you are buying a used vehicle: The information you see on the window form for this vehicle is part of this contract. Information on the window form overrides any contrary provisions in the contract of sale.

(Spanish Translation) Si compra un vehículo usado: La información que ve adherida en la ventanilla forma parte de éste contrato. La información contenida en el formulario de la ventanilla prevalece por sobre toda otra disposición en contrario incluida en el contrato de compraventa.

### Notices

☐ **Trade-in Balance Due.** You understand that the balance owed on the Trade-in exceeds the Trade-in Allowance and that as a result the Total Balance Due has been increased by $ 0.00 _____ of negative equity.

☐ **Lease Balance Due.** You understand the Total Balance Due includes the amount of $ 0.00 _____ for a lease balance due from a prior transaction.

Buyer's Initials

_____ _____ N/A

### Used Vehicle Sale Dealer/Seller's Obligation

**Explanation of Dealer/Seller Obligations.** The Dealer/Seller has the following obligations under N.J.S.A. 39:10-26 through 39:10-30:

No Dealer/Seller may sell a used passenger motor vehicle to be registered in New Jersey unless the Vehicle meets the standards for the issuance of a certificate of approval. If the used passenger motor vehicle has any defect that does not allow for the issuance of a certificate of approval, the Dealer/Seller shall make, or cause to be made, all necessary repairs without charge, or shall return the full purchase price to the Buyer; provided that such defect or defects are not the result of the Buyer's own act.

Buyer acknowledges they have been informed of Dealer/Seller's obligation above. Buyer agrees to present the used passenger motor vehicle for inspection within 14 days from the date of delivery of such vehicle.

Buyer EUGENE ROBERT MCCLURE JR

Buyer ANNA MAE MCCLURE

N/A
Buyer N/A

### Acknowledgement of New Jersey Registration

☐ The Vehicle is a used passenger motor vehicle and will be registered in New Jersey in the condition sold.

Buyers Order-NJ
©2024 The Reynolds and Reynolds Company
THERE ARE NO WARRANTIES, EXPRESS OR IMPLIED, AS TO CONTENT OR FITNESS FOR PURPOSE OF THIS FORM. CONSULT YOUR OWN LEGAL COUNSEL.

BUY-ORDER-NJ 9/1/2024
Reynolds Systems
Page 3 of 4

11262449

## Waiver of Used Vehicle Sale Dealer/Seller's Obligation

Buyer does not waive the Dealer/Seller Obligations unless signed below.

☐ Buyer Waives the Dealer/Seller Obligations. Buyer has read and understood the Dealer/Seller obligations under the New Jersey Motor Vehicle Certificate of Ownership Law. The Dealer/Seller has disclosed the below list of known defects. Buyer has reviewed the below list of known defects and acknowledges that the known defects may need to be resolved before a certificate of approval may be issued.

KNOWN DEFECTS: _____

_____

Buyer WAIVES AND RELEASES the DEALER/SELLER OBLIGATIONS and accepts the motor vehicle with KNOWN DEFECTS.

N/A
_____
Buyer N/A

N/A
_____
Buyer N/A

N/A
_____
Buyer N/A

## Signatures

This agreement is not binding upon the Dealer/Seller until it is signed by an authorized representative of the Dealer/Seller.

You represent that you are of legal age and have legal capacity to enter into this Contract.

☐ A separate Arbitration Agreement between you and us is part of this Contract.

You received a copy of this Contract and by signing below, you agree to the terms on all pages of this Contract and acknowledge you had a chance to read and review it before you signed it.

**Entire Agreement.** Your and our entire agreement is contained in this Contract. There are no unwritten agreements regarding this Contract.

_____    08/05/2025
Buyer EUGENE ROBERT MCCLURE JR            Date

_____    08/05/2025
Buyer ANNA MAE MCCLURE                    Date

_____    N/A
Buyer N/A                                 Date

_____    08/05/2025
Dealer/Seller Dylans RV Center            Date

Buyers Order-NJ
©2024 The Reynolds and Reynolds Company
THERE ARE NO WARRANTIES, EXPRESS OR IMPLIED, AS TO CONTENT OR
FITNESS FOR PURPOSE OF THIS FORM. CONSULT YOUR OWN LEGAL COUNSEL.

**NORRIS McLAUGHLIN, P.A.**
Nicholas A. Duston, Esq. (I.D. #103562014)
400 Crossing Boulevard, 8th Floor
Bridgewater, New Jersey 08807
908-722-0700
*Attorneys for Defendant Dylan's RV Center*

|  |  |  |
|---|---|---|
| EUGENE MCCLURE AND ANNA MAE MCCLURE, | : | UNITED STATES DISTRICT COURT FOR THE DISTRICT OF NEW JERSEY |
|  | : |  |
| Plaintiffs, | : | CIVIL ACTION NO.: |
|  | : |  |
| vs. | : | ELECTRONICALLY FILED |
|  | : |  |
| DYLAN'S RV CENTER, JACOB HELMS, ANDY, ABC DEALER BOND COMPANY, M&T BANK, ABC CORP and JANE AND JOHN DOES 1-10. | : | **DECLARATION OF SERVICE** |
|  | : |  |
| Defendants. | : |  |

Pursuant to 28 U.S.C. § 1746, I, Nicholas A. Duston, Esq., hereby declare under penalty of perjury:

On this date, I caused a Notice of Filing Notice of Removal to be filed with the Superior Court of New Jersey, Law Division, Cumberland County and served upon all counsel of record via the Superior Court's electronic filing system.

I declare under penalty of perjury that the foregoing is true and correct.

/s/ *Nicholas Duston*
Nicholas A. Duston, Esq.

Dated: November 7, 2025

<u>NOT FOR PUBLICATION</u>

### IN THE UNITED STATES DISTRICT COURT
### FOR THE DISTRICT OF NEW JERSEY
### CAMDEN VICINAGE

| | |
|---|---|
| EUGENE MCCLURE AND ANNA MAE MCCLURE,<br><br>*Plaintiffs*,<br><br>v.<br><br>CAMPERS INN OF SEWELL, INC., *et al.*,<br><br>*Defendants*. | HONORABLE KAREN M. WILLIAMS<br><br>Civil Action<br><br>No. 25-17313 (KMW-EAP)<br><br>**MEMORANDUM OPINION AND ORDER** |

**WILLIAMS, District Judge:**

This matter comes before the Court by way of Defendants Campers Inn RV of Sewell, Inc. d/b/a Dylan's RV Center; Jacob Helms; Andrew Pandolfi; and M&T Bank's (collectively, "Defendants") Motion to Dismiss ("MTD," Dkt. No. 9); Plaintiffs Eugene and Anna Mae McClure's ("Plaintiffs") Amended Complaint (Dkt. No. 12); and Plaintiffs' unopposed Letter (Dkt. No. 13) requesting the Court deny Defendants' MTD as moot and remand this case to state court due to a lack of subject-matter jurisdiction.

**WHEREAS**, federal courts are courts of limited jurisdiction and have an independent obligation to address issues of subject-matter jurisdiction *sua sponte* and may do so at any stage of the litigation. *Zambelli Fireworks Mfg. Co., Inc. v. Wood*, 592 F.3d 412, 418 (3d Cir. 2010); *Lincoln Ben. Life Co. v. AEI Life, LLC*, 800 F.3d 99, 104 (3d Cir. 2015). If a federal district court determines at any time that it lacks subject-matter jurisdiction, the court must dismiss the action. *See* Fed. R. Civ. P. 12(h)(3). To establish jurisdiction, a pleading must either present a federal claim or trigger the court's diversity jurisdiction. *See Gibson v. Tip Towing & Recovery LLC*, No. 23-2919, 2024 WL 658977 at *1 (3d Cir. Feb. 16, 2024). To assert a federal claim, a pleading must assert an action arising under the Constitution, laws, or treaties of the United States. *Id*. at *1 n.2.

To assert diversity jurisdiction, a pleading must demonstrate complete diversity of citizenship among the parties, with the amount in controversy being over $75,000.00. *Id*. at *1; and

**WHEREAS**, the Supreme Court of the United States has held that "[w]hen a plaintiff amends her complaint following her suits removal [and] eliminates the federal-law claims that enabled removal, leaving only state-law claims behind, the court's power to decide the dispute dissolves," *Royal Canin U.S.A. Inc v. Wullschleger*, 604 U.S. 22, 30 (2025); and

**WHEREAS**, here, Defendants removed this matter based on the Court's federal question subject-matter jurisdiction pursuant to 28 U.S.C. § 1331 because Plaintiff's Complaint alleged violations of the Truth in Lending Act, 15 U.S.C. 1635(f) (*see* Notice of Removal and Compl., ¶¶ 94-101, Dkt. No. 1); and

**WHEREAS**, Plaintiff does not assert that this Court would have diversity jurisdiction over the parties pursuant to 28 U.S.C. § 1332; and

**THE COURT NOTING** that Plaintiffs filed their Amended Complaint (Dkt. No. 12) as a matter of course pursuant to Fed. R. Civ. P. 15(a)(1)(B); and

**THE COURT FURTHER NOTING** that Plaintiffs' Amended Complaint no longer raises a federal question. (*See* Am. Compl., ¶ 23.)

**CONSEQUENTLY,** for all the foregoing reasons, and for good cause shown;

IT IS on this 13th day of **February**, **2026** hereby

**ORDERED** that Defendants' MTD (Dkt. No. 9) is **DENIED as moot**; and

**ORDERED** that Plaintiffs' Letter request to remand (Dkt. No. 13) is **GRANTED**; and

**ORDERED** that this case is **REMANDED** to the Superior Court of New Jersey, Law Division, Cumberland County.

*Karen M. Williams*
_____
KAREN M. WILLIAMS
U.S. DISTRICT COURT JUDGE

2

The Law Office of Aaron Harmaty, LLC
21 Van Doren Avenue
Chatham, NJ 07928
973-309-5492
aharmatylaw@gmail.com

February 19, 2026

**Via: Electronic File:**
Clerk of the Superior Court, Civil Case Management Office
Cumberland County Courthouse
60 West Broad Street
Bridgeton, New Jersey 08302

        RE: McClure v. Campers Inn of Sewell, Inc., et als. – Docket CUM-L-708-25
        Filing of Amended Class Action Complaint - Restoration of Case

Dear Clerk:

Our office, along with co-counsel, the Dann Law Firm, P.C., represent the Plaintiffs, Eugene and Anna Mae McClure, and the putative class in the above-referenced matter.

Plaintiffs filed an amended complaint in the District of New Jersey, and requested that the matter be remanded to state court. **See**, attached as **Exhibit A**, a true and accurate copy of that amended complaint. On February 13, 2026, the court entered an Order remanding the case to Cumberland County. **Exhibit B**. The court then filed a letter stating that the matter was to be refiled in Cumberland County. **Exhibit C**.

In that connection, we kindly request that the court re-open this matter and file the amended class action complaint. We also request that this matter be assigned to Track IV and that a case management conference be scheduled with assigned judge.

Defendants are represented by the attorney who filed the Notice of Removal on November 7, 2025, i.e. Nicholas A. Duston, Norris McLaughlin, P.A., 400 Crossing Blvd., 8th floor, Bridgewater, NJ 08807. His phone number is (908) 252-4208 and his email address is nadustin@norris-law.com.

If you or anyone in your office has any questions or concerns, please do not hesitate to reach out to me.

        Respectfully,
        /s/ Aaron M. Harmaty
        Aaron M. Harmaty, Esq.

CC:    Andrew Wolf, Esq. (via email only to awolf@dannlaw.com)
        Javier L. Merino, Esq. (via email only to jmerino@dannlaw.com )
        Henry Wolfe, Esq. (via email only to hwolfe@dannlaw.com)
        Nicholas A. Dustin, Esq. (via email only to nadustin@norris-law.com)

Andrew R. Wolf, Esq. (NJ Attorney ID No. 018621995)
Javier L. Merino, Esq., (NJ Attorney ID No. 078112014)
Henry P. Wolfe, Esq. (NJ Attorney ID No. 031942005)
**THE DANN LAW FIRM PC**
825 Georges Road, 2nd Floor
North Brunswick, NJ 08902
Phone: (732) 545-7900
Fax: (216) 373-0536
Email: notices@dannlaw.com

**THE LAW OFFICE OF AARON HARMATY, LLC.**
Aaron M. Harmaty, Esq., # 301832019
21 Van Doren Ave.
Chatham, NJ 07928
973-309-5492
aharmatylaw@gmail.com
Counsel for Plaintiffs and those similarly situated

| | |
|---|---|
| EUGENE MCCLURE AND ANNA MAE MCCLURE<br><br>Plaintiffs,<br><br>v.<br><br>CAMPERS INN RV OF SEWELL, INC. d/b/a/ DYLANS RV CENTER, JEFFREY M. HIRSCH, BENJAMIN HIRSCH, MATT JEPPSEN, JACOB HELMS, and ANDY PANDOLFI,<br><br>Defendants. | UNITED STATES DISTRICT COURT FOR THE DISTICT OF NEW JERSEY<br><br>Case No.: 1-cv-25-17313-KMW-EAP<br><br>Civil Action<br><br>**FIRST AMEMDED CLASS ACTION COMPLAINT AND JURY DEMAND** |

Plaintiffs, Eugene McClure and Anna Mae McClure ("Plaintiffs" or "McClures"), on behalf of themselves and those similarly situated, by way of their First Amended Complaint, state:

## NATURE OF THE ACTION

1.    This putative consumer class action arises from standard business practices by Campers Inn RV of Sewell, Inc., d/b/a Dylans RV Center ("Dylans"), Jeffrey M. Hirsch, ("JMH"), Benjamin Hirsch, ("BH"), Matt Jeppsen, ("Jeppsen"), and Jacob Helms ("Helms") collectively

Page 1 of 34

Dylans, JMH, BH, Jeppsen and Helms are referred to as (the "Defendants") which violate New Jersey consumer protection laws and regulations, including the New Jersey Motor Vehicle Advertising Practices Regulations ("MVAP Regulations") at N.J.A.C. 13:45A-26A.4(a), the New Jersey Automotive Sales Practices Regulations (the "ASP Regulations"), N.J.A.C. 13:45A-26B.1 et seq., the New Jersey Consumer Fraud Act (the "CFA"), N.J.S.A. 56:8-1 et seq., and the New Jersey Truth-in-Consumer Contract, Warranty, and Notice Act ("TCCWNA"), N.J.S.A. 56:12-14, to -18.

2.      Defendants engage in a common pattern and practice of charging customers a vehicle sales price for recreational vehicles ("RVs") that is in excess of the advertised price in violation of the MVAP Regulations at N.J.A.C. 13:45A-26A.4(a) and/or that includes an unitemized pre-delivery service fee in violation of the ASP Regulations at N.J.A.C. 13:45A-26B.2(a)(2), and the CFA.

3.      Defendants engage in a common pattern and practice of charging customers an unitemized documentary fee and thus fail to comply with the ASP Regulations at N.J.A.C. 13:45A-26B.3(a)(2), and the CFA.

4.       Defendants engage in a common pattern and practice of overcharging customers for official title and registration fees and failing to timely refund the entire amount of the overcharge. This overcharge constitutes an unitemized documentary service fee in violation of the ASP Regulations at N.J.A.C. 13:45A-26B.3(a)(2).

5.      Defendants' violations of the ASP Regulations, MVAP regulations and CFA on the face of the sales documents also constitute violations of the TCCWNA.

6.      The McClures also bring individual claims against Defendants for selling the McClures a defective 2025 260DS Ford MC Leprechaun RV with an active recall and refusing to take back the defective RV as set forth *infra*.

**PARTIES**

7.      The McClures are a married couple in their 60s who reside in Vineland, New Jersey.

8.      Dylans is a New Jersey Domestic Profit Corporation that does business at an RV dealership located at 2190 Delsea Dr., Sewell, NJ 08080.

9.      Dylans is a licensed motor vehicle dealer with the New Jersey Motor Vehicle Commission.

10.     Defendant JMH is a controlling owner and Chief Executive Officer of Dylans.

11.     Defendant BH is a controlling owner and Chief Operating Officer of Dylans.

12.     Defendant Jeppsen is a controlling owner and Chief Financial Officer of Dylans.

13.     Defendant Helms has been a manager at Dylans at all times relevant to this action.

14.     Defendant Andy is a sales representative and agent for Dylans and as the sales representative who engaged with the McClures at all relevant times and is directly liable to the McClures for his unlawful acts pursuant to the CFA, at N.J.S.A. 56:8-2. "Defendants" when referring to The McClures' individual claims also includes Andy.

15.     N.J.A.C. 13:21-15.7(c) states: "The dealer, all partners, officers, directors and/or holders of controlling interests shall be individually responsible for the conduct of all business at the dealership and for compliance with all the requirements of the statutes and rules governing the business of buying, selling or dealing in motor vehicles."

16.     As controlling owners, officers, or directors of Dylans, JMH, BH and Jeppsen are individually liable for the violations of the MVAP Regulations, ASP Regulations, CFA, and TCCWNA set forth herein pursuant to N.J.A.C. 13:21-15.7.

17.     JMH, BH, Jeppsen and Helms set the policies and practices of Dylans, including, without limitation, the policy and practice of regularly charging more for RVs than their advertised prices in violation of the MVAP Regulations, the policy and practice of charging a vehicle sales price for RVs that includes unitemized pre-delivery service fees in violation of the ASP, the policy and practice of charging unitemized documentary service fees in connection with RV sales in violation of the ASP Regulations, and the policy and practice of overstating and overcharging customers for MVC title and registration fees without providing a full refund of the amount overcharged, in violation of the ASP Regulations and CFA.

18.     As managers, directors, officers, or controlling owners of Dylans who set the policies and practices complained of herein, JMH, BH, Jeppsen and Helms are personally liable for all claims set forth herein. See *Allen v. V & A Bros., Inc.*, 208 N.J. 114, 132-134 (2011).

## JURISDICTION and VENUE

19.     The McClures initially filed the Complaint in this action in the Superior Court of New Jersey on October 9, 2025 under Docket No.: CUM-L-708-25.

20.     On November 7, 2025 the Defendants removed this matter to the United States District Court – District of New Jersey under Case No.: 1:25-cv-17313.

21.     The removal was based on federal question jurisdiction pursuant to 28 U.S.C. § 1331, as the original Complaint asserted a claim under the federal Truth in Lending Act, 15 U.S.C. § 1601, *et seq*.

22.     This Amended Complaint withdraws the former claim under the Truth in Lending Act and asserts no other claims under federal law.

23.     Since there is no longer federal question jurisdiction this matter should be remanded

pursuant to 15 U.S.C. 1601 to the Superior Court of New Jersey, Cumberland County. See *Royal Canin U.S.A., Inc. v. Wullschleger*, 604 U.S. 22 (2025)("When a plaintiff amends her complaint following her suit's removal [and] eliminates the federal-law claims that enabled removal, leaving only state-law claims behind, the court's power to decide the dispute dissolves" requiring remand.)

24.     Venue is proper in Superior Court of New Jersey, Cumberland County because the McClures reside in Cumberland County.

## STATEMENT OF FACTS

25.     On August 5, 2025, the McClures went to Dylans' location to look at a recreational vehicle, as the McClures enjoyed camping in a camper but wanted a more compact vehicle.

26.     Andy, a Dylans' salesman, approached the McClures, and after discussing their purpose and preferences, recommended and showed them a 2025 Coachmen Leprechaun 260DS" RV ("the RV").

27.     Andy represented to the McClures that the RV was a "top of the line" recreational vehicle; that it was new, better built, and better than earlier models.

28.     However, Andy failed to disclose to the McClures that by August 5, 2025, the dealership had received  recall notice from the manufacturer applicable to the 2025 Coachmen Leprechaun 260DS line of vehicles, including the RV shown to the McClures, advising that "[t]he fuel line extension may have been inconsistent crimps at the barb fittings of its connectors which can cause the fittings to become loose and detach" and "[i]f a fuel line detaches, this may allow fuel to openly spray. This condition may lead to fire and property damage."  A copy of the recall notice is attached as **Exhibit A.**

29.     The recall notice also advised that "[p]arts are not currently available for this recall." and "if you have already paid for a repair that is within the scope of this defect under recall,

you still need to have this recall inspected and/or performed to ensure the correct parts and procedures were utilized." *Id*.

30.     Mr. McClure initially stated he wanted to "sleep on it" with regards to making a purchase decision. However, based on Andy's representations as to the condition and quality of the RV, the McClures went to speak to Dylans' business manager, Helms.

31.     Helms convinced the McClures to purchase the RV on August 5, 2025 and also sold the McClures several additional items, such as a Vehicle Service Contract, GAP, Paint Protection, Roadside Assistance and Tire and Wheel Protection. The total prices of the additional items were in excess of $19,000.00.

32.     The final RV purchase price, not including the cost of financing, was $160,695.90.

33.     At no point did Andy, Helms, or anyone else at Dylans disclose to the McClures the fuel line issue in the recall notice or that there was a pending recall on the RV.

34.     The McClures made down payment towards the RV of $15,000 ($5,000 via credit card and a check for $10,000).

35.     The McClures financed the balance of the RV purchase ($145,695.90) through Dylans' by agreeing to a 240-month loan that would cost a total of $292,260.00, including a $145,564.10 Finance Charge.

36.     The final RV purchase price, including the down payment and the cost of financing, was $307,260.00.

37.     At the time of purchase, Mr. McClure expressed concern to Helms about the price and duration of the loan, and Mr. McClure likened it to purchasing a house.

38.     Helms stated that if the costs became too much, or the McClures got tired of the purchase, they could just stop making payments on it and M&T Bank (the entity who would be assigned the loan after purchase) would pick up the RV without any risk to the McClures. Helms assured Mr. McClure that nonpayment of the loan would not have any negative impact on the McClures.

39.     Mr. McClure asked Helms to clarify that the he meant that that M&T would not pursue payment against the McClures or their family if they did not continue paying the loan and turned in the RV, and Helms re-affirmed that M&T Bank would not pursue them for the loan if they defaulted.

40.     At no point in the August 5, 2025 meeting, did Helms or anyone else at Dylan's mention the recall notice to the McClures.

41.     The McClures relied on Andy's representations regarding the quality of the RV in deciding to purchase it on August 5, 2025.

42.     The McClures relied on the lack of disclosure of that the RV was subject to a pending recall, and the lack of disclosure of the other information contained in the recall notice in their decision to purchase the RV on August 5, 2025.

43.     The McClures relied on Helms' representations regarding how the loan would function when deciding t0 purchase the RV and agree to the financing on August 5, 2025.

44.     On August 5, 2025, the McClures were presented with and signed a sales document called a Buyer's Order ("BO"). A copy of the BO is attached as **Exhibit B**.

45.     The BO categorized certain items included in the total price of $160,695.90 including:

| | |
|---|---|
| Vehicle Sales Price | $130,895.00 |
| Certificate of Title Fee | $450.00 |

Documentation Fee Paid to Seller      $399.00

46.     On August 5, 2025, the McClures were presented with and signed a Retail

Installment and Security Agreement ('RISC"). A copy of the RISC is attached as **Exhibit C**.

47. The RISC categorized certain items included in the amount financed that were the same

as the charges on the BO including:

Vehicle Sales Price                          $130,895.00
Certificate of Title Fee                     $450.00
Documentation Fee Paid to Seller     $399.00

48.     The RISC also stated in a section entitled "11. Notices" which stated in relevant

part:

11.2 Documentary Service and Pre-Delivery Service, A Documentary Service fee and Pre-Delivery Service fee are not official fees and are not required by law. "Documentary service" means, but is not limited to, the preparation and processing of documents in connection with the transfer of license plates, registration, or title, and the preparation and processing of other documents relating to the sale of a motor vehicle, Documentary Service Fees MUST BE ITEMIZED ABOVE such that the price of each prepared document is disclosed. "Pre-delivery service" means, but is not limited to, items that are often described or labeled as dealer preparation, vehicle preparation, pre-delivery handling and delivery, or any other service of similar import. Pre-Delivery Service Fees MUST BE ITEMIZED ABOVE and do not include any services for which the dealer receives compensation from any other party.

*See* Exh. C.

49.     The McClures paid or were obligated to pay for the full purchase price of the RV

including the Vehicle Sales Price, Certificate of Title Fee and Documentation Fee Paid to Seller.

50.     The $399.00 Documentation Fee Paid to Seller is a documentary service fee as

defined by the ASP Regulations at N.J.A.C. 13:45A-26B.1.

51.     The BO fails to itemize the actual documentary services being provided for the "Documentation Fee Paid to Seller" and the price for each specific service being provided as required by the ASP regulations.

52.     The BO is a "sales document" as defined by the ASP Regulations, N.J.A.C. 13:45A 26B.1, et seq.

53.     The Documentation Fee Paid to Seller charged to the McClures and listed on the BO is a "documentary service fee" as defined by the ASP Regulations.

54.     Defendants are "automotive dealers" as defined by the ASP Regulations at N.J.A.C. 13:45A-26B.1.

55.     In the ordinary course of business, Defendants engage in the retail sales of motor vehicles, or offer more than three (3) motor vehicles for sale, lease, or rental in the course of any 12-month period relevant to this matter.

56.      Pursuant to the ASP Regulations at N.J.A.C. 13:45A-26B.3(a)(2), Defendants shall not "accept, charge or obtain from a consumer monies, … in exchange for the performance of any documentary service without first itemizing the actual documentary service, which is being performed **and** setting forth in writing, … on the sale document the price for each specific documentary service." (emphasis added).

57.     Pursuant to the ASP Regulations at N.J.A.C. 13:45A-26B.4 any violation of the ASP Regulations is a per se violation of the consumer Fraud Act ("CFA").

58.     In addition to being a regulatory violation, the failure to itemize each service and price for each service is an abusive or unconscionable commercial practice, or other affirmative act in direct violation of the CFA at N.J.S.A. 56:8-2.

59.      The McClures suffered an ascertainable loss of $399.00, which is the amount they were charged for documentary service fees that were prohibited and unlawful under the ASP Regulations and CFA.

60.      Defendants failed to itemize the services being provided for the Documentary Service Fees so that the McClures and those similarly situated could understand what they were actually being charged for.

61.      As a direct result of Defendants' unlawful conduct, The McClures and those similarly situated suffered an ascertainable loss in the amount of the unitemized "Documentation Fee Paid to Seller", or similar fee each was charged.

62.      Through the BO, Defendants charged the McClures a "Certificate of Title Fee" of $450.00 to title and register the RV.

63.      The actual official fees charged by the NJ MVC to title and register the RV were as follows: (a) $283.00 for the registration; (b) $85.00 title fee ($60.00) with a lien ($25.00); and (c) $5.50 for temporary registration, totaling $373.50, or $76.50 less than the $450.00 Defendants charged ($450.00 - $373.50).

64.      Defendants issued a refund to the McClures of a portion of the overcharge for title and registration fees in the amount of $60.00.

65.      After accounting for the $60.00 refund, Defendants overcharged the McClures for title and registration by $16.50 ($450.00-$373.50-$60.00).

66.      Defendants did not refund the McClures the $16.50 overcharge.

67.      The Defendants have adopted a policy/practice in the sale/lease of vehicles of overstating and collecting registration/title fees in excess of the official fees charged and remitted

to the appropriate Division of Motor Vehicles for timely registration and transfer of title without refunding all of the overcharges to its customers.

68.     The overcharge for title and registration fees is a documentary service fee pursuant to the ASP Regulations at N.J.A.C. 13:45A-26B.1.

69.     The ASP Regulations at N.J.A.C. 13:45A-26B.3(a)(2) prohibit the Defendants from charging any non-itemized documentary service fee including one hidden in a title and registration overcharge without itemizing the services being provided and the price for each service on the sales document.

70.     The Defendants violated the ASP Regulations at N.J.A.C. 13:45A-26B.3(a)(2) by failing to itemize on the BO the services being provided and the price for reach service included in the title and registration overcharge.

71.     In addition to being a regulatory violation, the failure to provide a complete refund and failure to itemize each service and price for each service in the amount charged in excess of the official fees to title and register a motor vehicle is an abusive or unconscionable commercial practice, or other affirmative act in direct violation of the CFA at N.J.S.A. 56:8-2.

72.      The McClures and those similarly situated suffered an ascertainable loss in the amount each was charged in excess of the official fees to title and register their motor vehicle and not refunded. Plaintiffs' ascertainable loss is $16.50.

73.     Prior to presenting the BO to the McClures and selling the RV with a vehicle sales price of $130,895.00, Defendants represented to the McClures that the actual sales price of the RV was $127,975.00.

74.     The $127,975.00 sales price was presented to Plaintiffs in a Quote document prior to the sale. Copy of the Quote is attached as **Exhibit** D.

75. Defendants sold the RV to the McClures in an amount that was $2,920.00 more than the price represented prior to the sale.

76. The representation that the sales price was $127,975.00 in the Quote is an advertisement pursuant to the MVAP Regulations at N.J.A.C. 13:45A-26A.3 and the CFA at N.J.S.A. 56:8-1(a).

77. The MVAP Regulations at N.J.A.C. 13:45A-26A.4(a)(1) prohibits Defendants from the "advertis[ing] of a motor vehicle as part of a plan or scheme not to sell or lease it at the advertised price."

78. A "[r]efusal to show, display, sell, or lease the advertised motor vehicle in accordance with the terms of the advertisement" constitutes prima facie evidence of a bait-and-switch violation under N.J.A.C. 13:45A-26A.4(a)(2)(i).

79. The MVAP Regulations at N.J.A.C. 13:45A-26A.4(a) states that Bait and Switch advertising practices are an unlawful.

80. As alleged *supra*, Defendants sold the RV to the McClures for $2,920.00 more than the advertised price.

81. Alternatively, the $2,920.00 additional amount that Defendants included in the Vehicle Sales Price on the BO is an unitemized pre-delivery service fee that violated the ASP Regulations at N.J.A.C. 13:45A-26B.2.

82. The Quote states that the $2,920.00 consists of $1,675 for a "Camp-Ready Prep Package" and a $1,225.00 "Destination" fee.

83. The Quote does not include any itemization of the services or price for each service included in the Camp-Ready Prep Package or the Destination fee.

84.     The ASP Regulations at N.J.A.C. 13:45A-26B.2 prohibits charging "any pre-delivery service fee without first itemizing the actual pre-delivery service, which is being performed and setting forth in writing, in at least 10-point type, on the sales document the price for each specific pre-delivery service."

85.     The Quote is not a sales document.

86.     Pursuant to N.J.A.C. 13:45A-26B.1, a "pre-delivery service" includes "but is not limited to, items that are often described or labeled as dealer preparation, vehicle preparation, pre-delivery handling and delivery, or any other service of similar import."

87.     Pursuant to the ASP Regulations at N.J.A.C. 13:45A-26B.3(a)(2), Defendants shall not "accept, charge or obtain from a consumer monies, … in exchange for the performance of any documentary service without first itemizing the actual documentary service, which is being performed **and** setting forth in writing, … on the sale document the price for each specific documentary service." (emphasis added).

88.     Defendants failed to itemize on the BO the services or the price for each service included in the additional $2,920.00 that the McClures were charged in the Vehicle Sales Price.

89.     Pursuant to the ASP Regulations at N.J.A.C. 13:45A-26B.4 any violation of the ASP Regulations is a per se violation of the consumer Fraud Act ("CFA").

90.     In addition to being regulatory violations, engaging Bait and Switch advertising practices or the failure to itemize each pre-delivery service and price for each pre-delivery service is an abusive or unconscionable commercial practice, or other affirmative act in direct violation of the CFA at N.J.S.A. 56:8-2.

91.      As a result of Defendants unlawful practices of engaging in Bait and Switch advertising practices or charging unitemized pre-delivery service fees in violation of the consumer regulations and the CFA, the McClures suffered an ascertainable loss of $2,920.00.

92.      Defendants engaged in similar unlawful conduct with numerous other consumers.

93.      As a direct result of Defendants' unlawful conduct, the McClures and those similarly situated suffered an ascertainable loss in the amount of the increased price each was charged for to Bait and Switch advertising practices or unitemized pre-delivery service fee, or similar fee each was charged.

94.      Before they were allowed to take the RV with them, the McClures were told that they would have to leave the RV at the Dylans' property so that they could prepare it for use including that as part of the warranty, they had to put a coating on the interior and exterior of the RV.

95.      While waiting for the RV to be delivered, the McClures purchased several items to enhance the RV, such as approximately $2,000 in bedding, $300 for floor mats for the driving cab, $300 for a new door lock, and $5,000 for a carport for storing the RV out of the weather.

96.      On Monday August 11, 2025, some or all of the Defendants had actual notice of the recall notice on the RV.

97.      On Monday August 11, 2025, six days after purchase, the McClures returned to the dealership to take delivery and pick up the RV.

98.      On August 11, 2025, the McClures were given a walkthrough of the RV by representatives of Dylans being shown how to use various devices in the RV.

99.     At no point on August 11, 2025, during the walkthrough or otherwise were the McClures advised of the Recall Notice or the issues involving the recall notice prior to delivering the RV to them.

100.    After the McClures took delivery of the RV, they found that the slide-out was crooked.

101.    The McClures brought the RV back to Dylans the next day, August 12, 2025 to fix the slide-out.

102.    One of the mechanics at Dylans told the McClures to purchase two additional motors, to replace the motor in the slide outs as needed, as apparently the motor on the vehicle was known to break down.

103.    Prior to this conversation, the McClures were not told about the issue involving the motor breakdown.

104.    At no time on August 12, 2025 did anyone advise the McClures about the recall issue.

105.    The mechanics fixed the slide out, and the McClures took the RV home.

106.    The McClures spent approximately $300 to purchase a door lock to fix the lock for the RV.

107.    There was also an issue with the external television, which the McClures brought to the mechanic at the dealership who fixed it.

108.    At that time, they were also not alerted to the issue involving the recall notice.

109.    That same week, the generator stopped functioning, so the McClures brought the RV back to Dylans.

110.     When they brought the vehicle back to Dylans, the Dylans mechanic stated that the generator was not working because a part was missing, and the mechanic said he would take the part from another vehicle in order to make it work.

111.     The McClures were not told about the recall issue at this time.

112.     After that visit to the dealership, the vehicle's generator worked.

113.     Approximately a week later, the McClures received the recall notice directly from Forest River, the manufacturer of the RV. A copy of the recall notice is attached as **Exhibit A.**

114.     Upon receiving the recall notice, the McClures called Helms, seeking to return the RV.

115.     Helms refused to accept the return of the RV.

116.     Thereafter, the McClures contacted Forest River about the recall notice.

117.     The representative of Forest River advised that the recall notice should have arrived at the dealership on or before August 5, 2025, the same day that the McClures purchased the RV.

118.     The McClures have kept the RV on their property and have not used it, as it is unsafe to drive.

119.     The McClures have maintained the RV by winterizing it and have continued to pay for insurance and the monthly payments while being unable to use it due to its unsafe condition.

## CLASS CERTIFICATION ALLEGATIONS

120.     **Class Definition:** Plaintiffs bring this action pursuant to R. 4:32 of the New Jersey Court Rules on behalf of a class of those similarly situated. Plaintiffs seek certification of a class (the "Class") pursuant to R. 4:32-1(b)(2) and (b)(3) initially defined as follows:

> All persons who, at any time on or after October 9, 2019 who purchased or leased a Recreational Vehicle from Defendants who: (1) received a sales document with terms the same or similar to the terms in the BO provided to Plaintiffs; (2) were charged a "Documentation Fee Paid to Seller" or a similar

fee for documentary services where the sales document used in the transaction did not set forth in writing each specific documentary service performed and the price for each service; (3) were charged a "Certificate of Title Fee" or similar fee to title and register the vehicle purchased or leased that exceeded the actual official fees charged by the New Jersey MVC and/or the appropriate Motor Vehicle agency of the state where the vehicle was registered to timely register and title the vehicle purchased or leased and who did not receive complete refunds for the overcharge; /or (3) were charged a "Vehicle Sales Price" that was more than the advertised price for the RV or included a pre-delivery service fee,  prep fee or a  similar fee for pre-delivery services where the sales document used in the transaction did not set forth in writing each specific pre-delivery service performed and the price for each service .

Specifically excluded from the Class are any judges or magistrates involved in this matter.

121.    With regards to the Class definition *supra*, "terms the same or similar" means a sales document similar to the one received by the McClures that contains similar language as the form BO used in their transaction.

122.    The members of the proposed Class are so numerous that joinder of all members of the class is impracticable as the Defendants sold or leased more than 50 Recreational Vehicles during the class period using the same or similar sales document as used in the McClures' transaction.

123.    There are questions of law and fact common to the members of the Class. These common questions include:

(a) Whether the "Documentation Fee Paid to Seller" is a documentary service fee pursuant to the ASP Regulations, N.J.A.C. 13:45A-26B.1;

(b) Whether the Defendants charging Plaintiffs and those similarly situated for a "Documentation Fee Paid to Seller" without itemizing each service provided and the price for each service constitutes an unitemized documentary fee charged in violation of the ASP Regulations, N.J.A.C. 13:45A-26B.3(a)(2) and CFA;

(c) Whether the Defendants have a policy or practice of charging Plaintiffs and those similarly situated for a "Certificate of Title Fee" or similar title and registration charge in excess of

the official fees to title and register the RVs without providing a full and accurate refund of the amount overcharged;

(d) Whether the "Certificate of Title Fee" overcharge is a "Documentary Fee" as per the ASP Regulations, N.J.A.C. 13:45A-26B.3(a)(2);

(e) Whether Defendants have a policy or practice of charging Plaintiffs and those similarly situated a "Certificate of Title Fee" or similar charge for documentary services without itemizing the documentary services being performed and the price for each pursuant to the ASP Regulations, at N.J.A.C. 13:45A-26B.1, *et seq.*;

(f) Whether Defendants charging Plaintiffs and those similarly situated "Certificate of Title Fee" and failing to itemize documentary services violates the ASP Regulations and the CFA;

(g) Whether Defendants have a policy or practice of charging Plaintiffs and those similarly situated a Vehicle Sales Price in excess of the advertised price.

(h) Whether charging Plaintiffs and those similarly situated a Vehicle Sales Price in excess of the advertised price constitutes Bait and Switch advertising practice in violation of the MVAP Regulations at N.J.A.C. 13:45A-26A.4(a) and CFA.

(i) Whether Defendants have a policy or practice of charging Plaintiffs and those similarly situated a Vehicle Sales Price that includes an unitemized pre-delivery service fee in violation of the ASP Regulations, N.J.A.C. 13:45A-26B.2(a)(2) and CFA;

(j) Whether the Defendants committed an abusive or unconscionable commercial practice, or other affirmative act that violates the CFA by charging Plaintiffs and those similarly situated an unitemized documentary fee, overcharging for registration and title fees, charging a Vehicle Sales Price in excess of the advertised price, and or charging an unitemized pre-delivery service fee; and

(k) Whether the Defendants' violations of the ASP Regulations, MVAP Regulations and the CFA in the BO set forth *supra* constitute violations of TCCWNA;

124.   The McClures' claims are typical of the claims of the members of the Class which they represent because all such claims arise out of the same policies, practices, and conduct, and

the same or similar form documents used by the Defendants in their dealings with the McClures and each member of the putative class.

125. The McClures will fairly and adequately protect the interests of the class and have retained competent counsel experienced in the prosecution of consumer litigation and class actions.

126. Proposed Class Counsel has investigated and identified potential claims in the action. Proposed Class Counsel has a great deal of experience in handling class actions, other complex litigation, and claims of the type asserted in this action.

127. The Defendants have acted, or refused to act, on grounds generally applicable to the McClures and all Class members, thereby making appropriate final injunctive relief or corresponding declaratory relief with respect to the class as a whole.

128. The questions of law or fact common to the members of the class predominate over any questions affecting only individual members.

129. A class action is superior to other available methods for the fair and efficient adjudication of these controversies since joinder of all members of both classes is impracticable.

130. The Class, of which the McClures are members, is readily identifiable from the Defendants' records.

131. The McClures do not anticipate any difficulty in the management of this litigation.

132. While the economic damages suffered by the individual members of the class are significant, the amount is modest compared to the expense and burden of individual litigation.

133. A class action will cause an orderly and expeditious administration of the claims of the class and will foster economies of time, effort, and expense.

## CLASS CLAIMS

### COUNT ONE
### VIOLATIONS OF THE ASP REGULATIONS AND THE CFA

134.   The McClures, on behalf themselves and others similarly situated, repeat and reallege all prior allegations as if set forth at length herein.

135.   As alleged supra, the ASP Regulations prohibit the Defendants from charging the McClures and those similarly situated a documentary service fee, unless they first itemize the actual documentary services which are being performed and set forth in writing on the sales document the price for each specific documentary service. N.J.A.C. 13-45A-26B.3(a)(2).

136.   The CFA at N.J.S.A. 56:8-2 prohibits:

> the act, use or employment by any person of any commercial practice that is unconscionable or abusive, deception, fraud, false pretense, false promise, misrepresentation, or the knowing concealment, suppression, or omission of any material fact with intent that others rely upon such concealment, suppression, or omission, in connection with the sale or advertisement of any merchandise or real estate…"

137.   The sales document, the BO, used in the transaction with the McClures and others similarly situated, did not set forth in writing each specific documentary service performed or the price for each specific documentary service that was performed in return for charging the Documentary Fee Paid to Seller.

138.   By charging the McClures a $399 Documentary Fee Paid to Seller and charging those similarly situated a similar documentary service fee without setting forth each specific service or the price for each specific documentary service performed the Defendants violated the ASP Regulations at N.J.A.C. 13:45A-26B.3(a)(2).

139. By failing to itemize each service and the price for each service provided as part of the Documentation Fee, the Defendants engaged in an abusive or unconscionable commercial practice, or other affirmative act in direct violation of the CFA at N.J.S.A. 56:8-2.

140. As a direct result of the Defendants' violations of the ASP Regulations and the CFA, the McClures and those similarly situated suffered an ascertainable loss, in the amount of the unlawful documentary service fees each was charged and paid. The McClures' ascertainable loss is the $399.00 they were charged and paid.

141. Defendants also charged the McClures and those similarly situated an amount in excess of the actual official Certificate of Title Fee or similar charges to register and title their RVs.

142. The amounts that the McClures and those similarly situated were overcharged for the "Certificate of Title Fee" or similar charges are documentary service fees within the meaning of the ASP Regulations at N.J.A.C. 13:45A-26B.1.

143. Defendants did not refund to the McClures and those similarly situated the entire amount they were charged in excess of the actual official fees to title and register their vehicles.

144. By misrepresenting the amounts charged by the New Jersey Motor Vehicle Commission (NJ MVC) or other appropriate state motor vehicle agency for registration and title fees and retaining the overcharges, Defendants engage in abusive and/or unconscionable commercial practices, or other affirmative acts in direct violation of the CFA, at N.J.S.A. 56:8-2.

145. The Defendants failed to itemize the services provided and the price for each service that was included in the amounts that the McClures and those similarly situated were overcharged for the "Certificate of Title Fee" in the BO or similar sales document provided to the

McClures and those similarly situated, thereby violating the ASP Regulations N.J.A.C. 13-45A-26B.3(a)(2) and the CFA.

146.    The Defendants' violations of the ASP Regulations constitute per se violations of the CFA.

147.    As a direct result of Defendants' violations of the CFA and the ASP Regulations, the McClures and those similarly situated have suffered an ascertainable loss in the amount that Defendants charged in excess of the actual official registration and title fees and failed to fully refund. The McClures' ascertainable loss was the $16.50 they were overcharged and not refunded.

148.    The McClures and those similarly situated are entitled to treble damages and reasonable attorneys' fees and costs pursuant to the CFA, N.J.S.A. 56:8-19.

## COUNT TWO
## VIOLATIONS OF THE ASP REGULATIONS, MVAP REGULATIONS AND THE CFA

149.    The McClures, on behalf of themselves and other similarly situated, repeat and r4eallege all prior allegations as if set forth at length herein.

150.    As alleged Supra, prior to presenting the BO to the McClures and selling the RV with a vehicle sales price of $130,895.00, Defendants represented to the McClures that the actual sales price was $127,975.00.

151.    As alleged supra, Defendants sold the RV to the McClures in an amount that was $2,920.00 more than the price represented prior to the sale.

152.    As alleged supra the sale of the RV to the McClures at $2,920.00 more than the advertised price constitutes both a direct affirmative act violation of the CFA and a regulatory CFA violation by engaging in Bait and Switch advert rising practices in violation of the MVAP regulations.

153.    As alleged supra, alternatively, the sale of the RV to the McClures at $2,920.00 more than the advertised price constitutes both a direct affirmative act violation of the CFA and a regulatory CFA violation by including in the sales price unitemized pre-delivery service fees without itemizing the services being provided or the price for each service in violation of the ASP regulations.

154.    As a direct result of Defendants' violations of the CFA, the MVAP Regulations and the ASP Regulations, the McClures and those similarly situated have suffered an ascertainable loss in the amount that Defendants charged in excess of the advertised price, and or unitemized pre-delivery service fees included in the Vehicle Sales Price. The McClures' ascertainable loss was the $2920,00 they were charged.

155.    The Defendants' violations of the ASP Regulations and MVAP Regulations constitute per se violations of the CFA.

156.    The McClures and those similarly situated are entitled to treble damages and reasonable attorneys' fees and costs pursuant to the CFA, N.J.S.A. 56:8-19.

COUNT THREE
VIOLATIONS OF TCCWNA
(Predicated on violations of the ASP Regulations and the CFA)

157.    The McClures, on behalf of themselves and others similarly situated, repeat and reallege all prior allegations as if set forth at length herein.

158.    TCCWNA provides, inter alia, that no seller shall enter any written contract or provide a notice that includes a provision that violates any clearly established legal right as established by state or federal law. N.J.S.A. 56:12-14 to -18.

159.    At all times relevant to this matter, Defendants were sellers, creditors, and/or lenders with regards to the sale and lease of RVs vehicles within the meaning of TCCWNA.

160.    At all times relevant to this matter, the McClures and those similarly situated were consumers within the meaning of TCCWNA.

161.    The BO or sales document with similar terms that the Defendants used in the transactions with the McClures and those similarly situated were contracts and/or notices within the meaning of TCCWNA.

162.    The Defendants violated TCCWNA by providing the McClures and those similarly situated a BO or similar sales document that failed to set forth each documentary service and the specific price for each documentary service performed that was included in the "Documentation l Fee" or similar charge, in violation of the ASP Regulations at N.J.A.C. 13:45A 26B.3(a)(2) and the CFA.

163.    The McClures and those similarly situated have a clearly established legal right to not be charged a fee for documentary services unless each service and price for each service is itemized on the BO or sales document.

164.    The McClures and those similarly situated were harmed because they were all charged and paid unlawful documentary service fees in connection with the vehicles purchased or leased from the Defendants.

165.     The Defendants also violated TCCWNA by charging the McClures and those similarly situated an unitemized documentary fee that was included in the Registration/Title Fee (Estimated) fees charged for registration and title in the BO and failing to timely provide accurate refunds to the McClures and those similarly situated.

166.    The McClures and those similarly situated have a clearly established right to not be charged a documentary service fee that is hidden in the fee for title and registration fees, and a right to either timely receive a complete refund when the amount charged by the Defendants

exceeds the actual amount remitted for registration and title fees or an itemization of the services and price for each service that was included in the overcharge.

167.    By failing to provide refunds to the McClures and those similarly situated when a complete refund was owed based on fees charged in excess of the actual official registration and title fees, the Defendants clearly violated the rights of consumers.

168.    The McClures and those similarly situated were harmed and are aggrieved consumers because they all were charged an amount in excess of the actual official registration and title fees related to the RVs they purchased or leased from the Defendants and were not refunded for the overcharge or provided an itemization of the services provided for the overcharge and the price for each such service.

169.    The Defendants violated TCCWNA by providing the McClures and those similarly situated a BO or similar sales document that included a charge for predelivery services in the Vehicle Sales Price and failed to set forth each pre-delivery service and the specific price for each service performed that was included in the "Vehicle Sales Price in violation of the ASP Regulations at N.J.A.C. 13:45A 26B.2(a)(2) and the CFA.

170.    The McClures and those similarly situated have a clearly established legal right to not be charged a fee for pre-delivery services unless each service and price for each service is itemized on the BO or sales document.

171.    The McClures and those similarly situated were harmed because they were all charged and paid unlawful pre-delivery service fees in connection with the vehicles purchased or leased from the Defendants.

172.    The ASP Regulations, and the CFA were clearly established laws at the time the Defendants sold or leased RVs to the McClures and those similarly situated.

173.    By offering and/or entering into written consumer contracts (the BO or similar sales documents) which contain provisions in violation of consumers' legal rights clearly established by the ASP Regulations and the CFA, the Defendants violated the TCCWNA at N.J.S.A. 56:12-15.

174.    For violations pertaining to the BO or similar sales document, the McClures and those similarly situated are entitled to statutory damages of not less than $100 plus actual damages, attorneys' fees, and costs pursuant to N.J.S.A. 56:12-17.

### COUNT FOUR
### DECLARATORY JUDGMENT PURSUANT TO THE UNIFORM DECLARATORY JUDGMENTS ACT (UDJA)

175.    The McClures, on behalf of themselves and others similarly situated, repeat and reallege all prior allegations as if set forth at length herein.

176.    The UDJA provides that a person interested under a ... written contract or other writing constituting a contract, or whose rights, status or other legal relations are affected by a statute ... [or] contract ... may have determined any question of construction or validity arising under the instrument, statute ...[or] contract ... and obtain a declaration of rights, status, or other legal relations thereunder.  N.J.S.A. 2A:16-53.

177.    The BO or similar sales document the Defendants provided the McClures and those similarly situated is a contract as contemplated by the UDJA. N.J.S.A. 2A:16-50, et seq.

178.    The BO or similar sales document the Defendants provided the McClures and those similarly situated violated the ASP Regulations, CFA, and TCCWNA, as set forth in the First and Second Counts above.

179.    The Court should enter a declaratory judgment that the Defendants' BO, as set forth in the First, Second and Third Counts above, violates the ASP Regulations, the CFA, and TCCWNA.

180.     The Court should enter a declaratory judgment enjoining the Defendants from future violations of the ASP Regulations, the CFA, and TCCWNA and requiring the Defendants to correct their BO and practices that violate the ASP Regulations, the CFA, and TCCWNA.

## INDIVIDUAL CLAIMS

### COUNT FIVE
### CONSUMER FRAUD ACT

181.     The McClures on behalf of themselves only repeat and reallege each and every allegation in the forgoing paragraphs as if fully set forth herein.

182.     When Defendants sold the RV to the McClures on August 5, 2025, they had actual knowledge of the recall notice that was issued as to the RV.

183.     When Defendants delivered the RV to the McClures on August 11, 2025, they had actual knowledge of the recall notice that was issued as to the RV.

184.     When Defendants sold and delivered the RV to the McClures they knew or had reason to know that the RV had defects, such as the fuel line extension and its associated recall, the motor issue with the slide outs, and the generator issue.

185.     When Defendants sold and delivered the RV to the McClures, they misrepresented the RV to be in good, merchantable quality, free of defects, when it was in fact not.

186.     When Defendants sold and delivered the RV to the McClures, they knowingly concealed, suppressed, or omitted facts that were material to the transaction, including but not limited to the RV's defect and recall notice, and other mechanical problems with intent that the McClures rely on the concealed, suppressed, or omitted material facts.

187.     When Defendants sold and delivered the RV to the McClures, they had an affirmative duty to not sell or deliver the RV to them in its dangerous defective condition.

188. When Defendants sold and delivered the RV to the McClures, they had an affirmative duty to disclose the recall including the dangerous condition and that there was no fix for the condition of the RV identified in the recall notice.

189. When Defendants sold and delivered the RV to the McClures, they had an affirmative duty to disclose the other mechanical issues associated with the RV and not sell the RV with those existing conditions.

190. When Defendants sold the RV to the McClures, they misrepresented to the McClures that if they stopped paying the loan, the finance company would take the vehicle back and not go after them for the loan balance.

191. When the McClures, found out about the recall on the RV, the dangerous condition of the RV and that there was no fix for the issue it created, they contacted Dylans and requested that Defendnats take back the RV and cancel the deal.

192. At the that the McClures requested that the transaction for the purchase of the RV be cancelled, The Defendants had actual knowledge of the recall, the dangerous condition of the RV and that there was no fix available for the defect.

193. When the McClures became aware of the dangerous defective condition of the RV with no fix available, the Defendants had a non-delegable duty to accept the recission, rejection or revocation of acceptance requested by the McClures.

194. Defendants refused to cancel the deal and take back the RV.

195. The McClures request that Dylans take back the RV was valid, recission, rejection and or revocation of acceptance.

196. The McClures have been unable to use the RV due to its defects and dangerous condition.

197.    The commercial practices exemplified by the Defendants in this consumer transaction were unlawful and constituted affirmative act violations of the CFA including that the practices were unconscionable, abusive, deceptive, fraudulent and misrepresentations.

198.    The commercial practices exemplified by the Defendants in this consumer transaction were unlawful and constituted the knowing concealment, suppression, or omission of material facts with intent that the McClures rely upon such concealment, suppression, or omission.

199.    But for the misrepresentations and knowing omissions of the Dylans' defendants, the McClures would not have purchased the RV.

200.    As a direct result of the unlawful acts committed by Defendants, the McClures suffered and continue to suffer ascertainable losses.

201.    The ascertainable losses include but are not limited:

- All money paid towards the purchase of the RV:

- All money paid for improvements to the RV;

- All money paid for the purchased of items to enhance the RV:

- All money paid to repair and maintain the RV including winterization of the RV:

-  All money paid for and continued to be paid for the loan payments on the RV

- All money paid and continues to be paid to maintain insurance on the RV; and

- The diminished value of the RV at the time of sale.

COUNT SIX
COMMON LAW FRAUD

202.    The McClures repeat and reallege each and every allegation contained in the forgoing paragraphs as if fully set forth herein

Page 29 of 34

203. The some or all of the Defendants misrepresented and intentionally concealed material facts regarding the transaction as fully described in the above paragraphs.

204. For example, they said the vehicle was "top of the line," better built, and good, even though there was a recall notice out regarding an issue involving the fuel line.

205. They also knew of the fuel line issues as the recall notice, upon information and belief, was in their possession on the date of sale.

206. They also knew about the motor issue for the slide outs, as the mechanic had advice regarding how to address it which the mechanic volunteered to the McClures.

207. They also knew about the part missing from the generator, as the mechanic suggested it was common practice to take generator parts from other vehicles in the dealership's possession to fix the generator issue.

208. They also knew, or had reason to know, that M&T would not merely abandon a claim for damages against the McClures or their family if the terms of the finance agreement were breached.

209. The some or all of the Defendants, including Dylans, Helms and Andy, made representations praising the "top of the line" quality of the RV, along with omitting these material and dangerous defects, and the representation regarding how M&T would pursue in order to induce the McClures into purchasing the RV.

210. The representations that Defendants made concerning the RV were express warranties.

211. The Defendants had a non-delegable duty to not sell or deliver RV to the McClures in its defective and dangerous condition.

212. The Defendants had a non-delegable duty to disclose the actual condition of the RV at the time of sale, at the time of delivery and thereafter.

213. Once the McClures became aware of the dangerous defective condition of the RV the Defendants had a non-delegable duty to accept the recission, rejection or revocation of acceptance requested by the McClures.

214. The Defendants breached their non-delegable duty to disclose the actual condition of the RV at the time of sale, at the time of delivery and thereafter.

215. The McClures reasonably relied on all of the representations, misrepresentations and knowing omissions made by some or all of the Defendants.

216. The McClures suffered and continue to suffer actual damages as a result of their reliance on the representations, misrepresentations and omissions made of the Defendants.

217. The Defendants actions toward the McClures regarding the sale of the RV to them, the delivery of the RV to them and thereafter were malicious, reckless and or demonstrated a wanton disregard for the safety of the McClures and the RV.

**WHEREFORE**, the McClures on behalf of themselves and those similarly situated demands judgement against the Defendants jointly and severally as follows:

**As to the class claims in Counts One through Four**

a. For an order certifying this matter as a class action on behalf of the Class, pursuant to R. 4:32-1(b)(2) and (b)(3);

b. For an order appointing the named Plaintiffs, Eugene McClure and Anna Mae McClure as the class representatives, and appointing their attorneys Andrew R. Wolf, Esq., Henry P. Wolfe, Esq. and Javier L. Merino, Esq. from The Dann Law Firm, PC; and Aaron Harmaty from The Law Office of Aaron M. Harmaty, LLC as Class Counsel;

c. For injunctive relief forbidding the Defendants from future violations of the CFA, TCCWNA, MVAP Regulations and the ASP Regulations;

d. For declaratory judgment that the Defendants violated the CFA, TCCWNA, the ASP Regulations and the MVAP Regulations;

e. For injunctive/equitable relief requiring Defendants to provide notice to all class members of the Plaintiffs' claims and the relief provided by the Court;

f. For treble damages under the CFA, N.J.S.A. 56:8-19 for the Plaintiffs and each member of the Class;

g. For statutory damages of a minimum of $100 under TCCWNA at N.J.S.A. 56:12-17 for Plaintiffs and each member of the Class;

h. For reasonable attorneys' fees and costs, pursuant to the CFA at N.J.S.A. 56:8-19 and TCCWNA at N.J.S.A. 56:12-17;

i. For prejudgment and post-judgement interest; and

j. For all other relief as the Court deems equitable and just

**As to Plaintiff's Individual Claims in Counts Five and Six**

k. For declaratory relief that Defendants violated the CFA and committed Common Law Fraud;

l. For injunctive relief requiring Defendants to comply with the CFA;

m. For treble damages under the CFA pursuant to N.J.S.A. 56:8-19 for the individual claims as to the Defendants;

n. For reasonable attorneys' fees and costs, pursuant to the CFA at N.J.S.A. 56:8-19 as to Plaintiffs' individual claims;

o. For actual damages as a result of Defendants' Common Law Fraud perpetrated on Plaintiffs for their individual claims;

p. For incidental and consequential damages as a result of Defendants' Common Law Fraud perpetrated on Plaintiffs for their individual claims;

q. For equitable relief requiring Dylans to repurchase the loan from M & T Bank and relieving the McClures of any and all responsibility to paying off the loan created by the Defendants' fraudulent activities;

r. For punitive damages as a result of Defendants' egregious conduct in committing the Common law fraud perpetrated on Plaintiff for his individual claims;

Page 32 of 34

s.  For pre-judgment and post-judgment interest; and

t.  For all other relief as the Court deems equitable and just.

## DEMAND FOR JURY TRIAL

The Plaintiffs demand trial of this action by jury.

## NOTICE TO ATTORNEY GENERAL OF THIS ACTION

A copy of this Amended Complaint shall be electronically mailed to the Attorney General

of the State of N.J. within 24 hours after the filing of this Complaint with the Court pursuant to

N.J.S.A. 56:8-20.

## DEMAND FOR DISCOVERY OF COMMERCIAL GENERAL LIABILITY INSURANCE COVERAGE AS REQUIRED BY N.J.S.A. 56:8-142

Demand is made under Rule 4:10-2(b) that Defendants disclose to Plaintiffs whether or

not there are any insurance or indemnification agreements or policies as required by N.J.S.A.

56:8-142 and N.J.A.C. 13A:45-17.12 under which any person or firm carrying on an insurance

business may be liable to satisfy part or all of the judgment which may be entered in this action

or to indemnify or reimburse for payments made to satisfy the judgment.

## DESIGNATION OF TRIAL COUNSEL

Pursuant to R. 4:25-4, Javier L. Merino, Esq., Henry P. Wolfe, Andrew R. Wolf, Esq.,

and Aaron M. Harmaty, Esq. are hereby designated as trial counsel for the Plaintiffs in the above

matter.

## CERTIFICATION: RULE 4:5-1

I certify that to the best of my knowledge that the matter in controversy is not the subject

of any other action pending in any court or the subject of a pending arbitration proceeding, nor is

any other action or arbitration proceeding contemplated except that Plaintiffs may bring a New

Car Lemon Law claim against Forest River, the manufacturer of the RV.

The Law Office of Aaron M. Harmaty
Attorneys for Plaintiffs and those similarly situated

Dated: February  2, 2026

*Aaron M. Harmaty*
Aaron M. Harmaty, Esq.

The Dann Law Firm, P.C.
Attorneys for Plaintiffs and those similarly situated

Dated: February 2, 2026

Andrew R. Wolf, Esq.

# **EXHIBIT A**



## IMPORTANT SAFETY RECALL INFORMATION

**Issued in Accordance With Federal Law**



U.S. Department of Transportation

NHTSA
www.nhtsa.gov



**FOREST RIVER**

Corporate Compliance PO Box 30 Middlebury, In 46540

**NHTSA RECALL: 25V486
FOREST RIVER ID: 51-1955**

EUGENE ROBERT MCCLURE JR
328 TAYLOR LANE Ave
VINELAND NJ 08360-4343

**INTERIM OWNER NOTIFICATION**

**A SECONDARY NOTICE WILL FOLLOW
WHEN THE REMEDY IS AVAILABLE**

August 2025

This Notice applies to your vehicle VIN listed above.

Dear Forest River Customer:

This notice is sent in accordance with the requirements of the United States' *National Traffic and Motor Vehicle Safety Act*. Forest River has decided that a defect, which relates to the motor vehicle safety, exists in certain 2025-2026 East to West Entrada, Forester, Sunseeker, Solera, Freelander, and Leprechaun Class C Motorhome Recreational Vehicles.

### WHAT IS THE DEFECT?
The fuel line extension may have been inconsistent crimps at the barb fittings of its connectors which can cause the fittings to become loose and detach.

### EVALUATION OF RISK:
If a fuel line detaches, this may allow fuel to openly spray. This condition may lead to fire and property damage.

### WHAT IS FOREST RIVER AND OUR DEALERSHIPS GOING TO DO?
Parts are not currently available for this recall. We are working as quickly as possible to correct this condition. When parts are available, we will send you another letter asking you to take your vehicle to an authorized Forest River dealer for repair.

### WHAT IF YOU HAVE PREVIOUSLY PAID FOR REPAIRS TO YOUR VEHICLE FOR THIS PARTICULAR CONDITION?
If you have already paid for a repair that is within the scope of this defect under recall, you still need to have this recall inspected and/or performed to ensure the correct parts and procedures were utilized. Additionally, you may be eligible for a refund of previously paid repairs. Refunds will only be provided for within the scope of this defect under recall. Please send the service invoice to the following address:

Forest River, Inc.
PO Box 30
Middlebury, IN 46540

### WHAT IF YOU NO LONGER OWN THIS VEHICLE?
If you no longer own this vehicle and have the address for the current owner, please forward this letter to the new owner within 10 working days after the day in which the notice is received. You have received this letter because government regulations require that a notification is sent to the last known owner of record. Our records indicate that you are the current owner.
**PLEASE NOTE: FEDERAL LAW REQUIRES THAT ANY VEHICLE LESSOR RECEIVING THIS RECALL NOTICE MUST FORWARD A COPY OF THIS NOTICE TO THE LESSEE WITHIN TEN DAYS.**

### HELPFUL CONTACT INFORMATION

| | | EMAIL |
|---|---|---|
| EAST TO WEST ENTRADA | (574) 264-6664 | |
| FORESTER, SOLERA, AND SUNSEEKER | (574) 206-7600 | motorizedservice@forestriverinc.com |
| LEPRECHAUN AND FREELANDER | (574) 825-8602 | |



Sincerely,
Forest River Inc.
Office of Corporate Compliance

₥ 574-825-5821

Page 1 of 1

# EXHIBIT B

# Buyer's Order

**New Jersey**                                                                                                           11252449

| Dealer/Seller Name and Address | Buyer Name, Address, Phone, Email | Buyer Name, Address, Phone, Email | Buyer Name, Address, Phone, Email |
|---|---|---|---|
| Dylans RV Center 2190 Delsea Dr. Sewell, NJ 08080 | EUGENE ROBERT MCCLURE JR 328 TAYLOR AVE VINELAND, NJ 08360 609-774-1485 | ANNA MAE MCCLURE 328 TAYLOR AVE VINELAND, NJ 08360 609-774-1485 | N/A |

| Date | Stock No. | Salesperson |
|---|---|---|
| 08/05/2025 | ▇▇▇ | Andrew Pandolfi |

| App. No. | Contract No. |
|---|---|
| ▇▇▇ | ▇▇▇ |

**Definitions.** Contract refers to this Buyer's Order. Buyer, you and your refer to each Buyer signing this Contract. Seller, we, us and our refer to the Dealer/Seller. Vehicle means the motor vehicle described in the Vehicle Information section. Trade-in Vehicle(s) refers to each vehicle described in the Trade-in Information section that is being traded to the Dealer/Seller as part of this transaction. Manufacturer refers to the entity that is the maker of the Vehicle.

**Agreement to Purchase.** You agree to buy the Vehicle from us for the amount stated in this Contract. You agree to sign any documents necessary to complete this transaction. You may only cancel this contract according to the conditions described in the Manufacturer or Trade-in sections. If you refuse to take delivery of the Vehicle, we can keep any deposits you have made to us. In addition, refusal to take delivery will make you responsible for our damages, expenses, and attorney's fees in connection to this Contract unless prohibited by the law of New Jersey. If you do not breach this Contract, any deposits will be used toward the purchase of the Vehicle.

**Vehicle Information**   ☒ New   ☐ Used   ☐ Demo   ☐ Other

| Year | Make | Model | Style | |
|---|---|---|---|---|
| 2025 | LEPRECHAUN | 260DS FORD MC | Class C | ▇▇▇ |

| Lic. No. | Color | Odometer Reading |
|---|---|---|
|  | OCEAN FBP | 793 |

| Other |
|---|
| N/A |

**Insurance Information**

Buyer has arranged the following insurance on the motor vehicle:

Insurance Company _____

Policy No. _____   Phone _____

**Trade-In Information**

| Trade-in 1 | | Trade-in 2 | |
|---|---|---|---|
| Year | Make | Year | Make |
| Model | Style | Model | Style |
| Lic. No. | Color | Lic. No. | Color |
| VIN | Odometer | VIN | Odometer |
| Lienholder Name | | Lienholder Name | |
| Address | Phone | Address | Phone |

| Trade-In Allowance $ | Payoff $ | Payoff good through | Trade-In Allowance $ | Payoff $ | Payoff good through |
|---|---|---|---|---|---|

**Trade-In Terms**

**Trade-In Vehicle.** You will transfer title to the Trade-in Vehicle to us free of all liens except those noted on this Contract. You give permission to us to contact the lienholder(s) for payoff information. If the payoff information that we obtain from the lienholder(s) differs from the amount disclosed in this Contract, you agree to pay the difference to us if the actual amount of the balance owed is greater than the amount listed in this Contract. If the actual amount of the balance owed is less than the amount listed in this Contract, we will pay you the difference.

If you do not deliver the Trade-in Vehicle to us at the time of the initial appraisal, we may reappraise the Trade-in Vehicle when it is delivered to us. If the reappraised value is lower than the original appraisal, you can cancel this transaction as long as you have not taken delivery of the Vehicle.

You represent that (a) you are the sole true and lawful owner of the Trade-in Vehicle, (b) the Trade-in Vehicle has never been titled under any state or federal brand such as "defective," "rebuilt," "salvage," "flood," etc., (c) unless you have disclosed otherwise in an odometer statement, the mileage of the Trade-in Vehicle shown in this Contract is the actual mileage of the Trade-in Vehicle, (d) all emission control equipment is on the Trade-in Vehicle and is in satisfactory working order, and (e) the frame on the Trade-in Vehicle has not been damaged by collision or other event and repaired. If any of these representations are not true, we may elect to cancel the transaction. We may also choose to reappraise the Trade-in Vehicle and adjust the Total Balance Due instead of canceling the transaction. You agree to immediately pay us the difference.

Buyer's Order
©2024 The Reynolds and Reynolds Company.
THERE ARE NO WARRANTIES, EXPRESS OR IMPLIED, MADE BY EITHER OF THE
REYNOLDS AND REYNOLDS COMPANY OR THE DEALER OR THEIR RESPECTIVE LEGAL COUNSEL.

BUY-ORDER-NJ MV3/24
Buyers Order(s)
Page 1 of 1

11252449

## Itemization of Sale

| | | | |
|---|---|---|---|
| 1. | Vehicle Sales Price | $ | 130,895.00 |
| **Taxes** | | | |
| 2. | Sales Tax | $ | 9,862.90 |
| 3. | Other Tax N/A | $ | 0.00 |
| 4. | **Subtotal (Add lines 1 through 3)** | $ | 140,757.90 |
| **Title, License & Other Fees** | | | |
| 5. | Certificate of Title Fee | $ | 450.00 |
| 6. | License and/or Registration Fee | $ | 0.00 |
| 7. | Tire Fee | $ | 9.00 |
| 8. | Luxury and Fuel Inefficient Vehicle Surcharge | $ | 0.00 |
| 9. | N/A | $ | 0.00 |
| 10. | N/A | $ | 0.00 |
| 11. | N/A | $ | 0.00 |
| 12. | N/A | $ | 0.00 |
| 13. | N/A | $ | 0.00 |
| 14. | **Total Documentary Service Fees Paid to Seller*** | $ | 0.00 |
| 15. | **Total Pre-Delivery Service Fees Paid to Seller** | $ | 0.00 |
| 16. | **Total Other Fees (Add lines 5 through 15)** | $ | 459.00 |
| **Additional Items** | | | |
| 17. | Vehicle Service Contract paid to Dealer Admin Services | $ | 11,995.00 |
| 18. | GAP paid to Tire Shield | $ | 1,500.00 |
| 19. | Paint Protection paid to Dealer Admin Services | $ | 2,995.00 |
| 20. | Roadside Assistance paid to Vehicle Administrative Services | $ | 1,295.00 |
| 21. | Tire & Wheel Protection paid to Dealer Admin Services | $ | 1,295.00 |
| 22. | Documentation Fee paid to Seller | $ | 399.00 |
| 23. | N/A | $ | 0.00 |
| 24. | N/A | $ | 0.00 |
| 25. | N/A | $ | 0.00 |
| 26. | N/A | $ | 0.00 |
| 27. | **Total Additional Items (Add lines 17 through 26)** | $ | 19,479.00 |
| 28. | **Cash Sale Price (Add lines 4+16+27)** | $ | 160,695.90 |
| 29. | Trade-in Allowance | $ | 0.00 |
| 30. | Trade-in Payoff Balance | $ | 0.00 |
| 31. | Net Trade Allowance (Line 29-30, if negative, enter $0 here and enter amount on line 40.) | $ | 0.00 |
| 32. | Deposit | $ | 0.00 |
| 33. | Cash Down Payment | $ | 15,000.00 |
| 34. | Manufacturer's Rebate | $ | 0.00 |
| 35. | Other Credit N/A | $ | 0.00 |
| 36. | Other Credit N/A | $ | 0.00 |
| 37. | Deferred Down Payment | $ | 0.00 |
| 38. | Other Down Payment N/A | $ | 0.00 |
| 39. | **Total Credits (Add lines 31 through 38)** | $ | 15,000.00 |
| 40. | Trade-in Balance Owing (see line 31) | $ | 0.00 |
| 41. | Lease Balance Owing | $ | 0.00 |
| 42. | **Total Balance Due (Line 28-39+40+41)** | $ | 145,695.90 |

We may retain or receive a portion of any amounts paid to others.

* No governmental entity requires the automotive dealer perform any documentary service.

## Documentary Service and Pre-Delivery Service

**Documentary Service Fee.** You agree to pay Seller a Documentary Service Fee of $ _____ 0.00 for Preparation and Processing:

| | | |
|---|---|---|
| i. of License, Registration and Title | $ | 0.00 |
| ii. of N/A | $ | 0.00 |
| iii. of N/A | $ | 0.00 |
| iv. of N/A | $ | 0.00 |

**Pre-Delivery Service Fee.** You agree to pay Seller a Pre-Delivery Service Fee of $ _____ 0.00 for the following services:

| | | |
|---|---|---|
| i. of N/A | $ | 0.00 |
| ii. of N/A | $ | 0.00 |
| iii. of N/A | $ | 0.00 |
| iv. of N/A | $ | 0.00 |

A Documentary Service fee and Pre-Delivery Service fee are not official fees and are not required by law. "Documentary service" means, but is not limited to, the preparation and processing of documents in connection with the transfer of license plates, registration, or title, and the preparation and processing of other documents relating to the sale of a motor vehicle. Documentary Service Fees MUST BE ITEMIZED ABOVE such that the price of each prepared document is disclosed. "Pre-delivery service" means, but is not limited to, items that are often described or labeled as dealer preparation, vehicle preparation, pre-delivery handling and delivery, or any other service of similar import. Pre-Delivery Service Fees MUST BE ITEMIZED ABOVE and do not include any services for which the dealer receives compensation from any other party.

## Additional Terms

**Governing Law and Interpretation.** This Contract is governed by the law of New Jersey and applicable federal law and regulations.

If any section or provision of this Contract is not enforceable, the other terms will remain part of this contract. You authorize us to correct any clerical error or omissions in this Contract or in any related document.

**Manufacturer.** We are not an agent of the Manufacturer. The Manufacturer can change the price, design or standard features of the Vehicle at any time without notice. If we cannot obtain the Vehicle from the Manufacturer at the price in effect as of the date of this Contract, or if we cannot obtain the agreed upon product from the Manufacturer, you or we can cancel this Contract.

If you cancel this Contract under the terms of this section, we will refund to you any amounts you have paid to us. If you have delivered a Trade-in Vehicle to us, we will return it to you. If we have already sold the Trade-in Vehicle, we will pay you the amount we received for the sale after adjusting for any payoff we made to a lienholder and costs for repair and reconditioning, if any.

**Name and Location.** Your name and address indicated on page 1 are your exact legal name and your principal residence.

**Insurance.** You represent that the insurance information you have given us is accurate.

**Retail Installment Sales Contract.** In the event that you and we enter into a retail installment sales contract for the financing of the purchase of the Vehicle, the terms of the retail installment sales contract will control any inconsistencies between this Contract and the retail installment sales contract.

**Returned Payment Charge.** If you make any payment required by this Contract that is returned or dishonored, you agree to pay a fee of $20.00.

Buyers Order-NJ
©2024 The Reynolds and Reynolds Company
THERE ARE NO WARRANTIES, EXPRESS OR IMPLIED, AS TO CONTENT OR FITNESS FOR PURPOSE OF THIS FORM. CONSULT YOUR OWN LEGAL COUNSEL.

BUY-ORDER-NJ 6/1/2024
Bankers Systems®
Page 2 of 4

11252449

**Telephone Monitoring and Calling.** You agree that we may from time to time monitor and record telephone calls made or received by us or our agents regarding your account to assure the quality of our service. In order for us to service the account or to collect any amounts you may owe, and subject to applicable law, you agree that we may from time to time make calls and send text messages to you using prerecorded/artificial voice messages or through the use of an automatic dialing device at any telephone number you provide to us in connection with your account, including a mobile telephone number that could result in charges to you.

**Vehicle Condition.** You understand the Vehicle may have undergone prior mechanical or body repair. The damage, necessitating repair may have occurred during manufacture, transit or while in the possession of prior owner or operators.

## Vehicle Inspection

By initialing below, you represent that you have thoroughly inspected the Vehicle and approve and accept it. You had an opportunity to have the Vehicle inspected by a third party of your choice and at your expense. You are purchasing the Vehicle based on your inspection. You are not relying on any opinion, statement, or promise of the Seller or its employees that is not contained in the written agreements you are signing today.

Buyer's Initials

_____        _____        __N/A_____

## Warranty Information

☐ **Vehicle Manufacturer Warranty.** The Vehicle is subject to an express warranty made by the Manufacturer. It is a standard written manufacturer's warranty and made by the Manufacturer and not by the Seller. By signing this Contract, each Buyer acknowledges receiving a copy of it.

☐ **Dealer Warranty.** The Vehicle is subject to an express written warranty made by the Seller. By signing this Contract, each Buyer acknowledges receiving a copy of it.

The Seller is responsible to fulfill any separate written warranty made by Seller on its own behalf. If the Manufacturer or another supplier provides a warranty, they are responsible for satisfying its terms, NOT the Seller.

If neither box above is checked under Warranty Information the Used Vehicle is sold AS-IS and the following paragraph applies:

**THIS VEHICLE IS SOLD "AS-IS" WITH ALL FAULTS, WITHOUT ANY WARRANTY, EITHER EXPRESS OR IMPLIED AND BUYER IS SOLELY RESPONSIBLE FOR COST OF ANY REPAIRS TO THE VEHICLE. THE SELLER EXPRESSLY DISCLAIMS ALL WARRANTIES, EITHER EXPRESS OR IMPLIED, INCLUDING ANY IMPLIED WARRANTIES OF MERCHANTABILITY AND FITNESS FOR A PARTICULAR PURPOSE. BUYER ASSUMES ALL RISKS AND RESPONSIBILITIES.**

## Used Car Buyer Notice

**If you are buying a used vehicle: The information you see on the window form for this vehicle is part of this contract. Information on the window form overrides any contrary provisions in the contract of sale.**

**(Spanish Translation) Si compra un vehículo usado: La información que ve adherida en la ventanilla forma parte de éste contrato. La información contenida en el formulario de la ventanilla prevalece por sobre toda otra disposición en contrario incluida en el contrato de compraventa.**

## Notices

☐ **Trade-in Balance Due.** You understand that the balance owed on the Trade-in exceeds the Trade-in Allowance and that as a result the Total Balance Due has been increased by $ __0.00_____ of negative equity.

☐ **Lease Balance Due.** You understand the Total Balance Due includes the amount of $ __0.00_____ for a lease balance due from a prior transaction.

Buyer's Initials

_____        _____        __N/A_____

## Used Vehicle Sale Dealer/Seller's Obligation

**Explanation of Dealer/Seller Obligations.** The Dealer/Seller has the following obligations under N.J.S.A. 39:10-26 through 39:10-30:

No Dealer/Seller may sell a used passenger motor vehicle to be registered in New Jersey unless the Vehicle meets the standards for the issuance of a certificate of approval. If the used passenger motor vehicle has any defect that does not allow for the issuance of a certificate of approval, the Dealer/Seller shall make, or cause to be made, all necessary repairs without charge, or shall return the full purchase price to the Buyer; provided that such defect or defects are not the result of the Buyer's own act.

Buyer acknowledges they have been informed of Dealer/Seller's obligation above. Buyer agrees to present the used passenger motor vehicle for inspection within 14 days from the date of delivery of such vehicle.

Buyer EUGENE ROBERT MCCLURE JR

Buyer ANNA MAE MCCLURE

N/A_____
Buyer N/A

## Acknowledgement of New Jersey Registration

☐ The Vehicle is a used passenger motor vehicle and will be registered in New Jersey in the condition sold.

Buyers Order-NJ
©2024 The Reynolds and Reynolds Company
THERE ARE NO WARRANTIES, EXPRESS OR IMPLIED, AS TO CONTENT OR FITNESS FOR PURPOSE OF THIS FORM. CONSULT YOUR OWN LEGAL COUNSEL.

BUY-ORDER-NJ 8/1/2024
Bankam Systems®
Page 3 of 4

11252449

### Waiver of Used Vehicle Sale Dealer/Seller's Obligation

Buyer does not waive the Dealer/Seller Obligations unless signed below.

☐ **Buyer Waives the Dealer/Seller Obligations.** Buyer has read and understood the Dealer/Seller obligations under the New Jersey Motor Vehicle Certificate of Ownership Law. The Dealer/Seller has disclosed the below list of known defects. Buyer has reviewed the below list of known defects and acknowledges that the known defects may need to be resolved before a certificate of approval may be issued.

KNOWN DEFECTS: _____

_____

_____

Buyer WAIVES AND RELEASES the DEALER/SELLER OBLIGATIONS and accepts the motor vehicle with KNOWN DEFECTS.

N/A
Buyer N/A

N/A
Buyer N/A

N/A
Buyer N/A

### Signatures

This agreement is not binding upon the Dealer/Seller until it is signed by an authorized representative of the Dealer/Seller.

You represent that you are of legal age and have legal capacity to enter into this Contract.

☐ **A separate Arbitration Agreement between you and us is part of this Contract.**

You received a copy of this Contract and by signing below, you agree to the terms on all pages of this Contract and acknowledge you had a chance to read and review it before you signed it.

**Entire Agreement.** Your and our entire agreement is contained in this Contract. There are no unwritten agreements regarding this Contract.

| | |
|---|---|
| Buyer EUGENE ROBERT MCCLURE JR | 08/05/2025 Date |
| Buyer ANNA MAE MCCLURE | 08/05/2025 Date |
| Buyer N/A | N/A Date |
| Dealer/Seller Dylans RV Center | 08/05/2025 Date |

Buyers Order-NJ
©2024 The Reynolds and Reynolds Company
THERE ARE NO WARRANTIES, EXPRESS OR IMPLIED, AS TO CONTENT OR
FITNESS FOR PURPOSE OF THIS FORM. CONSULT YOUR OWN LEGAL COUNSEL.

BUY-ORDER-NJ 6/1/2024
Bankers Systems®
Page 4 of 4

# EXHIBIT C

NJ-102 11/1/2018

# Retail Installment Contract and Security Agreement

| Seller Name and Address | Buyer(s) Name(s) and Address(es) | Summary |
|---|---|---|
| Dylans RV Center | EUGENE ROBERT MCCLURE JR | No. |
| 2190 Delsea Dr. | ANNA MAE MCCLURE | Date  08/05/2025 |
| Sewell, NJ 08080 | 328 TAYLOR AVE | |
| | VINELAND, NJ 08360 | |

☐ Business, commercial or agricultural purpose Contract.

## 1. Sales Agreement

**1.1 Definitions.** "Contract" refers to this Retail Installment Contract and Security Agreement. The pronouns "you" and "your" refer to each buyer signing this Contract, and any guarantors, jointly and individually. The pronouns "we", "us" and "our" refer to the Seller and any entity to which it may transfer this Contract. "Vehicle" means each motor vehicle described in the *Description of Property* section. "Property" means the Vehicle and all other property described in the *Description of Property* and *Additional Protections* sections.

**1.2 Purchase of Property.** You agree to purchase the Property from Seller, subject to the terms and conditions of this Contract.

You have been given the opportunity to purchase the Property and described services for the Cash Price or the Total Sale Price. The *Total Sale Price* is the total price of the Property if you buy it over time.

**1.3 Payment.** You promise to pay us the principal amount of $ 145,695.90            plus the time price differential accruing on the unpaid balance at the rate of    7.99    % per year from the date of this Contract until maturity. After maturity, or after you default and we demand payment, we will earn the time price differential on the unpaid balance at    7.99    % per year. You agree to pay this Contract according to the payment schedule and late charge provisions shown in the *Truth-In-Lending Disclosure*. You also agree to pay any additional amounts according to the terms and conditions of this Contract.

## 2. Truth-In-Lending Disclosure

| Annual Percentage Rate The cost of your credit as a yearly rate. | Finance Charge The dollar amount the credit will cost you. | Amount Financed The amount of credit provided to you or on your behalf. | Total of Payments The amount you will have paid when you have made all scheduled payments. | Total Sale Price The total cost of your purchase on credit, including your down payment of $ 15,000.00 |
|---|---|---|---|---|
| 7.99 % | $ 146,564.10 | $ 145,695.90 | $ 292,260.00 | $ 307,260.00 |

**Payment Schedule.** Your payment schedule is:

| No. of Payments | Amount of Payments | When Payments are Due |
|---|---|---|
| 240 | $ 1,217.75 | Monthly, beginning on 9/4/2025 |
| N/A | $ N/A | NOT APPLICABLE |
| N/A | $ N/A | NOT APPLICABLE |

**Security.** You are giving us a security interest in the Property purchased.

**Late Charge.** If a payment is more than 10 days late, you will be charged 5% of the unpaid amount of the payment due, except that if the Property is primarily for personal, family, or household use and the cash price is $10,000 or less, the charge for late payment will be $10.

**Prepayment.** If you pay off this Contract early, you will not have to pay a penalty.

**Contract Provisions.** You can see the terms of this Contract for any additional information about nonpayment, default, any required repayment before the scheduled date, and prepayment refunds and penalties.

## 3. Description of Property

| Year | Make | Model | Style | | Odometer Mileage |
|---|---|---|---|---|---|
| 2025 | LEPRECHAUN | 260DS FORD MC | Class C | | 753 |

Other:

☒ New
☐ Used
☐ Demo

Retail Installment Contract... [illegible fine print]

Customers Initial Here

## 4. Description of Trade-In

N/A

## 5. Conditional Delivery

☐ **Conditional Delivery.** If checked, you agree that the following agreement regarding securing financing ("*Agreement*") applies:

N/A

The Agreement is part of this Contract. The Agreement will no longer control after the assignment is accepted. If there are any conflicts between the terms of the Agreement and the Contract, the terms of this Contract will apply.

## 6. Itemization of Amount Financed

| | | |
|---|---|---:|
| a. | **Vehicle Sales Price** | $ 130,895.00 |
| b. | Sales Tax (reduced as required due to value of like trade-in) | $ 9,862.90 |
| c. | Other Tax N/A | $ 0.00 |
| d. | Other Tax N/A | $ 0.00 |
| e. | Other Tax N/A | $ 0.00 |
| f. | Cash Price (a+b+c+d+e) | $ 140,757.90 |
| g. | Trade-In allowance | $ 0.00 |
| h. | Less: Amount owing, paid to (includes o). N/A | $ 0.00 |
| i. | Net Trade-In (g-h; if negative, enter $0 here and enter the amount on line o) | $ 0.00 |
| j. | Cash payment | $ 15,000.00 |
| k. | Manufacturer's rebate | $ 0.00 |
| l. | Other down payment (describe) N/A | $ 0.00 |
| m. | **Down Payment** (i+j+k+l) | $ 15,000.00 |
| n. | **Unpaid Cash Balance** (f-m) | $ 125,757.90 |
| o. | Financed trade-in balance (see i) | $ 0.00 |
| p. | Paid to Public Officials – Certificate of Title Fee | $ 450.00 |
| q. | Paid to Public Officials – Tire Fee | $ 9.00 |
| r. | Paid to Public Officials – Supplemental Title Fee | $ 0.00 |
| s. | Paid to Public Officials – License and/or Registration Fee | $ 0.00 |
| t. | Paid to Public Officials N/A | $ 0.00 |
| u. | Paid to Public Officials N/A | $ 0.00 |
| v. | Insurance premiums paid to Insurance company(ies) | $ 0.00 |
| w. | Documentary Service Fee Paid to Seller for Preparation and Processing: | |
| | 1. of License, Registration and Title | $ 0.00 |
| | 2. of N/A | $ 0.00 |
| | 3. of N/A | $ 0.00 |
| | 4. of N/A | $ 0.00 |
| x. | Pre-Delivery Service Fee Paid to Seller: | |
| | 1. for Pre-Delivery Handling and Delivery Service Fee | $ 0.00 |
| | 2. for N/A | $ 0.00 |
| | 3. for N/A | $ 0.00 |
| | 4. for N/A | $ 0.00 |
| y. | Service Contract, paid to: Dealer Admin Services | $ 11,995.00 |

| | | |
|---|---|---:|
| z. | To: GAP paid to Tire Shield | $ 1,500.00 |
| aa. | To: Paint Protection paid to Dealer Admin Services | $ 2,995.00 |
| bb. | To: Roadside Assistance paid to Vehicle Administrative Services | $ 1,295.00 |
| cc. | To: Tire & Wheel Protection paid to Dealer Admin Services | $ 1,295.00 |
| dd. | To: Documentation Fee paid to Seller | $ 399.00 |
| ee. | To: N/A | $ 0.00 |
| ff. | To: N/A | $ 0.00 |
| gg. | To: N/A | $ 0.00 |
| hh. | To: N/A | $ 0.00 |
| ii. | To: N/A | $ 0.00 |
| jj. | **Total Other Charges/Amts Paid** (o thru ii) | $ 19,938.00 |
| kk. | **Principal Balance** (n+jj) | $ 145,695.90 |
| ll. | **Time Price Differential** | $ 146,564.10 |
| mm. | **Time Balance** (kk+ll) | $ 292,260.00 |
| nn. | **Prepaid Finance Charge** | $ 0.00 |
| oo. | **Amount Financed** (n+jj-nn) | $ 145,695.90 |
| pp. | **Time Sales Price** (m+mm) | $ 307,260.00 |

We may retain or receive a portion of any amounts paid to others.

## 7. Insurance Disclosures

**7.1 Credit Insurance.** Credit life insurance pays all or part of the amount you owe under this Contract if you die. This insurance pays only the amount you would owe if you paid all your payments on time. Credit disability pays all or part of the payments due under this Contract while you are disabled. This insurance does not cover any increase in your payment or in the number of payments. See the policies or certificates from the named insurance companies for the details of the coverage these types of insurance provide, and for other terms and conditions. Credit life and credit disability (accident and health) are not required to obtain credit and are not a factor in the credit decision. We will not provide them unless you sign and agree to pay the additional premium. If you want such insurance, we will obtain it for you (if you qualify for coverage). We are quoting below **only** the coverages you have chosen to purchase.

**Credit Life**

☐ Single  ☐ Joint  ☒ None
Premium $ 0.00                Term N/A
Insured N/A

**Credit Disability**

☐ Single  ☐ Joint  ☒ None
Premium $ 0.00                Term N/A
Insured N/A

Your signature below means you want (only) the insurance coverage(s) quoted above. If "None" is checked, you have declined the coverage we offered.

*[signature]*                                     11/25/1959
By: EUGENE ROBERT MCCLURE JR          DOB

*[signature]*                                     11/12/1959
By: ANNA MAE MCCLURE                   DOB

                                                  N/A
By: N/A                                           DOB

Retail Installment Contract-NJ  Not for use in transactions secured by a dwelling.
©2018 The Reynolds and Reynolds Company
THERE ARE NO WARRANTIES, EXPRESS OR IMPLIED, AS TO CONTENT OR FITNESS FOR PURPOSE OF THIS FORM. CONSULT YOUR OWN LEGAL COUNSEL.

RSSIMVLFLZNJ 11/1/2018
Bankers Systems®
Page 2 of 7
Customers Initial Here

**7.2 Property Insurance.** You must insure the Property. You may purchase or provide the insurance through any insurance company reasonably acceptable to us. The collision coverage deductible may not exceed $ $500 . If you get insurance from or through us you will pay $ 0.00 for N/A of coverage.

This premium is calculated as follows:

☐ $ 0.00 Deductible, Collision Cov.   $ 0.00
☐ $ 0.00 Deductible, Comp. Cov.   $ 0.00
☐ Fire-Theft and Combined Additional Cov.   $ 0.00
☐ N/A   $ 0.00

**THIS DOES NOT INCLUDE INSURANCE ON YOUR LIABILITY FOR BODILY INJURY OR PROPERTY DAMAGE. WITHOUT SUCH INSURANCE, YOU MAY NOT OPERATE THIS VEHICLE ON PUBLIC HIGHWAYS.**

**7.3 ☐ Single-Interest Insurance.** You must purchase single-interest insurance as part of this sale transaction. You may purchase the coverage from a company of your choice, reasonably acceptable to us. If you buy the coverage from or through us, you will pay $ N/A for N/A of coverage.

## 8. Additional Protections

You may buy any of the following voluntary protection plans. They are not required to obtain credit, are not a factor in the credit decision, and are not a factor in the terms of the credit or the related sale of the Vehicle. The voluntary protections will not be provided unless you sign and agree to pay the additional cost.

Your signature below means that you want the described item and that you have received and reviewed a copy of the contract(s) for the product(s). If no coverage or charge is given for an item, you have declined any such coverage we offered.

☒ **Service Contract**
Term           60 months
Price          $ 11,995.00
Coverage       Parts & Labor Protection

☒ **Gap Waiver or Gap Coverage**
Term           72 months
Price          $ 1,500.00
Coverage       G.A.P. Protection

☒ **Paint Protection**
Term           60 months
Price          $ 2,995.00
Coverage       Appearance Protection

By: EUGENE ROBERT MCCLURE JR    08/05/2025
                                Date

By: ANNA MAE MCCLURE            08/05/2025
                                Date

By: N/A                         N/A
                                Date

## 9. Additional Terms of the Sales Agreement

**9.1 General Terms.** The Total Sale Price shown in the *Truth-In-Lending Disclosure* assumes that all payments will be made as scheduled. The actual amount you will pay will be more if you pay late and less if you pay early.

We do not intend to charge or collect, and you do not agree to pay, any time price differential or fee that is more than the maximum amount permitted for this sale by state or federal law. If you pay a time price differential or fee that exceeds that maximum amount, we will first apply the excess amount to reduce the principal balance and, when the principal has been paid in full, refund any remaining amount to you.

You understand and agree that some payments to third parties as a part of this Contract may involve money retained by us or paid back to us as commissions or other remuneration.

You agree that the Property will not be used as a dwelling.

**9.2 Prepayment.** You may prepay this Contract in full or in part at any time without penalty. Any partial prepayment will not excuse any later scheduled payments. If we get a refund of any unearned insurance premiums that you paid, you agree that we may subtract the refund from the amount you owe, unless otherwise provided by law.

**9.3 Returned Payment Charge.** If you make any payment required by this Contract that is returned uncollected due to insufficient funds in your account, you agree to pay a fee of $20. If the Property is primarily for personal, family, or household use and the cash price is $10,000 or less, then the $20 fee applies only to payments made by check.

**9.4 Governing Law and Interpretation.** This Contract is governed by the law of New Jersey and applicable federal law and regulations.

If any section or provision of this Contract is not enforceable, the other terms will remain part of this Contract. You authorize us to correct any clerical error or omissions in this Contract or in any related document.

**9.5 Name and Location.** Your name and address set forth in this Contract are your exact legal name and your principal residence. You will provide us with at least 30 days notice before you change your name or principal residence.

**9.6 Telephone Monitoring and Calling.** You agree that we may from time to time monitor and record telephone calls made or received by us or our agents regarding your account to assure the quality of our service. In order for us to service the account or to collect any amounts you may owe, and subject to applicable law, you agree that we may from time to time make calls and send text messages to you using prerecorded/artificial voice messages or through the use of an automatic dialing device at any telephone number you provide to us in connection with your account, including a mobile telephone number that could result in charges to you.

**9.7 Default.** You will be in default on this Contract (except as prohibited by law) if you fail to perform any obligation that you have undertaken in this Contract.

If the Property is primarily for personal, family, or household use, and the cash price is $10,000 or less, if you default you agree to pay attorneys' fees of 20% of the first $500 and 10% on any excess of the amount due and payable under this Contract, if referred for collection to an attorney not a salaried employee of ours. For other transactions, if we hire an attorney who is not a salaried employee to collect what you owe, you will pay the attorney's reasonable fee and court costs the law permits.

If an event of default occurs as to any of you, we may exercise our remedies against any or all of you.

Retail Installment Contract-NJ   Not for use in transactions secured by a dwelling.
©2018 The Reynolds and Reynolds Company
THERE ARE NO WARRANTIES, EXPRESS OR IMPLIED, AS TO CONTENT OR FITNESS FOR PURPOSE OF THIS FORM. CONSULT YOUR OWN LEGAL COUNSEL.

RSSIMVLFLZNJ 11/1/2018
Bankers Systems®
Page 3 of 7
Customers Initial Here

**9.8 Remedies.** If you are in default on this Contract, we have all of the remedies provided by law and this Contract. Those remedies include:

- We may require you to immediately pay us, subject to any refund required by law, the remaining unpaid balance of the amount financed, time price differential and all other agreed charges.

- We may pay taxes, assessments, or other liens or make repairs to the Property if you have not done so. We are not required to do so. You will repay us that amount immediately. That amount will earn the time price differential from the date we pay it at the contract rate described in the *Payment* section until paid in full.

- We may require you to make the Property available to us at a place we designate that is reasonably convenient to you and us.

- We may immediately take possession of the Property by legal process or self-help, but in doing so we may not breach the peace or unlawfully enter onto your premises.

- We may then sell the Property and apply what we receive as provided by law to our reasonable expenses and then toward what you owe us.

- We may, as allowed by law, sue you for additional amounts if the proceeds of a sale do not pay all of the amounts you owe us.

By choosing any one or more of these remedies, we do not give up our right to later use another remedy. By deciding not to use any remedy, we do not give up our right to consider the event a default if it happens again.

You agree that if any notice is required to be given to you of an intended sale or transfer of the Property, notice is reasonable if mailed to your last known address, as reflected in our records, at least 10 days before the date of the intended sale or transfer (or such other period of time as is required by law).

You agree that we may take possession of personal property left in or on the Property securing this Contract and taken into possession as provided above. You may have a right to recover that property.

If the Property has an electronic tracking device, you agree that we may use the device to find the vehicle.

**9.9 Obligations Independent.** Each person who signs this Contract agrees to pay this Contract according to its terms. This means the following:

- You must pay this Contract even if someone else has also signed it.

- We may release any co-buyer or guarantor and you will still be obligated to pay this Contract.

- We may release any security and you will still be obligated to pay this Contract.

- If we give up any of our rights, it will not affect your duty to pay this Contract.

- If we extend new credit or renew this Contract, it will not affect your duty to pay this Contract.

**9.10 Warranty.** Warranty information is provided to you separately.

### 10. Security Agreement

**10.1 Security.** To secure your payment and performance under the terms of this Contract, you give us a security interest in the Vehicle, all accessions, attachments, accessories, and equipment placed in or on the Vehicle and in all other Property. You also assign to us and give us a security interest in proceeds and premium refunds of any insurance and service contracts purchased with this Contract.

**10.2 Duties Toward Property.** By giving us a security interest in the Property, you represent and agree to the following:

- You will defend our interests in the Property against claims made by anyone else. You will keep our claim to the Property ahead of the claim of anyone else. You will not do anything to change our interest in the Property.

- You will keep the Property in your possession and in good condition and repair. You will use the Property for its intended and lawful purposes.

- You agree not to remove the Property from the United States or Canada without our prior written consent.

- You will not attempt to sell the Property, transfer any rights in the Property, or grant another lien on the Property without our prior written consent.

- You will pay all taxes and assessments on the Property as they become due.

- You will notify us with reasonable promptness of any loss or damage to the Property.

- You will provide us reasonable access to the Property for the purpose of inspection. Our entry and inspection must be accomplished lawfully, and without breaching the peace.

**10.3 Agreement to Provide Insurance.** You agree to provide property insurance on the Property protecting against loss and physical damage and subject to a maximum deductible amount indicated in the *Insurance Disclosures* section, or as we will otherwise require. You will name us as loss payee on any such policy. Generally, the loss payee is the one to be paid the policy benefits in case of loss or damage to the Property. In the event of loss or damage to the Property, we may require additional security or assurances of payment before we allow insurance proceeds to be used to repair or replace the Property. You agree that if the insurance proceeds do not cover the amounts you still owe us, you will pay the difference. You will keep the insurance in full force and effect until this Contract is paid in full.

If you fail to obtain or maintain this insurance, or name us as loss payee, we may obtain insurance to protect our interest in the Property. This insurance may be written by a company other than one you would choose. It may be written at a rate higher than a rate you could obtain if you purchased the property insurance required by this Contract. We will add the premium for this insurance to the amount you owe us. This amount will earn the time price differential from the date paid at the contract rate described in the *Payment* section until paid in full.

**10.4 Gap Waiver or Gap Coverage.** In the event of theft or damage to the Vehicle that results in a total loss, there may be a gap between the amount due under the terms of the Contract and the proceeds of your insurance settlement and deductibles. You are liable for this difference. You have the option of purchasing Gap Waiver or Gap Coverage to cover the gap liability, subject to any conditions and exclusions in the Gap Waiver or Gap Coverage agreements.

Retail Installment Contract-NJ  Not for use in transactions secured by a dwelling.
©2016 The Reynolds and Reynolds Company
THERE ARE NO WARRANTIES, EXPRESS OR IMPLIED, AS TO CONTENT OR FITNESS FOR PURPOSE OF THIS FORM. CONSULT YOUR OWN LEGAL COUNSEL.

RSSIMVI.FLZNJ 11/1/2016
Bankers Systems®
Page 4 of 7
Customers Initial Here

## 11. Notices

**11.1 Note.** If the primary use of the Vehicle is non-consumer, this is not a consumer contract, and the following notice does not apply. NOTICE. ANY HOLDER OF THIS CONSUMER CREDIT CONTRACT IS SUBJECT TO ALL CLAIMS AND DEFENSES WHICH THE DEBTOR COULD ASSERT AGAINST THE SELLER OF GOODS OR SERVICES OBTAINED PURSUANT HERETO OR WITH THE PROCEEDS HEREOF. RECOVERY HEREUNDER BY THE DEBTOR SHALL NOT EXCEED AMOUNTS PAID BY THE DEBTOR HEREUNDER.

**11.2 Documentary Service and Pre-Delivery Service.** A Documentary Service fee and Pre-Delivery Service fee are not official fees and are not required by law. "Documentary service" means, but is not limited to, the preparation and processing of documents in connection with the transfer of license plates, registration, or title, and the preparation and processing of other documents relating to the sale of a motor vehicle. Documentary Service Fees MUST BE ITEMIZED ABOVE such that the price of each prepared document is disclosed. "Pre-delivery service" means, but is not limited to, items that are often described or labeled as dealer preparation, vehicle preparation, pre-delivery handling and delivery, or any other service of similar import. Pre-Delivery Service Fees MUST BE ITEMIZED ABOVE and do not include any services for which the dealer receives compensation from any other party.

**11.3 Used Car Buyer Notice. If you are buying a used vehicle: The information you see on the window form for this vehicle is part of this contract. Information on the window form overrides any contrary provisions in the contract of sale.**

Spanish Translation. Si compra un vehículo usado: La información que ve adherida en la ventanilla forma parte de éste contrato. La información contenida en el formulario de la ventanilla prevalece por sobre toda otra disposición en contrario incluida en el contrato de compraventa.

*[This area intentionally left blank.]*

## 12. Third Party Agreement

(This section applies ONLY to a person who will have an ownership interest in the Property but is NOT a Buyer obligated to pay this Contract ("Third Party Owner").)

In this section only, *"you"* means only the person signing this section.

By signing below you agree to give us a security interest in the Property described in the *Description of Property* section. You also agree to the terms of this Contract except that you will not be liable for the payments it requires. Your interest in the Property may be used to satisfy the Buyer's obligation. You agree that we may renew, extend or change this Contract, or release any party or Property without releasing you from this Contract. We may take these steps without notice or demand upon you.

**You acknowledge receipt of a completed copy of this Contract.**

NOT APPLICABLE

|  | N/A |
|---|---|
| By: NOT APPLICABLE | Date |
| Signature of Third Party Owner (NOT the Buyer) | |

*[This area intentionally left blank.]*

Retail Installment Contract-NJ  Not for use in transactions secured by a dwelling.
©2016 The Reynolds and Reynolds Company
THERE ARE NO WARRANTIES, EXPRESS OR IMPLIED, AS TO CONTENT OR FITNESS FOR PURPOSE OF THIS FORM. CONSULT YOUR OWN LEGAL COUNSEL.

RSSIMVLFLZNJ 11/1/2018
Bankers Systems®
Page 6 of 7
Customers Initial Here

**13.** ☐ **Electronic Signature Acknowledgment.** You agree that (i) you viewed and read this entire Contract before signing it, (ii) you signed this Contract with one or more electronic signatures, (iii) you intend to enter into this Contract and your electronic signature has the same effect as your written ink signature, (iv) you received a paper copy of this Contract after it was signed, and (v) the authoritative copy of this Contract shall reside in a document management system held by Seller in the ordinary course of business. You understand that Seller may transfer this Contract to another company in the electronic form or as a paper version of that electronic form which would then become the authoritative copy. Seller or that other company may enforce this Contract in the electronic form or as a paper version of that electronic form. You may enforce the paper version of the Contract copy that you received.

## 14. Used Vehicle Sale Dealer/Seller's Obligation

**Explanation of Dealer/Seller Obligations.** The Dealer/Seller has the following obligations under N.J.S.A. 39:10-26 through 39:10-30:

No Dealer/Seller may sell a used passenger motor vehicle to be registered in New Jersey unless the Vehicle meets the standards for the issuance of a certificate of approval. If the used passenger motor vehicle has any defect that does not allow for the issuance of a certificate of approval, the Dealer/Seller shall make, or cause to be made, all necessary repairs without charge, or shall return the full purchase price to the Buyer; provided that such defect or defects are not the result of the Buyer's own act.

Buyer acknowledges they have been informed of Dealer/Seller's obligation above. Buyer agrees to present the used passenger motor vehicle for inspection within 14 days from the date of delivery of such vehicle.

_____ N/A
Buyer                           Date

_____ N/A
Buyer                           Date

_____ N/A
Buyer                           Date

## 15. Acknowledgment of New Jersey Registration

☐ The Vehicle is a used passenger motor vehicle and will be registered in New Jersey in the condition sold.

*[This area intentionally left blank.]*

## 16. Waiver of Used Vehicle Sale Dealer/Seller's Obligation

Buyer does not waive the Dealer/Seller Obligations unless signed below.

☐ **Buyer Waives the Dealer/Seller Obligations.** Buyer has read and understood the Dealer/Seller obligations under the New Jersey Motor Vehicle Certificate of Ownership Law. The Dealer/Seller has disclosed the below list of known defects. Buyer has reviewed the below list of known defects and acknowledges that the known defects may need to be resolved before a certificate of approval may be issued.

KNOWN DEFECTS: N/A

Buyer WAIVES AND RELEASES the DEALER/SELLER OBLIGATIONS and accepts the motor vehicle with KNOWN DEFECTS.

_____ N/A
Buyer                           Date

_____ N/A
Buyer                           Date

_____ N/A
Buyer                           Date

## 17. Contract Index

| Issue | Section |
| --- | --- |
| Acknowledgment of New Jersey Registration | 15 |
| Additional Protections | 8 |
| Additional Terms of the Sales | 9 |
| Agreement to Provide Insurance | 10.3 |
| Assignment | 20 |
| Conditional Delivery | 5 |
| Credit Insurance | 7.1 |
| Default | 9.7 |
| Definitions | 1.1 |
| Description of Property | 3 |
| Description of Trade-In | 4 |
| Documentary Service and Pre-Delivery Service | 11.2 |
| Duties Toward Property | 10.2 |
| Electronic Signature Acknowledgment | 13 |
| Gap Waiver or Gap Coverage | 10.4 |
| General Terms | 9.1 |
| Governing Law and Interpretation | 9.4 |
| Insurance Disclosures | 7 |
| Index | 17 |
| Itemization of Amount Financed | 6 |
| Name and Location | 9.5 |
| Notices | 11 |
| Obligations Independent | 9.9 |
| Payment | 1.3 |
| Prepayment | 9.2 |
| Preservation of Consumers' Claims & Defenses | 11.1 |
| Property Insurance | 7.2 |

Retail Installment Contract-NJ  Not for use in transactions secured by a dwelling.
©2018 The Reynolds and Reynolds Company
THERE ARE NO WARRANTIES, EXPRESS OR IMPLIED, AS TO CONTENT OR FITNESS FOR PURPOSE OF THIS FORM. CONSULT YOUR OWN LEGAL COUNSEL.

RSSIMVLFLZNJ 11/1/2018
Bankers Systems®
Page 6 of 7
Customers Initial Here

## 17. Contract Index Continued

| | |
|---|---|
| Purchase of Property | 1.2 |
| Remedies | 9.8 |
| Returned Payment Charge | 9.3 |
| Sales Agreement | 1 |
| Security | 10.1 |
| Security Agreement | 10 |
| Signature Notices | 18 |
| Signatures | 19 |
| Single-Interest Insurance | 7.3 |
| Telephone Monitoring and Calling | 9.6 |
| Third Party Agreement | 12 |
| Truth-In-Lending Disclosure | 2 |
| Used Car Buyer Notice | 11.3 |
| Used Vehicle Sale Dealer/Seller's Obligation | 14 |
| Waiver of Used Vehicle Sale Dealer/Seller's Obligation | 16 |
| Warranty | 9.10 |

## 18. Signature Notices

**The Annual Percentage Rate may be negotiable with the Seller. The Seller may assign this Contract and retain its right to receive a part of the Finance Charge.**

## 19. Signatures

**Entire Agreement.** Your and our entire agreement is contained in this Contract. There are no unwritten agreements regarding this Contract. Any change to this Contract must be in writing and signed by you and by us.

By: EUGENE ROBERT MCCLURE JR        Date  08/05/2025

By: ANNA MAE MCCLURE        Date  08/05/2025

By: N/A        Date  N/A

### NOTICE TO RETAIL BUYER

Do not sign this Contract in blank.

You are entitled to a copy of the Contract at the time you sign.

Keep it to protect your legal rights.

By signing below, you agree to the terms of this Contract. You received a copy of this Contract and had a chance to read and review it before you signed it.

**Buyer**

By: EUGENE ROBERT MCCLURE JR        Date  08/05/2025

By: ANNA MAE MCCLURE        Date  08/05/2025

By: N/A        Date  N/A

**Seller**

By: Dylans RV Center        Date  08/05/2025

**20. Assignment.** This Contract and Security Agreement is assigned to M & T Bank
PO Box 37258, Baltimore, MD 21297
the Assignee, phone 877-686-8424 . This assignment is made under the terms of a separate agreement made between the Seller and Assignee.

☐ This Assignment is made with recourse.

**Seller**

By: Dylans RV Center        Date  08/05/2025

Retail Installment Contract-NJ  Not for use in transactions secured by a dwelling.
©2016 The Reynolds and Reynolds Company
THERE ARE NO WARRANTIES, EXPRESS OR IMPLIED, AS TO CONTENT OR FITNESS FOR PURPOSE OF THIS FORM. CONSULT YOUR OWN LEGAL COUNSEL.

RSSIMVLFLZNJ 11/1/2016
Bankers Systems®
Page 7 of 7
Customers Initial Here

# **EXHIBIT D**



**campers inn RV**

2190 DELSEA DRIVE
SEWELL, NJ 08080
Phone: (844) 656-9461
Fax: () -
ANDREW PANDOLFI

This quote is prepared exclusively for:

GENE MCCLURE
328 TAYLOR AVE

QUOTE# -486833          8/5/2025
STOCK#.105686
CUSTOMER# 4671011
UNIT VIN#

## 2025 LEPRECHAUN 260DS FORD MC          List $171,291.00

### Trade Information:

### Itemization

| | |
|---|---|
| Finance Incentive $5,000 | Included |
| Camp Ready Prep Package | 1695.00 |
| Destination | 1225.00 |

*$ 1217.75*

*$ 10,000.*          $2,920.00

| | |
|---|---|
| Vehicle Price | $171,291.00 |
| Retail Discount | $43,316.00 |
| Sale Price | $127,975.00 |
| Trade Allowance | N/A |
| Trade Difference | $127,975.00 |
| Estimated Fees | $858.00 |
| Estimated Sales Tax | $8,698.23 |
| Itemization Total | $2,920.00 |
| Estimated Total Before Cash Down | $140,451.23 |

### Estimated Payment Options

| Cash Down | Months | Payment Range | | Intials |
|---|---|---|---|---|
| $15,000.00 | 240 | $1,048.54 | $1,127.91 | _____ |
| $20,000.00 | 240 | $1,006.75 – $1,082.96 | | _____ |
| $25,000.00 | 240 | $964.96 – $1,038.00 | | _____ |

*Estimated A.P.R. Only.

Disclaimer: Payments are based on an APR of 7.99% – 8.99%. The information provided is general information and should not be considered final or legally binding. Estimated taxes and fees are just that, estimates, and can or will vary depending on the final determination of price and trade in vehicle value as well as extras. This quote is valid for the named recipient only and is only valid through today.

Signature: _____

Signature: _____

**NOT FOR PUBLICATION**

# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY
### CAMDEN VICINAGE

|  |  |
|---|---|
| EUGENE MCCLURE AND ANNA MAE MCCLURE,<br><br>*Plaintiffs*,<br><br>v.<br><br>CAMPERS INN OF SEWELL, INC., *et al.*,<br><br>*Defendants*. | HONORABLE KAREN M. WILLIAMS<br><br>Civil Action<br><br>No. 25-17313 (KMW-EAP)<br><br>**MEMORANDUM OPINION AND ORDER** |

**WILLIAMS, District Judge:**

This matter comes before the Court by way of Defendants Campers Inn RV of Sewell, Inc. d/b/a Dylan's RV Center; Jacob Helms; Andrew Pandolfi; and M&T Bank's (collectively, "Defendants") Motion to Dismiss ("MTD," Dkt. No. 9); Plaintiffs Eugene and Anna Mae McClure's ("Plaintiffs") Amended Complaint (Dkt. No. 12); and Plaintiffs' unopposed Letter (Dkt. No. 13) requesting the Court deny Defendants' MTD as moot and remand this case to state court due to a lack of subject-matter jurisdiction.

**WHEREAS**, federal courts are courts of limited jurisdiction and have an independent obligation to address issues of subject-matter jurisdiction *sua sponte* and may do so at any stage of the litigation. *Zambelli Fireworks Mfg. Co., Inc. v. Wood*, 592 F.3d 412, 418 (3d Cir. 2010); *Lincoln Ben. Life Co. v. AEI Life, LLC*, 800 F.3d 99, 104 (3d Cir. 2015). If a federal district court determines at any time that it lacks subject-matter jurisdiction, the court must dismiss the action. *See* Fed. R. Civ. P. 12(h)(3). To establish jurisdiction, a pleading must either present a federal claim or trigger the court's diversity jurisdiction. *See Gibson v. Tip Towing & Recovery LLC*, No. 23-2919, 2024 WL 658977 at *1 (3d Cir. Feb. 16, 2024). To assert a federal claim, a pleading must assert an action arising under the Constitution, laws, or treaties of the United States. *Id*. at *1 n.2.

To assert diversity jurisdiction, a pleading must demonstrate complete diversity of citizenship among the parties, with the amount in controversy being over $75,000.00. *Id*. at *1; and

**WHEREAS**, the Supreme Court of the United States has held that "[w]hen a plaintiff amends her complaint following her suits removal [and] eliminates the federal-law claims that enabled removal, leaving only state-law claims behind, the court's power to decide the dispute dissolves," *Royal Canin U.S.A. Inc v. Wullschleger*, 604 U.S. 22, 30 (2025); and

**WHEREAS**, here, Defendants removed this matter based on the Court's federal question subject-matter jurisdiction pursuant to 28 U.S.C. § 1331 because Plaintiff's Complaint alleged violations of the Truth in Lending Act, 15 U.S.C. 1635(f) (*see* Notice of Removal and Compl., ¶¶ 94-101, Dkt. No. 1); and

**WHEREAS**, Plaintiff does not assert that this Court would have diversity jurisdiction over the parties pursuant to 28 U.S.C. § 1332; and

**THE COURT NOTING** that Plaintiffs filed their Amended Complaint (Dkt. No. 12) as a matter of course pursuant to Fed. R. Civ. P. 15(a)(1)(B); and

**THE COURT FURTHER NOTING** that Plaintiffs' Amended Complaint no longer raises a federal question. (*See* Am. Compl., ¶ 23.)

**CONSEQUENTLY,** for all the foregoing reasons, and for good cause shown;

IT IS on this 13th day of **February**, **2026** hereby

**ORDERED** that Defendants' MTD (Dkt. No. 9) is **DENIED as moot**; and

**ORDERED** that Plaintiffs' Letter request to remand (Dkt. No. 13) is **GRANTED**; and

**ORDERED** that this case is **REMANDED** to the Superior Court of New Jersey, Law Division, Cumberland County.

*Karen M. Williams*

KAREN M. WILLIAMS
U.S. DISTRICT COURT JUDGE

2

## UNITED STATES DISTRICT COURT
## FOR THE District of New Jersey [LIVE]
## Camden, NJ


EUGENE MCCLURE, et al.

                    Plaintiff,

v.                                     Case No.: 1:25−cv−17313−KMW−EAP

                                     Judge Karen M. Williams

DYLAN'S RV CENTER, et al.

                    Defendant.


Clerk, Superior Court of New Jersey
Cumberland County Courthouse
60 West Broad Street
Bridgeton, NJ 08302

State No: Cumberland County, 25−000708−25


**Dear Clerk of Court:**

    Enclosed please find a certified copy of the Order remanding the above entitled matter to your Court.


                                   Very truly yours,

                                   CLERK OF COURT
                                   By Deputy Clerk, dnw


encl.
cc: All Counsel

Andrew R. Wolf, Esq. (NJ Attorney ID No. 018621995)
Javier L. Merino, Esq., (NJ Attorney ID No. 078112014)
Henry P. Wolfe, Esq. (NJ Attorney ID No. 031942005)
**THE DANN LAW FIRM PC**
825 Georges Road, 2nd Floor
North Brunswick, NJ 08902
Phone: (732) 545-7900
Fax: (216) 373-0536
Email: notices@dannlaw.com

**THE LAW OFFICE OF AARON HARMATY, LLC.**
Aaron M. Harmaty, Esq., # 301832019
21 Van Doren Ave.
Chatham, NJ 07928
973-309-5492
aharmatylaw@gmail.com
Counsel for Plaintiffs and those similarly situated

| | |
|---|---|
| EUGENE MCCLURE AND ANNA MAE MCCLURE<br><br>Plaintiffs,<br><br>v.<br><br>CAMPERS INN RV OF SEWELL, INC. d/b/a/ DYLANS RV CENTER, JEFFREY M. HIRSCH, BENJAMIN HIRSCH, MATT JEPPSEN, JACOB HELMS, and ANDY PANDOLFI,<br><br>Defendants. | UNITED STATES DISTRICT COURT FOR THE DISTICT OF NEW JERSEY<br><br>Case No.: 1-cv-25-17313-KMW-EAP<br><br>Civil Action<br><br>**FIRST AMEMDED CLASS ACTION COMPLAINT AND JURY DEMAND** |

Plaintiffs, Eugene McClure and Anna Mae McClure ("Plaintiffs" or "McClures"), on behalf of themselves and those similarly situated, by way of their First Amended Complaint, state:

**NATURE OF THE ACTION**

1.      This putative consumer class action arises from standard business practices by Campers Inn RV of Sewell, Inc., d/b/a Dylans RV Center ("Dylans"), Jeffrey M. Hirsch, ("JMH"), Benjamin Hirsch, ("BH"), Matt Jeppsen, ("Jeppsen"), and Jacob Helms ("Helms") collectively

Page 1 of 34

Dylans, JMH, BH, Jeppsen and Helms are referred to as (the "Defendants") which violate New Jersey consumer protection laws and regulations, including the New Jersey Motor Vehicle Advertising Practices Regulations ("MVAP Regulations") at N.J.A.C. 13:45A-26A.4(a), the New Jersey Automotive Sales Practices Regulations (the "ASP Regulations"), N.J.A.C. 13:45A-26B.1 et seq., the New Jersey Consumer Fraud Act (the "CFA"), N.J.S.A. 56:8-1 et seq., and the New Jersey Truth-in-Consumer Contract, Warranty, and Notice Act ("TCCWNA"), N.J.S.A. 56:12-14, to -18.

2.     Defendants engage in a common pattern and practice of charging customers a vehicle sales price for recreational vehicles ("RVs") that is in excess of the advertised price in violation of the MVAP Regulations at N.J.A.C. 13:45A-26A.4(a) and/or that includes an unitemized pre-delivery service fee in violation of the ASP Regulations at N.J.A.C. 13:45A-26B.2(a)(2), and the CFA.

3.     Defendants engage in a common pattern and practice of charging customers an unitemized documentary fee and thus fail to comply with the ASP Regulations at N.J.A.C. 13:45A-26B.3(a)(2), and the CFA.

4.      Defendants engage in a common pattern and practice of overcharging customers for official title and registration fees and failing to timely refund the entire amount of the overcharge. This overcharge constitutes an unitemized documentary service fee in violation of the ASP Regulations at N.J.A.C. 13:45A-26B.3(a)(2).

5.     Defendants' violations of the ASP Regulations, MVAP regulations and CFA on the face of the sales documents also constitute violations of the TCCWNA.

6.      The McClures also bring individual claims against Defendants for selling the McClures a defective 2025 260DS Ford MC Leprechaun RV with an active recall and refusing to take back the defective RV as set forth *infra*.

## PARTIES

7.      The McClures are a married couple in their 60s who reside in Vineland, New Jersey.

8.      Dylans is a New Jersey Domestic Profit Corporation that does business at an RV dealership located at 2190 Delsea Dr., Sewell, NJ 08080.

9.      Dylans is a licensed motor vehicle dealer with the New Jersey Motor Vehicle Commission.

10.     Defendant JMH is a controlling owner and Chief Executive Officer of Dylans.

11.     Defendant BH is a controlling owner and Chief Operating Officer of Dylans.

12.     Defendant Jeppsen is a controlling owner and Chief Financial Officer of Dylans.

13.     Defendant Helms has been a manager at Dylans at all times relevant to this action.

14.     Defendant Andy is a sales representative and agent for Dylans and as the sales representative who engaged with the McClures at all relevant times and is directly liable to the McClures for his unlawful acts pursuant to the CFA, at N.J.S.A. 56:8-2. "Defendants" when referring to The McClures' individual claims also includes Andy.

15.     N.J.A.C. 13:21-15.7(c) states: "The dealer, all partners, officers, directors and/or holders of controlling interests shall be individually responsible for the conduct of all business at the dealership and for compliance with all the requirements of the statutes and rules governing the business of buying, selling or dealing in motor vehicles."

16.    As controlling owners, officers, or directors of Dylans, JMH, BH and Jeppsen are individually liable for the violations of the MVAP Regulations, ASP Regulations, CFA, and TCCWNA set forth herein pursuant to N.J.A.C. 13:21-15.7.

17.    JMH, BH, Jeppsen and Helms set the policies and practices of Dylans, including, without limitation, the policy and practice of regularly charging more for RVs than their advertised prices in violation of the MVAP Regulations, the policy and practice of charging a vehicle sales price for RVs that includes unitemized pre-delivery service fees in violation of the ASP, the policy and practice of charging unitemized documentary service fees in connection with RV sales in violation of the ASP Regulations, and the policy and practice of overstating and overcharging customers for MVC title and registration fees without providing a full refund of the amount overcharged, in violation of the ASP Regulations and CFA.

18.    As managers, directors, officers, or controlling owners of Dylans who set the policies and practices complained of herein, JMH, BH, Jeppsen and Helms are personally liable for all claims set forth herein. See *Allen v. V & A Bros., Inc.*, 208 N.J. 114, 132-134 (2011).

**<u>JURISDICTION and VENUE</u>**

19.    The McClures initially filed the Complaint in this action in the Superior Court of New Jersey on October 9, 2025 under Docket No.: CUM-L-708-25.

20.    On November 7, 2025 the Defendants removed this matter to the United States District Court – District of New Jersey under Case No.: 1:25-cv-17313.

21.    The removal was based on federal question jurisdiction pursuant to 28 U.S.C. § 1331, as the original Complaint asserted a claim under the federal Truth in Lending Act, 15 U.S.C. § 1601, *et seq*.

22.    This Amended Complaint withdraws the former claim under the Truth in Lending Act and asserts no other claims under federal law.

23.    Since there is no longer federal question jurisdiction this matter should be remanded

pursuant to 15 U.S.C. 1601 to the Superior Court of New Jersey, Cumberland County. See *Royal Canin U.S.A., Inc. v. Wullschleger*, 604 U.S. 22 (2025)("When a plaintiff amends her complaint following her suit's removal [and] eliminates the federal-law claims that enabled removal, leaving only state-law claims behind, the court's power to decide the dispute dissolves" requiring remand.)

24.     Venue is proper in Superior Court of New Jersey, Cumberland County because the McClures reside in Cumberland County.

### STATEMENT OF FACTS

25.     On August 5, 2025, the McClures went to Dylans' location to look at a recreational vehicle, as the McClures enjoyed camping in a camper but wanted a more compact vehicle.

26.     Andy, a Dylans' salesman, approached the McClures, and after discussing their purpose and preferences, recommended and showed them a 2025 Coachmen Leprechaun 260DS" RV ("the RV").

27.     Andy represented to the McClures that the RV was a "top of the line" recreational vehicle; that it was new, better built, and better than earlier models.

28.     However, Andy failed to disclose to the McClures that by August 5, 2025, the dealership had received  recall notice from the manufacturer applicable to the 2025 Coachmen Leprechaun 260DS line of vehicles, including the RV shown to the McClures, advising that "[t]he fuel line extension may have been inconsistent crimps at the barb fittings of its connectors which can cause the fittings to become loose and detach" and "[i]f a fuel line detaches, this may allow fuel to openly spray. This condition may lead to fire and property damage."  A copy of the recall notice is attached as **Exhibit A.**

29.     The recall notice also advised that "[p]arts are not currently available for this recall." and "if you have already paid for a repair that is within the scope of this defect under recall,

you still need to have this recall inspected and/or performed to ensure the correct parts and procedures were utilized." *Id*.

30. Mr. McClure initially stated he wanted to "sleep on it" with regards to making a purchase decision. However, based on Andy's representations as to the condition and quality of the RV, the McClures went to speak to Dylans' business manager, Helms.

31. Helms convinced the McClures to purchase the RV on August 5, 2025 and also sold the McClures several additional items, such as a Vehicle Service Contract, GAP, Paint Protection, Roadside Assistance and Tire and Wheel Protection. The total prices of the additional items were in excess of $19,000.00.

32. The final RV purchase price, not including the cost of financing, was $160,695.90.

33. At no point did Andy, Helms, or anyone else at Dylans disclose to the McClures the fuel line issue in the recall notice or that there was a pending recall on the RV.

34. The McClures made down payment towards the RV of $15,000 ($5,000 via credit card and a check for $10,000).

35. The McClures financed the balance of the RV purchase ($145,695.90) through Dylans' by agreeing to a 240-month loan that would cost a total of $292,260.00, including a $145,564.10 Finance Charge.

36. The final RV purchase price, including the down payment and the cost of financing, was $307,260.00.

37. At the time of purchase, Mr. McClure expressed concern to Helms about the price and duration of the loan, and Mr. McClure likened it to purchasing a house.

38.     Helms stated that if the costs became too much, or the McClures got tired of the purchase, they could just stop making payments on it and M&T Bank (the entity who would be assigned the loan after purchase) would pick up the RV without any risk to the McClures. Helms assured Mr. McClure that nonpayment of the loan would not have any negative impact on the McClures.

39.     Mr. McClure asked Helms to clarify that the he meant that that M&T would not pursue payment against the McClures or their family if they did not continue paying the loan and turned in the RV, and Helms re-affirmed that M&T Bank would not pursue them for the loan if they defaulted.

40.     At no point in the August 5, 2025 meeting, did Helms or anyone else at Dylan's mention the recall notice to the McClures.

41.     The McClures relied on Andy's representations regarding the quality of the RV in deciding to purchase it on August 5, 2025.

42.     The McClures relied on the lack of disclosure of that the RV was subject to a pending recall, and the lack of disclosure of the other information contained in the recall notice in their decision to purchase the RV on August 5, 2025.

43.     The McClures relied on Helms' representations regarding how the loan would function when deciding t0 purchase the RV and agree to the financing on August 5, 2025.

44.     On August 5, 2025, the McClures were presented with and signed a sales document called a Buyer's Order ("BO"). A copy of the BO is attached as **Exhibit B**.

45.     The BO categorized certain items included in the total price of $160,695.90 including:

| | |
|---|---|
| Vehicle Sales Price | $130,895.00 |
| Certificate of Title Fee | $450.00 |

Documentation Fee Paid to Seller      $399.00

46.      On August 5, 2025, the McClures were presented with and signed a Retail

Installment and Security Agreement ('RISC"). A copy of the RISC is attached as **Exhibit C**.

47. The RISC categorized certain items included in the amount financed that were the same

as the charges on the BO including:

Vehicle Sales Price                        $130,895.00
Certificate of Title Fee                   $450.00
Documentation Fee Paid to Seller           $399.00

48.      The RISC also stated in a section entitled "11. Notices" which stated in relevant

part:

11.2 Documentary Service and Pre-Delivery Service, A Documentary
Service fee and Pre-Delivery Service fee are not official fees and are not
required by law. "Documentary service" means, but is not limited to, the
preparation and processing of documents in connection with the transfer of
license plates, registration, or title, and the preparation and processing of
other documents relating to the sale of a motor vehicle, Documentary
Service Fees MUST BE ITEMIZED ABOVE such that the price of each
prepared document is disclosed. "Pre-delivery service" means, but is not
limited to, items that are often described or labeled as dealer preparation,
vehicle preparation, pre-delivery handling and delivery, or any other service
of similar import. Pre-Delivery Service Fees MUST BE ITEMIZED
ABOVE and do not include any services for which the dealer receives
compensation from any other party.

*See* Exh. C.

49.      The McClures paid or were obligated to pay for the full purchase price of the RV

including the Vehicle Sales Price, Certificate of Title Fee and Documentation Fee Paid to Seller.

50.      The $399.00 Documentation Fee Paid to Seller is a documentary service fee as

defined by the ASP Regulations at N.J.A.C. 13:45A-26B.1.

51.   The BO fails to itemize the actual documentary services being provided for the "Documentation Fee Paid to Seller" and the price for each specific service being provided as required by the ASP regulations.

52.   The BO is a "sales document" as defined by the ASP Regulations, N.J.A.C. 13:45A 26B.1, et seq.

53.   The Documentation Fee Paid to Seller charged to the McClures and listed on the BO is a "documentary service fee" as defined by the ASP Regulations.

54.   Defendants are "automotive dealers" as defined by the ASP Regulations at N.J.A.C. 13:45A-26B.1.

55.   In the ordinary course of business, Defendants engage in the retail sales of motor vehicles, or offer more than three (3) motor vehicles for sale, lease, or rental in the course of any 12-month period relevant to this matter.

56.   Pursuant to the ASP Regulations at N.J.A.C. 13:45A-26B.3(a)(2), Defendants shall not "accept, charge or obtain from a consumer monies, … in exchange for the performance of any documentary service without first itemizing the actual documentary service, which is being performed **and** setting forth in writing, … on the sale document the price for each specific documentary service." (emphasis added).

57.   Pursuant to the ASP Regulations at N.J.A.C. 13:45A-26B.4 any violation of the ASP Regulations is a per se violation of the consumer Fraud Act ("CFA").

58.   In addition to being a regulatory violation, the failure to itemize each service and price for each service is an abusive or unconscionable commercial practice, or other affirmative act in direct violation of the CFA at N.J.S.A. 56:8-2.

59.     The McClures suffered an ascertainable loss of $399.00, which is the amount they were charged for documentary service fees that were prohibited and unlawful under the ASP Regulations and CFA.

60.     Defendants failed to itemize the services being provided for the Documentary Service Fees so that the McClures and those similarly situated could understand what they were actually being charged for.

61.     As a direct result of Defendants' unlawful conduct, The McClures and those similarly situated suffered an ascertainable loss in the amount of the unitemized "Documentation Fee Paid to Seller", or similar fee each was charged.

62.     Through the BO, Defendants charged the McClures a "Certificate of Title Fee" of $450.00 to title and register the RV.

63.     The actual official fees charged by the NJ MVC to title and register the RV were as follows: (a) $283.00 for the registration; (b) $85.00 title fee ($60.00) with a lien ($25.00); and (c) $5.50 for temporary registration, totaling $373.50, or $76.50 less than the $450.00 Defendants charged ($450.00 - $373.50).

64.     Defendants issued a refund to the McClures of a portion of the overcharge for title and registration fees in the amount of $60.00.

65.     After accounting for the $60.00 refund, Defendants overcharged the McClures for title and registration by $16.50 ($450.00-$373.50-$60.00).

66.     Defendants did not refund the McClures the $16.50 overcharge.

67.     The Defendants have adopted a policy/practice in the sale/lease of vehicles of overstating and collecting registration/title fees in excess of the official fees charged and remitted

to the appropriate Division of Motor Vehicles for timely registration and transfer of title without refunding all of the overcharges to its customers.

68.     The overcharge for title and registration fees is a documentary service fee pursuant to the ASP Regulations at N.J.A.C. 13:45A-26B.1.

69.     The ASP Regulations at N.J.A.C. 13:45A-26B.3(a)(2) prohibit the Defendants from charging any non-itemized documentary service fee including one hidden in a title and registration overcharge without itemizing the services being provided and the price for each service on the sales document.

70.     The Defendants violated the ASP Regulations at N.J.A.C. 13:45A-26B.3(a)(2) by failing to itemize on the BO the services being provided and the price for reach service included in the title and registration overcharge.

71.     In addition to being a regulatory violation, the failure to provide a complete refund and failure to itemize each service and price for each service in the amount charged in excess of the official fees to title and register a motor vehicle is an abusive or unconscionable commercial practice, or other affirmative act in direct violation of the CFA at N.J.S.A. 56:8-2.

72.      The McClures and those similarly situated suffered an ascertainable loss in the amount each was charged in excess of the official fees to title and register their motor vehicle and not refunded. Plaintiffs' ascertainable loss is $16.50.

73.     Prior to presenting the BO to the McClures and selling the RV with a vehicle sales price of $130,895.00, Defendants represented to the McClures that the actual sales price of the RV was $127,975.00.

74.     The $127,975.00 sales price was presented to Plaintiffs in a Quote document prior to the sale. Copy of the Quote is attached as **Exhibit** D.

75. Defendants sold the RV to the McClures in an amount that was $2,920.00 more than the price represented prior to the sale.

76. The representation that the sales price was $127,975.00 in the Quote is an advertisement pursuant to the MVAP Regulations at N.J.A.C. 13:45A-26A.3 and the CFA at N.J.S.A. 56:8-1(a).

77. The MVAP Regulations at N.J.A.C. 13:45A-26A.4(a)(1) prohibits Defendants from the "advertis[ing] of a motor vehicle as part of a plan or scheme not to sell or lease it at the advertised price."

78. A "[r]efusal to show, display, sell, or lease the advertised motor vehicle in accordance with the terms of the advertisement" constitutes prima facie evidence of a bait-and-switch violation under N.J.A.C. 13:45A-26A.4(a)(2)(i).

79. The MVAP Regulations at N.J.A.C. 13:45A-26A.4(a) states that Bait and Switch advertising practices are an unlawful.

80. As alleged *supra*, Defendants sold the RV to the McClures for $2,920.00 more than the advertised price.

81. Alternatively, the $2,920.00 additional amount that Defendants included in the Vehicle Sales Price on the BO is an unitemized pre-delivery service fee that violated the ASP Regulations at N.J.A.C. 13:45A-26B.2.

82. The Quote states that the $2,920.00 consists of $1,675 for a "Camp-Ready Prep Package" and a $1,225.00 "Destination" fee.

83. The Quote does not include any itemization of the services or price for each service included in the Camp-Ready Prep Package or the Destination fee.

84.     The ASP Regulations at N.J.A.C. 13:45A-26B.2 prohibits charging "any pre-delivery service fee without first itemizing the actual pre-delivery service, which is being performed and setting forth in writing, in at least 10-point type, on the sales document the price for each specific pre-delivery service."

85.     The Quote is not a sales document.

86.     Pursuant to N.J.A.C. 13:45A-26B.1, a "pre-delivery service" includes "but is not limited to, items that are often described or labeled as dealer preparation, vehicle preparation, pre-delivery handling and delivery, or any other service of similar import."

87.     Pursuant to the ASP Regulations at N.J.A.C. 13:45A-26B.3(a)(2), Defendants shall not "accept, charge or obtain from a consumer monies, … in exchange for the performance of any documentary service without first itemizing the actual documentary service, which is being performed **and** setting forth in writing, … on the sale document the price for each specific documentary service." (emphasis added).

88.     Defendants failed to itemize on the BO the services or the price for each service included in the additional $2,920.00 that the McClures were charged in the Vehicle Sales Price.

89.     Pursuant to the ASP Regulations at N.J.A.C. 13:45A-26B.4 any violation of the ASP Regulations is a per se violation of the consumer Fraud Act ("CFA").

90.     In addition to being regulatory violations, engaging Bait and Switch advertising practices or the failure to itemize each pre-delivery service and price for each pre-delivery service is an abusive or unconscionable commercial practice, or other affirmative act in direct violation of the CFA at N.J.S.A. 56:8-2.

91.     As a result of Defendants unlawful practices of engaging in Bait and Switch advertising practices or charging unitemized pre-delivery service fees in violation of the consumer regulations and the CFA, the McClures suffered an ascertainable loss of $2,920.00.

92.     Defendants engaged in similar unlawful conduct with numerous other consumers.

93.     As a direct result of Defendants' unlawful conduct, the McClures and those similarly situated suffered an ascertainable loss in the amount of the increased price each was charged for to Bait and Switch advertising practices or unitemized pre-delivery service fee, or similar fee each was charged.

94.     Before they were allowed to take the RV with them, the McClures were told that they would have to leave the RV at the Dylans' property so that they could prepare it for use including that as part of the warranty, they had to put a coating on the interior and exterior of the RV.

95.     While waiting for the RV to be delivered, the McClures purchased several items to enhance the RV, such as approximately $2,000 in bedding, $300 for floor mats for the driving cab, $300 for a new door lock, and $5,000 for a carport for storing the RV out of the weather.

96.     On Monday August 11, 2025, some or all of the Defendants had actual notice of the recall notice on the RV.

97.     On Monday August 11, 2025, six days after purchase, the McClures returned to the dealership to take delivery and pick up the RV.

98.     On August 11, 2025, the McClures were given a walkthrough of the RV by representatives of Dylans being shown how to use various devices in the RV.

99.     At no point on August 11, 2025, during the walkthrough or otherwise were the McClures advised of the Recall Notice or the issues involving the recall notice prior to delivering the RV to them.

100.    After the McClures took delivery of the RV, they found that the slide-out was crooked.

101.    The McClures brought the RV back to Dylans the next day, August 12, 2025 to fix the slide-out.

102.    One of the mechanics at Dylans told the McClures to purchase two additional motors, to replace the motor in the slide outs as needed, as apparently the motor on the vehicle was known to break down.

103.    Prior to this conversation, the McClures were not told about the issue involving the motor breakdown.

104.    At no time on August 12, 2025 did anyone advise the McClures about the recall issue.

105.    The mechanics fixed the slide out, and the McClures took the RV home.

106.    The McClures spent approximately $300 to purchase a door lock to fix the lock for the RV.

107.    There was also an issue with the external television, which the McClures brought to the mechanic at the dealership who fixed it.

108.    At that time, they were also not alerted to the issue involving the recall notice.

109.    That same week, the generator stopped functioning, so the McClures brought the RV back to Dylans.

110.    When they brought the vehicle back to Dylans, the Dylans mechanic stated that the generator was not working because a part was missing, and the mechanic said he would take the part from another vehicle in order to make it work.

111.    The McClures were not told about the recall issue at this time.

112.    After that visit to the dealership, the vehicle's generator worked.

113.    Approximately a week later, the McClures received the recall notice directly from Forest River, the manufacturer of the RV. A copy of the recall notice is attached as **Exhibit A.**

114.    Upon receiving the recall notice, the McClures called Helms, seeking to return the RV.

115.    Helms refused to accept the return of the RV.

116.    Thereafter, the McClures contacted Forest River about the recall notice.

117.    The representative of Forest River advised that the recall notice should have arrived at the dealership on or before August 5, 2025, the same day that the McClures purchased the RV.

118.    The McClures have kept the RV on their property and have not used it, as it is unsafe to drive.

119.    The McClures have maintained the RV by winterizing it and have continued to pay for insurance and the monthly payments while being unable to use it due to its unsafe condition.

## CLASS CERTIFICATION ALLEGATIONS

120.    **Class Definition:** Plaintiffs bring this action pursuant to R. 4:32 of the New Jersey Court Rules on behalf of a class of those similarly situated. Plaintiffs seek certification of a class (the "Class") pursuant to R. 4:32-1(b)(2) and (b)(3) initially defined as follows:

> All persons who, at any time on or after October 9, 2019 who purchased or leased a Recreational Vehicle from Defendants who: (1) received a sales document with terms the same or similar to the terms in the BO provided to Plaintiffs; (2) were charged a "Documentation Fee Paid to Seller" or a similar

fee for documentary services where the sales document used in the transaction did not set forth in writing each specific documentary service performed and the price for each service; (3) were charged a "Certificate of Title Fee" or similar fee to title and register the vehicle purchased or leased that exceeded the actual official fees charged by the New Jersey MVC and/or the appropriate Motor Vehicle agency of the state where the vehicle was registered to timely register and title the vehicle purchased or leased and who did not receive complete refunds for the overcharge; /or (3) were charged a "Vehicle Sales Price" that was more than the advertised price for the RV or included a pre-delivery service fee,  prep fee or a  similar fee for pre-delivery services where the sales document used in the transaction did not set forth in writing each specific pre-delivery service performed and the price for each service .

Specifically excluded from the Class are any judges or magistrates involved in this matter.

121. With regards to the Class definition *supra*, "terms the same or similar" means a sales document similar to the one received by the McClures that contains similar language as the form BO used in their transaction.

122. The members of the proposed Class are so numerous that joinder of all members of the class is impracticable as the Defendants sold or leased more than 50 Recreational Vehicles during the class period using the same or similar sales document as used in the McClures' transaction.

123. There are questions of law and fact common to the members of the Class. These common questions include:

(a) Whether the "Documentation Fee Paid to Seller" is a documentary service fee pursuant to the ASP Regulations, N.J.A.C. 13:45A-26B.1;

(b) Whether the Defendants charging Plaintiffs and those similarly situated for a "Documentation Fee Paid to Seller" without itemizing each service provided and the price for each service constitutes an unitemized documentary fee charged in violation of the ASP Regulations, N.J.A.C. 13:45A-26B.3(a)(2) and CFA;

(c) Whether the Defendants have a policy or practice of charging Plaintiffs and those similarly situated for a "Certificate of Title Fee" or similar title and registration charge in excess of

the official fees to title and register the RVs without providing a full and accurate refund of the amount overcharged;

(d)  Whether the "Certificate of Title Fee" overcharge is a "Documentary Fee" as per the ASP Regulations, N.J.A.C. 13:45A-26B.3(a)(2);

(e)  Whether Defendants have a policy or practice of charging Plaintiffs and those similarly situated a "Certificate of Title Fee" or similar charge for documentary services without itemizing the documentary services being performed and the price for each pursuant to the ASP Regulations, at N.J.A.C. 13:45A-26B.1, *et seq.*;

(f)  Whether Defendants charging Plaintiffs and those similarly situated "Certificate of Title Fee" and failing to itemize documentary services violates the ASP Regulations and the CFA;

(g)  Whether Defendants have a policy or practice of charging Plaintiffs and those similarly situated a Vehicle Sales Price in excess of the advertised price.

(h)  Whether charging Plaintiffs and those similarly situated a Vehicle Sales Price in excess of the advertised price constitutes Bait and Switch advertising practice in violation of the MVAP Regulations at N.J.A.C. 13:45A-26A.4(a) and CFA.

(i)  Whether Defendants have a policy or practice of charging Plaintiffs and those similarly situated a Vehicle Sales Price that includes an unitemized pre-delivery service fee in violation of the ASP Regulations, N.J.A.C. 13:45A-26B.2(a)(2) and CFA;

(j)  Whether the Defendants committed an abusive or unconscionable commercial practice, or other affirmative act that violates the CFA by charging Plaintiffs and those similarly situated an unitemized documentary fee, overcharging for registration and title fees, charging a Vehicle Sales Price in excess of the advertised price, and or charging an unitemized pre-delivery service fee; and

(k)  Whether the Defendants' violations of the ASP Regulations, MVAP Regulations and the CFA in the BO set forth *supra* constitute violations of TCCWNA;

124.    The McClures' claims are typical of the claims of the members of the Class which they represent because all such claims arise out of the same policies, practices, and conduct, and

the same or similar form documents used by the Defendants in their dealings with the McClures and each member of the putative class.

125. The McClures will fairly and adequately protect the interests of the class and have retained competent counsel experienced in the prosecution of consumer litigation and class actions.

126. Proposed Class Counsel has investigated and identified potential claims in the action. Proposed Class Counsel has a great deal of experience in handling class actions, other complex litigation, and claims of the type asserted in this action.

127. The Defendants have acted, or refused to act, on grounds generally applicable to the McClures and all Class members, thereby making appropriate final injunctive relief or corresponding declaratory relief with respect to the class as a whole.

128. The questions of law or fact common to the members of the class predominate over any questions affecting only individual members.

129. A class action is superior to other available methods for the fair and efficient adjudication of these controversies since joinder of all members of both classes is impracticable.

130. The Class, of which the McClures are members, is readily identifiable from the Defendants' records.

131. The McClures do not anticipate any difficulty in the management of this litigation.

132. While the economic damages suffered by the individual members of the class are significant, the amount is modest compared to the expense and burden of individual litigation.

133. A class action will cause an orderly and expeditious administration of the claims of the class and will foster economies of time, effort, and expense.

## CLASS CLAIMS

### COUNT ONE
### VIOLATIONS OF THE ASP REGULATIONS AND THE CFA

134.    The McClures, on behalf themselves and others similarly situated, repeat and reallege all prior allegations as if set forth at length herein.

135.    As alleged supra, the ASP Regulations prohibit the Defendants from charging the McClures and those similarly situated a documentary service fee, unless they first itemize the actual documentary services which are being performed and set forth in writing on the sales document the price for each specific documentary service. N.J.A.C. 13-45A-26B.3(a)(2).

136.    The CFA at N.J.S.A. 56:8-2 prohibits:

the act, use or employment by any person of any commercial practice that is unconscionable or abusive, deception, fraud, false pretense, false promise, misrepresentation, or the knowing concealment, suppression, or omission of any material fact with intent that others rely upon such concealment, suppression, or omission, in connection with the sale or advertisement of any merchandise or real estate…"

137.    The sales document, the BO, used in the transaction with the McClures and others similarly situated, did not set forth in writing each specific documentary service performed or the price for each specific documentary service that was performed in return for charging the Documentary Fee Paid to Seller.

138.    By charging the McClures a $399 Documentary Fee Paid to Seller and charging those similarly situated a similar documentary service fee without setting forth each specific service or the price for each specific documentary service performed the Defendants violated the ASP Regulations at N.J.A.C. 13:45A-26B.3(a)(2).

139.     By failing to itemize each service and the price for each service provided as part of the Documentation Fee, the Defendants engaged in an abusive or unconscionable commercial practice, or other affirmative act in direct violation of the CFA at N.J.S.A. 56:8-2.

140.     As a direct result of the Defendants' violations of the ASP Regulations and the CFA, the McClures and those similarly situated suffered an ascertainable loss, in the amount of the unlawful documentary service fees each was charged and paid. The McClures' ascertainable loss is the $399.00 they were charged and paid.

141.     Defendants also charged the McClures and those similarly situated an amount in excess of the actual official Certificate of Title Fee or similar charges to register and title their RVs.

142.     The amounts that the McClures and those similarly situated were overcharged for the "Certificate of Title Fee" or similar charges are documentary service fees within the meaning of the ASP Regulations at N.J.A.C. 13:45A-26B.1.

143.     Defendants did not refund to the McClures and those similarly situated the entire amount they were charged in excess of the actual official fees to title and register their vehicles.

144.     By misrepresenting the amounts charged by the New Jersey Motor Vehicle Commission (NJ MVC) or other appropriate state motor vehicle agency for registration and title fees and retaining the overcharges, Defendants engage in abusive and/or unconscionable commercial practices, or other affirmative acts in direct violation of the CFA, at N.J.S.A. 56:8-2.

145.     The Defendants failed to itemize the services provided and the price for each service that was included in the amounts that the McClures and those similarly situated were overcharged for the "Certificate of Title Fee" in the BO or similar sales document provided to the

McClures and those similarly situated, thereby violating the ASP Regulations N.J.A.C. 13-45A-26B.3(a)(2) and the CFA.

146.     The Defendants' violations of the ASP Regulations constitute per se violations of the CFA.

147.     As a direct result of Defendants' violations of the CFA and the ASP Regulations, the McClures and those similarly situated have suffered an ascertainable loss in the amount that Defendants charged in excess of the actual official registration and title fees and failed to fully refund. The McClures' ascertainable loss was the $16.50 they were overcharged and not refunded.

148.     The McClures and those similarly situated are entitled to treble damages and reasonable attorneys' fees and costs pursuant to the CFA, N.J.S.A. 56:8-19.

## COUNT TWO
### VIOLATIONS OF THE ASP REGULATIONS, MVAP REGULATIONS AND THE CFA

149.     The McClures, on behalf of themselves and other similarly situated, repeat and r4eallege all prior allegations as if set forth at length herein.

150.     As alleged Supra, prior to presenting the BO to the McClures and selling the RV with a vehicle sales price of $130,895.00, Defendants represented to the McClures that the actual sales price was $127,975.00.

151.     As alleged supra, Defendants sold the RV to the McClures in an amount that was $2,920.00 more than the price represented prior to the sale.

152.     As alleged supra the sale of the RV to the McClures at $2,920.00 more than the advertised price constitutes both a direct affirmative act violation of the CFA and a regulatory CFA violation by engaging in Bait and Switch advert rising practices in violation of the MVAP regulations.

153.    As alleged supra, alternatively, the sale of the RV to the McClures at $2,920.00 more than the advertised price constitutes both a direct affirmative act violation of the CFA and a regulatory CFA violation by including in the sales price unitemized pre-delivery service fees without itemizing the services being provided or the price for each service in violation of the ASP regulations.

154.    As a direct result of Defendants' violations of the CFA, the MVAP Regulations and the ASP Regulations, the McClures and those similarly situated have suffered an ascertainable loss in the amount that Defendants charged in excess of the advertised price, and or unitemized pre-delivery service fees included in the Vehicle Sales Price. The McClures' ascertainable loss was the $2920,00 they were charged.

155.    The Defendants' violations of the ASP Regulations and MVAP Regulations constitute per se violations of the CFA.

156.    The McClures and those similarly situated are entitled to treble damages and reasonable attorneys' fees and costs pursuant to the CFA, N.J.S.A. 56:8-19.

COUNT THREE
VIOLATIONS OF TCCWNA
(Predicated on violations of the ASP Regulations and the CFA)

157.    The McClures, on behalf of themselves and others similarly situated, repeat and reallege all prior allegations as if set forth at length herein.

158.    TCCWNA provides, inter alia, that no seller shall enter any written contract or provide a notice that includes a provision that violates any clearly established legal right as established by state or federal law. N.J.S.A. 56:12-14 to -18.

159.    At all times relevant to this matter, Defendants were sellers, creditors, and/or lenders with regards to the sale and lease of RVs vehicles within the meaning of TCCWNA.

160.    At all times relevant to this matter, the McClures and those similarly situated were consumers within the meaning of TCCWNA.

161.    The BO or sales document with similar terms that the Defendants used in the transactions with the McClures and those similarly situated were contracts and/or notices within the meaning of TCCWNA.

162.    The Defendants violated TCCWNA by providing the McClures and those similarly situated a BO or similar sales document that failed to set forth each documentary service and the specific price for each documentary service performed that was included in the "Documentation l Fee" or similar charge, in violation of the ASP Regulations at N.J.A.C. 13:45A 26B.3(a)(2) and the CFA.

163.    The McClures and those similarly situated have a clearly established legal right to not be charged a fee for documentary services unless each service and price for each service is itemized on the BO or sales document.

164.    The McClures and those similarly situated were harmed because they were all charged and paid unlawful documentary service fees in connection with the vehicles purchased or leased from the Defendants.

165.    The Defendants also violated TCCWNA by charging the McClures and those similarly situated an unitemized documentary fee that was included in the Registration/Title Fee (Estimated) fees charged for registration and title in the BO and failing to timely provide accurate refunds to the McClures and those similarly situated.

166.    The McClures and those similarly situated have a clearly established right to not be charged a documentary service fee that is hidden in the fee for title and registration fees, and a right to either timely receive a complete refund when the amount charged by the Defendants

exceeds the actual amount remitted for registration and title fees or an itemization of the services and price for each service that was included in the overcharge.

167.    By failing to provide refunds to the McClures and those similarly situated when a complete refund was owed based on fees charged in excess of the actual official registration and title fees, the Defendants clearly violated the rights of consumers.

168.    The McClures and those similarly situated were harmed and are aggrieved consumers because they all were charged an amount in excess of the actual official registration and title fees related to the RVs they purchased or leased from the Defendants and were not refunded for the overcharge or provided an itemization of the services provided for the overcharge and the price for each such service.

169.    The Defendants violated TCCWNA by providing the McClures and those similarly situated a BO or similar sales document that included a charge for predelivery services in the Vehicle Sales Price and failed to set forth each pre-delivery service and the specific price for each service performed that was included in the "Vehicle Sales Price in violation of the ASP Regulations at N.J.A.C. 13:45A 26B.2(a)(2) and the CFA.

170.    The McClures and those similarly situated have a clearly established legal right to not be charged a fee for pre-delivery services unless each service and price for each service is itemized on the BO or sales document.

171.    The McClures and those similarly situated were harmed because they were all charged and paid unlawful pre-delivery service fees in connection with the vehicles purchased or leased from the Defendants.

172.    The ASP Regulations, and the CFA were clearly established laws at the time the Defendants sold or leased RVs to the McClures and those similarly situated.

173.    By offering and/or entering into written consumer contracts (the BO or similar sales documents) which contain provisions in violation of consumers' legal rights clearly established by the ASP Regulations and the CFA, the Defendants violated the TCCWNA at N.J.S.A. 56:12-15.

174.    For violations pertaining to the BO or similar sales document, the McClures and those similarly situated are entitled to statutory damages of not less than $100 plus actual damages, attorneys' fees, and costs pursuant to N.J.S.A. 56:12-17.

COUNT FOUR
DECLARATORY JUDGMENT PURSUANT TO THE UNIFORM DECLARATORY
JUDGMENTS ACT (UDJA)

175.    The McClures, on behalf of themselves and others similarly situated, repeat and reallege all prior allegations as if set forth at length herein.

176.    The UDJA provides that a person interested under a ... written contract or other writing constituting a contract, or whose rights, status or other legal relations are affected by a statute ... [or] contract ... may have determined any question of construction or validity arising under the instrument, statute ...[or] contract ... and obtain a declaration of rights, status, or other legal relations thereunder.  N.J.S.A. 2A:16-53.

177.    The BO or similar sales document the Defendants provided the McClures and those similarly situated is a contract as contemplated by the UDJA. N.J.S.A. 2A:16-50, et seq.

178.    The BO or similar sales document the Defendants provided the McClures and those similarly situated violated the ASP Regulations, CFA, and TCCWNA, as set forth in the First and Second Counts above.

179.    The Court should enter a declaratory judgment that the Defendants' BO, as set forth in the First, Second and Third Counts above, violates the ASP Regulations, the CFA, and TCCWNA.

180. The Court should enter a declaratory judgment enjoining the Defendants from future violations of the ASP Regulations, the CFA, and TCCWNA and requiring the Defendants to correct their BO and practices that violate the ASP Regulations, the CFA, and TCCWNA.

## INDIVIDUAL CLAIMS

### COUNT FIVE
### CONSUMER FRAUD ACT

181. The McClures on behalf of themselves only repeat and reallege each and every allegation in the forgoing paragraphs as if fully set forth herein.

182. When Defendants sold the RV to the McClures on August 5, 2025, they had actual knowledge of the recall notice that was issued as to the RV.

183. When Defendants delivered the RV to the McClures on August 11, 2025, they had actual knowledge of the recall notice that was issued as to the RV.

184. When Defendants sold and delivered the RV to the McClures they knew or had reason to know that the RV had defects, such as the fuel line extension and its associated recall, the motor issue with the slide outs, and the generator issue.

185. When Defendants sold and delivered the RV to the McClures, they misrepresented the RV to be in good, merchantable quality, free of defects, when it was in fact not.

186. When Defendants sold and delivered the RV to the McClures, they knowingly concealed, suppressed, or omitted facts that were material to the transaction, including but not limited to the RV's defect and recall notice, and other mechanical problems with intent that the McClures rely on the concealed, suppressed, or omitted material facts.

187. When Defendants sold and delivered the RV to the McClures, they had an affirmative duty to not sell or deliver the RV to them in its dangerous defective condition.

188.    When Defendants sold and delivered the RV to the McClures, they had an affirmative duty to disclose the recall including the dangerous condition and that there was no fix for the condition of the RV identified in the recall notice.

189.    When Defendants sold and delivered the RV to the McClures, they had an affirmative duty to disclose the other mechanical issues associated with the RV and not sell the RV with those existing conditions.

190.    When Defendants sold the RV to the McClures, they misrepresented to the McClures that if they stopped paying the loan, the finance company would take the vehicle back and not go after them for the loan balance.

191.    When the McClures, found out about the recall on the RV, the dangerous condition of the RV and that there was no fix for the issue it created, they contacted Dylans and requested that Defendnats take back the RV and cancel the deal.

192.    At the that the McClures requested that the transaction for the purchase of the RV be cancelled, The Defendants had actual knowledge of the recall, the dangerous condition of the RV and that there was no fix available for the defect.

193.    When the McClures became aware of the dangerous defective condition of the RV with no fix available, the Defendants had a non-delegable duty to accept the recission, rejection or revocation of acceptance requested by the McClures.

194.    Defendants refused to cancel the deal and take back the RV.

195.    The McClures request that Dylans take back the RV was valid, recission, rejection and or revocation of acceptance.

196.    The McClures have been unable to use the RV due to its defects and dangerous condition.

197.   The commercial practices exemplified by the Defendants in this consumer transaction were unlawful and constituted affirmative act violations of the CFA including that the practices were unconscionable, abusive, deceptive, fraudulent and misrepresentations.

198.   The commercial practices exemplified by the Defendants in this consumer transaction were unlawful and constituted the knowing concealment, suppression, or omission of material facts with intent that the McClures rely upon such concealment, suppression, or omission.

199.   But for the misrepresentations and knowing omissions of the Dylans' defendants, the McClures would not have purchased the RV.

200.   As a direct result of the unlawful acts committed by Defendants, the McClures suffered and continue to suffer ascertainable losses.

201.   The ascertainable losses include but are not limited:

- All money paid towards the purchase of the RV:

- All money paid for improvements to the RV;

- All money paid for the purchased of items to enhance the RV:

- All money paid to repair and maintain the RV including winterization of the RV:

- All money paid for and continued to be paid for the loan payments on the RV

- All money paid and continues to be paid to maintain insurance on the RV; and

- The diminished value of the RV at the time of sale.

## COUNT SIX
## COMMON LAW FRAUD

202.   The McClures repeat and reallege each and every allegation contained in the forgoing paragraphs as if fully set forth herein

203.    The some or all of the Defendants misrepresented and intentionally concealed material facts regarding the transaction as fully described in the above paragraphs.

204.    For example, they said the vehicle was "top of the line," better built, and good, even though there was a recall notice out regarding an issue involving the fuel line.

205.    They also knew of the fuel line issues as the recall notice, upon information and belief, was in their possession on the date of sale.

206.    They also knew about the motor issue for the slide outs, as the mechanic had advice regarding how to address it which the mechanic volunteered to the McClures.

207.    They also knew about the part missing from the generator, as the mechanic suggested it was common practice to take generator parts from other vehicles in the dealership's possession to fix the generator issue.

208.    They also knew, or had reason to know, that M&T would not merely abandon a claim for damages against the McClures or their family if the terms of the finance agreement were breached.

209.    The some or all of the Defendants, including Dylans, Helms and Andy, made representations praising the "top of the line" quality of the RV, along with omitting these material and dangerous defects, and the representation regarding how M&T would pursue in order to induce the McClures into purchasing the RV.

210.    The representations that Defendants made concerning the RV were express warranties.

211.    The Defendants had a non-delegable duty to not sell or deliver RV to the McClures in its defective and dangerous condition.

212.     The Defendants had a non-delegable duty to disclose the actual condition of the RV at the time of sale, at the time of delivery and thereafter.

213.     Once the McClures became aware of the dangerous defective condition of the RV the Defendants had a non-delegable duty to accept the recission, rejection or revocation of acceptance requested by the McClures.

214.     The Defendants breached their non-delegable duty to disclose the actual condition of the RV at the time of sale, at the time of delivery and thereafter.

215.     The McClures reasonably relied on all of the representations, misrepresentations and knowing omissions made by some or all of the Defendants.

216.     The McClures suffered and continue to suffer actual damages as a result of their reliance on the representations, misrepresentations and omissions made of the Defendants.

217.     The Defendants actions toward the McClures regarding the sale of the RV to them, the delivery of the RV to them and thereafter were malicious, reckless and or demonstrated a wanton disregard for the safety of the McClures and the RV.

**WHEREFORE**, the McClures on behalf of themselves and those similarly situated demands judgement against the Defendants jointly and severally as follows:

**As to the class claims in Counts One through Four**

a. For an order certifying this matter as a class action on behalf of the Class, pursuant to R. 4:32-1(b)(2) and (b)(3);

b. For an order appointing the named Plaintiffs, Eugene McClure and Anna Mae McClure as the class representatives, and appointing their attorneys Andrew R. Wolf, Esq., Henry P. Wolfe, Esq. and Javier L. Merino, Esq. from The Dann Law Firm, PC; and Aaron Harmaty from The Law Office of Aaron M. Harmaty, LLC as Class Counsel;

c. For injunctive relief forbidding the Defendants from future violations of the CFA, TCCWNA, MVAP Regulations and the ASP Regulations;

d.  For declaratory judgment that the Defendants violated the CFA, TCCWNA, the ASP Regulations and the MVAP Regulations;

e.  For injunctive/equitable relief requiring Defendants to provide notice to all class members of the Plaintiffs' claims and the relief provided by the Court;

f.  For treble damages under the CFA, N.J.S.A. 56:8-19 for the Plaintiffs and each member of the Class;

g.  For statutory damages of a minimum of $100 under TCCWNA at N.J.S.A. 56:12-17 for Plaintiffs and each member of the Class;

h.  For reasonable attorneys' fees and costs, pursuant to the CFA at N.J.S.A. 56:8-19 and TCCWNA at N.J.S.A. 56:12-17;

i.  For prejudgment and post-judgement interest; and

j.  For all other relief as the Court deems equitable and just

## As to Plaintiff's Individual Claims in Counts Five and Six

k.  For declaratory relief that Defendants violated the CFA and committed Common Law Fraud;

l.  For injunctive relief requiring Defendants to comply with the CFA;

m.  For treble damages under the CFA pursuant to N.J.S.A. 56:8-19 for the individual claims as to the Defendants;

n.  For reasonable attorneys' fees and costs, pursuant to the CFA at N.J.S.A. 56:8-19 as to Plaintiffs' individual claims;

o.  For actual damages as a result of Defendants' Common Law Fraud perpetrated on Plaintiffs for their individual claims;

p.  For incidental and consequential damages as a result of Defendants' Common Law Fraud perpetrated on Plaintiffs for their individual claims;

q.  For equitable relief requiring Dylans to repurchase the loan from M & T Bank and relieving the McClures of any and all responsibility to paying off the loan created by the Defendants' fraudulent activities;

r.  For punitive damages as a result of Defendants' egregious conduct in committing the Common law fraud perpetrated on Plaintiff for his individual claims;

s.   For pre-judgment and post-judgment interest; and

t.   For all other relief as the Court deems equitable and just.

## DEMAND FOR JURY TRIAL

The Plaintiffs demand trial of this action by jury.

## NOTICE TO ATTORNEY GENERAL OF THIS ACTION

A copy of this Amended Complaint shall be electronically mailed to the Attorney General

of the State of N.J. within 24 hours after the filing of this Complaint with the Court pursuant to

N.J.S.A. 56:8-20.

## DEMAND FOR DISCOVERY OF COMMERCIAL GENERAL LIABILITY INSURANCE COVERAGE AS REQUIRED BY N.J.S.A. 56:8-142

Demand is made under Rule 4:10-2(b) that Defendants disclose to Plaintiffs whether or

not there are any insurance or indemnification agreements or policies as required by N.J.S.A.

56:8-142 and N.J.A.C. 13A:45-17.12 under which any person or firm carrying on an insurance

business may be liable to satisfy part or all of the judgment which may be entered in this action

or to indemnify or reimburse for payments made to satisfy the judgment.

## DESIGNATION OF TRIAL COUNSEL

Pursuant to R. 4:25-4, Javier L. Merino, Esq., Henry P. Wolfe, Andrew R. Wolf, Esq.,

and Aaron M. Harmaty, Esq. are hereby designated as trial counsel for the Plaintiffs in the above

matter.

## CERTIFICATION: RULE 4:5-1

I certify that to the best of my knowledge that the matter in controversy is not the subject

of any other action pending in any court or the subject of a pending arbitration proceeding, nor is

any other action or arbitration proceeding contemplated except that Plaintiffs may bring a New Car Lemon Law claim against Forest River, the manufacturer of the RV.

The Law Office of Aaron M. Harmaty<br>
Attorneys for Plaintiffs and those similarly situated

Dated: February 2, 2026

<i>Aaron M. Harmaty</i><br>
Aaron M. Harmaty, Esq.

The Dann Law Firm, P.C.<br>
Attorneys for Plaintiffs and those similarly situated

Dated: February 2, 2026

Andrew R. Wolf, Esq.

# EXHIBIT A



**IMPORTANT SAFETY RECALL INFORMATION**

Issued in Accordance
With Federal Law



U.S. Department of
Transportation



**FOREST RIVER**

Corporate Compliance PO Box 30 Middlebury, In 46540

**NHTSA RECALL: 25V486**
**FOREST RIVER ID: 51-1955**

**INTERIM OWNER NOTIFICATION**

**A SECONDARY NOTICE WILL FOLLOW**
**WHEN THE REMEDY IS AVAILABLE**

EUGENE ROBERT MCCLURE JR
328 TAYLOR LANE AVE
VINELAND NJ 08360-4343

August 2025

This Notice applies to your vehicle VIN listed above.

Dear Forest River Customer:

This notice is sent in accordance with the requirements of the United States' *National Traffic and Motor Vehicle Safety Act*. Forest River has decided that a defect, which relates to the motor vehicle safety, exists in certain 2025-2026 East to West Entrada, Forester, Sunseeker, Solera, Freelander, and Leprechaun Class C Motorhome Recreational Vehicles.

**WHAT IS THE DEFECT?**
The fuel line extension may have been inconsistent crimps at the barb fittings of its connectors which can cause the fittings to become loose and detach.

**EVALUATION OF RISK:**
If a fuel line detaches, this may allow fuel to openly spray. This condition may lead to fire and property damage.

**WHAT IS FOREST RIVER AND OUR DEALERSHIPS GOING TO DO?**
Parts are not currently available for this recall. We are working as quickly as possible to correct this condition. When parts are available, we will send you another letter asking you to take your vehicle to an authorized Forest River dealer for repair.

**WHAT IF YOU HAVE PREVIOUSLY PAID FOR REPAIRS TO YOUR VEHICLE FOR THIS PARTICULAR CONDITION?**
If you have already paid for a repair that is within the scope of this defect under recall, you still need to have this recall inspected and/or performed to ensure the correct parts and procedures were utilized. Additionally, you may be eligible for a refund of previously paid repairs. Refunds will only be provided for within the scope of this defect under recall. Please send the service invoice to the following address:

Forest River, Inc.
PO Box 30
Middlebury, IN 46540

**WHAT IF YOU NO LONGER OWN THIS VEHICLE?**
If you no longer own this vehicle and have the address for the current owner, please forward this letter to the new owner within 10 working days after the day in which the notice is received. You have received this letter because government regulations require that a notification is sent to the last known owner of record. Our records indicate that you are the current owner.
**PLEASE NOTE: FEDERAL LAW REQUIRES THAT ANY VEHICLE LESSOR RECEIVING THIS RECALL NOTICE MUST FORWARD A COPY OF THIS NOTICE TO THE LESSEE WITHIN TEN DAYS.**

**HELPFUL CONTACT INFORMATION**

| | | EMAIL |
|---|---|---|
| EAST TO WEST ENTRADA | (574) 264-6664 | |
| FORESTER, SOLERA, AND SUNSEEKER | (574) 206-7600 | motorizedservice@forestriverinc.com |
| LEPRECHAUN AND FREELANDER | (574) 825-8602 | |



Sincerely,
Forest River Inc.
Office of Corporate Compliance

☎ 574-825-5821

Page 1 of 1

# <u>EXHIBIT B</u>

**New Jersey**                                  **Buyer's Order**                                  11252449

| Dealer/Seller Name and Address | Buyer Name, Address, Phone, Email | Buyer Name, Address, Phone, Email | Buyer Name, Address, Phone, Email |
|---|---|---|---|
| Dylans RV Center 2190 Delsea Dr. Sewell, NJ 08080 | EUGENE ROBERT MCCLURE JR 328 TAYLOR AVE VINELAND, NJ 08360 609-774-1485 | ANNA MAE MCCLURE 328 TAYLOR AVE VINELAND, NJ 08360 609-774-1485 | N/A |

| Date | Stock No. | Salesperson |
|---|---|---|
| 08/05/2025 | ▮▮▮ | Andrew Pandolfi |

| App. No. | | Contract No. | |
|---|---|---|---|
| ▮▮▮ | | ▮▮▮ | |

**Definitions.** Contract refers to this *Buyer's Order*. *Buyer, you* and *your* refer to each Buyer signing this Contract. *Seller, we, us* and *our* refer to the Dealer/Seller. *Vehicle* means the motor vehicle described in the *Vehicle Information* section. *Trade-in Vehicle(s)* refers to each vehicle described in the *Trade-in Information* section that is being traded to the Dealer/Seller as part of this transaction. *Manufacturer* refers to the entity that is the maker of the Vehicle.

**Agreement to Purchase.** You agree to buy the Vehicle from us for the amount stated in this Contract. You agree to sign any documents necessary to complete this transaction. You may only cancel this contract according to the conditions described in the Manufacturer or Trade-in sections. If you refuse to take delivery of the Vehicle, we can keep any deposits you have made to us. In addition, refusal to take delivery will make you responsible for our damages, expenses, and attorney's fees in connection to this Contract unless prohibited by the law of New Jersey. If you do not breach this Contract, any deposits will be used toward the purchase of the Vehicle.

| Vehicle Information | ☒ New   ☐ Used   ☐ Demo   ☐ Other | | | |
|---|---|---|---|---|
| Year 2025 | Make LEPRECHAUN | Model 260DS FORD MC | Style ClassC | VIN ▮▮▮ |
| Lic. No. | Color OCEAN FBP | | Odometer Reading 763 | |
| Other N/A | | | | |

**Insurance Information**

Buyer has arranged the following insurance on the motor vehicle:

Insurance Company _____

Policy No. _____   Phone _____

**Trade-in Information**

| Trade-in 1 | | Trade-in 2 | |
|---|---|---|---|
| Year | Make | Year | Make |
| Model | Style | Model | Style |
| Lic. No. | Color | Lic. No. | Color |
| VIN | Odometer | VIN | Odometer |
| Lienholder Name | | Lienholder Name | |
| Address | Phone | Address | Phone |

| Trade-In Allowance $ | Payoff $ | Payoff good through | Trade-In Allowance $ | Payoff $ | Payoff good through |
|---|---|---|---|---|---|
| | | | | | |

**Trade-in Terms**

**Trade-in Vehicle.** You will transfer title to the Trade-in Vehicle to us free of all liens except those noted on this Contract. You give permission to us to contact the lienholder(s) for payoff information. If the payoff information that we obtain from the lienholder(s) differs from the amount disclosed in this Contract, you agree to pay the difference to us if the actual amount of the balance owed is greater than the amount listed in this Contract. If the actual amount of the balance owed is less than the amount listed in this Contract, we will pay you the difference.

If you do not deliver the Trade-in Vehicle to us at the time of the initial appraisal, we may reappraise the Trade-in Vehicle when it is delivered to us. If the reappraised value is lower than the original appraisal, you can cancel this transaction as long as you have not taken delivery of the Vehicle.

You represent that (a) you are the sole true and lawful owner of the Trade-in Vehicle, (b) the Trade-in Vehicle has never been titled under any state or federal brand such as "defective," "rebuilt," "salvage," "flood," etc, (c) unless you have disclosed otherwise in an odometer statement, the mileage of the Trade-in Vehicle shown in this Contract is the actual mileage of the Trade-in Vehicle, (d) all emission control equipment is on the Trade-in Vehicle and is in satisfactory working order, and (e) the frame on the Trade-in Vehicle has not been damaged by collision or other event and repaired. If any of these representations are not true, we may elect to cancel the transaction. We may also choose to reappraise the Trade-in Vehicle and adjust the Total Balance Due instead of cancelling the transaction. You agree to immediately pay us the difference.

Buyers Order-NJ
©2024 The Reynolds and Reynolds Company
THERE ARE NO WARRANTIES, EXPRESS OR IMPLIED, AS TO CONTENT OR FITNESS FOR PURPOSE OF THIS FORM. CONSULT YOUR OWN LEGAL COUNSEL.

BUY-ORDER-NJ 5/1/2024
Bankers Systems®
Page 1 of 4

11252449

## Itemization of Sale

| | | |
|---|---|---|
| 1. Vehicle Sales Price | $ | 130,895.00 |
| **Taxes** | | |
| 2. Sales Tax | $ | 9,862.90 |
| 3. Other Tax N/A | $ | 0.00 |
| 4. Subtotal (Add lines 1 through 3) | $ | 140,757.90 |
| **Title, License & Other Fees** | | |
| 5. Certificate of Title Fee | $ | 450.00 |
| 6. License and/or Registration Fee | $ | 0.00 |
| 7. Tire Fee | $ | 9.00 |
| 8. Luxury and Fuel Inefficient Vehicle Surcharge | $ | 0.00 |
| 9. N/A | $ | 0.00 |
| 10. N/A | $ | 0.00 |
| 11. N/A | $ | 0.00 |
| 12. N/A | $ | 0.00 |
| 13. N/A | $ | 0.00 |
| 14. **Total Documentary Service Fees Paid to Seller\*** | $ | 0.00 |
| 15. **Total Pre-Delivery Service Fees Paid to Seller** | $ | 0.00 |
| 16. **Total Other Fees (Add lines 5 through 15)** | $ | 459.00 |
| **Additional Items** | | |
| 17. Vehicle Service Contract paid to Dealer Admin Services | $ | 11,995.00 |
| 18. GAP paid to Tire Shield | $ | 1,500.00 |
| 19. Paint Protection paid to Dealer Admin Services | $ | 2,995.00 |
| 20. Roadside Assistance paid to Vehicle Administrative Services | $ | 1,295.00 |
| 21. Tire & Wheel Protection paid to Dealer Admin Services | $ | 1,295.00 |
| 22. Documentation Fee paid to Seller | $ | 399.00 |
| 23. N/A | $ | 0.00 |
| 24. N/A | $ | 0.00 |
| 25. N/A | $ | 0.00 |
| 26. N/A | $ | 0.00 |
| 27. **Total Additional Items** (Add lines 17 through 26) | $ | 19,479.00 |
| 28. Cash Sale Price (Add lines 4+16+27) | $ | 160,695.90 |
| 29. Trade-in Allowance | $ | 0.00 |
| 30. Trade-in Payoff Balance | $ | 0.00 |
| 31. Net Trade Allowance (Line 29-30, if negative, enter $0 here and enter amount on line 40.) | $ | 0.00 |
| 32. Deposit | $ | 0.00 |
| 33. Cash Down Payment | $ | 15,000.00 |
| 34. Manufacturer's Rebate | $ | 0.00 |
| 35. Other Credit N/A | $ | 0.00 |
| 36. Other Credit N/A | $ | 0.00 |
| 37. Deferred Down Payment | $ | 0.00 |
| 38. Other Down Payment N/A | $ | 0.00 |
| 39. Total Credits (Add lines 31 through 38) | $ | 15,000.00 |
| 40. Trade-in Balance Owing (see line 31) | $ | 0.00 |
| 41. Lease Balance Owing | $ | 0.00 |
| 42. Total Balance Due (Line 28-39+40+41) | $ | 145,695.90 |

We may retain or receive a portion of any amounts paid to others.

\* No governmental entity requires the automotive dealer perform any documentary service.

## Documentary Service and Pre-Delivery Service

**Documentary Service Fee.** You agree to pay Seller a Documentary Service Fee of $ _____0.00 for Preparation and Processing:

| | | |
|---|---|---|
| i. of License, Registration and Title | $ | 0.00 |
| ii. of N/A | $ | 0.00 |
| iii. of N/A | $ | 0.00 |
| iv. of N/A | $ | 0.00 |

**Pre-Delivery Service Fee.** You agree to pay Seller a Pre-Delivery Service Fee of $ _____0.00 for the following services:

| | | |
|---|---|---|
| i. of N/A | $ | 0.00 |
| ii. of N/A | $ | 0.00 |
| iii. of N/A | $ | 0.00 |
| iv. of N/A | $ | 0.00 |

A Documentary Service fee and Pre-Delivery Service fee are not official fees and are not required by law. "Documentary service" means, but is not limited to, the preparation and processing of documents in connection with the transfer of license plates, registration, or title, and the preparation and processing of other documents relating to the sale of a motor vehicle. Documentary Service Fees MUST BE ITEMIZED ABOVE such that the price of each prepared document is disclosed. "Pre-delivery service" means, but is not limited to, items that are often described or labeled as dealer preparation, vehicle preparation, pre-delivery handling and delivery, or any other service of similar import. Pre-Delivery Service Fees MUST BE ITEMIZED ABOVE and do not include any services for which the dealer receives compensation from any other party.

## Additional Terms

**Governing Law and Interpretation.** This Contract is governed by the law of New Jersey and applicable federal law and regulations.

If any section or provision of this Contract is not enforceable, the other terms will remain part of this contract. You authorize us to correct any clerical error or omissions in this Contract or in any related document.

**Manufacturer.** We are not an agent of the Manufacturer. The Manufacturer can change the price, design or standard features of the Vehicle at any time without notice. If we cannot obtain the Vehicle from the Manufacturer at the price in effect as of the date of this Contract, or if we cannot obtain the agreed upon product from the Manufacturer, you or we can cancel this Contract.

If you cancel this Contract under the terms of this section, we will refund to you any amounts you have paid to us. If you have delivered a Trade-in Vehicle to us, we will return it to you. If we have already sold the Trade-in Vehicle, we will pay you the amount we received for the sale after adjusting for any payoff we made to a lienholder and costs for repair and reconditioning, if any.

**Name and Location.** Your name and address indicated on page 1 are your exact legal name and your principal residence.

**Insurance.** You represent that the insurance information you have given us is accurate.

**Retail Installment Sales Contract.** In the event that you and we enter into a retail installment sales contract for the financing of the purchase of the Vehicle, the terms of the retail installment sales contract will control any inconsistencies between this Contract and the retail installment sales contract.

**Returned Payment Charge.** If you make any payment required by this Contract that is returned or dishonored, you agree to pay a fee of $20.00.

Buyers Order-NJ
©2024 The Reynolds and Reynolds Company
THERE ARE NO WARRANTIES, EXPRESS OR IMPLIED, AS TO CONTENT OR FITNESS FOR PURPOSE OF THIS FORM. CONSULT YOUR OWN LEGAL COUNSEL.

BUY-ORDER-NJ 6/1/2024
Bankers Systems®
Page 2 of 4

11252449

**Telephone Monitoring and Calling.** You agree that we may from time to time monitor and record telephone calls made or received by us or our agents regarding your account to assure the quality of our service. In order for us to service the account or to collect any amounts you may owe, and subject to applicable law, you agree that we may from time to time make calls and send text messages to you using prerecorded/artificial voice messages or through the use of an automatic dialing device at any telephone number you provide to us in connection with your account, including a mobile telephone number that could result in charges to you.

**Vehicle Condition.** You understand the Vehicle may have undergone prior mechanical or body repair. The damage, necessitating repair may have occurred during manufacture, transit or while in the possession of prior owner or operators.

## Vehicle Inspection

By initialing below, you represent that you have thoroughly inspected the Vehicle and approve and accept it. You had an opportunity to have the Vehicle inspected by a third party of your choice and at your expense. You are purchasing the Vehicle based on your inspection. You are not relying on any opinion, statement, or promise of the Seller or its employees that is not contained in the written agreements you are signing today.

Buyer's Initials

_____  _____  ___N/A_____

## Warranty Information

☐ **Vehicle Manufacturer Warranty.** The Vehicle is subject to an express warranty made by the Manufacturer. It is a standard written manufacturer's warranty and made by the Manufacturer and not by the Seller. By signing this Contract, each Buyer acknowledges receiving a copy of it.

☐ **Dealer Warranty.** The Vehicle is subject to an express written warranty made by the Seller. By signing this Contract, each Buyer acknowledges receiving a copy of it.

The Seller is responsible to fulfill any separate written warranty made by Seller on its own behalf. If the Manufacturer or another supplier provides a warranty, they are responsible for satisfying its terms, NOT the Seller.

If neither box above is checked under Warranty Information the Used Vehicle is sold AS-IS and the following paragraph applies:

**THIS VEHICLE IS SOLD "AS-IS" WITH ALL FAULTS, WITHOUT ANY WARRANTY, EITHER EXPRESS OR IMPLIED AND BUYER IS SOLELY RESPONSIBLE FOR COST OF ANY REPAIRS TO THE VEHICLE. THE SELLER EXPRESSLY DISCLAIMS ALL WARRANTIES, EITHER EXPRESS OR IMPLIED, INCLUDING ANY IMPLIED WARRANTIES OF MERCHANTABILITY AND FITNESS FOR A PARTICULAR PURPOSE. BUYER ASSUMES ALL RISKS AND RESPONSIBILITIES.**

## Used Car Buyer Notice

If you are buying a used vehicle: The information you see on the window form for this vehicle is part of this contract. Information on the window form overrides any contrary provisions in the contract of sale.

**(Spanish Translation) Si compra un vehículo usado: La información que ve adherida en la ventanilla forma parte de éste contrato. La información contenida en el formulario de la ventanilla prevalece por sobre toda otra disposición en contrario incluida en el contrato de compraventa.**

## Notices

☐ **Trade-in Balance Due.** You understand that the balance owed on the Trade-in exceeds the Trade-in Allowance and that as a result the Total Balance Due has been increased by $ _0.00_____ of negative equity.

☐ **Lease Balance Due.** You understand the Total Balance Due includes the amount of $ _0.00_____ for a lease balance due from a prior transaction.

Buyer's Initials

_____  _____  ___N/A_____

## Used Vehicle Sale Dealer/Seller's Obligation

**Explanation of Dealer/Seller Obligations.** The Dealer/Seller has the following obligations under N.J.S.A. 39:10-26 through 39:10-30:

No Dealer/Seller may sell a used passenger motor vehicle to be registered in New Jersey unless the Vehicle meets the standards for the issuance of a certificate of approval. If the used passenger motor vehicle has any defect that does not allow for the issuance of a certificate of approval, the Dealer/Seller shall make, or cause to be made, all necessary repairs without charge, or shall return the full purchase price to the Buyer; provided that such defect or defects are not the result of the Buyer's own act.

Buyer acknowledges they have been informed of Dealer/Seller's obligation above. Buyer agrees to present the used passenger motor vehicle for inspection within 14 days from the date of delivery of such vehicle.

Buyer  EUGENE ROBERT MCCLURE JR

Buyer  ANNA MAE MCCLURE

N/A
Buyer  N/A

## Acknowledgement of New Jersey Registration

☐ The Vehicle is a used passenger motor vehicle and will be registered in New Jersey in the condition sold.

Buyers Order-NJ
©2024 The Reynolds and Reynolds Company
THERE ARE NO WARRANTIES, EXPRESS OR IMPLIED, AS TO CONTENT OR FITNESS FOR PURPOSE OF THIS FORM. CONSULT YOUR OWN LEGAL COUNSEL.

BUY-ORDER-NJ 8/1/2024
Bankers Systems®
Page 3 of 4

11252449

## Waiver of Used Vehicle Sale Dealer/Seller's Obligation

Buyer does not waive the Dealer/Seller Obligations unless signed below.

☐ **Buyer Waives the Dealer/Seller Obligations.** Buyer has read and understood the Dealer/Seller obligations under the New Jersey Motor Vehicle Certificate of Ownership Law. The Dealer/Seller has disclosed the below list of known defects. Buyer has reviewed the below list of known defects and acknowledges that the known defects may need to be resolved before a certificate of approval may be issued.

KNOWN DEFECTS: _____

_____

_____

Buyer WAIVES AND RELEASES the DEALER/SELLER OBLIGATIONS and accepts the motor vehicle with KNOWN DEFECTS.

N/A
Buyer N/A

N/A
Buyer N/A

N/A
Buyer N/A

## Signatures

This agreement is not binding upon the Dealer/Seller until it is signed by an authorized representative of the Dealer/Seller.

You represent that you are of legal age and have legal capacity to enter into this Contract.

☐ **A separate Arbitration Agreement between you and us is part of this Contract.**

You received a copy of this Contract and by signing below, you agree to the terms on all pages of this Contract and acknowledge you had a chance to read and review it before you signed it.

**Entire Agreement.** Your and our entire agreement is contained in this Contract. There are no unwritten agreements regarding this Contract.

Buyer EUGENE ROBERT MCCLURE JR     08/05/2025   Date

Buyer ANNA MAE MCCLURE     08/05/2025   Date

Buyer N/A     N/A   Date

Dealer/Seller Dylans RV Center     08/05/2025   Date

Buyers Order-NJ
©2024 The Reynolds and Reynolds Company
THERE ARE NO WARRANTIES, EXPRESS OR IMPLIED, AS TO CONTENT OR
FITNESS FOR PURPOSE OF THIS FORM. CONSULT YOUR OWN LEGAL COUNSEL.

BUY-ORDER-NJ 6/1/2024
Bankers Systems®
Page 4 of 4

# EXHIBIT C

NJ-102 11/1/2018

# Retail Installment Contract and Security Agreement

| Seller Name and Address | Buyer(s) Name(s) and Address(es) | Summary |
|---|---|---|
| Dylans RV Center<br>2190 Delsea Dr.<br>Sewell, NJ 08080 | EUGENE ROBERT MCCLURE JR<br>ANNA MAE MCCLURE<br>328 TAYLOR AVE<br>VINELAND, NJ 08360 | No.<br>Date _____ 08/05/2025 |

☐ Business, commercial or agricultural purpose Contract.

## 1. Sales Agreement

**1.1 Definitions.** "Contract" refers to this Retail Installment Contract and Security Agreement. The pronouns "you" and "your" refer to each Buyer signing this Contract, and any guarantors, jointly and individually. The pronouns "we", "us" and "our" refer to the Seller and any entity to which it may transfer this Contract. "Vehicle" means each motor vehicle described in the Description of Property section. "Property" means the Vehicle and all other property described in the Description of Property and Additional Protections sections.

**1.2 Purchase of Property.** You agree to purchase the Property from Seller, subject to the terms and conditions of this Contract.

You have been given the opportunity to purchase the Property and described services for the Cash Price or the Total Sale Price. The "Total Sale Price" is the total price of the Property if you buy it over time.

**1.3 Payment.** You promise to pay us the principal amount of $ 145,695.90 _____ plus the time price differential accruing on the unpaid balance at the rate of _____ 7.99 _____ % per year from the date of this Contract until maturity. After maturity, or after you default and we demand payment, we will earn the time price differential on the unpaid balance at _____ 7.99 _____ % per year. You agree to pay this Contract according to the payment schedule and late charge provisions shown in the Truth-In-Lending Disclosure. You also agree to pay any additional amounts according to the terms and conditions of this Contract.

## 2. Truth-In-Lending Disclosure

| Annual Percentage Rate<br>The cost of your credit as a yearly rate. | Finance Charge<br>The dollar amount the credit will cost you. | Amount Financed<br>The amount of credit provided to you or on your behalf. | Total of Payments<br>The amount you will have paid when you have made all scheduled payments. | Total Sale Price<br>The total cost of your purchase on credit, including your down payment of |
|---|---|---|---|---|
| 7.99 % | $ 146,564.10 | $ 145,695.90 | $ 292,260.00 | $ 15,000.00<br>$ 307,260.00 |

**Payment Schedule.** Your payment schedule is:

| No. of Payments | Amount of Payments | When Payments are Due |
|---|---|---|
| 240 | $ 1,217.75 | Monthly, beginning on 9/4/2025 . |
| N/A | $ N/A | NOT APPLICABLE |
| N/A | $ N/A | NOT APPLICABLE |

**Security.** You are giving us a security interest in the Property purchased.

**Late Charge.** If a payment is more than 10 days late, you will be charged 5% of the unpaid amount of the payment due, except that if the Property is primarily for personal, family, or household use and the cash price is $10,000 or less, the charge for late payment will be $10.

**Prepayment.** If you pay off this Contract early, you will not have to pay a penalty.

**Contract Provisions.** You can see the terms of this Contract for any additional information about nonpayment, default, any required repayment before the scheduled date, and prepayment refunds and penalties.

## 3. Description of Property

| Year | Make | Model | Style | Vehicle Identification Number | Odometer Mileage |
|---|---|---|---|---|---|
| 2025 | LEPRECHAUN | 260DS FORD MC | ClassC | | 763 |

Other:

☒ New<br>☐ Used<br>☐ Demo

Retail Installment Contract-NJ  Not for use in transactions secured by a dwelling.
©2018 The Reynolds and Reynolds Company
THERE ARE NO WARRANTIES, EXPRESS OR IMPLIED, AS TO CONTENT OR FITNESS FOR PURPOSE OF THIS FORM. CONSULT YOUR OWN LEGAL COUNSEL.

RSSIMVLFLZNJ 11/1/2018
Bankers Systems
Page 1 of 7
Customers Initial Here

## 4. Description of Trade-In

N/A

## 5. Conditional Delivery

☐ **Conditional Delivery.** If checked, you agree that the following agreement regarding securing financing (*"Agreement"*) applies:

N/A

The Agreement is part of this Contract. The Agreement will no longer control after the assignment is accepted. If there are any conflicts between the terms of the Agreement and the Contract, the terms of this Contract will apply.

## 6. Itemization of Amount Financed

| | | | |
|---|---|---|---:|
| a. | **Vehicle Sales Price** | $ | 130,895.00 |
| b. | Sales Tax (reduced as required due to value of like trade-in) | $ | 9,862.90 |
| c. | Other Tax N/A | $ | 0.00 |
| d. | Other Tax N/A | $ | 0.00 |
| e. | Other Tax N/A | $ | 0.00 |
| f. | Cash Price (a+b+c+d+e) | $ | 140,757.90 |
| g. | Trade-In allowance | $ | 0.00 |
| h. | Less: Amount owing, paid to (includes o). N/A | $ | 0.00 |
| i. | Net Trade-In (g-h; if negative, enter $0 here and enter the amount on line o) | $ | 0.00 |
| j. | Cash payment | $ | 15,000.00 |
| k. | Manufacturer's rebate | $ | 0.00 |
| l. | Other down payment (describe) N/A | $ | 0.00 |
| m. | **Down Payment (i+j+k+l)** | $ | 15,000.00 |
| n. | **Unpaid Cash Balance (f-m)** | $ | 125,757.90 |
| o. | Financed trade-in balance (see i) | $ | 0.00 |
| p. | Paid to Public Officials – Certificate of Title Fee | $ | 450.00 |
| q. | Paid to Public Officials – Tire Fee | $ | 9.00 |
| r. | Paid to Public Officials – Supplemental Title Fee | $ | 0.00 |
| s. | Paid to Public Officials – License and/or Registration Fee | $ | 0.00 |
| t. | Paid to Public Officials N/A | $ | 0.00 |
| u. | Paid to Public Officials N/A | $ | 0.00 |
| v. | Insurance premiums paid to Insurance company(ies) | $ | 0.00 |
| w. | Documentary Service Fee Paid to Seller for Preparation and Processing: | | |
| | 1. of License, Registration and Title | $ | 0.00 |
| | 2. of N/A | $ | 0.00 |
| | 3. of N/A | $ | 0.00 |
| | 4. of N/A | $ | 0.00 |
| x. | Pre-Delivery Service Fee Paid to Seller: | | |
| | 1. for Pre-Delivery Handling and Delivery Service Fee | $ | 0.00 |
| | 2. for N/A | $ | 0.00 |
| | 3. for N/A | $ | 0.00 |
| | 4. for N/A | $ | 0.00 |
| y. | Service Contract, paid to: Dealer Admin Services | $ | 11,995.00 |
| z. | To: GAP paid to Tire Shield | $ | 1,500.00 |
| aa. | To: Paint Protection paid to Dealer Admin Services | $ | 2,995.00 |
| bb. | To: Roadside Assistance paid to Vehicle Administrative Services | $ | 1,295.00 |
| cc. | To: Tire & Wheel Protection paid to Dealer Admin Services | $ | 1,295.00 |
| dd. | To: Documentation Fee paid to Seller | $ | 399.00 |
| ee. | To: N/A | $ | 0.00 |
| ff. | To: N/A | $ | 0.00 |
| gg. | To: N/A | $ | 0.00 |
| hh. | To: N/A | $ | 0.00 |
| ii. | To: N/A | $ | 0.00 |
| jj. | **Total Other Charges/Amts Paid (o thru ii)** | $ | 19,938.00 |
| kk. | **Principal Balance (n+jj)** | $ | 145,695.90 |
| ll. | **Time Price Differential** | $ | 146,564.10 |
| mm. | **Time Balance (kk+ll)** | $ | 292,260.00 |
| nn. | **Prepaid Finance Charge** | $ | 0.00 |
| oo. | **Amount Financed (n+jj-nn)** | $ | 145,695.90 |
| pp. | **Time Sales Price (m+mm)** | $ | 307,260.00 |

We may retain or receive a portion of any amounts paid to others.

## 7. Insurance Disclosures

**7.1 Credit Insurance.** Credit life insurance pays all or part of the amount you owe under this Contract if you die. This insurance pays only the amount you would owe if you paid all your payments on time. Credit disability pays all or part of the payments due under this Contract while you are disabled. This insurance does not cover any increase in your payment or in the number of payments. See the policies or certificates from the named Insurance companies for the details of the coverage these types of insurance provide, and for other terms and conditions. Credit life and credit disability (accident and health) are not required to obtain credit and are not a factor in the credit decision. We will not provide them unless you sign and agree to pay the additional premium. If you want such insurance, we will obtain it for you (if you qualify for coverage). We are quoting below **only** the coverages you have chosen to purchase.

**Credit Life**

☐ Single  ☐ Joint  ☒ None

Premium $ 0.00     Term N/A

Insured N/A

**Credit Disability**

☐ Single  ☐ Joint  ☒ None

Premium $ 0.00     Term N/A

Insured N/A

Your signature below means you want (only) the insurance coverage(s) quoted above. If "None" is checked, you have declined the coverage we offered.

| | |
|---|---|
| *Eu RMcClure* | 11/25/1959 |
| By: EUGENE ROBERT MCCLURE JR | DOB |
| *Anna Mae McClure* | 11/12/1959 |
| By: ANNA MAE MCCLURE | DOB |
| | N/A |
| By: N/A | DOB |

Retail Installment Contract-NJ  Not for use in transactions secured by a dwelling.
©2018 The Reynolds and Reynolds Company
THERE ARE NO WARRANTIES, EXPRESS OR IMPLIED, AS TO CONTENT OR FITNESS FOR PURPOSE OF THIS FORM. CONSULT YOUR OWN LEGAL COUNSEL.

RSSIMVLFLZNJ 11/1/2018
Bankers Systems®
Page 2 of 7

Customers Initial Here

## 7.2 Property Insurance.

You must insure the Property. You may purchase or provide the insurance through any insurance company reasonably acceptable to us. The collision coverage deductible may not exceed $ $500_____ . If you get insurance from or through us you will pay $ 0.00_____ for N/A _____ of coverage.

This premium is calculated as follows:

☐ $ 0.00_____ Deductible, Collision Cov.   $ 0.00_____
☐ $ 0.00_____ Deductible, Comp. Cov.   $ 0.00_____
☐ Fire-Theft and Combined Additional Cov.   $ 0.00_____
☐ N/A   $ 0.00_____

**THIS DOES NOT INCLUDE INSURANCE ON YOUR LIABILITY FOR BODILY INJURY OR PROPERTY DAMAGE. WITHOUT SUCH INSURANCE, YOU MAY NOT OPERATE THIS VEHICLE ON PUBLIC HIGHWAYS.**

**7.3** ☐ **Single-Interest Insurance.** You must purchase single-interest insurance as part of this sale transaction. You may purchase the coverage from a company of your choice, reasonably acceptable to us. If you buy the coverage from or through us, you will pay $ ____N/A____ for ____N/A____ of coverage.

## 8. Additional Protections

You may buy any of the following voluntary protection plans. They are not required to obtain credit, are not a factor in the credit decision, and are not a factor in the terms of the credit or the related sale of the Vehicle. The voluntary protections will not be provided unless you sign and agree to pay the additional cost.

Your signature below means that you want the described item and that you have received and reviewed a copy of the contract(s) for the product(s). If no coverage or charge is given for an item, you have declined any such coverage we offered.

☒ **Service Contract**
Term           60 months_____
Price          $ 11,995.00_____
Coverage       Parts & Labor Protection_____

☒ **Gap Waiver or Gap Coverage**
Term           72 months_____
Price          $ 1,500.00_____
Coverage       G.A.P. Protection_____

☒ **Paint Protection**
Term           60 months_____
Price          $ 2,995.00_____
Coverage       Appearance Protection_____

_Eug McClug_                          08/05/2025
By: EUGENE ROBERT MCCLURE JR          Date

_Anna M_                              08/05/2025
By: ANNA MAE MCCLURE                  Date

                                     N/A
By: N/A                              Date

## 9. Additional Terms of the Sales Agreement

**9.1 General Terms.** The Total Sale Price shown in the _Truth-In-Lending Disclosure_ assumes that all payments will be made as scheduled. The actual amount you will pay will be more if you pay late and less if you pay early.

We do not intend to charge or collect, and you do not agree to pay, any time price differential or fee that is more than the maximum amount permitted for this sale by state or federal law. If you pay a time price differential or fee that exceeds that maximum amount, we will first apply the excess amount to reduce the principal balance and, when the principal has been paid in full, refund any remaining amount to you.

You understand and agree that some payments to third parties as a part of this Contract may involve money retained by us or paid back to us as commissions or other remuneration.

You agree that the Property will not be used as a dwelling.

**9.2 Prepayment.** You may prepay this Contract in full or in part at any time without penalty. Any partial prepayment will not excuse any later scheduled payments. If we get a refund of any unearned insurance premiums that you paid, you agree that we may subtract the refund from the amount you owe, unless otherwise provided by law.

**9.3 Returned Payment Charge.** If you make any payment required by this Contract that is returned uncollected due to insufficient funds in your account, you agree to pay a fee of $20. If the Property is primarily for personal, family, or household use and the cash price is $10,000 or less, then the $20 fee applies only to payments made by check.

**9.4 Governing Law and Interpretation.** This Contract is governed by the law of New Jersey and applicable federal law and regulations.

If any section or provision of this Contract is not enforceable, the other terms will remain part of this Contract. You authorize us to correct any clerical error or omissions in this Contract or in any related document.

**9.5 Name and Location.** Your name and address set forth in this Contract are your exact legal name and your principal residence. You will provide us with at least 30 days notice before you change your name or principal residence.

**9.6 Telephone Monitoring and Calling.** You agree that we may from time to time monitor and record telephone calls made or received by us or our agents regarding your account to assure the quality of our service. In order for us to service the account or to collect any amounts you may owe, and subject to applicable law, you agree that we may from time to time make calls and send text messages to you using prerecorded/artificial voice messages or through the use of an automatic dialing device at any telephone number you provide to us in connection with your account, including a mobile telephone number that could result in charges to you.

**9.7 Default.** You will be in default on this Contract (except as prohibited by law) If you fail to perform any obligation that you have undertaken in this Contract.

If the Property is primarily for personal, family, or household use, and the cash price is $10,000 or less, if you default you agree to pay attorneys' fees of 20% of the first $500 and 10% on any excess of the amount due and payable under this Contract, if referred for collection to an attorney not a salaried employee of ours. For other transactions, if we hire an attorney who is not a salaried employee to collect what you owe, you will pay the attorney's reasonable fee and court costs the law permits.

If an event of default occurs as to any of you, we may exercise our remedies against any or all of you.

Retail Installment Contract-NJ  Not for use in transactions secured by a dwelling.
©2018 The Reynolds and Reynolds Company
THERE ARE NO WARRANTIES, EXPRESS OR IMPLIED, AS TO CONTENT OR FITNESS FOR PURPOSE OF THIS FORM. CONSULT YOUR OWN LEGAL COUNSEL.

RSSIMVLFLZNJ 11/1/2018
Bankers Systems®
Page 3 of 7
Customers Initial Here

**9.8 Remedies.** If you are in default on this Contract, we have all of the remedies provided by law and this Contract. Those remedies include:

- We may require you to immediately pay us, subject to any refund required by law, the remaining unpaid balance of the amount financed, time price differential and all other agreed charges.

- We may pay taxes, assessments, or other liens or make repairs to the Property if you have not done so. We are not required to do so. You will repay us that amount immediately. That amount will earn the time price differential from the date we pay it at the contract rate described in the *Payment* section until paid in full.

- We may require you to make the Property available to us at a place we designate that is reasonably convenient to you and us.

- We may immediately take possession of the Property by legal process or self-help, but in doing so we may not breach the peace or unlawfully enter onto your premises.

- We may then sell the Property and apply what we receive as provided by law to our reasonable expenses and then toward what you owe us.

- We may, as allowed by law, sue you for additional amounts if the proceeds of a sale do not pay all of the amounts you owe us.

By choosing any one or more of these remedies, we do not give up our right to later use another remedy. By deciding not to use any remedy, we do not give up our right to consider the event a default if it happens again.

You agree that if any notice is required to be given to you of an intended sale or transfer of the Property, notice is reasonable if mailed to your last known address, as reflected in our records, at least 10 days before the date of the intended sale or transfer (or such other period of time as is required by law).

You agree that we may take possession of personal property left in or on the Property securing this Contract and taken into possession as provided above. You may have a right to recover that property.

If the Property has an electronic tracking device, you agree that we may use the device to find the vehicle.

**9.9 Obligations Independent.** Each person who signs this Contract agrees to pay this Contract according to its terms. This means the following:

- You must pay this Contract even if someone else has also signed it.

- We may release any co-buyer or guarantor and you will still be obligated to pay this Contract.

- We may release any security and you will still be obligated to pay this Contract.

- If we give up any of our rights, it will not affect your duty to pay this Contract.

- If we extend new credit or renew this Contract, it will not affect your duty to pay this Contract.

**9.10 Warranty.** Warranty information is provided to you separately.

## 10. Security Agreement

**10.1 Security.** To secure your payment and performance under the terms of this Contract, you give us a security interest in the Vehicle, all accessions, attachments, accessories, and equipment placed in or on the Vehicle and in all other Property. You also assign to us and give us a security interest in proceeds and premium refunds of any insurance and service contracts purchased with this Contract.

**10.2 Duties Toward Property.** By giving us a security interest in the Property, you represent and agree to the following:

- You will defend our interests in the Property against claims made by anyone else. You will keep our claim to the Property ahead of the claim of anyone else. You will not do anything to change our interest in the Property.

- You will keep the Property in your possession and in good condition and repair. You will use the Property for its intended and lawful purposes.

- You agree not to remove the Property from the United States or Canada without our prior written consent.

- You will not attempt to sell the Property, transfer any rights in the Property, or grant another lien on the Property without our prior written consent.

- You will pay all taxes and assessments on the Property as they become due.

- You will notify us with reasonable promptness of any loss or damage to the Property.

- You will provide us reasonable access to the Property for the purpose of inspection. Our entry and inspection must be accomplished lawfully, and without breaching the peace.

**10.3 Agreement to Provide Insurance.** You agree to provide property insurance on the Property protecting against loss and physical damage and subject to a maximum deductible amount indicated in the *Insurance Disclosures* section, or as we will otherwise require. You will name us as loss payee on any such policy. Generally, the loss payee is the one to be paid the policy benefits in case of loss or damage to the Property. In the event of loss or damage to the Property, we may require additional security or assurances of payment before we allow insurance proceeds to be used to repair or replace the Property. You agree that if the insurance proceeds do not cover the amounts you still owe us, you will pay the difference. You will keep the insurance in full force and effect until this Contract is paid in full.

If you fail to obtain or maintain this insurance, or name us as loss payee, we may obtain insurance to protect our interest in the Property. This insurance may be written by a company other than one you would choose. It may be written at a rate higher than a rate you could obtain if you purchased the property insurance required by this Contract. We will add the premium for this insurance to the amount you owe us. This amount will earn the time price differential from the date paid at the contract rate described in the *Payment* section until paid in full.

**10.4 Gap Waiver or Gap Coverage.** In the event of theft or damage to the Vehicle that results in a total loss, there may be a gap between the amount due under the terms of the Contract and the proceeds of your insurance settlement and deductibles. You are liable for this difference. You have the option of purchasing Gap Waiver or Gap Coverage to cover the gap liability, subject to any conditions and exclusions in the Gap Waiver or Gap Coverage agreements.

Retail Installment Contract-NJ   Not for use in transactions secured by a dwelling.
©2016 The Reynolds and Reynolds Company
THERE ARE NO WARRANTIES, EXPRESS OR IMPLIED, AS TO CONTENT OR FITNESS FOR PURPOSE OF THIS FORM. CONSULT YOUR OWN LEGAL COUNSEL.

RISIMVI.FLZNJ 11/1/2016
Bankers Systems®
Page 4 of 7

Customers Initial Here

## 11. Notices

**11.1 Note.** If the primary use of the Vehicle is non-consumer, this is not a consumer contract, and the following notice does not apply. NOTICE. ANY HOLDER OF THIS CONSUMER CREDIT CONTRACT IS SUBJECT TO ALL CLAIMS AND DEFENSES WHICH THE DEBTOR COULD ASSERT AGAINST THE SELLER OF GOODS OR SERVICES OBTAINED PURSUANT HERETO OR WITH THE PROCEEDS HEREOF. RECOVERY HEREUNDER BY THE DEBTOR SHALL NOT EXCEED AMOUNTS PAID BY THE DEBTOR HEREUNDER.

**11.2 Documentary Service and Pre-Delivery Service.** A Documentary Service fee and Pre-Delivery Service fee are not official fees and are not required by law. "Documentary service" means, but is not limited to, the preparation and processing of documents in connection with the transfer of license plates, registration, or title, and the preparation and processing of other documents relating to the sale of a motor vehicle. Documentary Service Fees MUST BE ITEMIZED ABOVE such that the price of each prepared document is disclosed. "Pre-delivery service" means, but is not limited to, items that are often described or labeled as dealer preparation, vehicle preparation, pre-delivery handling and delivery, or any other service of similar import. Pre-Delivery Service Fees MUST BE ITEMIZED ABOVE and do not include any services for which the dealer receives compensation from any other party.

**11.3 Used Car Buyer Notice. If you are buying a used vehicle: The information you see on the window form for this vehicle is part of this contract. Information on the window form overrides any contrary provisions in the contract of sale.**

**Spanish Translation. Si compra un vehículo usado: La información que ve adherida en la ventanilla forma parte de éste contrato. La información contenida en el formulario de la ventanilla prevalece por sobre toda otra disposición en contrario incluida en el contrato de compraventa.**

*[This area intentionally left blank.]*

## 12. Third Party Agreement

(This section applies ONLY to a person who will have an ownership interest in the Property but is NOT a Buyer obligated to pay this Contract ("Third Party Owner").)

In this section only, *"you"* means only the person signing this section.

By signing below you agree to give us a security interest in the Property described in the *Description of Property* section. You also agree to the terms of this Contract except that you will not be liable for the payments it requires. Your interest in the Property may be used to satisfy the Buyer's obligation. You agree that we may renew, extend or change this Contract, or release any party or Property without releasing you from this Contract. We may take these steps without notice or demand upon you.

**You acknowledge receipt of a completed copy of this Contract.**

NOT APPLICABLE

_____   N/A
By: NOT APPLICABLE                         **Date**
    Signature of Third Party Owner (NOT the Buyer)

*[This area intentionally left blank.]*

Retail Installment Contract-NJ  Not for use in transactions secured by a dwelling.
©2016 The Reynolds and Reynolds Company
THERE ARE NO WARRANTIES, EXPRESS OR IMPLIED, AS TO CONTENT OR FITNESS FOR PURPOSE OF THIS FORM. CONSULT YOUR OWN LEGAL COUNSEL.

RSSIMVLFLZNJ 11/1/2018
Bankers Systems®
Page 6 of 7
Customers Initial Here

**13.** ☐ **Electronic Signature Acknowledgment.** You agree that (i) you viewed and read this entire Contract before signing it, (ii) you signed this Contract with one or more electronic signatures, (iii) you intend to enter into this Contract and your electronic signature has the same effect as your written ink signature, (iv) you received a paper copy of this Contract after it was signed, and (v) the authoritative copy of this Contract shall reside in a document management system held by Seller in the ordinary course of business. You understand that Seller may transfer this Contract to another company in the electronic form or as a paper version of that electronic form which would then become the authoritative copy. Seller or that other company may enforce this Contract in the electronic form or as a paper version of that electronic form. You may enforce the paper version of the Contract copy that you received.

### 14. Used Vehicle Sale Dealer/Seller's Obligation

**Explanation of Dealer/Seller Obligations.** The Dealer/Seller has the following obligations under N.J.S.A. 39:10-26 through 39:10-30:

No Dealer/Seller may sell a used passenger motor vehicle to be registered in New Jersey unless the Vehicle meets the standards for the issuance of a certificate of approval. If the used passenger motor vehicle has any defect that does not allow for the issuance of a certificate of approval, the Dealer/Seller shall make, or cause to be made, all necessary repairs without charge, or shall return the full purchase price to the Buyer; provided that such defect or defects are not the result of the Buyer's own act.

Buyer acknowledges they have been informed of Dealer/Seller's obligation above. Buyer agrees to present the used passenger motor vehicle for inspection within 14 days from the date of delivery of such vehicle.

_____ N/A
Buyer                            Date

_____ N/A
Buyer                            Date

_____ N/A
Buyer                            Date

### 15. Acknowledgment of New Jersey Registration

☐ The Vehicle is a used passenger motor vehicle and will be registered in New Jersey in the condition sold.

*[This area intentionally left blank.]*

### 16. Waiver of Used Vehicle Sale Dealer/Seller's Obligation

Buyer does not waive the Dealer/Seller Obligations unless signed below.

☐ **Buyer Waives the Dealer/Seller Obligations.** Buyer has read and understood the Dealer/Seller obligations under the New Jersey Motor Vehicle Certificate of Ownership Law. The Dealer/Seller has disclosed the below list of known defects. Buyer has reviewed the below list of known defects and acknowledges that the known defects may need to be resolved before a certificate of approval may be issued.

KNOWN DEFECTS: N/A _____

_____

Buyer WAIVES AND RELEASES the DEALER/SELLER OBLIGATIONS and accepts the motor vehicle with KNOWN DEFECTS.

_____ N/A
Buyer                            Date

_____ N/A
Buyer                            Date

_____ N/A
Buyer                            Date

### 17. Contract Index

| Issue | Section |
|---|---|
| Acknowledgment of New Jersey Registration | 15 |
| Additional Protections | 8 |
| Additional Terms of the Sales | 9 |
| Agreement to Provide Insurance | 10.3 |
| Assignment | 20 |
| Conditional Delivery | 5 |
| Credit Insurance | 7.1 |
| Default | 9.7 |
| Definitions | 1.1 |
| Description of Property | 3 |
| Description of Trade-In | 4 |
| Documentary Service and Pre-Delivery Service | 11.2 |
| Duties Toward Property | 10.2 |
| Electronic Signature Acknowledgment | 13 |
| Gap Waiver or Gap Coverage | 10.4 |
| General Terms | 9.1 |
| Governing Law and Interpretation | 9.4 |
| Insurance Disclosures | 7 |
| Index | 17 |
| Itemization of Amount Financed | 6 |
| Name and Location | 9.5 |
| Notices | 11 |
| Obligations Independent | 9.9 |
| Payment | 1.3 |
| Prepayment | 9.2 |
| Preservation of Consumers' Claims & Defenses | 11.1 |
| Property Insurance | 7.2 |

Retail Installment Contract-NJ   Not for use in transactions secured by a dwelling.
©2018 The Reynolds and Reynolds Company
THERE ARE NO WARRANTIES, EXPRESS OR IMPLIED, AS TO CONTENT OR FITNESS FOR PURPOSE OF THIS FORM. CONSULT YOUR OWN LEGAL COUNSEL.

RSSIMVLFLZNJ 11/1/2018
Bankers Systems®
Page 6 of 7
Customers Initial Here

## 17. Contract Index Continued

| | |
|---|---|
| Purchase of Property | 1.2 |
| Remedies | 9.8 |
| Returned Payment Charge | 9.3 |
| Sales Agreement | 1 |
| Security | 10.1 |
| Security Agreement | 10 |
| Signature Notices | 18 |
| Signatures | 19 |
| Single-Interest Insurance | 7.3 |
| Telephone Monitoring and Calling | 9.6 |
| Third Party Agreement | 12 |
| Truth-In-Lending Disclosure | 2 |
| Used Car Buyer Notice | 11.3 |
| Used Vehicle Sale Dealer/Seller's Obligation | 14 |
| Waiver of Used Vehicle Sale Dealer/Seller's Obligation | 16 |
| Warranty | 9.10 |

## 18. Signature Notices

**The Annual Percentage Rate may be negotiable with the Seller. The Seller may assign this Contract and retain its right to receive a part of the Finance Charge.**

## 19. Signatures

**Entire Agreement.** Your and our entire agreement is contained in this Contract. There are no unwritten agreements regarding this Contract. Any change to this Contract must be in writing and signed by you and by us.

By: EUGENE ROBERT MCCLURE JR          08/05/2025
                                       Date

By: ANNA MAE MCCLURE          08/05/2025
                               Date

By: N/A          N/A
                  Date

## NOTICE TO RETAIL BUYER

Do not sign this Contract in blank.

You are entitled to a copy of the Contract at the time you sign.

Keep it to protect your legal rights.

By signing below, you agree to the terms of this Contract. You received a copy of this Contract and had a chance to read and review it before you signed it.

**Buyer**

By: EUGENE ROBERT MCCLURE JR          08/05/2025
                                       Date

By: ANNA MAE MCCLURE          08/05/2025
                               Date

By: N/A          N/A
                  Date

**Seller**

By: Dylans RV Center          08/05/2025
                               Date

**20. Assignment.** This Contract and Security Agreement is assigned to M & T Bank
PO Box 37258, Baltimore, MD 21297
the Assignee, phone 877-686-8424 , This assignment is made under the terms of a separate agreement made between the Seller and Assignee.

☐ This Assignment is made with recourse.

**Seller**

By: Dylans RV Center          08/05/2025
                               Date

Retail Installment Contract-NJ  Not for use in transactions secured by a dwelling.
©2016 The Reynolds and Reynolds Company
THERE ARE NO WARRANTIES, EXPRESS OR IMPLIED, AS TO CONTENT OR FITNESS FOR PURPOSE OF THIS FORM. CONSULT YOUR OWN LEGAL COUNSEL.

Customers Initial Here

# EXHIBIT D



campers inn RV

2190 DELSEA DRIVE
SEWELL, NJ 08080
Phone: (844) 656-9461
Fax: () -
ANDREW PANDOLFI

This quote is prepared exclusively for:

GENE MCCLURE
328 TAYLOR AVE

QUOTE# -486833          8/5/2025
STOCK#.105686
CUSTOMER# 4671011
UNIT VIN#

**2025 LEPRECHAUN 260DS FORD MC**          **List $171,291.00**

## Trade Information:

## Itemization

Finance Incentive $5,000          Included
Camp-Ready Prep Package          1695.00
Destination          1225.00

$1,217.75

$10,000.          $2,920.00

| | |
|---|---|
| Vehicle Price | $171,291.00 |
| Retail Discount | $43,316.00 |
| Sale Price | $127,975.00 |
| Trade Allowance | N/A |
| Trade Difference | $127,975.00 |
| Estimated Fees | $858.00 |
| Estimated Sales Tax | $8,698.23 |
| Itemization Total | $2,920.00 |
| Estimated Total Before Cash Down | $140,451.23 |

## Estimated Payment Options

| Cash Down | Months | Payment Range | | Intials |
|---|---|---|---|---|
| $15,000.00 | 240 | $1,048.54 | $1,127.91 | ___ |
| $20,000.00 | 240 | $1,006.75 | $1,082.96 | ___ |
| $25,000.00 | 240 | $964.96 | $1,038.00 | ___ |

*Estimated A.P.R. Only.

Disclaimer: Payments are based on an APR of 7.99% - 8.99%. The information provided is general information and should not be considered final or legally binding. Estimated taxes and fees are just that, estimates, and can or will vary depending on the final determination of price and trade in vehicle value as well as extras. This quote is valid for the named recipient only and is only valid through today.

Signature: _____

Signature: _____

Andrew R. Wolf, Esq. (NJ Attorney ID No. 018621995)
Javier L. Merino, Esq., (NJ Attorney ID No. 078112014)
Henry P. Wolfe, Esq. (NJ Attorney ID No. 031942005)
**THE DANN LAW FIRM PC**
825 Georges Road, 2nd Floor
North Brunswick, NJ 08902
Phone: (732) 545-7900
Fax: (216) 373-0536
Email: notices@dannlaw.com

**THE LAW OFFICE OF AARON HARMATY, LLC.**
Aaron M. Harmaty, Esq., # 301832019
21 Van Doren Ave.
Chatham, NJ 07928
973-309-5492
aharmatylaw@gmail.com
Counsel for Plaintiffs and those similarly situated

|  |  |
|---|---|
| EUGENE MCCLURE AND ANNA MAE MCCLURE<br><br>          Plaintiffs,<br><br>  v.<br><br>CAMPERS INN RV OF SEWELL, INC. d/b/a/ DYLANS RV CENTER, JEFFREY M. HIRSCH, BENJAMIN HIRSCH, MATT JEPPSEN, JACOB HELMS, and ANDY PANDOLFI,<br><br>          Defendants. | SUPERIOR COURT OF NEW JERSEY LAW DIVISION: CUMBERLAND COUNTY<br><br>Docket No. CUM-L-708-25<br><br>Civil Action<br><br>**NOTICE OF APPEARANCE** |

   **PLEASE TAKE NOTICE** that Plaintiffs Eugene McClure and Anna Mae McClure,

individually and on behalf of those similarly situated, are also being represented by The Dann Law

Firm PC in the above-captioned matter.

   **PLEASE TAKE FURTHER NOTICE** that Andrew R. Wolf, Esq., Javier L. Merino, Esq.,

and Henry P. Wolfe, Esq. hereby enter their appearances as counsel of record on behalf of Plaintiffs

Page 1 of 2

and request notice of all further pleadings, papers and other material and notices relevant to this action.

Dated: February 20, 2026

Respectfully submitted,                                              **THE DANN LAW FIRM PC**

<u>/s/ Javier L. Merino</u>

JAVIER L. MERINO, ESQ

Andrew R. Wolf, Esq. (NJ Attorney ID No. 018621995)
Javier L. Merino, Esq., (NJ Attorney ID No. 078112014)
Henry P. Wolfe, Esq. (NJ Attorney ID No. 031942005)
**THE DANN LAW FIRM PC**
825 Georges Road, 2nd Floor
North Brunswick, NJ 08902
Phone: (732) 545-7900
Fax: (216) 373-0536
Email: notices@dannlaw.com

**THE LAW OFFICE OF AARON HARMATY, LLC.**
Aaron M. Harmaty, Esq., # 301832019
21 Van Doren Ave.
Chatham, NJ 07928
973-309-5492
aharmatylaw@gmail.com
Counsel for Plaintiffs and those similarly situated

| | |
|---|---|
| EUGENE MCCLURE AND ANNA MAE MCCLURE<br><br>Plaintiffs,<br><br> v.<br><br>CAMPERS INN RV OF SEWELL, INC. d/b/a/ DYLANS RV CENTER, JEFFREY M. HIRSCH, BENJAMIN HIRSCH, MATT JEPPSEN, JACOB HELMS, and ANDY PANDOLFI,<br><br>Defendants. | SUPERIOR COURT OF NEW JERSEY LAW DIVISION: CUMBERLAND COUNTY<br><br>Docket No. CUM-L-708-25<br><br>Civil Action<br><br>**NOTICE OF APPEARANCE** |

    **PLEASE TAKE NOTICE** that Plaintiffs Eugene McClure and Anna Mae McClure,

individually and on behalf of those similarly situated, are also being represented by The Dann Law

Firm PC in the above-captioned matter.

    **PLEASE TAKE FURTHER NOTICE** that Andrew R. Wolf, Esq., hereby enter his

appearances as counsel of record on behalf of Plaintiffs and request notice of all further pleadings,

Page 1 of 2

papers and other material and notices relevant to this action.

    Dated: February 25, 2026

Respectfully submitted,                                  **THE DANN LAW FIRM PC**


/s/ Andrew R. Wolf

ANDREW R. WOLF, ESQ

Andrew R. Wolf, Esq. (NJ Attorney ID No. 018621995)
Javier L. Merino, Esq., (NJ Attorney ID No. 078112014)
Henry P. Wolfe, Esq. (NJ Attorney ID No. 031942005)
**THE DANN LAW FIRM PC**
825 Georges Road, 2nd Floor
North Brunswick, NJ 08902
Phone: (732) 545-7900
Fax: (216) 373-0536
Email: notices@dannlaw.com

**THE LAW OFFICE OF AARON HARMATY, LLC.**
Aaron M. Harmaty, Esq., # 301832019
21 Van Doren Ave.
Chatham, NJ 07928
973-309-5492
aharmatylaw@gmail.com
Counsel for Plaintiffs and those similarly situated

|  |  |
|---|---|
| EUGENE MCCLURE AND ANNA MAE MCCLURE<br><br>        Plaintiffs,<br><br> v.<br><br>CAMPERS INN RV OF SEWELL, INC. d/b/a/ DYLANS RV CENTER, JEFFREY M. HIRSCH, BENJAMIN HIRSCH, MATT JEPPSEN, JACOB HELMS, and ANDY PANDOLFI,<br><br>        Defendants. | SUPERIOR COURT OF NEW JERSEY LAW DIVISION: CUMBERLAND COUNTY<br><br>Docket No. CMB-L-708-25<br><br>Civil Action<br><br>**PROPOSED ORDER** |

This matter, having been brought before the Court by way of motion to change the track assignment to Track IV, and the Court having reviewed the papers submitted, and for good cause shown;

It is on this ____ day of _____. 202_,

**ORDERED**, that the plaintiffs' request to change the track assignment by Track IV is

1

**GRANTED**; and it is further

**ORDERED**, that the discovery end date for this matter be adjusted to account for the change to Track IV; and it is further

**ORDERED**, that the Honorable _____, J.S.C. is assigned to case manage this matter; and it is further

**ORDERED**, that there will be an initial Case Management Conference via Zoom on _____ __, 2026 at _____; and it is further

**ORDERED**, that this Order be deemed served upon all parties upon it being uploaded to eCourts.

_____

( _ ) OPPOSED
( _ ) UNOPPOSED

CUM-L-000708-25   03/02/2026 2:49:38 PM   Pg 1 of 2   Trans ID: LCV2026503864
Case 1:26-cv-03379-KMW-EAP   Document 1   Filed 03/30/26   Page 275 of 307 PageID: 275
26:2SS-9. Out-of-pocket costs; billed amount; in-network equivalency, NJ ST 26:2SS-9

New Jersey Statutes Annotated
  Title 26. Health and Vital Statistics (Refs & Annos)
    Chapter 2sS. Health Care Consumer Protection (Refs & Annos)

N.J.S.A. 26:2SS-9

26:2SS-9. Out-of-pocket costs; billed amount; in-network equivalency

Effective: October 27, 2022

Currentness

Notwithstanding any law, rule, or regulation to the contrary:

a. With respect to a carrier, if a covered person receives inadvertent out-of-network services, or services at an in-network or out-of-network health care facility on an emergency or urgent basis, the carrier shall ensure that the covered person incurs no greater out-of-pocket costs than the covered person would have incurred with an in-network health care provider for covered services. Pursuant to sections 7[1] and 8[2] of this act, the out-of-network provider shall not bill the covered person, except for applicable deductible, copayment, or coinsurance amounts that would apply if the covered person utilized an in-network health care provider for the covered services. In the case of services provided to a member of a self-funded plan that does not elect to be subject to the provisions of this section, the provider shall be permitted to bill the covered person in excess of the applicable deductible, copayment, or coinsurance amounts.

b. (1) With respect to inadvertent out-of-network services, or services at an in-network or out-of-network health care facility on an emergency or urgent basis, benefits provided by a carrier that the covered person receives for health care services shall be assigned to the out-of-network health care provider, which shall require no action on the part of the covered person. Once the benefit is assigned as provided in this subsection:

(a) any reimbursement paid by the carrier shall be paid directly to the out-of-network provider; and

(b) the carrier shall provide the out-of-network provider with a written remittance of payment that specifies the proposed reimbursement and the applicable deductible, copayment, or coinsurance amounts owed by the covered person.

(2) An entity providing or administering a self-funded health benefits plan that elects to participate in this section pursuant to subsection d. of this section, shall comply with the provisions of paragraph (1) of this subsection.

c. If inadvertent out-of-network services or services provided at an in-network or out-of-network health care facility on an emergency or urgent basis are performed in accordance with subsection a. of this section, the out-of-network provider may bill the carrier for the services rendered. The carrier may pay the billed amount or the carrier shall determine within 20 days from the date of the receipt of the claim for the services whether the carrier considers the claim to be excessive, and if so, the carrier shall notify the provider of this determination within 20 days of the receipt of the claim. If the carrier provides this notification, the carrier and the provider shall have 60 days from the date of this notification to negotiate a settlement. The carrier may attempt to negotiate a final reimbursement amount with the out-of-network health care provider which differs from the amount paid by the

Case 1:26-cv-03379-KMW-EAP   Document 1   Filed 03/30/26   Page 276 of 307 PageID: 276

carrier pursuant to this subsection. If there is no settlement reached after the 60 days, the carrier shall pay the provider their final offer for the services. If the carrier and provider cannot agree on the final offer as a reimbursement rate for these services, the carrier, provider, or covered person, as applicable, may initiate binding arbitration within 60 days of the final offer, pursuant to section 10[3] or 11[4] of this act. In addition, in the event that arbitration is initiated pursuant to section 10 of this act, the payment shall be subject to the binding arbitration provisions of paragraphs (4) and (5) of subsection b. of section 10 of this act.

d. With respect to an entity providing or administering a self-funded health benefits plan and its plan members, this section shall only apply if the plan elects to be subject to the provisions of this section. To elect to be subject to the provisions of this section, the self-funded plan shall provide notice, on an annual basis, to the department, on a form and in a manner prescribed by the department, attesting to the plan's participation and agreeing to be bound by the provisions of this section. The self-funded plan shall amend the employee benefit plan, coverage policies, contracts and any other plan documents to reflect that the benefits of this section shall apply to the plan's members.

**Credits**
L.2018, c. 32, § 9, eff. Aug. 30, 2018. Amended by L.2022, c. 74, § 1, eff. Oct. 27, 2022.

Footnotes

1        N.J.S.A. § 26:2SS-7.

2        N.J.S.A. § 26:2SS-8.

3        N.J.S.A. § 26:2SS-10.

4        N.J.S.A. § 26:2SS-11.

N. J. S. A. 26:2SS-9, NJ ST 26:2SS-9
Current with laws through L.2025, c. 176 and J.R. No. 12.

**End of Document**                                           © 2026 Thomson Reuters. No claim to original U.S. Government Works.

Andrew R. Wolf, Esq. (NJ Attorney ID No. 018621995)
Javier L. Merino, Esq., (NJ Attorney ID No. 078112014)
Henry P. Wolfe, Esq. (NJ Attorney ID No. 031942005)
**THE DANN LAW FIRM PC**
825 Georges Road, 2nd Floor
North Brunswick, NJ 08902
Phone: (732) 545-7900
Fax: (216) 373-0536
Email: notices@dannlaw.com

**THE LAW OFFICE OF AARON HARMATY, LLC.**
Aaron M. Harmaty, Esq., # 301832019
21 Van Doren Ave.
Chatham, NJ 07928
973-309-5492
aharmatylaw@gmail.com
Counsel for Plaintiffs and those similarly situated

| | |
|---|---|
| EUGENE MCCLURE AND ANNA MAE MCCLURE<br><br>Plaintiffs,<br><br>v.<br><br>CAMPERS INN RV OF SEWELL, INC. d/b/a/ DYLANS RV CENTER, JEFFREY M. HIRSCH, BENJAMIN HIRSCH, MATT JEPPSEN, JACOB HELMS, and ANDY PANDOLFI,<br><br>Defendants. | SUPERIOR COURT OF NEW JERSEY LAW DIVISION: CUMBERLAND COUNTY<br><br>Docket No. CMB-L-708-25<br><br>Civil Action<br><br>**CERTIFICATION OF ANDREW R. WOLF, ESQ.** |

I, Andrew R. Wolf, Esq., being of full age and sound mind, hereby certify as follows:

1.      I am the co-counsel for the plaintiffs, Eugene and Anna Mae McClure, in the above-captioned matter. I make this certification in support of their motion to change the track assignment of this case to Track IV. I am fully familiar with the facts stated herein.

2.      Plaintiffs filed their original complaint on October 9, 2025.

3.      The matter was set to Track I on October 10, 2025.

1

4.      On November 7, 2025, Defendants filed a notice of removal.

5.      When the case was in federal court, the Defendants filed a motion to dismiss with prejudice, and Plaintiffs filed an amended complaint.

6.      The amended complaint removed the federal claims, but added new class claims.

7.      Because the federal claims were removed, the federal court no longer had jurisdiction on the matter, and it was remanded on February 13, 2026.

8.      The First Amended Class Action Complaint and Jury Demand was filed under docket CUM-L-708-25 on February 20, 2026.

9.      A new track notice was not submitted.

10.     Because the nature of the case has transformed from an individual claim into a class-action lawsuit, it is necessary to change the track assignment.

11.     We have consent of the adversary to change the track assignment. Attached as **Exhibit A**, is a true and accurate copy of the email from adversary confirming consent to change track assignment.

12.     The matter has recently been remanded and re-activated in Superior Court and no responsive pleading to the First Amended Class Action Complaint has been filed by any defendant.

13.     For the aforementioned reasons, it is respectfully requested the track assignment for this case be changed to Track IV.

I certify that the forgoing statements made by me are true. I am aware that if any of the forgoing statements made by me are willfully false, I am subject to punishment.

Dated: March 2, 2026                                    *Andrew R. Wolf*
                                                        ANDREW R. WOLF

2

Andrew R. Wolf, Esq. (NJ Attorney ID No. 018621995)
Javier L. Merino, Esq., (NJ Attorney ID No. 078112014)
Henry P. Wolfe, Esq. (NJ Attorney ID No. 031942005)
**THE DANN LAW FIRM PC**
825 Georges Road, 2nd Floor
North Brunswick, NJ 08902
Phone: (732) 545-7900
Fax: (216) 373-0536
Email: notices@dannlaw.com

**THE LAW OFFICE OF AARON HARMATY, LLC.**
Aaron M. Harmaty, Esq., # 301832019
21 Van Doren Ave.
Chatham, NJ 07928
973-309-5492
aharmatylaw@gmail.com
Counsel for Plaintiffs and those similarly situated

| | |
|---|---|
| EUGENE MCCLURE AND ANNA MAE MCCLURE<br><br>Plaintiffs,<br><br>v.<br><br>CAMPERS INN RV OF SEWELL, INC. d/b/a/ DYLANS RV CENTER, JEFFREY M. HIRSCH, BENJAMIN HIRSCH, MATT JEPPSEN, JACOB HELMS, and ANDY PANDOLFI,<br><br>Defendants. | SUPERIOR COURT OF NEW JERSEY LAW DIVISION: CUMBERLAND COUNTY<br><br>Docket No. CMB-L-708-25<br><br>Civil Action<br><br>**MOTION TO CHANGE TRACK ASSIGNMENT TO TRACK IV** |

To:

Nicholas A. Duston, Esq.
Norris McLaughlin, P.A.
400 Crossing Blvd., 8th Floor
P.O. Box 5933
Bridgewater, NJ 08807

**PLEASE TAKE NOTICE**, that as soon as counsel may be heard, that the undersigned

attorney for plaintiffs, Eugene and Anna Mae McClure, through their counsel, The Law Office of

1

Aaron Harmaty, LLC and The Dann Law Firm, P.C., will appear before the Superior Court of New Jersey, Cumberland County, located at the Bergen County Justice Center, 60 West Broad Street, Bridgeton, New Jersey 08079, for an order changing the track-assignment for the above captioned matter, and for any other relief the Court rules as in the interests of justice.

**NOTICE, IF YOU WANT TO RESPOND TO THIS MOTION, YOU MUST DO SO IN WRITING**. Your written response must be in the form of a certification or affidavit. That means that the person signing it swears to the truth of the statements in the certification or affidavit and is aware that the court can punish him or her if the statements are knowingly false. You may ask for oral argument, which means you can ask to appear before the court to explain your position. If the court grants oral argument, you will be notified of the time, date, and place. Your response, if any, must be in writing even if you request oral argument. Any papers you send to the court must also be sent to the opposing party's attorney or the opposing party if an attorney does not represent them.

The Order sought by Plaintiffs will be entered in the discretion of the court unless notice is provided to the clerk of the Court and undersigned counsel after the date of service of this Motion, stating that Defendant object to the entry of the Order.

We make this request with consent of the adversary.

The Law Office of Aaron M. Harmaty
Attorneys for Plaintiffs and those similarly situated

Dated: March 2, 2026

*Aaron M. Harmaty*
Aaron M. Harmaty, Esq.

2

CERTIFICATION OF SERVICE

I, Aaron M. Harmaty, Esq. of full age, being duly sworn, according to law any upon my oath, depose and say:

1.      I am the principal of the Law Office of Aaron Harmaty, LLC.

2.      On March 2, 2026, I served the within motion, via eFile upon; all counsel of record and also served it directly to their personal email addresses.

I certify that the above statements made by me are true. I am aware that if any statements made by me are willfully false, that I am subject to punishment.

Dated: March 2, 2026

*Aaron M. Harmaty*
AARON M. HARMATY

1

CUM-L-000708-25   03/02/2026 2:49:38 PM   Pg 1 of 1   Trans ID: LCV2026503864

2/27/26, 10:35 AM   Case 1:26-cv-03379-KMW-EAP   Gmail - Document 1 (Dylan's) et al. Docket No.:1:25-cv-17313   Filed 03/30/26   Page 283 of 307 PageID: 283

 Gmail

**Aaron Harmaty <aharmatylaw@gmail.com>**

---

## McClure v. Camper's Inn (Dylan's) et al. Docket No.:1:25-cv-17313

---

**Nicholas A. Duston, Esq.** <naduston@norris-law.com>                    Thu, Feb 26, 2026 at 3:49 PM
To: Andrew Wolf <awolf@dannlaw.com>
Cc: Nicole Portú <nportu@norris-law.com>, Aaron Harmaty <aharmatylaw@gmail.com>, Gift Maduka <gift@dannlaw.com>, Javier Merino <jmerino@dannlaw.com>, "5745c8766+matter1747443113@maildrop.clio.com" <5745c8766+matter1747443113@maildrop.clio.com>, Henry Wolfe <hwolfe@dannlaw.com>, "Steven A. Karg, Esq." <sakarg@norris-law.com>

Good afternoon,

Your timing is impeccable; I was on the phone dealing with at least some of this when you emailed.

I can now confirm that the three new defendants (Jeff Hirsch, Ben Hirsch, and Matt Jeppsen) will be retaining my firm.  They're still in the process of doing that, but it should be finalized shortly.  Could you please send me the summons and complaint for each of them (email is fine); I will review and if all seems in order I will likely be able to accept service on behalf of all three new defendants. I have an acknowledgement of service type document I will fill out for each so you can file that as proof of service, and will make it as of the day you send me the summonses.

Once we take care of that, I suggest I revise that stipulation to make the existing defendants' deadline the same as the new ones, if that is OK with you. Just let me know.

I have no objection to your proposal to write a letter to change the track assignment, so you can say that the defendants do not object when you write that letter.

I am still working on a response on how we view the next steps in settlement; our clients are also as interested as you are in resolving this, but I have some moving parts here like getting all the defendants to retain us and gathering information relating to your class claims that I'm still working on. Stay tuned on that.

-Nick

Nicholas A. Duston, Esq.
t: 908.252.4208 | f: 908.722.0755 | e: naduston@norris-law.com | www.norrismclaughlin.com
NY Office: 7 Times Square | 21st Floor | New York, NY 10036
NJ Office: 400 Crossing Blvd | 8th Floor | P.O. Box 5933 | Bridgewater, NJ 08807-5933
Bridgewater, NJ | New York, NY | Allentown, PA



---

Andrew R. Wolf, Esq. (NJ Attorney ID No. 018621995)
Javier L. Merino, Esq., (NJ Attorney ID No. 078112014)
Henry P. Wolfe, Esq. (NJ Attorney ID No. 031942005)
**THE DANN LAW FIRM PC**
825 Georges Road, 2nd Floor
North Brunswick, NJ 08902
Phone: (732) 545-7900
Fax: (216) 373-0536
Email: notices@dannlaw.com

**THE LAW OFFICE OF AARON HARMATY, LLC.**
Aaron M. Harmaty, Esq., # 301832019
21 Van Doren Ave.
Chatham, NJ 07928
973-309-5492
aharmatylaw@gmail.com
Counsel for Plaintiffs and those similarly situated

|  |  |
|---|---|
| EUGENE MCCLURE AND ANNA MAE MCCLURE<br><br>             Plaintiffs,<br><br>   v.<br><br>CAMPERS INN RV OF SEWELL, INC. d/b/a/ DYLANS RV CENTER, JEFFREY M. HIRSCH, BENJAMIN HIRSCH, MATT JEPPSEN, JACOB HELMS, and ANDY PANDOLFI,<br><br>             Defendants. | SUPERIOR COURT OF NEW JERSEY LAW DIVISION: CUMBERLAND COUNTY<br><br>Docket No. CUM-L-708-25<br><br>Civil Action<br><br>**NOTICE OF APPEARANCE** |

   **PLEASE TAKE NOTICE** that Plaintiffs Eugene McClure and Anna Mae McClure,

individually and on behalf of those similarly situated, are also being represented by The Dann Law

Firm PC in the above-captioned matter.

   **PLEASE TAKE FURTHER NOTICE** that Andrew R. Wolf, Esq., hereby enter his

appearances as counsel of record on behalf of Plaintiffs and request notice of all further pleadings,

Page 1 of 2

papers and other material and notices relevant to this action.

Dated: March 2, 2026

Respectfully submitted,                    **THE DANN LAW FIRM PC**


                                           /s/ Andrew R. Wolf

                                           ANDREW R. WOLF, ESQ

Nicholas A. Duston, Esq. (ID#103562014)
**NORRIS McLAUGHLIN, P.A.**
400 Crossing Boulevard, 8th Floor
Bridgewater, New Jersey 08807
908-722-0700
*Attorneys for Defendants*

|  |  |
|---|---|
| EUGENE MCCLURE AND ANNA MAE MCCLURE<br><br>Plaintiff,<br><br>v.<br><br>CAMPERS INN RV OF SEWELL, INC. d/b/a/ DYLANS RV CENTER, JEFFREY M. HIRSCH, BENJAMIN HIRSCH, MATT JEPPSEN, JACOB HELMS, and ANDY PANDOLFI,<br><br>Defendants. | SUPERIOR COURT OF NEW JERSEY LAW DIVISION—CUMBERLAND COUNTY<br><br>Docket No.: CUM-L-000708-25<br><br>**ACKNOWLEDGEMENT OF SERVICE** |

The undersigned hereby acknowledges and accepts service of original process as of February 26, 2026 by way of a Summons and a copy of the First Amended Class Action Complaint and Jury Demand in the above captioned matter on behalf of defendant Benjamin Hirsch.

Dated:  March 3, 2026

_____
Nicholas A. Duston
**NORRIS McLAUGHLIN, P.A.**
*Attorneys for Defendants*

Nicholas A. Duston, Esq. (ID#103562014)
**NORRIS McLAUGHLIN, P.A.**
400 Crossing Boulevard, 8th Floor
Bridgewater, New Jersey 08807
908-722-0700
*Attorneys for Defendants*

| | |
|---|---|
| EUGENE MCCLURE AND ANNA MAE MCCLURE<br><br>Plaintiff,<br><br>v.<br><br>CAMPERS INN RV OF SEWELL, INC. d/b/a/ DYLANS RV CENTER, JEFFREY M. HIRSCH, BENJAMIN HIRSCH, MATT JEPPSEN, JACOB HELMS, and ANDY PANDOLFI,<br><br>Defendants. | SUPERIOR COURT OF NEW JERSEY LAW DIVISION—CUMBERLAND COUNTY<br><br>Docket No.: CUM-L-000708-25<br><br>**ACKNOWLEDGEMENT OF SERVICE** |

The undersigned hereby acknowledges and accepts service of original process as of February 26, 2026 by way of a Summons and a copy of the First Amended Class Action Complaint and Jury Demand in the above captioned matter on behalf of defendant Jeffrey Hirsch.

Dated:  March 3, 2026

_____
Nicholas A. Duston
**NORRIS McLAUGHLIN, P.A.**
*Attorneys for Defendants*

Nicholas A. Duston, Esq. (ID#103562014)
**NORRIS McLAUGHLIN, P.A.**
400 Crossing Boulevard, 8th Floor
Bridgewater, New Jersey 08807
908-722-0700
*Attorneys for Defendants*

| | |
|---|---|
| EUGENE MCCLURE AND ANNA MAE MCCLURE<br><br>Plaintiff,<br><br>v.<br><br>CAMPERS INN RV OF SEWELL, INC. d/b/a/ DYLANS RV CENTER, JEFFREY M. HIRSCH, BENJAMIN HIRSCH, MATT JEPPSEN, JACOB HELMS, and ANDY PANDOLFI,<br><br>Defendants. | SUPERIOR COURT OF NEW JERSEY LAW DIVISION—CUMBERLAND COUNTY<br><br>Docket No.: CUM-L-000708-25<br><br>**ACKNOWLEDGEMENT OF SERVICE** |

The undersigned hereby acknowledges and accepts service of original process as of February 26, 2026 by way of a Summons and a copy of the First Amended Class Action Complaint and Jury Demand in the above captioned matter on behalf of defendant Matt Jeppsen.

Dated:  March 3, 2026

_____
Nicholas A. Duston
**NORRIS McLAUGHLIN, P.A.**
*Attorneys for Defendants*

Andrew R. Wolf, Esq. (NJ Attorney ID No. 018621995)
Javier L. Merino, Esq., (NJ Attorney ID No. 078112014)
Henry P. Wolfe, Esq. (NJ Attorney ID No. 031942005)
**THE DANN LAW FIRM PC**
825 Georges Road, 2nd Floor
North Brunswick, NJ 08902
Phone: (732) 545-7900
Fax: (216) 373-0536
Email: notices@dannlaw.com

**THE LAW OFFICE OF AARON HARMATY, LLC.**
Aaron M. Harmaty, Esq., # 301832019
21 Van Doren Ave.
Chatham, NJ 07928
973-309-5492
aharmatylaw@gmail.com
Counsel for Plaintiffs and those similarly situated

|  |  |
|---|---|
| EUGENE MCCLURE AND ANNA MAE MCCLURE<br><br>Plaintiffs,<br><br>v.<br><br>CAMPERS INN RV OF SEWELL, INC. d/b/a/ DYLANS RV CENTER, JEFFREY M. HIRSCH, BENJAMIN HIRSCH, MATT JEPPSEN, JACOB HELMS, and ANDY PANDOLFI,<br><br>Defendants. | SUPERIOR COURT OF NEW JERSEY LAW DIVISION: CUMBERLAND COUNTY<br><br>Docket No. CMB-L-708-25<br><br>Civil Action<br><br>**PROPOSED ORDER** |

This matter, having been brought before the Court by way of motion to change the track assignment to Track IV, and the Court having reviewed the papers submitted, and for good cause shown;

It is on this __27__ day of _____March_____. 202_6_,

**ORDERED**, that the plaintiffs' request to change the track assignment by Track IV is

1

**GRANTED**; and it is further

ORDERED, that the discovery end date for this matter be adjusted to account for the change to Track IV; and it is further

ORDERED, that the Honorable _James R. Swift_, J.S.C. is assigned to case manage this matter; and it is further

ORDERED, that there will be an initial Case Management Conference via Zoom on _tbd_ __, 2026 at _____; and it is further

ORDERED, that this Order be deemed served upon all parties upon it being uploaded to eCourts.

_____
James R. Swift

( _ ) OPPOSED
(x_ ) UNOPPOSED

# EXHIBIT C

Nicholas A. Duston, Esq. (I.D. #103562014)
**NORRIS McLAUGHLIN, P.A.**
400 Crossing Boulevard, 8th Floor
Bridgewater, New Jersey 08807
908-722-0700
*Attorneys for Defendants Campers Inn RV of Sewell, Inc.*
*d/b/a Dylans RV Center, Benjamin Hirsch, Matt Jeppsen,*
*Jeffery Hirsch, Andy Pandolfi, and Jacob Helms*
*(collectively, the Defendants)*

| | |
|---|---|
| EUGENE MCCLURE AND ANNA MAE MCCLURE, INDIVIDUALLY AND AS CLASS REPRESENTATIVE ON BEHALF OF OTHERS SIMILARLY SITUATED, : : : : : : | **SUPERIOR COURT OF NEW JERSEY LAW DIVISION—CUMBERLAND COUNTY**  Docket No.: CUM-L-000708-25 |
| Plaintiffs, : : | Civil Action |
| vs. : : | **NOTICE OF FILING OF NOTICE OF REMOVAL** |
| CAMPERS INN RV OF SEWELL, INC d/b/a DYLAN'S RV CENTER; JEFFERY M. HIRSCH; BENJAMIN HIRSCH; MATT JEPPSEN; JACOB HELMS; and ANDY PANDOLFI : : : : : : : | |
| Defendants. : | |

To:   Civil Division
      Superior Court of New Jersey, Cumberland County
      Cumberland County Courthouse
      60 West Broad Street
      Bridgeton, New Jersey 08302

      Aaron M. Harmaty, Esq. (ID #3018322019)
      THE LAW OFFICE OF AARON HARAMATY, LLC
      21 Van Doren Ave
      Chatham, NJ 07928
      *Attorneys for Plaintiff*

      Andrew R. Wolf, Esq. (NJ Attorney ID No. 018621995)
      Javier L. Merino, Esq., (NJ Attorney ID No. 078112014)
      Henry P. Wolfe, Esq. (NJ Attorney ID No. 031942005)
      THE DANN LAW FIRM PC
      825 Georges Road, 2nd Floor
      North Brunswick, NJ 08902
      *Attorneys for Plaintiffs*

**PLEASE TAKE NOTICE** that Defendants Benjamin Hirsch ("BH"), Matt Jeppsen ("Jeppsen"), and Jeffery M. Hirsch ("JMH") (collectively, the "Removing Defendants"), by and through its undersigned counsel, filed a Notice of Removal in the United States District Court for the District of New Jersey on March 30, 2026.

**PLEASE TAKE FURTHER NOTICE** a true and correct copy of the original Notice of Removal, which was filed in the United States District Court for the District of New Jersey is attached hereto (without exhibits) as Exhibit A, and has been served along with this notice on counsel for Plaintiffs.

**PLEASE TAKE FURTHER NOTICE** that pursuant to 28 U.S.C. § 1446(d), the Superior Court of New Jersey shall proceed no further unless and until this case is remanded.

**NORRIS MCLAUGHLIN, P.A.**
*Attorneys for Defendants Campers Inn RV of Sewell, Inc.*
*d/b/a Dylans RV Center, Benjamin Hirsch, Matt Jeppsen,*
*Jeffery Hirsch, Andy Pandolfi, and Jacob Helms*
*(collectively, the Defendants)*

*/s/ Nicholas Duston*
Nicholas A. Duston, Esq.

Dated: March 30, 2026

# EXHIBIT D

**NORRIS McLAUGHLIN, P.A.**
Nicholas A. Duston, Esq.
400 Crossing Boulevard, 8th Floor
Bridgewater, New Jersey 08807
General 908-722-0700 Fax 908-722-0755
Direct: 908-252-4208
Email: naduston@norris-law.com
*Attorneys for Defendants Campers Inn RV of
Sewell, Inc. d/b/a Dylans RV Center, Benjamin
Hirsch, Matt Jeppsen, Jeffery Hirsch, Andy
Pandolfi, and Jacob Helms (collectively, the
Defendants)*

|  |  |
|---|---|
| EUGENE MCCLURE AND ANNA MAE MCCLURE INDIVIDUALLY AND AS CLASS REPRESENTATIVE ON BEHALF OF OTHERS SIMILARLY SITUATED,<br><br>                              Plaintiffs,<br><br>                    v.<br><br>CAMPERS INN RV OF SEWELL, INC d/b/a DYLAN'S RV CENTER; JEFFERY M. HIRSCH; BENJAMIN HIRSCH; MATT JEPPSEN; JACOB HELMS; and ANDY PANDOLFI<br>                              Defendants. | :<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>: | UNITED STATES DISTRICT COURT FOR THE DISTRICT OF NEW JERSEY<br><br>CASE NO:<br><br>Document Electronically Filed<br><br>**DECLARATION OF BENJAMIN HIRSCH IN SUPPORT DEFENDANTS' NOTICE OF REMOVAL** |

I, BENJAMIN HIRSCH, of full age, hereby certifies as follows:

1.      I hold the title of Chief Operating Officer at Campers Inn Management Company, Inc., a company affiliated with Defendant Campers Inn RV of Sewell d/b/a Dylan's RV Center ("Campers Inn") and am duly authorized to make this certification on my own behalf, as well as on Campers Inn's behalf. The facts stated in this certification are based on my personal knowledge, as well as my review of Campers Inn business records, which records are kept and maintained in the ordinary course of Campers Inn's business and made at or near the time of the occurrence of the matters recorded by persons with personal knowledge of that information. I have personal knowledge of the procedures for creating and maintaining these business records. I submit this

certification in support of The Removing Defendants' Notice of Removal.

**Domiciles of Benjamin Hirsch, Jeffrey Hirsch, and Matthew Jeppsen**

2.      My permanent home is located in the state of Florida and I am presently physically residing in Florida. I intend to remain in the state of Florida indefinitely. Florida is the place to which, whenever I am absent, I intend to return. Although I have a business connection to Campers Inn RV of Sewell, Inc. d/b/a Dylan's RV in New Jersey, any time I spend in New Jersey is temporary and for business purposes only. I do not consider New Jersey my home and have no intention of relocating there.

3.      Jeffrey Hirsch's permanent home is located in the state of Florida and he is presently physically residing in Florida. Jeffrey Hirsch intends to remain in the state of Florida indefinitely. Florida is the place to which, whenever he is absent, he intends to return. Although Jeffrey Hirsch has a business connection to Campers Inn RV of Sewell, Inc. d/b/a Dylan's RV in New Jersey, any time he spends in New Jersey is temporary and for business purposes only. He does not consider New Jersey his home and has no intention of relocating there.

4.      Matthew Jeppsen's permanent home is located in the state of Florida and he is presently physically residing in Florida. Matthew Jeppsen intends to remain in the state of Florida indefinitely. Florida is the place to which, whenever he is absent, he intends to return. Although Matthew Jeppsen has a business connection to Campers Inn RV of Sewell, Inc. d/b/a Dylan's RV in New Jersey, any time he spends in New Jersey is temporary and for business purposes only. He does not consider New Jersey his home and has no intention of relocating there.

**Camper's Inn's Records**

5.      In connection with this litigation, I have reviewed Campers Inn's business records for recreational vehicle sales and lease transactions during the period from June 29, 2022 through

2

February 22, 2026 (the "Review Period"). The Review Period begins on the date that Campers Inn purchased all the assets of a prior dealership and began operations. The Review Period encompasses the class period defined in the First Amended Class Action Complaint ("FAC"), which covers all transactions on or after October 9, 2019. Campers Inn did not have any transactions prior to beginning operations after its asset purchase, which closed June 29, 2022.

6.    Campers Inn of Sewell conducted approximately 622 consumer transactions for the purchase or lease of recreational vehicles during the Review Period.

7.    Each of the 622 transactions was documented using a Buyer's Order ("BO") or other sales document in the same or substantially similar form as the BO used in the McClures' transaction, as described in the First Amended Complaint.

8.    Based on Campers Inn's business records, all 622 transactions included contracts containing the same or a similar "Documentation Fee Paid to Seller" line item.

9.    A review of the residence of these customers indicates that only slightly more than 40% are residents of New Jersey, with the rest spread among other states, and two being residents of other countries.

10.    The form sales documents used in the sales transaction with the McClures is the same standard sales document used by Campers Inn for all consumer RV transactions during the Review Period.

I hereby certify that the foregoing statements made by me are true. I am aware that if any of the foregoing statements made by me are willfully false, I am subject to punishment.

Dated: 28 March 2026                    **BENJAMIN HIRSCH**

3

# EXHIBIT E

**NORRIS McLAUGHLIN, P.A.**
Nicholas A. Duston, Esq.
400 Crossing Boulevard, 8th Floor
Bridgewater, New Jersey 08807
General 908-722-0700 Fax 908-722-0755
Direct: 908-252-4208
Email: naduston@norris-law.com
*Attorneys for Defendants Campers Inn RV of*
*Sewell, Inc. d/b/a Dylans RV Center, Benjamin*
*Hirsch, Matt Jeppsen, Jeffery Hirsch, Andy*
*Pandolfi, and Jacob Helms (collectively, the*
*Defendants)*

| | |
|---|---|
| EUGENE MCCLURE AND ANNA MAE MCCLURE INDIVIDUALLY AND AS CLASS REPRESENTATIVE ON BEHALF OF OTHERS SIMILARLY SITUATED, <br><br> Plaintiffs, <br><br> v. <br><br> CAMPERS INN RV OF SEWELL, INC d/b/a DYLAN'S RV CENTER; JEFFERY M. HIRSCH; BENJAMIN HIRSCH; MATT JEPPSEN; JACOB HELMS; and ANDY PANDOLFI <br><br> Defendants. | UNITED STATES DISTRICT COURT FOR THE DISTRICT OF NEW JERSEY <br><br> CASE NO: <br><br> Document Electronically Filed <br><br> **DECLARATION OF JACOB HELMS IN SUPPORT DEFENDANTS' NOTICE OF REMOVAL** |

I, JACOB HELMS, of full age, hereby certifies as follows:

1.    I hold the title of Manager at Campers Inn RV of Sewell d/b/a Dylan's RV Center ("Campers Inn"). The facts stated in this certification are based on my personal knowledge. I submit this certification in support of The Removing Defendants' Notice of Removal.

2.    My permanent home is located in the Commonwealth of Pennsylvania, and I currently physically reside in Pennsylvania.

3.    I intend to remain in the state of Pennsylvania indefinitely. Pennsylvania is the place to which, whenever I am absent, I intend to return.

4.    Although I have a business connection to Campers Inn RV of Sewell, Inc. d/b/a

Dylan's RV in New Jersey, any time I spend in New Jersey is temporary and for business purposes only. I do not consider New Jersey my home and have no intention of relocating there.

I hereby certify that the foregoing statements made by me are true. I am aware that if any of the foregoing statements made by me are willfully false, I am subject to punishment.

Dated:  March 27, 2026

JACOB HELMS

2

# EXHIBIT F

**NORRIS McLAUGHLIN, P.A.**
Nicholas A. Duston, Esq.
400 Crossing Boulevard, 8th Floor
Bridgewater, New Jersey 08807
General 908-722-0700 Fax 908-722-0755
Direct: 908-252-4208
Email: naduston@norris-law.com
*Attorneys for Defendants Campers Inn RV of Sewell, Inc. d/b/a Dylans RV Center, Benjamin Hirsch, Matt Jeppsen, Jeffery Hirsch, Andy Pandolfi, and Jacob Helms (collectively, the Defendants)*

| | |
|---|---|
| EUGENE MCCLURE AND ANNA MAE MCCLURE INDIVIDUALLY AND AS CLASS REPRESENTATIVE ON BEHALF OF OTHERS SIMILARLY SITUATED,<br><br>Plaintiffs,<br><br>v.<br><br>CAMPERS INN RV OF SEWELL, INC d/b/a DYLAN'S RV CENTER; JEFFERY M. HIRSCH; BENJAMIN HIRSCH; MATT JEPPSEN; JACOB HELMS; and ANDY PANDOLFI<br>Defendants. | UNITED STATES DISTRICT COURT FOR THE DISTRICT OF NEW JERSEY<br><br>CASE NO:<br><br>Document Electronically Filed<br><br>**DECLARATION OF ANDY PANDOLFI IN SUPPORT DEFENDANTS' NOTICE OF REMOVAL** |

I, ANDREW PANDOLFI, of full age, hereby certifies as follows:

1.     I hold the title of Sales Representative at Campers Inn RV of Sewell d/b/a Dylan's RV Center ("Campers Inn"). The facts stated in this certification are based on my personal knowledge. I submit this certification in support of The Removing Defendants' Notice of Removal.

2.     My permanent home is located in the State of New Jersey, and I currently physically reside in New Jersey.

3.     I intend to remain in the state of New Jersey indefinitely. New Jersey is the place to which, whenever I am absent, I intend to return.

I hereby certify that the foregoing statements made by me are true. I am aware that if any

of the foregoing statements made by me are willfully false, I am subject to punishment.

ANDREW PANDOLFI

Dated:   3-27-26

2